1    __COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C §§ 1983__

2

3    Name DANIEL MANRIQUEZ

4        (Last)            (First)            (Initial)

5    Prisoner Number K-78581    PELICAN BAY STATE PRISON

6    Institutional Address C 2 - CEll 218-L · P·O· BOX 7500, CRESCENT CITY

7    CITY CA· 95531.

8

9                UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA

10    DANIEL · MANRIQUEZ            CV  08        2427
11    (Enter the full name of plaintiff in this action.)

12                    vs.                    Case No. _____
                                          (To be provided by the clerk of court) **MHP**
13    JAMES TILTON
                                          **COMPLAINT UNDER THE**
14    J. Woodford                          **CIVIL RIGHTS ACT,**
                                          **42 U.S.C §§ 1983; 1985**
15    SUE HUBBART                          MADRID INJUNCTION
                                                        **(PR)**
16    L. RIANDA  ET al... ——→
17    (Enter the full name of the defendant(s) in this action)

18    *[All questions on this complaint form must be answered in order for your action to proceed..]*

19    I.    Exhaustion of Administrative Remedies

20          [**Note:** You must exhaust your administrative remedies before your claim can go

21          forward.  The court will dismiss any unexhausted claims.]

22          A.    Place of present confinement PELICAN BAY STATE Prison

23          B.    Is there a grievance procedure in this institution?

24                YES (X)      NO ( )

25          C.    Did you present the facts in your complaint for review through the grievance

26                procedure?

27                YES(X)      NO ( )

28          D.    If your answer is YES, list the appeal number and the date and result of the appeal at

COMPLAINT                        - 1 -

& is legally responsible for the reviewing, processing, granting or denying inmate appeals.

10. A.A. Read, M.H. Jensen & E. Allen are correctional officers for the CDC. At all relevant times mentioned here in, they held the rank of facility captain/appellate reviewers assigned to the CDC office in Sacramento, and were legally responsible for assisting N. Grannis.

11. Robbert A. Horel is the warden at PBSP. He is legally responsible for the opperation of PBSP & for the welfair of all inmates within that prison.

12. Bradbury is the associate warden at PBSP & is legally responsible for assisting the warden at PBSP in the opperation of the prison.

13. M. Silva is a correctional officer for CDC at all relevant times mentioned herein he held the rank of facility captain and committee member assigned to PBSP.

14. K. Nealy & Cox are correctional officers for CDC, at all relevant times mentioned here in held the rank of correctional counselor 2, & committee members assigned to PBSP.

15. Parker is a correctional officer for CDC, at all relevant times mentioned herein, he held the rank of correctional counselor 1 & committee member assigned to PBSP.

16. K. Brandon is a correctional officer for CDC, at all relevant times mentioned herein, he held the rank of captain of the institutional gang incoordinator (IgI) assigned to PBSP.

17. G. Wise is a correctional officer for CDC, at all relevant times mentioned herein, he held the rank of leivtenant of the igi assigned to PBSP.

18. J. Puente & C. Countess are correctional officers for CDC, at all relevant times mentioned herein, they held the rank of IgI assigned to PBSP.

19. Bacci, Harman & Basnett are correctional officers for CDC who at all relevant times mentioned herein were assigned to PBSP.

20. Johnson is a correctional officer for CDC, who at all relevant times mentioned herein, held the rank of captain assigned to the mail room at PBSP.

21. Harold is a correctional officer for CDC, who at all relevant times mentioned here in was assigned to the mail room at PBSP.

22. C. Wilber is a correctional officer for CDC, who at all relevant times mentioned here in held the rank of appeals coordinator assigned to Pelican Bay - who is legally responsible for processing inmate appeals in compliance with rules, regulations & applicable law.

22. KEN CLARK IS THE WARDEN AT "SATF." AT ALL RELEVANT TIMES MENTIONED HEREIN HE IS LEGALLY RESPONSIBLE FOR THE OPPERATION OF SATF & THE WELFARE OF ALL INMATES OF THAT PRISON.

23. J. HUTCHINS, & J. WARD ARE CHIEF DEPUTY WARDENS AT SATF. AT ALL RELEVANT TIMES MENTIONED HEREIN WERE LEGALLY RESPONSIBLE FOR ASSISTING THE WARDEN AT SATF WITH THE OPPERATION OF SATF, THEY WERE ALSO INSTITUTIONAL CLASSIFICATION COMMITTEE (ICC) MEMBERS.

24. T. WAN, & K. Allison ASSOCIATE WARDENS AT SATF, AT ALL RELEVANT TIMES MENTIONED HEREIN, THEY ARE LEGALLY RESPONSIBLE FOR ASSISTING THE WARDEN AT SATF WITH THE OPPERATION & WELFARE OF INMATES IN THAT PRISON.

25. D. OFTEDAHL, D. SELVY & R. FEIGEN ARE CORRECTIONAL OFFICERS FOR CDC, AT ALL RELEVANT TIMES THEY HELD THE RANK OF CLASS SERVICE REPRESENTATIVES (CSR) ASSIGNED TO SATF, THEY ARE LEGALLY RESPONSIBLE FOR APPROVING / DENYING THE ADSEG. / SHU ENDORCEMENTS, & OR REJECTIONS.

26. Q. MENDEZ, R. DIAZ, & J. REYNOSO, ARE CORRECTIONAL OFFICERS FOR CDC, AT ALL RELEVANT TIMES THEY HELD THE RANK OF FACILITY CAPTAIN AND ICC MEMBERS ASSIGNED TO SATF

27. D. GARCIA, K. D. ELLIOT, & J. LAWRENCE, ARE CORRECTIONAL OFFICERS FOR CDC, AT ALL RELEVANT TIMES, MENTIONED HEREIN, THEY HELD THE RANK OF CLASSIFICATIONS & PAROLE REPRESENTATIVES (C & PR) ASSISTANTS & ICC MEMBERS ASSIGNED TO SATF.

28. A. RIVERA IS A CORRECTIONAL OFFICER FOR CDC, AT ALL RELEVANT TIMES MENTIONED HEREIN HE HELD THE RANK OF CORRECTIONAL COUNSELOR 2, ICC MEMBER, AND APPEALS INVESTIGATOR ASSIGNED TO SATF.

29. T. MAY, B. PETERSON & D. HANSON ARE CORRECTIONAL OFFICERS AT SATF AT ALL RELEVANT TIMES MENTIONED HEREIN, THEY HELD THE RANK OF CORRECTIONAL COUNSELOR ONE, & ICC MEMBER ASSIGNED TO SATF

30. W. POOLE IS A CORRECTIONAL OFFICER FOR CDC, AT ALL RELEVANT TIMES MENTIONED HEREIN HE HELD THE RANK OF CORRECTIONAL COUNSEL 2 & ICC MEMBER ASSIGNED TO SATF.

31. R. HALL, R. GOMEZ, D. FISHER & SMITH ARE CORRECTIONAL OFFICERS FOR CDC. AT ALL RELEVANT TIMES MENTIONED HEREIN THEY HELD THE RANK OF APPEALS COORDINATORS, & APPEALS INVESTIGATORS ASSIGNED TO SATF, THEY ARE LEGALLY RESPONSIBLE FOR PROCESSING, INVESTIGATING & TAKING ACTION ON INMATE APPEALS IN ACCORDANCE WITH RULES REGULATIONS & APPLICABLE LAW.

32. M. HACKER IS A CORRECTIONAL OFFICER FOR CDC, AT ALL RELEVANT TIMES MENTIONED HERE IN HE HELD THE RANK OF LIEUTENANT, ACTING CAPTAIN & ICC MEMBER ASSIGNED TO SATF

33. LEE IS A CORRECTIONAL OFFICER FOR CDC, AT ALL RELEVANT TIMES MENTIONED HEREIN HE HELD THE RANK OF ACTING CAPTAIN ASSIGNED TO SATF.

5

34. A. QUINONEZ is a CORRECTIONAL OFFICER FOR CDC. AT All RELEVANT TIMES MENTIONED HERE IN HE HELD THE RANK OF LEIUTENANT FOR THE IGI ASSIGNED TO SATF.

35. A. PINEDA is a CORRECTIONAL OFFICER FOR CDC. AT All RELEVANT TIMES MENTIONED HEREIN HE, HELD THE RANK OF LIEUTENANT OF THE INVESTIGATIVE SERVISES UNIT ASSIGNED TO SATF.

36. C.W. HOLMES is a CORRECTIONAL OFFICER FOR CDC. AT All RELEVANT TIMES MENTIONED HEREIN HE, HELD THE RANK OF IGI ASSIGNED TO SATF

37. J. PEREZ & R. ROBERSON ARE CORRECTIONAL OFFICERS FOR CDC. AT All RELEVANT TIMES MENTIONED HEREIN THEY HELD THE RANK OF LIEUTENANTS ASSIGNED TO SATF.

38. C. MUÑOZ IS A CORRECTIONAL OFFICER FOR CDC. AT All RELEVANT TIMES MENTIONED HEREIN ME HELD THE RANK OF SERGEANT ASSIGNED TO SATF.

39. D. DALEY, R. PEREZ, PAZ, C. MORSE, OMOS & CLAUSINGS ARE CORRECTIONAL OFFICERS FOR CDC. AT All RELEVANT TIMES MENTIONED HEREIN WERE ASSIGNED TO SATF.

40. EACH defendant is SUED individually & IN HIS OR HER OFFICIAL CAPASITY. DEFENDANTS AT All TIMES MENTIONED HEREIN ACTED UNDER THE COLOR OF STATE LAW.

" " "
" " " "
" " "

## III. FACTS

FACTS PERTAINING TO PLAINTIFFS RELEASE FROM THE SHU AND RESEGRAGATION

1. AFTER PLAINTIFF SUCCESSFULLY LITIGATED MANRIQUEZ V. THE DEPARTAMENTAL REVIEW BOARD NO. HCPB04-5241(DEL NORTE SUPERIOR 2005), DEFENDANTS HAD PLAINTIFF SIGN A CONTRACT AS PRECONDITIONS OF RELEASE. (EX C. P-112)

2. PLAINTIFF WAS INFORMED AND BELIEVED THAT THE CONTRACT WAS A "BINDING AGREEMENT", BETWEEN HE, AND DEFENDANTS S. HUBBART, SPEER & RIANDA WHICH PROVIDED THAT PLAINTIFF WOULD BE ALLOWED TO REMAIN IN THE PRISON GENERAL POPULATION ("G.P"), UNLESS HE BREACHED THE TERMS OF THE AGREEMENT BY PARTICIPATING IN "GANG ACTIVITY"[1], ASSOCIATING WITH "GANG MEMBERS"[2] - OR ENGAGING IN THE FOLLOWING ACTS:

(A) SELF ADMISSION OF GANG INVOLVEMENT/ASSOCIATION
(B) ANY NEW TATTOOS OR BODY MARKINGS DEEMED TO BE GANG RELATED
(C) USE OF HAND SIGNS, DISTINCTIVE CLOTHING, GRAFFITI, ETC, WHICH HAVE BEEN IDENTIFIED BY GANG CORDINATORS/INVESTIGATORS AS BEING USED BY & DISTINCTIVE TO SPECIFIC GANGS
(D) POSSESSION OF ANY MATERIAL OR DOCUMENT EVIDENCING GANG AFFILIATION SUCH AS MEMBERSHIP OR ENEMY LISTS, CONSTITUTIONS, ORGINIZATIONAL STRUCTURES, CODES, TRAINING MATERIAL, ETC...OF SPECIFIC GANGS.
(E) POSSESSION OF INDIVIDUAL OR GROUP PHOTOGRAPHS WITH GANG CONNOTATIONS, SUCH AS THOSE WHICH INCLUDE INSIGNIA, SYMBOLS, OR VALIDATED GANG AFFILIATES.
(F) DOCUMENTATION BY STAFF OF VISUAL OR AUDIABLE OBSERVATIONS, WHICH REASONABLY INDICATE AFFILIATION WITH GANG ACTIVITY OR ASSOCIATION WITH GANG MEMBERS AS OUTLINED IN [CCR] TIT.15.§3378(c).
(G) CONFIDENTIAL INFORMATION THAT MEETS THE CRITERIA SET FORTH IN THE [CCR] 3321, THAT EVIDENCES GANG ACTIVITY OR ASSOCIATION WITH GANG MEMBERS.
(H) A FINDING OF GUILTY REGARDING ANY SERIOUS RULE VIOLATION, WHETHER GANG RELATED OR NOT THAT MERITS A NEW SHU TERM UNDER THE CALIFORNIA CODE OF REGULATIONS, TITLE 15 SECTION 3341. S(c)."-EX.C. p 112]

3. PLAINTIFFS DECISION TO SIGN THIS CONTRACT WAS NOT KNOWINGLY NOR INTELLIGENTLY MADE GIVEN THAT (i) IT WAS MADE UNDER DURESS, AS DOTSON, AND DEFENDANTS INFORMED PLAINTIFF HE COULD NOT BE RELEASED UNLESS HE AGREED TO THESE TERMS (ii) THE WAIVER WAS UNCOUNSELED (iii) DEFENDANTS FAILED TO INFORM PLAINTIFF OF HIS RIGHTS PRIOR TO ENTERING INTO THIS AGREEMENT, NAMELY THAT SUCH A REQUIREMENT, CONTRACT, POLICY ET SEQ...IS INVALID, UNENFORCIBLE & UNDERGROUND, BECAUSE IT HAS NOT BEEN LEGALLY ADOPTED AS A REGULATION IN COMPLIANCE WITH THE ADMINISTRATIVE PROCEDURAL ACT (APA)

1. THE CALIFORNIA CODE OF REGULATIONS TITLE 15 ("CCR") 3000, 3023, 3378(c)(8)(2) DEFINES "GANG ACTIVITY" AS INMATES AND PAROLEES SHALL NOT KNOWINGLY PROMOTE FURTHER, OR ASSIST ANY GANG...[WITH] PLANNING ORGINIZING, THREATENING, FINANCING, SOLICITING, OR COMMITTING UNLAWFUL ACTS OR, ACTS OF MISCONDUCT CLASSIFIED AS SERIOUS PURSUANT TO SECTION 3315" Id. DEFENDANTS HAVE STIPULATED THAT THIS IS THE DEFINITION OF "GANG ACTIVITY" SEE CASTILLO V. ALEMEDA NO. C-94-2847 MJJ (N.D. CAL. 2005)

2. "A MEMBER IS AN INMATE/PAROLEE WHO HAS BEEN ACCEPTED INTO MEMBERSHIP BY THE GANG, THIS IDENTIFICATION REQUIRES AT LEAST THREE INDEPENDANT SOURCE ITEMS" CCR 3378(c)(3) AN "ASSOCIATE" IS DEFINED IN CCR 3378(c)(4)

PREPARED BY
DATE

WHICH IS MANDATED SEE CAL. PEN. CODE 5058(a): GOV. CODE 11340.5; 11342(g)

4. DEFENDANTS HUBBERT, RIANDA & SPEER RELEASED PLAINTIFF FROM THE SHU ON NOV. 15-05, AND TRANSFERED HIM TO SATF, AS IS MANDATED BY CCR 3341.5(c)(5) DEFENDANTS INSTRUCTED QUINONEZ, HOLMES ET AL... TO MONITOR PLAINTIFF FOR A PERIOD NOT TO EXCEED 12 MONTHS Ibid. (EX A. p 70-72). AFTER 12 MONTHS DEFENDANTS CLARK, HUTCHINS, WAN, ALLISON, WARD, DIAZ, MENDEZ, PETERSON, HANSON, MAY, RIVERA, REYNOSO. D. GARCIA. K.D ELLIOT & LAURANCE, WHERE REQUIRED TO CONDUCT AN ANUAL ICC HEARING, ORDER THAT ALL INVESTIGATIONS CEASE, & PLACE PLAINTIFF ON A TRANSFER LIST Ibid. DEFENDANTS KNEW THESE REQUIREMENTS WERE TO BE MET ON NOV. 2006 (EX A. p 73)

5. DEFENDANTS EXCEEDED THE ONE YEAR MAXIMUM INVESTIGATION PERIOD AND DID NOT HOLD THE ANUAL ICC REVIEW. INSTEAD DEFENDANTS VIOLATED THAT LIBERTY INTEREST AND DUE PROCESS, BECAUSE ON JAN. 9-07 TWO OFFICERS DRAGGED PLAINTIFF TO THE PROGRAM OFFICE, WHEN PLAINTIFF INQUIRED WHAT WAS GOING ON THEY STATED "WE DONT KNOW, QUINONEZ CALLED AND SAID GO GET MANRIQUEZ"

6. PLAINTIFF WAS TRANSFERED TO ASU, AND WAS DEPRIVED OF HIS RIGHTS TO PRESENT HIS VIEWS TO THE DECISION MAKER (QUINONEZ) PRIOR TO BEING TRANSFERED TO ASU. PLAINTIFF WAS ALSO DEPRIVED BY QUINONEZ HIS DUE PROCESS RIGHTS TO ADIQUATE NOTICE OF CHARGES. PLAINTIFF WAS SIMPLY ISSUED A "114 ORDER" WHICH CONTAINED VAGUE, & OVERBROAD INFORMATION - IT SIMPLY STATED PLAINTIFF WAS BEING RETAINED FOR "INVESTIGATIONS" WITHOUT "NOTICE" AS TO WHAT THE "INVESTIGATION WAS FOR" TO PREPAIR & PRESENT A DEFENSE (EX B p 82).

7. PLAINTIFF WAS SUBSEQUENTLY INTERVIEWED BY CAPTAIN DIAZ, WHO ALSO VIOLATED PLAINTIFFS RIGHTS TO DUE PROCESS AS HE REFUSED TO PROVIDE A NOTICE OF CHARGES, NOR AN OPPORTUNITY TO BE HEARD PRIOR TO AFFIRMING THE SEGRAGATION ORDER INSTEAD DIAZ STATED "YOU READ THE LOCK UP ORDER ITS PRETTY MUCH VAGUE - IT SAYS "INVESTIGATIONS" BUT THATS ALL I CAN TELL YOU."

8. PLAINTIFF INFORMED DEFENDANT DIAZ, OF HIS RIGHTS TO A "NOTICE" OF CHARGES, AN OPPORTUNITY TO PRESENT A DEFENSE AND HIS NEW RIGHTS UNDER CASTILLO V. ALEMEIDA - C-94-2847 MJJ[3]

9. DEFENDANT DIAZ INDICATED, THEY DID NOT HAVE TO PROVIDE PLAINTIFF WITH ANY OF THIS, BECAUSE PLAINTIFF "WAS NOT BEING VALIDATED, WE CAN PLACE YOU IN THE HOLE TO INVESTIGATE YOU

3. THE CASTILLO CONSENT DECREE (EX B. p 80) CREATES A LIBERTY INTEREST GIVEN ITS TERMS WERE PROMULGATED INTO THE CCR AT 3378 ET SEQ..

IF WE WANT TO "PLAINTIFF INFORMED DIAZ, HE STILL HAD A RIGHT TO "A NOTICE" AND "REBUTAL", DIAZ REFUSED TO COMMENT FURTHER ON THIS ISSUE, AND IMPLICIEDLY ADMITTED HE VIOLATED PLAINTIFFS RIGHTS THUS FEARED LEGAL ACTION, BY STATING "YOU'RE WELL READ, AND I'M NOT GOING TO DEBATE OR TALK TO YOU ABOUT THIS ANYMORE, BECAUSE I KNOW YOU'RE GOING TO SUE US, AND TEN YEARS FROM NOW YOU'RE GONNA USE MY WORDS AGAINST ME".

10. DIAZ NEXT INQUIRED IF PLAINTIFF WANTED TO PRESENT A DEFENSE, AND WANTED AN INVESTIGATIVE EMPLOYEE (I.E) FOR ICC, PLAINTIFF RESPONDED "YES THATS WHY THE LAW MANDATES THAT I FIRST BE GIVEN NOTICE OF WHAT I'M ACCUSED OF THIS WAY I CAN PRESENT A DEFENSE", PLAINTIFF REMINED HIM THAT THE CASTILLO SUIT WAS DERIVED IN PART BASED ON CDC'S USE OF VAGUE & OVERBROAD SEGRAGATION POLICIES, DIAZ AGAIN REFUSED TO PROVIDE PLAINTIFF "NOTICE" NOR AN OPPORTUNITY TO PRESENT A DEFENSE, DEFENDANT HOLMES DEMONSTRATED HIS LACK OF TRAINING BY ADMITTING THAT HES NEVER EVEN READ THE CASTILLO SETTLEMENT. DIAZ THEN AFFIRMED THE SEGRAGATION ORDER WITHOUT PROVIDING PLAINTIFF A NOTICE OF CHARGES NOR AN OPPORTUNITY TO DEFEND.

11. ON 1-17-07 PLAINTIFF APPEARED BEFORE ICC, DEFENDANTS, WARD, GARCIA, DIAZ & QUINONEZ, WHO VIOLATED PLAINTIFFS RIGHTS TO DUE PROCESS BECAUSE THEY REFUSED TO PROVIDE PLAINTIFF A NOTICE OF CHARGES NOR BASES FOR THE RETENTION, 24 HOURS BEFORE THE HEARING, TO PREPAIR A DEFENSE. AS OF THAT DATE THE NOTICE PROVIDED REMAINED VAGUE - STATING "INVESTIGATIONS"

12. PLAINTIFF REQUESTED A NOTICE OF CHARGES, AND A COPY OF ALL EVIDENCE BEING USED TO RETAIN HIM, DEFENDANTS WARD, GARCIA, & DIAZ INFORMED PLAINTIFF THAT THEY WERE RETAINING PLAINTIFF IN ASU FOR 180 DAYS TO ALLOW QUINONEZ TO INVESTIGATE, AND SEE IF HE COULD FIND ANY EVIDENCE" TO REVALIDATE PLAINTIFF - THIS WAS THE FIRST TIME PLAINTIFF RECEIVED A NOTICE (AT ICC).

13. PLAINTIFF OBJECTED ON THE GROUNDS THAT THREE YEARS OF CONSEQUTIVE INVESTIGATIONS BY THE IGI UNITS AT PBSP. CORCORAN SHU, & SATF CONFIRMED PLAINTIFF WAS INACTIVE (EXHIBIT A 70-72) THUS A RETENTION FOR FURTHER INVESTIGATIONS IS ILLEGAL GIVEN (i) DEFENDANTS HAD ALREADY EXCEEDED THE 12 MONTH STATUTE OF LIMITS IN CCR 3341.5(c)(5).(ii) DEFENDANTS WERE VIOLATING CCR 3341.5(c)(5) WHICH MANDATES THE INVESTIGATIONS TO OCCURE WHILE PLAINTIFF IS ON THE G.P. (iii) DEFENDANTS WERE VIOLATING THIS COURTS MADRID V. GOMEZ 889 F.SUPP. 1146 (N.D. CAL 1995) INJUNCTION & CCR §§ 3341.5(c)(x)(A); 3378(c)(x)(2) WHICH PROHIBITS PLAINTIFF RETENTION UNLESS

9

HE'S "CURRENTLY ACTIVE"(iv) DEFENDANTS ALSO VIOLATED PLAINTIFFS LIBERTY INTERESTS IN CCR 3335(a): 3336: 3339: 3341.5(c)(3) WHICH MANDATED PLAINTIFFS IMMEDIATE RELEASE GIVEN DEFENDANTS HAD NO EVIDENCE PLAINTIFF WAS A "SECURITY THREAT" OR "CURRENTLY ACTIVE", BY CONTRAST THE RETENTION WAS FOR "INVESTIGATIONS" TO "FIND SUCH EVIDENCE" (v) BECAUSE DEFENDANTS ADMITTED THEY HAD NO EVIDENCE OF PLAINTIFF BEING "ACTIVE" NOR "A SECURITY THREAT" THEN THE RETENTION VIOLATED DUE PROCESS BECAUSE IT WAS BASED ON INSUFFICIENT EVIDENCE-& WAS A PRETEXT FOR SOLITARY CONFINEMENT. ADDITIONALLY IT VIOLATED PLAINTIFFS LIBERTY INTEREST IN CCR 3378(E) WHICH MANDATED -THAT DEFENDANTS AT LEAST HAVE ONE ITEM EVIDENCING GANG ACTIVITY FIRST PRIOR TO RESEGRAGATION.

14. QUINONEZ, INTERJECTED & STATED THAT THE CASTILLO PROVISIONS WERE INAPPLICABLE TO ANY ONE EXCEPT "INMATE CASTILLO" [BUT SEE FOOT NOTE 3 ANTE] DEFENDANTS, WARD, DIAZ, GARCIA & OF TEDAHAL SENTENCED PLAINTIFF TO 180 DAYS IN ASU (EX B-88) WHEN PLAINTIFF REQUEST A COPY OF THE EVIDENCE USED TO RETAIN HIM IN AdSeg, QUINONEZ STATED "YOU'LL GET IT WHEN I'm DONE WITH MY INVESTIGATION"

15. PLAINTIFF SUBMITTED AN APPEAL CHALLENGING THE SEGRAGATION ORDER (EX B, 77-82) AND ANOTHER APPEAL CHALLENGING THE COMMITTEES DECISION (EX B. p 84-88) THESE APPEALS WERE GIVEN TO DIAZ FOR PROCESSING[4] PLAINTIFF IS INFORMED & BASED ON INFORMATION BELIEVES THAT DIAZ THROUGH AWAY BOTH APPEALS. PLAINTIFF ASSERTS THAT THIS IS THE NORM AT SATF. PLAINTIFF ALLEGES THAT BECAUSE DIAZ THROUGH AWAY THESE APPEALS HE VIOLATED PLAINTIFFS 1ST AMENDMENT RIGHT TO PETITION FOR GRIEVIANCE & HIS LIBERTY INTEREST TO APPEAL ADVERSE ACTIONS CCR 3084.1

16. BASED ON INFORMATION & BELIEF PLAINTIFF ASSERTS DIAZ THROUGH AWAY THESE APPEALS TO PREVENT ANY LITIGATION & TO DEPRIVE PLAINTIFFS RIGHTS TO COURT ACCESS.

17. THREE TO FOUR WEEKS AFTER ICC, QUINONEZ & HOLMES, WENT TO THE ASU & HAD PLAINTIFF REMOVED FROM HIS CELL, UNDER THE PRETEXT THAT A SERGEANT WANTED TO SPEAK TO PLAINTIFF ABOUT AN APPEAL. QUINONEZ & HOLMES TOLD PLAINTIFF THAT THEY ARE NOT RESPONSIBLE FOR

4. PLAINTIFF PERSONALLY HANDED ONE APPEAL TO DIAZ AT ICC- AND LATER PROVIDED HIM ANOTHER HAND WRITTEN COPY OF IT- WHEN HE SUBMITTED THE NEXT APPEAL -PLAINTIFF SUBSEQUENTLY REQUESTED INMATE DOYLE TO ASK DIAZ ABOUT HIS APPEALS- DIAZ TOLD DOYLE "THATS BETWEEN MANRIQUEZ & THE ADMINISTRATION"

SEGRAGATING PLAINTIFF & ADMITTED THAT THEY HAD NO EVIDENCE FORMING THE BASES FOR THIS RETENTION BUT THAT "SOMEONE" RAILROADED HIM INTO "GOING AFTER PLAINTIFF"- THAT THE REASON PLAINTIFF WAS SEGRAGATED WAS BECAUSE "SOMEONE" DID NOT WANT PLAINTIFF ON C-YARD, THUS ESTABLISHING PLAINTIFFS SEGRAGATION WAS ILLEGAL, & BASED ON NO EVIDENCE.

FACTS PERTAINING TO EXCESSIVE FORCE AND CRUEL AND UNUSUAL CONDITIONS OF CONFINEMENT

18. WHILE PLAINTIFF WAS BEING ILLEGALLY & UNCONSTITUTIONALLY RETAINED IN ASU BY DEFENDANTS (SEE PARA 1-17 ANTE), DEFENDANTS ALLEGED THAT ON FEB. 28-07 PLAINTIFF REFUSED TO RELINQUISH HIS PLASTIC FOOD TRAY WHILE SINGLE CELLED IN ASU. & COVERED UP HIS DOOR & REFUSED TO CUFF UP.

19. DEFENDANTS HUTCHINS AND REYNOSO ORDERED THEIR SUBORDINATES TO PHYSICALLY HARM PLAINTIFF BY CELL EXTRACTING HIM, DISPITE THE FACT THAT PLAINTIFF COULD NOT HAVE CAUSED HARM TO ANYONE.

20. AT THE DIRECTION OF HUTCHINS/REYNOSO, AND UNDER THE SUPERVISION OF DEFENDANT HACKER & ROBERSON, DEFENDANTS MUNOZ, CLAUSINGS & OMOS, INSERTED A NOSILE OF A HIGH POWERED DANGEROUS CHEMECAL AGENT CALLED "X10 BRD" INTO PLAINTIFFS CELL, - THEY THEN BATHED PLAINTIFF AND HIS ENTIRE CELL WITH THE CHEMICAL AGENT. PLAINTIFF INSTANTLY BEGAN TO CHOKE & EXPERIANCE UNBEARABLE, LUNG & CHEST PAIN. HE EXPERIANCED AN OVERWHELMING BURNING SENSATION IN HIS EYES SKIN & GENITALS. PLAINTIFF IMMEDIATELY UNCOVERED THE DOORS WINDOWS, & VOLUNARILY REMOVED HIS CLOTHING SO THAT HE COULD BE RESTRAINED & REMOVED FROM HIS CELL QUICKLY- SO AS TO ALIVIATE PAIN, & SUFFERING.

21. HOWEVER DISPITE, THE FACT THAT ORDER WAS RESTORED- AND PLAINTIFF OBVIASLY POSED NO THREAT MORSE - CLAUSINGS, OMOS, MUÑOS AND DAJEY REFUSED TO REMOVE PLAINTIFF FRUM THE CELL IN ORDER TO PUNISH HIM BY PROLONGING THE PAIN. - THESE OFFICERS SADISTICLY TOOK THEIR TIME BY REQUESTING PLAINTIFF TO FIRST HAND THEM THE "PLASTIC FOOD TRAY" WHICH WAS IN PLAIN SIGHT. DISPITE SUFFERING PAIN & CHOCKING PLAINTIFF MANAGED TO COMPLY AND OFFERED TO CUFF UP, IN ORDER TO BE REMOVED FROM THE CELL.

22. HOWEVER THESE DEFENDANTS REFUSED TO REMOVE PLAINTIFF FROM HIS CELL, INSTEAD THEY TOOK THEIR TIME/MALICIOUSLY MADE LIGHT OF PLAINTIFFS PAIN & SUFFERING; FOR INSTANCE, ORDER WAS RESTORED- THE WINDOWS WERE UNCOVERED, PLAINTIFF GAVE THEM THE TRAY, HE WAS

11

<u>UNCLOTHED</u>, & OFFERING TO CUFF UP, HOWEVER, THEY INSISTED ON SEEING CERTAIN PARTS OF PLAINTIFFS ANATOMY [GENITALS, UNDERARMS, FEET ET SEQ] <u>SLOWLY</u>, WHICH UNNECESSARALY PROLONGED PLAINTIFFS CHOKING & UNBEARABLE PAIN.

23. CLAUSINGS, MUÑOS, OMOS & DALEY, THEN SADISTICLY & MALICIOUSLY DEMANDED THAT PLAINTIFF, SHOW THEM CERTAIN BODY PARTS <u>SLOWLY</u> & IN AN UNNECESSAY ORDER (WHICH IS NEVER DONE) FOR INSTANCE! WHEN THEY ASKED TO SEE THE BOTTOM OF PLAINTIFFS FEET, PLAINTIFF PICKED UP HIS LEFT FOOT-& DALEY STATED "NO I SAID RIGHT FOOT NOT LEFT FOOT" THIS MADE NO DIFFERENCE & SERVED NO PENOLOGICAL PURPOSE BUT TO PROLONG UNNECESSARY PAIN.

24 ONCE DALEY FINALLY APPLIED RESTRAINTS ON PLAINTIFF, INSTEAD OF REMOVING PLAINTIFF FROM HIS CELL GIVEN PLAINTIFF WAS IN PAIN -& POSED NO THREAT DEFENDANTS CONTINUED TO PROLONG PLAINTIFFS PAIN BY WAITING UNTIL PEREZ PUT LEG RESTRAINTS ON PLAINTIFF TO FINALLY REMOVE PLAINTIFF FROM THE CELL.

25. ONCE REMOVED FROM THE CELL PLAINTIFF WAS TURNED OVER TO THE DECONTAMINATION TEEM, DEFENDANTS PAZ,& MORSE WHO SOLY RAN WATER ON PLAINTIFF, HOWEVER INSTEAD OF DECONTAMINATING THE CELL, ALL DEFENDANTS SIMPLY PLACED PLAINTIFF BACK INTO <u>THE SAME "CHEMICALLY DRENCHED" CELL</u> WITHIN MINUTES, WHICH CAUSED PLAINTIFF TO CHOKE & EXPERIANCE REPEATED & EXRUCIATING BURNING & PAIN, ALL OVER HIS BODY.

26. PAZ, MORSE, CLAUSINGS, MUÑOS, DALEY & OMOS, MADE NO EFFORT TO DECONTAMINATE THE CELL PRIOR TO RETURNING PLAINTIFF TO IT, NOR DID THEIR SUPERVISORS [HACKER, ROBERSON, RAYNOSO, HUTCHINS, & MUÑOS] ORDER THAT THE CELL FIRST BE DECONTAMINATED. BY CONTRAST THEY ORDERED THE INFLICTION OF FURTHER PAIN, BY ORDERING THAT PLAINTIFF BE PLACED BACK IN THE CELL - WHICH CAUSED THE INFLICTION OF UNWANTED & UNNECESSARY PAIN - BECAUSE THE CHEMICALS WERE ALL OVER THE BUNKS, FLOOR, WALLS & ROOF, & WERE DRIPPING ALL OVER PLAINTIFF - AND SUPERVISORS ORDERED THAT THAT LIFES BASIC NECESSITIES [TOOTH PAIST TOOTHBRUSH, SOAP TOILET PAPER, CLOTHING, BEDDING & THE MATTRESS] BE REMOVED FROM THE CELL.

27. MUÑOZ, HACKER, HUTCHINS, ROBERSON & REYNOSO, SUBJECTED PLAINTIFF TO CRUEL AND HAZZARDOUS LIVING CONDITIONS WHICH EXACERBATED PLAINTIFFS, MENTAL & PHYSICAL PAIN. - THE CELL WAS DRENCHED WITH THE DANGEROUS CHEMICAL AGENT, IT WAS ALL OVER THE WALLS, BUNKS, FLOOR AND DRIPPING ON PLAINTIFF FROM THE ROOF. BECAUSE DEFFENDANTS DID NOT CLEAN NOR DECONTAMINATE THE CELL AND REFUSED TO PRIVIDE PLAINTIFF WITH CLEANING SUPPLIES NOR SHOES & SOCKS, PLAINTIFF HAD TO WALK BARE FOOT - ON THE CHEMICAL AGENT WHICH CAUSED AN UNBEARABLE BURNING SENSATION ON HIS

FEET.[5] PLAINTIFF ALSO HAD TO LIE DOWN ON THE DANGEROUS CHEMICAL AGENT WHICH CAUSED AN UNBEARBLE BURNING SENSATION ON HIS BODY, PLAINTIFFS UNDERWEAR WERE DRENCHED WITH THE CHEMICAL AGENT, AND YET DEFENDANTS REFUSED TO PROVIDE PLAINTIFF WITH A CHANGE OF UNDERWEAR - THUS PLAINTIFF HAD TO ENDURE AN UNBEARABLE BURNING SENSATION TO HIS GENITALS! SUBJECTING PLAINTIFF TO THESE UNNECESSARY, HAZZEARDOUS LIVING CONDITIONS SERVED NO PURPOSE EXCEPT TO INFLICT PUNISHMENT & PAIN.

28. ALL DEFENDANTS WERE DELIBERATELY INDIFFERENT TO PLAINTIFFS BASIC NEED TO LIFES NECESSITIES, WHICH WERE ESSENTIAL TO ALLIVIATE PAIN: PLAINTIFF WAS SUFFERING PAIN - THUS HE REQUESTED A CHANGE OF UNDERWEAR - SO HE WOULD NOT HAVE TO WEAR THE CONTAMINATED ONES, SOME HYGENE SO HE COULD WASH THE PAINFUL CHEMICALS OFF OF HIS BODY, SOME SANITATION SUPPLIES, SO THAT HE COULD CLEAN & SANITIZE THE CELL FROM THE AGENT, AND A MATTRESS SHEETS & A BLANKET SO PLAINTIFF COULD HAVE SOMETHING TO SLEEP ON - AND SOME TOILET PAPER. ALL DEFENDANTS WERE DELIBERATELY INDIFFERENT TO PLAINTIFFS MENTAL, EMOTIONAL & PHYSICAL PAIN & SUFFERING - & TO HIS BASIC NEEDS TO LIFES NECESSITIES, BECAUSE THEY DEPRIVE PLAINTIFF OF THESE ITEMS AS PUNISHMENT ACCORDING TO RAYNOSO, ROBERSON, HACKER & HUCHINS POLICY OF NOT PROVIDING "CELL EXTRACTED INMATES" ANY NECESSITIES ON THE "FIRST NIGHT" - BUT THEIR AFTER PROVIDING THEM ONE ITEM AT A TIME THROUGHOUT A TEN DAY SPAN!

29. BASED ON DEFENDANTS DELIBERATE INDIFFERENCE PLAINTIFF WAS INFLICTED WITH PROLONGED MENTAL, EMOTIONAL & PHYSICAL PAIN & SUFFERING, AS HE WAS FORCED TO TRY TO SLEEP IN A COLD EMPTY CELL, DRENCHED WITH A DANGEROUS & PAINFUL CHEMICAL AGENT, WHICH CAUSED HIM TO CONSTENTLY COUGH CHOKE & BURN, EXTERNALLY & INTERNALLY, PLAINTIFF HAD TO WEAR THE CHEMICALLY DRENCHED UNDERWEAR, WITH CAUSED BURNING TO HIS GENITALS - HE HAD NO BLANKETS, MATRESS, TOWELS, SHEETS, SOCKS, SHOES, HYGENE & NO CLEANING SUPPLYS - & HE LIVED UNDER MOST OF THESE CONDITIONS FOR TEN DAYS,

FACTS PERTAINING TO EXCESSIVE FORCE, VALIDATION & CONSPIRACY TO HAVE PLAINTIFF MURDERED OR HARMED.

30. ON MAR 7-07 (DAYS AFTER THE CELL EXTRACTION) DEFENDANTS QUINONEZ & HOLMES AGAIN HAD

'' '' ''

'' '' ''

5. THE CHEMICAL AGENT WHICH WAS FALLING FROM THE ROOF OF THE CELL WAS FALLING ON PLAINTIFF AND CAUSING HIM TO COUGH & CHOKE FROM INHALING IT - IT WAS BURNING PLAINTIFF & CAUSING HIM TO SUFFER UNBEARABLE MENTAL EMOTIONAL AND PHYSICAL ANGUISH.

13

PLAINTIFF PULLED OUT OF HIS CELL UNDER THE GUISE THAT A SERGEANT WANTED TO SPEAK TO HIM ABOUT A 602 APPEAL. HOWEVER ONCE PLAINTIFF SEEN IT WAS QUINONEZ & HOLMES, HE REQUESTED TO GO BACK TO HIS CELL, BUT WAS INSTEAD FORCED INTO A ROOM & TOLD BY QUINONEZ "THIS TIME ITS SERIOUS THIS TIME ITS ME" PLAINTIFF WAS INFORMED HE WAS BEING REVALIDATED BASED ON TWO ITEMS!

"(a)" A CONFIDENTIAL MEMORANDUM DATED 12-26-06, INDICATED YOUR NAME & CDC NUMBER WERE IDENTIFIED WITHIN THE ADDRESS BOOK OF INMATE SANSONE, J95696, VALIDATED MEXICAN MAFIA ASSOCIATE. SANSONES POSSESSION OF YOUR NAME & NUMBER INDICATES YOU GAVE YOUR PERSONAL INFORMATION TO SANSONE IN ORDER TO KEEP IN CONTACT UTILIZING THE UNITED STATES POSTAL SYSTEM AND INMATE LOCATORS (EX, E p143)

(b) A CONFIDENTIAL MEMORANDUM DATED 2-9-07 INDICATED YOU SENT CORRESPONDENCE TO A VALIDATED MEXICAN MAFIA (EME) ASSOCIATE, INMATE OCOTRENA D67758, SEEKING PERMISSION FROM EME MEMBERS GUZMAN C-41587 & PADILLA D-51019 TO CONTROL FACILITY "C" AT SATF/SP ONCE ESTABLISHED YOU WOULD THEN CONTROL ALL EME RELATED ACTIVITIES ON BEHALF OF THE AFOREMENTIONED EME MEMBERS (EX E. P 144)

31. QUINONEZ STATED (TO PLAINTIFF) THAT THE PROVISIONS CREATED BY THE CASTILLO SETTLEMENT [CCR 3378 ET SEQ] WERE INAPPLICABLE PLAINTIFF ASKED QUINONEZ FOR AS MUCH INFORMATION AS POSSIBLE 24 HOURS BEFORE THE VALIDATION HEARING TO PREPAIR A DEFENSE PURSUANT TO CCR 3378C(X6)(A)-(E)

32. QUINONEZ & HOLMES DEPRIVED PLAINTIFF OF THIS RIGHT AS THEY TOLD PLAINTIFF THEY WILL DISCLOSE AS MUCH INFORMATION TO HIM AT THE HEARING.

33. PLAINTIFF PROTESTED THAT HE WAS ENTITLED TO AS MUCH INFORMATION TO PREPAIR A DEFENSE BEFORE THE HEARING. DEFENDANT HOLMES CONTINUED TO RUDELY INTERJECT - AT WHICH POINT PLAINTIFF TOLD HIM HE WAS NOT TALKING TO HIM - THAT THIS WAS BETWEEN HIM (PLAINTIFF) & QUINONEZ

34. AT THAT POINT HOLMES VIOLATED PLAINTIFFS 8TH AMENDMENT RIGHTS, BECAUSE HE GOT UP GRABBED PLAINTIFF BY HIS HAND CUFFS - SQUEEZED THEM - WHICH CAUSED PLAINTIFF EXTREME PAIN - HOLMES THEN PROCEEDED TO ASSULT PLAINTIFF BY SLAMING HIM UP AGAINST SEVERAL WALLS. AT ONE POINT AGAINST A METAL SHELFF - ONCE AT THE METAL SHELF HOLMES BEGAN PRESSING PLAINTIFF AGAINST IT - WHICH CAUSED PLAINTIFF EXTREME & UNNECESSARY PAIN.

35. SINCE QUINONEZ WAS ALLOWING THE ASSULT TO CONTINUE, & HE WAS DOING NOTHING TO STOP THE CONSTITUTIONAL VIOLATIONS & INFLICTION OF PAIN - PLAINTIFF YELLED "GET OFF ME YOU STUPID WHITE BOY." BUT SOLY TO ATTRACT ATTENTION, BECAUSE HOLMES CONTINUED HIS MALICIOUS ASSULT (WITHOUT

14

INTERVENTION FROM QUINONEZ) PLAINTIFF WAS FORCED TO MAKE A SCENE, WHICH FINALLY CAUSED QUINONEZ TO ACT, GIVEN THAT OTHER OFFICERS STARTED TO RUSH OVER. QUINONEZ & JANE DOE PULLED HOLMES OFF OF PLAINTIFF & ESCORTED PLAINTIFF BACK TO HIS CELL

36. ON MAR 9-07 PLAINTIFF ATTENDED THE VALIDATION HEARING AND PROVIDED HIS DEFENSE IN WRITING (EXF. 158-67 WHICH IS INCORPORATED AS FULLY SET FORTH HERETO) PLAINTIFFS VIEWS WERE BASED ON WHAT HE KNEW AT THAT POINT, GIVEN THAT QUINONEZ & HOLMES FAILED TO PROVIDE HIM WITH AS MUCH INFORMATION AS POSSIBLE TO PRESENT A DEFENSE AS IS REQUIRED CCR 3378(C)(6)(A)-(D)

37. PLAINTIFF WAS ALLOWED TO SEE THE PHONE BOOK WHICH HAD PLAINTIFFS NAME IN IT. HOLMES ADMITTED THAT HE'S SEEN PLAINTIFFS PHONE BOOK & THAT SANSONES NAME IS NOT IN IT, THAT HE HAD NO EVIDENCE, THAT PLAINTIFF WAS EVER HOUSED AROUND OR NEW SANSONE, DEFENDANTS ADMIT THEY DO NOT KNOW WHO SANSONE IS, THEY HAD NO KNOWLAGE OF HOW LONG SANSONE HAD PLAINTIFFS INFORMATION, WHICH IS REQUIRED CCR 3341.5(C)(5); 3378(C)(8)(2). 3378(C)(8)(H) NOR DID THEY KNOW WHERE SANSONE GOT THE INFORMATION FROM, IT WAS FOUND IN TAHATCHAPPI, A PRISON PLAINTIFF HAS NEVER BEEN IN.

38. AS FOR ITEM 2   PLAINTIFF DENIES HE WROTE THIS LETTER, PLAINTIFF WAS ALLOWED TO READ MOST OF THE LETTER PLAINTIFF ASSERTS THAT VIOLATED PEN CODES 115(G)(C)(1)(2); 118(G); 134; 182 ET SEQ... BY SUBMITTING & UTILIZING A FORGED, ALTERED & FALSE DOCUMENT: THE DOCUMENT IS ALTERED BECAUSE EITHER QUINONEZ, HOLMES, OR THEIR INFORMANT ADDED PLAINTIFFS NAME TO THE LETTER AND FORGED HIS SIGNATURE AT THE END BY WRITING "DANNY" IN PRINT, USING A DIFFERENT KIND OF PRINT AND STYLE OF SCRIPT

39. TRIAL WILL PROVE THAT IN OVER 12 YEARS OF INCARSERATION PLAINTIFF HAS NEVER SIGNED OFF A LETTER IN THE MANNER OF ITEM TWO. PLAINTIFF ALWAYS SIGNES HIS LETTERS IN CURSIVE UTILIZING HIS BIRTH NAME ("DANIEL") PLAINTIFF ASSERTS THAT THE SIGNATURES DO NOT MATCH & THAT QUINONEZ HOLMES, DIAZ OR THEIR INFORMANT ADDED & FORGED PLAINTIFFS NAME TO THE LETTER.

40. DEFENDANTS HOLMES AND QUINONEZ, DEPRIVED PLAINTIFF OF HIS RIGHTS TO DUE PROCESS AND LIBERTY INTEREST IN CCR 3378(C)(6)(A)-(D), BY REFUSING TO DISCLOSE EXCULPATORY INFORMATION, WHICH DOES NOT JEAPARDIZE INSTITUTIONAL SECURITY- NAMELY A COPY OF THE LETTER, ALL INFORMATION ESTABLISHING WHEN THE LETTER WAS WRITEN & INTERCEPTED, THE NAME OF THE PERSON WHO THIS LETTER WAS INTERCEPTED FROM, A COPY OF THE ENVELOPE TO VERIFY THE NAMES OF THE

ADDRESSEE & SENDERS — which would establish PLAINTIFF NEVER MAILED IT, PLAINTIFF WAS NOT INFORMED THE RELATIONSHIP BETWEEN THE SENDER & ADDRESSEE, NOR WHETHER THERE WAS ANY EVIDENCE THAT PLAINTIFF HAD WRITTEN THE ADDRESSEE.

41. PLAINTIFF ALLEGES THAT THE LETTER SHOWN TO HIM IS NOT GANG RELATED, IT MAKES NO MENTION OF AN ATTEMPT TO OBTAIN PERMISSION TO RUN/CONTROL C-YARD AS STATED BY HOLMES, PLAINTIFF POINTED THIS OUT TO QUINONEZ (WHO INITIALLY STATED HE HAD SUCH A LETTER) AND ASKED IF THE LETTER MENTIONS SUCH AN ATTEMPT- QUINONEZ STATED "I DONT KNOW ASK [HOLMES]" - HOLMES PAUSED AND DODGED THE QUESTION & THEN ADMITTED THAT HE DOES NOT HAVE SUCH A LETTER (DISCUSING SUCH AN ATTEMPT) THAT THE BASES OF THIS POINT IS NOT A "LETTER" BUT THAT AN "INFORMANT TOLD THEM" PLAINTIFF WROTE SUCH A LETTER- BUT THEY DONT HAVE IT.

42. DEFENDANTS QUINONEZ & HOLMES DEPRIVED PLAINTIFF OF HIS RIGHTS TO PRESENT HIS VIEWS & DEFENSE UNDER CCR 3378(C)(6)(A)(D) BY REFUSING TO DISCUSS THE MATTER AND TERMINATING THE HEARING BY STATING THEY WERE NOT GOING TO DISCUSS IT BECAUSE "FIVE YEARS FROM NOW WE'LL BE IN COURT AND I DONT WANT YOU USING MY WORDS AGAINST ME"

43. QUINONEZ & HOLMES VIOLATED PLAINTIFFS RIGHTS TO DUE PROCESS AND LIBERTY INTERES IN CCR 3378(C) (C)(A)-(D) BY NOT PROVIDING HIM AN ADVANCED NOTICE, 24 HOURS BEFORE THE HEARING - THAT THE BASES OF ITEM TWO WAS WHAT "AN INFORMANT SAID", UNTIL ALMOST THE CONCLUSION OF THE HEARING THEY LED PLAINTIFF TO BELIEVE THEY HAD SUCH A LETTER.

44. BASED ON THE DEVELOPEMENTS AT THE HEARING PLAINTIFF SUBMITTED TO QUINONEZ & HOLMES ADDITIONAL VIEWS IN WRITING TO BE CONSIDERED BY THE OCS AS IS MANDATED CCR 3378(C)(6)(A)(E) (SEE EXHIBIT F, 168-72 WHICH IS INCORPORATED AS FULLY SET FORTH HERETO)

45. DEFENDANTS M.RUFF, K BERIVER & EVERETT FISHER REVALIDATED PLAINTIFF, BASED ON ITEM TWO, & REJECTED ITEM ONE ——" THEY IMPOSED A SIX YEAR MINIMUM, WITHOUT PROVIDING PLAINTIFF EQUAL DUE PROCESS PROTECTIONS AFFORED TO INMATES FOR OTHER CONDUCT. THEY ALSO FAILED TO DESIGNATE PLAINTIFF AS "CURRENTLY ACTIVE"- WHICH MEANS PLAINTIFF REMAINS INACTIVE (EX C P.110) DEFENDANTS VIOLATED PLAINTIFFS RIGHTS TO DUE PROCESS AND LIBERTY INTEREST BECAUSE THEY DESIGNATED THIS ITEM AS "COMMUNICATIONS" (Ibid) WITHOUT PROVIDING PLAINTIFF A 24 HOUR ADVANCED NOTICE - SO THAT HE CAN PREPAIR A DEFENSE AS

IS MANDATED CCR 3378(C)(6)(A)-(E).

46. QUINONEZ & HOLMES VIOLATED PLAINTIFFS LIBERTY INTEREST BY FAILING TO PROVIDE PLAINTIFF COPIES OF ALL EVIDENCE & A 14 DAY ADVANCE NOTICE OF EVIDENCE SUBMITTED TO THE OCS CCR 3378(C)(6)(A)-(E). PLAINTIFF WAS NOT PROVIDED THE NOTICE UNTIL AFTER THE OCS DECISION.

47. QUINONEZ & HOLMES VIOLATED PLAINTIFFS RIGHTS TO DUE PROCESS AND LIBERTY INTEREST BECAUSE THEY FAILED & REFUSED TO RECORD & SUBMIT PLAINTIFFS VIEWS TO THE OCS. ———— AS WAS REQUIRED CCR 3378(C)(6)(A)(E), INSTEAD THEY SUBMITTED THEIR OWN VIEWS WHICH WERE, IRRELEVANT, FALSE MISSLEADING AND PREJUDICIAL,- FOR THE PURPOSE OF INFLAMING THE OCS AND DEPRIVE PLAINTIFF HIS RIGHTS TO A FAIR IMPARTIAL HEARING.

48. PLAINTIFF IS INFORMED AND BELIEVES THAT THE OCS (RUFF, BERIVER & FISHER) ARE CAUCASION, THUS HOLMES & QUINONEZ DEPRIVED PLAINTIFF OF AN IMPARTIAL HEARING BY MAKING IT APPEAR PLAINTIFF WAS A "VIOLENT RACIST"- FALSELY & MISLEADING THE OCS IN TELLING THEM PLAINTIFF BECAME BELIGERANT & DIRECTED A TIRADE OF NAME CALLING TO INCLUDE RACIAL EPITHETS AT ME" YET THEY FAILED TO TELL THE OCS HOLMES HAD ACTUALLY "ASSUTED PLAINTIFF"-AND BECAUSE, QUINONEZ DID NOT STOP HIM PLAINTIFFS SOLE OPTION WAS TO MAKE A REMARK TO CAUSE A SCENE IN ORDER TO GET HELP (PARA 35).

49. INSTEAD OF SUBMITTING PLAINTIFFS VIEWS TO THE OCS INCOMPLIANCE WITH PLAINTIFFS LIBERTY INTEREST QUINONEZ & HOLMES CONSPIRED TO HAVE PLAINTIFF MURDERED OR HARMED [6] BY FALSELY TELLING THE OCS THAT WHEN THEY RETURNED FOR THE VALIDATION HEARING "PLAINTIFF AGREED TO COOPERATE WITH THE IGI UNIT DURING THE INTERVIEW."- DEFENDANTS THEN PLACED THIS CHRONO IN PLAINTIFFS C-FILE KNOWING THAT IT CAN BE CONSTRUED BY FELLOW INMATES & STAFF AS "SNITCHING"-THIS STATEMENT SERVES NO PENOLOGICAL PURPOSE BUT TO CAUSE PLAINTIFF HARM.

50. ALL DEFENDANTS HAVE ILLEGALLY SEGREGATED PLAINTIFF BASED ON ITEM TWO, PLAINTIFF ASSERTS THAT ITEM TWO IS NOT RELIABLE, IT VIOLATES DUE PROCESS AND PLAINTIFFS LIBERTY INTEREST - BECAUSE THE INFORMANTS STATEMENT THAT PLAINTIFF WROTE A LETTER TO OCOTORENA SEEKING PERMISSION TO CONTROL C-YARD ON BEHALF OF THE GANG IS NOT RELIABLE NOR CORROBORATED WHICH IS MANDATORY CCR 3321(A)(6)(2) 3378(C)(8)(H); 3378(E). PLAINTIFF ALLEYES THAT IF THE LETTER WAS FOUND ON THE I'' ' ...

6. IN VIOLATION OF THE 8TH AMENDMENT

17.

INFORMANT, IT IS NOT RELIABLE, AND CANNOT BE USED BECAUSE THE INFORMANTS "SHIFT OF BLAME" IS NOT CORROBORATED CCR 3321(A)(b)(1)(2); 3378 et seq, PLAINTIFF ASSERTS THAT THERE IS NO LETTER IN DEFENDANTS POSSESSION discussing AN ATTEMPT MADE BY PLAINTIFF TO CONTROL C-YARD.

51. All DEFENDANTS KNOW THAT THE INFORMANTS ALLEGATIONS ARE FALSE & UNCORROBORATED. BECAUSE THEY HAD A LEGAL DUTY AND A DIRECT ORDER TO 'MONITOR PLAINTIFFS MAIL FOR 12 MONTHS/SEE EX A AT 71 & CCR 3341.5(c)(5)) & YET QUINONEZ & HOLMES ADMIT THEY do NOT HAVE SUCH A LETTER. IF THE INFORMANT WAS TRUTHFUL- DEFENDANTS WOULD HAVE THE LETTER, & DEFENDANTS WOULD HAVE PROVIDED PLAINTIFF NOTICE THAT THEY STOPPED THE LETTER CCR 3147(a)(6), THE LACK OF NOTICE COMBINED WITH THE LACK OF LETTER ESTABLISH- ES THAT DEFENDANTS NOT ONLY NEW THAT THE INFORMANT WAS NOT CORROBORATED -BUT THAT HE WAS A LIER! & YET DEFENDANTS STILL SEGREGATED PLAINTIFF ON SUCH INFORMATION.

52. THE UNRELATED LETTER SHOWN TO PLAINTIFF DOES NOT CORROBORATE THE INFORMANT, ESPECIALLY IF IT WAS THE INFORMANT HIMSELF WHO PROVIDED IT ONCE IT WAS CAUGHT ON HIM-& IF THERES EVIDENCE TYING THE LETTER TO HIM CCR 3321 et seq.. ADDITIONALLY THE LETTER WAS ALTERED & FORGED (SEE PAR 38 ANTE)-AND SINCE C- YARD WAS ON LOCK DOWN SINCE SEPT 2006, & PLAINTIFF WAS IN ASU-'SINGLE CELLED SINCE JAN.9.2007, THE INFORMANT COULD NOT HAVE SEEN THE LETTER-BUT COULD HAVE ONLY PROVIDED DEFENDANTS WITH UNUSABLE HEARSAY CCR 3378(c)(8)(H).

53. QUINONEZ & HOLMES DEPRIVED PLAINTIFF OF HIS RIGHTS TO DISCLOSURE OF ALL EVIDENCE WHICH POSED NO SECURITY THREAT, AND PLAINTIFFS RIGHTS TO PRESENT A DEFENSE, BY INAPPROPRIATELY DESIGNATING THE ITEMS CONFIDENTIAL. SINCE PLAINTIFF WAS ALOWED TO SEE THE PHONE BOOK & UNRELATED LETTER-THEN DEFENDANTS CANNOT CLAIM DISCLOSURE WOULD BREACH SECURITY CCR 3321 et seq : 3378(c)(6)(A)-(E) 3378(c) (8)(H). ADDITIONALLY HOLMES & QUINONEZ ARE NOT "FACILITY CAPTAINS" THUS THEY LACKED THE RANK & AUTHORITY TO DESIGNATE THE ITEMS CONFIDENTIAL CCR 3321(d)(1)(2)

" " "

" " "

" " "

54. PLAINTIFF ASSERTS DEFENDANTS QUINONEZ AND HOLMES HAVE CLASSIFIED THESE ITEMS "CON-FIDENTIAL" TO DEPRIVE PLAINTIFF OF EXCULPATORY INFORMATION & HIS RIGHTS TO PREPAIR A DEFENSE, CCR 3378(C)(6)(A)-(E) BY LEAVING THE ITEMS SO VAGUE & AMORPHOUS AS TO PRECLUDE PLAINTIFF FROM EFFECTIVELY REBUTTING THEM

55. PLAINTIFF ALSO ASSERTS THAT THE ITEMS ARE INSUFFICIENT TO VALIDATE & SEGRAGATE PLAINTIFF - AND THAT DEFENDANTS HOLMES, QUINONEZ, RUFF BERIVER & FISHER FAILED TO MAKE THE NECESSARY ARTICULATION - AND VERIFICATIONS PRIOR TO USING & RELYING ON THIS ITEM. —— CCR 3378(C)(1); 3378(C)(8)(C)(L)(H)(M) REQUIRE THAT PRIOR TO VALIDATION & SEGRAGATION DEFENDANTS MUST VERIFFY & PROVIDE AN ARTICULATIBLE BASES THAT THE ITEMS SHOW PLAINTIFF HAS "CURRENTLY ENGAGED IN" GANG ACTIVITY AS DEFINED IN CCR 3000, 3341.5(C)(5)(6)" Ibid A READING OF THESE REGULATIONS REQUIRES "THREE PIECES OF EVIDENCE" ESTABLISHING THAT WITH IN "THE PAST SIX YEARS PLAINTIFF KNOWINGLY PROMOTED, FURTHER ASSISTED A GANG WITH THE PLANING, ORGINIZING THREATENING, FINANCING, SOLICITING OR COMMITTING, UNLAWFUL ACTS OF MISCONDUCT CLASSIFIED AS SERIOUS PURSUANT TO SECTION 3315" Ibid PLAINTIFF ASSERTS THAT DEFENDANTS ONLY HAVE ONE ITEM - THE OTHER ITEMS ARE PAST SIX YEARS OLD AND CANNOT BE USED, GIVEN THAT THE PRESENT ITEM WAS NOT FOUND WITHIN THE 12 MONTHS INVESTIGATION SEE CCR 3378(C)(1)(2); 3378(F) - WITH CCR 3341.5(C) (5), ADDITIONALLY THE CURRENT ITEM DOES NOT DOES NOT FALL WITHIN THE "GANG ACTIVITY" CRITERIA - DEFEND-ANTS DID NOT ARTICULATE OTHERWISE, THE FACT THAT PLAINTIFF RECEIVED NO RULES VIOLATION FOR VIOLATING CCR 3000, 3023 ("GANG ACTIVITY") AS IS MANDATED CCR 3312(A)(3) ESTABLISHES DEFENDANTS KNEW IT WAS NOT GANG ACTIVITY - BUT THAT THE INFORMANT PROVIDED NOTHING MORE THAN PLAINTIFFS NAME IN CONNECTION WITH A NON-EXISTANT LETTER - WITHOUT ELUDING TO SPECIFIC ACTIVITY COMMITTED BY PLAINTIFF THUS THE ITEM CANNOT BE USED CCR 3378(C)(8)(H)(M)

55. PLAINTIFF ASSERTS THAT THE FINDING THAT THE ITEM IS "GANG ACTIVITY" ESTABLISHES THAT DEFENDANTS GANG DEFINITION POLICIES ARE SO VAGUE & OVER BROAD, AS TO DEPRIVE PLAINTIFF OF HIS RIGHTS UNDER THE FIRST & 14TH AMENDMENT - GIVEN THAT IT GIVES PLAINTIFF ET AL... NO NOTICE OF PROHIBITED CONDUCT BUT FORCES PLAINTIFF TO GUESS AT ITS MEANING.

56. ALL SUPERVISORY DEFENDANTS PARTICIPATED IN THE FORMULATION AND ENFORCEMENT OF VAGUE & OVERBROAD GANG ACTIVITY - VALIDATION POLICIES WITHOUT PROVIDING CLEAR & FAIR ONES.

19

57. None of the defendants have acted to restore - nor designate plaintiffs status as "currently active" prior to segregating him as is required by due process & injunction (C.R. 3378(q)(b); 3023, Toussaint V. Rowland 711 F.Supp. 536, 540-42 n.15(N.D.Cal); Madrid V. Gomez 889 F.Supp. AT 1273-74

58. Plaintiff is not a currently active associate, he does not pose a security threat, defendants have not found otherwise - yet they refuse to release him in compliance with CCR 3341.5(c)(3)

59. Defendants Hubbert, Rianda, & Speer breached the terms of their contract with plaintiff (see para 2 supra) given that the contract soly forbade possession of certian items (ibid) or writing to members (ibid) in this case defendants admit ocotopena is not a member (ex E. p144) nor does this letter fall within the terms of the contract (ibid)

60. Plaintiff has placed all defendants including Hubbert, Rianda & Speer on notice that the validation & segregation is in direct violation of the contract (exhibit F. 153-72) yet none of the defendants have acted to remedy the violation.

61. The actions by defendants constituted continued harassment, a conspiracy and retaliation for plaintiffs court litigation and legitimate legal assistance plaintiff provides to others (para 71 )

**FACTS PERTAINING TO Code of silence, and cover ups by defendants regarding validation issue, the assult of plaintiff and conspiracy to cause him harm or death.**

62. After plaintiff was assulted by Holmes, and Quinonez failed to act, plaintiff learned that Holmes & Quinonez failed to submit his views to the OCS - that these defendants instead submitted false missleading information - & conspired to have plaintiff assulted or killed by placing in a chrono and c-file that at the validation hearing plaintiff "agreed to cooperate with the IGI unit" - knowing that this false information can be misconstrued by staff & inmates to mean "plaintiff snitched" thus subjecting plaintiff to retribution, or death, plaintiff also learned the validation package was submitted without providing him copies and a 14 day notice as is mandated (see para 47-49 ante),

63. Plaintiff filed an administrative appeal challenging the constitutional violations, cited in paragraph 62 ante, and pointed out that their was a "cover up", as Quinonez never reported Holmes assult of plaintiff - nor submitted plaintiffs views and an accurate account of what transpired on the day in question - but was now attempting

20

1  To inflict harm on plaintiff, plaintiff requested an investigation into this matter - and that the

2  false misleading information be expunged from his C-file - or removed from the chrono.

3  64. Defendant Smith contributed to these constitutional violations by covering them up - when he

4  refused to process plaintiffs appeal under the pretext that these claims "duplicated" the validation

5  claims. Notibly since the validation did not occure at the time of Holmes & Quinonez misconduct -

6  how can these distinct claims be "duplicative"?.

7  65. In an attempt to resolve this with Smith plaintiff pointed out that this appeal is not a "dupl-

8  icate" to anything - that it mearly challenged what was placed in the chrono, and the assult &

9  that defendants withheld vital evidence (plaintiffs views) from the OCS. However Smith continued

10  to "cover up" defendants acts of misconduct by refusing to process the appeals.

11  66. Plaintiff attempted to resolve this matter, by appealing Smiths actions, and by sending a

12  writen statement to defendants Wan & Pineda. Smith acting under a code of silence also refused to

13  process that appeal. Pineda was puzzled that the appeal was not being processed and stated he

14  would take care of it. Plaintiff asserts that Pineda & Wan also covered up these alligations &

15  thus contributed to them, because they took no action to investigate, process the appeal - nor

16  remidy the constitutional violations. - much less report them.

17  67. Once plaintiff discovered that ICC would review the false items in the chrono, plaintiff tryed

18  to expose these violations by appealing them, Smith again acting under a code of silence continued

19  to cover up these violations by refusing to process the appeals.

20  68. Plaintiff next provided a writen statement to Rivera - for the ICC to consider (Ex F 154-72)

21  plaintiff also informed warden Clark that his subordinates were enforcing a code of silence

22  by covering up an assult, & conspiracy against plaintiff (Ex F.173) plaintiff is informed and

23  believes that Rivera covered up these violations by throwing away plaintiffs writen statement

24  & warden Clark failed to act and prevent a code of silence - because he simply forwarded

25  the letter & appeal back to Smith who continued to cover these acts up by refusing to

26  process the appeal.

27      // // //

28      // // //

21

69. DEFENDANTS SMITH, PINEDA, WAN, RIVERA & CLARK HAVE AND/OR CONDONE A COUSTOM POLICY OF MAINTAINING A CODE OF SILENCE, AN UNWRITEN BUT WIDELY UNDERSTOOD CODE DESIGNED TO ENCOURAGE EACH OTHER & PRISON EMPLOYEES TO REMAIN SILENT REGARDING THE IMPROPER BEHAVIOR OF THEIR FELLOW EMPLOYEES. - THEY KNOW THAT THE REFUSAL TO PROCESS LEGITIMATE APPEALS, AND FAILURE TO REPORT MISCONDUCT IS THE BEST WAY TO COVER UP CONSTITUTIONAL VIOLATIONS AS IT PREVENTS ANY INVESTIGATIONS & THE INMATE FROM BEING HEARD. AS A RESULT OF SMITHS FAILURE TO PROCESS THE APPEAL - AND CLARK PINEDA, AND WANS FAILURE TO TRAIN SMITH & RIVERA AND THEIR ACTIVE OPPOSITION TO INVESTIGATIONS OF WRONG DOINGS BY HOLMES AND QUINONEZ, DEFENDANTS HAVE NOT ONLY RATIFIED & PERPETUATED THE PRACTICE & POLICY OF "SILENCE"- BUT HAVE CONTRIBUTED TO THE CONSTITUTIONAL VIOLATIONS BY NOT REPORTING, INVESTIGATING AND ACTING TO CORRECT VIOLATIONS TO WHICH THEY HAVE NOTICE.

70. DEFENDANTS CODE OF SILENCE POLICY WAS NOT PROMULGATED IN COMPLIANCE WITH THE APA, AS IS MANDATORY PEN. CODE 5058; GOV. CODE 11340. 5(a); 11342(g), IT VIOLATED PLAINTIFFS RIGHTS UNDER CCR. 3084.1, AND THE 1ST & 14TH AMENDMENT TO APPEAL ADVERSE DECISIONS AND PETITION HIS GUVERNMENT FOR REDRESS OF GRIEVIANCES. - IT ALSO VIOLATED CLARKS MANDATORY DUTY TO HIRE AN ADIQUATELY TRAINED APPEALS COORDINATUR TO APPROPRIATELY SCREEN AND PROCESS APPEALS.

   FACTS PERTAINING TO DEFENDANTS INTENT & CONSPIRACY'S

71. DEFENDANTS HAVE INTENTIONALLY RETALIATED AGAINST PLAINTIFF FOR LEGAL & LEGITIMATE JAIL HOUSE LAWYER ACTIVITIES. DEFENDANTS HAVE NO LEGITIMATE PENOLOGICAL INTEREST IN PROHIBITING PLAINTIFFS LEGAL & LEGITIMATE JAIL HOUSE LAWYER ACTIVITIES, WHERE SUCH JAIL HOUSE LAWYER ACTIVITIES WERE NOT FOR THE PURPOSE OF ENGAGING IN OR FURTHERING ANY ILLEGAL PRISON GANG ACTIVITIES.

72. CIRCUMSTANTIAL EVIDENCE OF DEFENDANTS RETALIATORY INTENT, CONSPIRACY AND LACK OF LEGITIMATE PENOLOGICAL INTEREST IS PROVIDED BY THE FOLLOWING:

(a) PLAINTIFF IS A JAIL HOUSE LAWYER WHO HAS FILED COUNTLESS CHALLENGES ADMINISTRATIVELY & JUDICIALLY ON HIS OWN BEHALF OR ON BEHALF OF OTHER INMATES ATTACKING CRIMINAL CONVICTIONS & UNCONSTITUTIONAL PRISON POLICIES, WHICH ARE WELL DOCUMENTED IN HIS OR OTHER INMATES C-FILES AND WITHIN THE COURTS.

(b) WHILE AT SATF DAVID NEVAREZ REQUESTED THAT PLAINTIFF ASSIST HIM IN AN ADMINISTRATIVE APPEAL CHALLENGING "SATF" DEFENDANTS EXCESSIVE LOCK DOWN POLICIES - THE APPEAL WAS THEN SUBMITTED

-22-

AS A "GROUP 602" AND CHALLENGED, THE LOCK downs, LACK OF library ACCESS, out door EXCERCISE, phone & VISITATION ACCESS - AS discrimination / deprivation BASED ON RACE.

(C) NEVAREZ Also obtained plaintiffs ASSISTANCE iN ANOTHER "Group 602" WHERE SATF defendants Housed inmates UNDER EXCEEDingly HOT TEMPERATURES - DURiNG THE EXCESSIVE lockdowns WITH OUT RELIEF OR Adiquate VENTILATION, AS REQUIRED BY THE 8TH AMENDMENT.

(d) plaintiff successfully litigated THE CASE OF <u>DANIEL MANRIQUEZ V. THE DRB. NO. HCPB04-5241</u> (del NORTE 2005) WHICH compelled defendants Hubbert, rianda & SPEERS To RElEASE plaintiff FROM THE SHU.

73. DIRRECT EVIDENCE OF defendants conspiracy & retaliatory iNtent is provided BY QUINONEZ STATEMENT To plaintiff ON NOV. 14.06 WHiLE Addressing AN APPEAL - WHEN HE TOLD plaintiff "dON'T BE surprized if WE BUILD UP A CASE AGAINST you To TAKE you BACK To THE SHU" BUT Advised plaintiff THEY'd LEAVE HiM Alone IF HE STOPPED Filing Appeals & SUiTS.

(a) AFTER QUINONEZ THREAT, Two INMATES obtained plaintiffs ASSISTANCE iN ANOTHER "group 602" CHALLENGing, TiLTON, WoodFord & SATF defendants BAN ON CONJUCAL ViSiTS - AS UNCONSTITUTIONAL UNdER THE <u>1ST AMENDS</u> AND THE <u>RELigious LAND USE of iNSTITUTIONAliZEd PERsons ACT (RLUIPA)</u> 42 U.S.C. 2000 et seq

(b) NEXT THE AFRICAN AMERICAN population OBTAINED plaintiffs ASSISTANCE iN ANOTHER "group 602" CHALLENGing SATF defendants discriminatory T.V program policies, WHiCH EXCLUdEd THEM iN Violation OF THE <u>1ST AND 14TH AMENDS</u> & RLUIPA.

(c) NEXT ⎯ "OTHERS population" (COMPOSED OF iNMATES WHO ARE NOT HiSPANIC, BLACK NOR WHITE) obtained plaintiffs ASSISTANCE iN ANOTHER group 602, CHALLENGing SATF defendants UNSANITARY & HAZARdOUS Food PREPARATION & diSTRIBUTION policies WHiCH TRiGGERED THE <u>8TH AMENDMENT</u>

(d) plaintiff is iNFORMEd AND BELiEVES DEFENDANTS KNEW OF plaintiffs JAiL HOUSE lAWYER ACTiVITiES & THAT AFTER plaintiff drafted THE lAST THREE APPEALS QUINONEZ TOLD OFFicers iN 8 Building C- FACILITY & DAVId NEVAREZ HE "HAd A HARd ON" FOR plaintiff - HE WAS OUT To GET HiM.

74. FURTHER CIRCUMSTANTIAL EVIDENCE OF defendants conspiracy, RETALIATORY iNTENT AND LACK OF PENOLOGICAL iNTEREST is provided BY:

(a) AFTER plaintiff drafted THE lAST THREE APPEALS, AND QUINONEZ STATEMENT OF SuddeNLY "HAVING A HARd ON FOR" plaintiff — WAS plaintiff SEGRAGATED BY QUINONEZ, WiTHOUT EVIDENCE, NOR A JUSTIFICATION - NOR AN OPPORTUNITY To present VIEWS BASED ON PRETEXTUAL iNVESTIGATIONS

(PARA        .) DIAZ WHO KNEW THE SEGRAGATION WAS illegal AFFIRMED IT, BUT REFUSED TO discuss IT BECAUSE HE KNEW HE WAS GOING TO BE SUED AND "TEN YEARS FROM NOW I dont WANT TO be IN COURT HAVING MY WORDS USED AGAINST ME". Ibid

(b) DEFENDANTS, DIAZ, WARD, GARCIA, OFTEDAHL, & QUIÑONEZ, WHO All KNEW THAT THE 12 MONTH INVESTIGATION HAD ENDED AND THERE WAS no EVIDENCE TO SUPPORT THE SEGRAGATION VIOLATED THE DRb ORDER & CCR 3341.5E(5): 3378(f)(6)(h) BY APPROVING THE SEGRAGATION & FURTHER INVESTIGATION.

75. DEFENDANTS QUIÑONEZ & HOLMES PROVIDED FURTHER DIRECT EVIDENCE OF DEFENDANTS RETALIATORY INTENT, CONSPIRACY & LACK OF PENOLOGICAL INTEREST BECAUSE AFTER DEFENDANTS AFFIRMED THE illegal SEGRAGATION THEY TOLD PlAINTIFF THEY ARE NOT RESPONSIBLE FOR THE SEGRAGATION, AdMITTING THEY HAD NO EVIDENCE JUSTIFING IT & THAT THE REASON PlAINTIFF WAS IN ASU WAS BECAUSE SOMEONE WHO THEY REFUSED TO "RAT ON" "RAIl ROADED" THEM INTO GOING AFTER PlAINTIFF SIMPLY BECAUSE THAT "SOMEONE" DID NOT WANT PlAINTIFF ON C-YARD.

76. FURTHER CIRCUMSTANTIAL EVIDENCE OF DEFENDANTS CONSPIRACY, RETALIATORY INTENT AND THE lACT OF LEGITIMATE PENOLOGICAL INTEREST, IS PROVIDED BY THE FACT THAT THE ITEM RELIED ON BY All DEFENDANTS TO VALIDATE & SEGRAGATE PlAINTIFF IS OBVIOUSLY FALSE, INSUFFICIENT, FABRICATED UNRELIABLE & UNCORROBORATED, IT DOES NOT INDICATE, PlAINTIFF HAS INGAGED IN ANY illegal ACTIVITIES, IN THE FURTHERANCE OF ANY GANG. (SEE PARA 6-17 ANTE).

77. FURTHER CIRCUMSTANTIAL EVIDENCE OF DEFENDANTS CONSPIRACY, RETALIATORY INTENT & lACK OF PENOLOGICAL INTEREST IS, SINCE PlAINTIFF HAS RETURNED TO PELICAN BAY, HES CHAllENGED: AdMINISTRATIVELY PBSP's SHU's illegal BAN, ON STAMPS, PBSP POLICY OF REFUSING TO PROCESS OUT GOING MAIl (TIMELY) AND THEIR RETENTION OF OUT GOING MAIl INDEFINATELY (SEE PARA 118-134) HES MADE IT KNOWN TO DEFENDANTS THAT HE INTENDS TO CHAllENGE PBSP ET al... VAlIDATION & SEGRAGA- TION POLICIES,- THUS DEFENDANT HAVE illegally ORDERED PlAINTIFFS LEGAl MAIl TO BE OPENED (PARA 126-134) AND DEFENDANTS HAVE DELIBERATELY AND MALICIOUSLY MIXED UP PlAINTIFFS OUT GOING LETTERS SO AS TO CAUSE PROBLEMS BETWEEN PlAINTIFF AND HIS EX WIFE AND INFLICT PSYCHOLOGICAL PAIN BY RUINING HIS RELATIONSHIP WITH HIS DAUGHTER (PARA 135-138  ).

78. DEFENDANTS HAVE MALICIOUSLY & SADISTICALLY HARRASSED AND MISCLASSIFIED PlAINTIFF IN ORDER TO RETAliATE AGAINST HIS LEGITIMATE 1ST AMENDMENT ACTIVITIES, CIRCUMSTANTIAl

24

EVIDENCE OF DEFENDANTS STATE OF MIND is provided BY:

(a) THE ABSENCE OF ANY RELIABLE EVIDENCE IN SUPPORT OF PLAINTIFFS INITIAL SEGREGATION BY QUINONEZ, DIAZ, GARCIA WARD & OFTEDAHL (SEE PARA 6·18 supra).

(b) THE LACK OF ANY RELIABLE, CORROBORATED EVIDENCE TO SUPPORT PLAINTIFFS REVALIDATION & FURTHER SEGREGATION BY <u>All</u> DEFENDANTS.

(c) THE discarting OF PLAINTIFFS FIRST AND SECOND APPEAL CHALLENGING, QUINONEZ, DIAZ, GARCIA & WARD, & OFTEDAHAL'S INITIAL - AND ILLEGAL SEGREGATION ORDER-& INVESTIGATION EXTENTION (EX A, 73-99) AND THE REFUSAL OF J. PEREZ, T.P. WAN, R. HALL, KEN CLARK, MICHAEL # JENSONS,    1 To properly INVESTIGATE & grant THESE APPEALS,

(d) THE FAILURE/REFUSAL OF DEFENDANTS, PETERSON, W. POOLE, MENDEZ, MAY, HANDSON, RIVERA, DIAZ, HUTCHINS, GARCIA, WARD, REYNOSO, ELLIOT AND LAURENCE, TO grant A TIMELY ANUAL CLASSIFICATION REVIEW AND ORDER THAT AII INVESTIGATIONS OF PlAINTIFF TO CEASE - AND PlAINTIFF BE TRANSFERED IN COMPLIANCE WITH CCR 3341.5(C)(5).

(e) DEFENDANTS HOLMES ASSULT OF PlAINTIFF, HOLMES AND QUINONEZ CONSPIRACY TO HAVE PlAINTIFF ASSULTED OR MURDERED (PARA 34.35,49) ONCE PlAINTIFF EXERCISED HIS RIGHTS TO EXPOSE THEIR ACTIONS, AND submit HIS VIEWS TO THE OCS - WHICH THEY AIso REFUSED TO RECORD AND submit TO THE OCS (Ibid).

(f) DEFENDANTS SMITH, PINEDA, WAN, RIVERA & CLARKS ATTEMPT TO COVER UP HOLMES AND QUINONEZ ACTIONS (SEE PARA 78(e) ANTE) UNDER THEIR CODE OF SILENCE (PARA 62-70  ANTE).

(g) DEFENDANTS, PEREZ, WAN, R. HALL, CLARK, JENSON, GRANNIS, ALLEN, RIVERA, ALLISON, GOMEZ SMITH, PINEDA, READ, FISHER, WILBER, HOREL AND BradBARRY, REFUSAL TO properly INVESTIGATE PLAINTIFFS Administrative appeals FOR THE REVERSAL OF gang VALIDATION AND SEGREGATION.

(h) DEFENDANTS, TILTON, WOODFORD, CLARK, HUTCHINS, WARD, ALLISON, HOREL, BradBARRY, ′ GRANNIS, HUBBART, RIANDA & SPEER, FAILURE TO TRAIN SUBORDINATE OFFICIALS, IN INVESTIGATIONS & OR TO PREVENT THEM FROM MAINTAINING A PATTERN OF RETALIATION FOR PLAINTIFFS EXERCISE OF HIS 1st AMENDMENT RIGHTS TO JAIL HOUSE lawyer ACTIVITIES.

(I) DEFENDANTS, SILVA, WISE, STRAIN, BRANDON, HOREL, BradBARRY, GRANNIS, REFUSAL TO STOP AII FORMS OF RETALIATION & HARRASSMENT BY THEIR SUBORDINATES, WHO DELAY AND KEEP PLAINTIFFS

OUT GOING MAIL - MISCLASSIFY IT - OPEN AND READ PLAINTIFFS LEGAL MAIL, AND EVEN MIX UP PLAINT-
IFFS MAIL BY GIVING PLAINTIFFS MAIL TO UNINTENDED RECIPIANTS IN ORDER TO CAUSE PLAINTIFF
PHYCHOLOGICAL HARM SUFFERING & RUIN HIS RELATIONSHIPS WITH HIS EX WIFE AND DAUGHTER (SEE
PARA 135-38 INFRA)

## FACTS PERTAINING TO SHU TRANSFER ENDORSEMENTS & CLASSIFICATION REVIEWS

79. DEFENDANTS FAILED TO RESTORE PLAINTIFFS CURRENTLY ACTIVE STATUS, NOR HAVE THEY DESIGNATED
HIM TO BE A CURRENT SECURITY THREAT. - THE OCS did REJECT ONE ITEM, AND VALIDATED
PLAINTIFF BASED ON <u>ONE</u> ITEM (EX C 110 ) AND YET RIVERA PROVIDED PLAINTIFF A 114 LOCK UP
ORDER INDICATING PLAINTIFF WOULD BE RETAINED IN ASU PENDING ICC REVIEW BASED ON PLAINTIFFS
GANG VALIDATION BASED ON <u>TWO</u> ITEMS, PRIOR TO THE ICC RIVERA THEN TOLD PLAINTIFF ICC IS
GOING TO ENDORSE HIM TO THE SHU INDETERMINATE SHU TERM.

80. PLAINTIFF PROTESTED THE FACT THAT HES YET TO GO TO THE COMMITTEE AND ALL DEFENDANTS
HAVE ALREADY MADE UP THEIR MINDS. PLAINTIFF THEN PROVIDED RIVERA DOCUMENTATION & HIS
VIEWS WHICH HE REQUESTED THAT THE COMMITTEE CONSIDER <u>BEFORE</u> IT MAKES ITS DECISION (SEE
EX F 154-72 WHICH IS INCORPORATED AS FULLY SET FORTH HERETO).

81. ON 6-27-07, PRIOR TO ATTENDING COMMITTEE, DEFENDANT MAY INFORMED PLAINTIFF THAT THE
COMMITTEE HAS <u>ALREADY</u> MADE THEIR DECISION, SHE THEN READ A PRE-TYPED DECISION, ON A CHRONO
INDICATING THAT IGI CONCLUDED ITS INVESTIGATION, SUBMITTED TWO ITEMS WHICH CAUSED THE
VALIDATION, THUS ICC WAS REFERRING THE CASE TO CSR FOR AN INDETERMINATE SHU TERM.

82. PLAINTIFF INFORMED MAY THAT HE HAD A RIGHT TO A MEANINGFUL ICC REVIEW, AND THAT BY
HER AND ICC - ALREADY HAVING THEIR DECISION TYPED OUT, ESTABLISHES A DUE PROCESS VIOLATION
GIVEN THAT THEY'VE ALREADY RENDERED A DECISION <u>PRIOR</u> TO PLAINTIFFS <u>ATTENDANCE</u> - MAY ANSWERED
"THATS TRUE".

83. PLAINTIFF REMINDED T. MAY THAT HE PROVIDED DOCUMENTATION & HIS VIEWS IN WRITING TO RIVERA
TO BE ATTACHED TO ANY 128 B CHRONO AND WHICH MUST BE CONSIDERED <u>BEFORE</u> ANY ICC DECISION,

84 MAY RETORTED "YES THERES SOMETHING ATTACHED TO THE 128, BUT <u>WE dON'T HAVE TIME FOR</u>
<u>THAT</u> WHAT DOES IT SAY?" WHEN PLAINTIFF TRIED TO EXPLAIN IT TO HER T. MAY RETORTED "THATS
NOT OUR PROBLEM YOU'RE GONNA HAVE TO TAKE IT UP WITH IGI". PLAINTIFF INFORMED HER, IT WAS

THEIR PROBLEM, BECAUSE UNDER WOLFF, PLAINTIFF HAS THE RIGHT TO HAVE HIS VIEWS CONSIDERED BEFORE ANY DECISION IS MADE, AND THAT BECAUSE ONE ITEM WAS REJECTED IT CANNOT BE CONSIDERED UNDER DUE PROCESS & THE MADRID INJUNCTION.

85. PLAINTIFF INFORMED MAY HE ALSO HAD THE RIGHT TO BE CONSIDERED FOR RELEASE AT THIS COMMITTEE PURSUANT TO CCR 3341.5(A)(2), AND THAT BECAUSE OCS NEVER RESTORED PLAINTIFFS "CURRENTLY ACTIVE" STATUS, THE ICC LACKS AUTHORITY TO RETAIN PLAINTIFF PURSUANT TO CCR 3378 (9)(H) MAY DEMONSTRATED A LACK OF TRAINING BY SUPERVISORY OFFICIALS — BECAUSE SHE RESPONDED "OKAY BUT YOU WERE VALIDATED, SO THATS ALL WE NEED, WE CANT CONSIDER ANYTHING ELES, TAKE THIS UP WITH IGI, IM NOT GOING TO SIT HERE AND ARGUE WITH YOU" WHEN PLAINTIFF INQUIRED WHETHER SHE OR ICC HAS EVER READ THE TITLE 15, SHE REPLIED "ONLY WHEN WE HAVE TOO."

86. AS PLAINTIFF WAS ABOUT TO STEP INTO THE ICC ROOM, MAY REQUESTED A WAIVER TO A NEW 114 ORDER. PLAINTIFF REFUSED AND WAS RESCHEDULED. MAY PROVIDED PLAINTIFF A NEW 114 ORDER, INDICATING THAT RIVERA WAS ORDERING PLAINTIFFS SEGRAGATION & ESTABLISHING THAT RIVERA & ICC HAD ALREADY MADE THEIR DECISION TO SEGRAGATE PLAINTIFF & ENDORSE HIM TO CSR FOR AN INDETERMINATE SHU TERM BASED ON TWO ITEMS. PLAINTIFF ASSERTS THAT THUS THEY RENDERED A DECISION PRIOR TO PLAINTIFFS COMMITTEE APPEARANCE — THAT DEFENDANTS BASED THAT DECISION IN PART, ——— ON REJECTED ITEMS. & THAT DEFENDANTS DID: NOT ——— CONSIDER PLAINTIFFS VIEWS PRIOR TO THEIR DECISION, NOR HAD THEY CONSIDERED RELEASING PLAINTIFF.

87. ON 7-2-07 DEFENDANT B. LEE HEARD PLAINTIFFS SEGRAGATION ORDER AND AFFIRMED IT IN PART BASED ON A REJECTED ITEM, AND TOLD PLAINTIFF THAT HE AND ICC CANNOT & WILL NOT CONSIDER ANYTHING ELES BUT THE VALIDATION, AND THAT PLAINTIFF WAS GOING TO BE ENDORSED FOR A SHU TERM.

88. ON 7-3-07 PLAINTIFF ATTENDED ICC, DEFENDANTS, HUTCHINS, MAY, HACKER AND J. LAWRENCE DID NOT CONSIDER PLAINTIFFS VIEWS, NOR HIS DOCUMENTATION NOR HIS RELEASE. THEY DID CONSIDER AND BASED THEIR DECISION IN PART ON A REJECTED ITEM, — EXCEPT FOR ASKING WHETHER PLAINTIFFS HEALTH WAS OKAY, & WHETHER HE COULD "DOUBLE CELL", PLAINTIFF WAS NOT ALLOWED TO SPEAK, THE ICC WAS HELD IN ROTE FASHION, AS DEFENDANT MAY "SIMPLY READ FROM A 'PRE-TYPED' CHRONO REFLECTING THE COMMITTEES DECISION, TO ENDORCE PLAINTIFF TO CSR FOR A SHU TERM.

89. ON 8-1-07 THE CSR REJECTED THE SHU ENDORCEMENT FINDING THAT THE DEFENDANTS MADE

27

multiple errors - and that the item used was never stamped as a validation document (Ex H p193) plaintiff asserts - that this supports that the defendants ICC hearing was a meaningless rubber stamp proceeding - without due process.

90. On 8.15.07 prior to attending ICC, plaintiff spoke to defendant Rivera, who showed plaintiff a copy of ICC's decision, plaintiff again pointed out, that he has a right to attend & be heard by ICC before they make their decision. plaintiff told Rivera that his views were never submitted to the OCS as required CCR 3378(c)(6)(A)-(E), that instead Holmes & Quinonez submitted irrelevant & prejudicial information. plaintiff reminded Rivera that he gave him a copy of his views which are supposed to be considered by the ICC prior to their decision. that his views were pivotal because it called into question the item used. & thus plaintiff had a right in ICC sending the item back to IGI & OCS for investigation & rejection in compliance with CCR 3378(c)(7)

91. Rivera informed plaintiff that the ICC had already made their decision and were not going to do any of this. that the only reason for this ICC - was because at the last ICC, they, the IGI, and OCS failed to follow protocol and make certain notations, so they were soly bringing plaintiff to make certain additions to the last chrono, & make the same decision.

92. plaintiff again pointed out that they cannot retain him nor endorse him to the SHU, because only the OCS can validate plaintiff as "currently active" CCR 3378(c)(11): 3378(a)(6) which they never did, thus plaintiff must either be released or his case sent back to OCS. Rivera told plaintiff the decision has been made.

93. On 8.15.07, plaintiff appeared before defendants, Ward, Rivera, Reynoso, and Elliot, plaintiff pointed out that they cannot retain plaintiff nor endorse him to the SHU - given that only the OCS can validate plaintiff as "currently active" CCR 3378(c)(11): 3378(a)(6) - which they never did. thus they & CSR lacked authority to transfer plaintiff to the SHU, without that status being restored (Ibid). defendants disagreed and indicated that validation was all they need, plaintiff referred them to CCR 3378(c)(1)(2): 3378(d)(9)(b) & Castillo - which establishes that association alone is insufficient that current activity as defined in CCR.3000.3846.5(b)(5) was what was required. Reynoso stated "Anything else?" plaintiff requested that

2-8

His written views (provided to Rivera) to be considered & noted before their decision, Reynoso stated "No, we'll just add that you disagreed with the committees decision". On. 9-27-07, and 10-3-07 defendants R. Feigen & D. Selvy affirmed ICCs decision & endorced plaintiff to PBSP SHU, dispite lack of due process or currently active labie.[7]

94. After reviewing his own file plaintiff learned that his written views were not in there, Plaintiff is informed and believes Rivera through them away to cover up the constitutional violations alleged thereto.

95. On Nov. 27. 07 plaintiff arrived at PBSP SHU, on 12-03-07 the prison counselor informed plaintiff he would be taken to ICC, who would order that plaintiff be segregated indefinately or at least until Nov. 2012 based on the validation. Plaintiff pointed out that he has not had the "currently active" status restored thus defendants lacked the authority to retain him. CCR 3378(c)(h); plaintiff also pointed out that his rights to due process are being violated because the committee is already making up its mind prior to plaintiff even going to committee - which establishes its a waist of time to even go & that his rights to present his views or attend are meaningless the counselor stated "basically".

96. The counselor informed plaintiff that ICC has no authority to release plaintiff in light of the point IGI submitted which was used to validate plaintiff. When plaintiff argued that the point does not constitute "gang activity" he argued it does.

97 On 12-04-07 plaintiff appeared before defendants Silva, Nealy and Parker, - they reiterated what Parker previously informed plaintiff (see para 95-96 supra) dispite no evidence or finding that plaintiff poses a security threat- if released nor that he is currently active defendants refused to release plaintiff nor consider it in violation of CCR 3395, 3336, 3339, 3341.5(A)(1)(A), 3341.5(c)(3). The committee like the committees at SATF was a meaningless sham & pretext for solitary confinement.

98. At each committee plaintiff has asked for inactive status pursuant to CCR

7. All defendants have imposed a 6 year SHU term- for alleged association/activity - without providing plaintiff- an equal amount of due process provided to other inmates under due process & CCR 3318-3320. 1. plaintiffs SHU term for writing allegedly a letter- is disproportionate when compared to a charge for murder see CCR 3341(c)(9) & plaintiffs history.

29

1  3341.5(c)(5):3378(e). All defendants have refused to classify plaintiff as inactive, so that he can be consid-

2  ered for release CCR3341.5(c)(5) based on one item, which assuming arguendo is true, at most shows

3  "association" (ex c. p 110 ) yet CCR3341.5(c)(5) soly precludes "inactive status" based on "gang activity" & not

4  "association" (Ibid) defendants know theirs a difference between "gang association" see CCR3378(c)(4) &

5  "gang activity" see CCR3000,3023, yet dispite knowing the difference & lack of "gang activity"-they refuse

6  to catigorize plaintiff as "inactive" so that he could be eligible for release CCR3341.5(c)(5) ;3378(e)

7  based on an item of "association".

8      99. Wilber & Grannis have an underground policy of covering up constitutional violations committed by

9  PBSP committees-plaintiff is informed and alleges that Grannis & Wilber have an unwritten policy of cover-

10 ing up constitutional violations by ICC by refusing to process any appeal challenging those actions,-which

11 not only violates the Madrid injunction by the strict mandates of the APA. Pen. code 5058 et sec),...

12     FACTS PERTAINING TO SEGREGATION AT SATF/ASU

13 100. plaintiff was housed in a windowless cell, with an open slot on the roof, permitting the view of

14 an adic. & some natural light. the cell was very small, in comparisant to all cells within the CDC,

15 the walls are concreat, with a solid steel door which blocks any natural light & visual stimulation,

16 the cells are artificially lit, plaintiff could not see other inmates from his cell his only view is

17 another wall, he remained in his cell 24 hours a day- except during yard or [3 minute] shower days,

18 101. for showers plaintiff was under heavey restraint & provided a dull razor, plaintiff was given

19 yard three times a week-the yard resembled a dog kennel, with cement floors & chain linked fense all

20 around. plaintiff was permitted no contact with anyone, for the most part he remained in his cell.

21 102. food trays were past through a narrow food port in the cell door, plaintiff had to eat quickly as

22 officers competed in races to see who dropped of and picked up food the fastest.

23 103. plaintiff was not allowed to possess his T.V, nor radio, opportunities for social interaction with

24 prisoners & staff are precluded. the cells were completely sealed to prevent passing reading materials

25 plaintiff was not allowed to participate in job opportunities, nor vocational, recreational, or educat-

26 ional programs. group excercise is not permitted - no recreational equiptment was provided, c/o

27 leftler sometimes passed out reading books - but only if plaintiff was willing to waive his

28 yard time! no phone calls were permitted all visits were behind a window——

30

WHICH PREVENTED HUMAN TOUCH & PASSING FOOD ITEMS, VISITS ARE FOR ONE HOUR BY APPOINTMENT, Ad Seg BY DESIGN IS MENT TO REDUCE ALL PHYSICAL CONTACT & VISUAL STIMULATION TO THE MAXIMUM EXTENT.

104. ALL MOVEMENTS ARE CONDUCTED BY RESTRAINT & MONITORED, BEFORE EXITING A CELL INMATES ARE SUBJECTED TO A DEGRATING UNCLOTHED & CAVITY SEARCH. THE INMATE IS THEN SUBJECTED TO HEAVEY RESTRAINT.

 FACTS PERTAINING TO CONDITIONS IN THE SHU - & 8TH AMENDMENT -

105. UNDER DEFENDANTS POLICY, AN INMATE WHO COMMITS MURDER OR ATTEMPTED MURDER IS PROVIDED A PANOPLY OF DUE PROCESS PROTECTIONS CCR 3318-3321.1 ET SEQ, AND IS GIVEN A SHU TERM, RANGING FROM 36 MONTHS TO 60 MONTHS MAXIMUM. CCR 3341.5 (C)(9)

106. INMATES LIKE PLAINTIFF WITH ALMOST NO DISCIPLINARY HISTORY, WHO ARE ACCUSED OF "WRITING A LETTER", TO AN "ASSOCIATE OF A GANG", ARE NOT PROVIDED THE SAME DUE PROCESS PROTECTIONS, PROVIDED TO INMATES FOR "OTHER CONDUCT," AND ARE GIVEN A SIX YEAR SHU TERM! CCR 3341.5 (C)(5). HOWEVER PLAINTIFF IS NOT GAURANTEED HIS RELEASE AFTER SIX YEARS Ibid, AND DEFENDANTS REFUSE TO CONSIDER HIM FOR RELEASE, UNLESS 6 YEARS ARE COMPLEATED, THUS THEY IMPOSE A SIX YEAR MINIMUM.

107. PLAINTIFF IS HOUSED IN A CELL, WHICH IS 80 SQUARE FEET, THE CELL DOORS ARE MADE OF HEAVEY GAUGE PERFORTED METAL WHICH SIGNIFICANTLY BLOCKS VISION AND LIGHT...CELLS ARE PRIMARILY LIT WITH A FLOORESCENT LIGHT THAT CAN BE OPERATED BY THE INMATE...THE SHU INTERIOR IS DESIGNED TO REDUCE VISUAL STIMULATION.

108. THE CELL BLOCKS ARE MARKED THROUGHOUT BY A DULL SAMENESS IN DESIGN & COLOR, THE CELLS ARE WINDOWLESS, THE WALLS ARE WHITE & CONCRETE, WHEN INSIDE THE CELL ALL PLAINTIFF CAN SEE, THROUGH THE PERFORATED METAL DOOR IS ANOTHER WHITE WALL. A SMALL EXCERCISE PEN WITH CEMENT FLOORS & WALLS IS ATTACHED TO THE END OF EACH POD. BECAUSE THE WALLS ARE 20 FEET HIGH, THEY PRECLUDE ANY VISION OF THE OUTSIDE WORLD. THE TOP OF THE PEN IS COVERED BY A SCREEN & PARTLY BY A PLASTIC RAIN COVER, GIVEN THEIR CELL LIKE DESIGN & PHYSICAL ATTACHMENT TO THE POD ITSELF THE PENS ARE MORE SUGGESTIVE OF SATILLITE CELLS THAN AREAS FOR EXCERCISE.

109. THE OVERALL EFFECT OF THE SHU IS ONE OF STARK STERILITY & UNREMITTING MONOTONY, INMATES CAN SPEND YEARS WITHOUT EVER SEEING ANY ASPECT OF THE OUTSIDE WORLD EXCEPT FOR A SMALL PATCH OF SKY. INMATES CAN ALSO GO YEARS WITH LITTLE OR NO OPPORTUNITY FOR NORMAL CONTACT WITH OTHER PEOPLE. PLAINTIFF REMAINS CONFINED TO HIS CELL 22½ HOURS A DAY, FOOD TRAYS ARE PASSED

Through a narrow food port in the cell door. Plaintiff eats all meals in his cell.

110. Opportunities for social interaction with other prisoners or staff are essentially precluded, inmates are not allowed to participate in prison job opportunities or any other, prison, vocational recreational, or educational programs, group excercise is not permitted. Nor is recreational equiptment provided. Plaintiff spends his time pacing the edges of the pen.

111. Plaintiff cannot see inmates in adjoining cells, interaction with correctional staff is kept to an absolute minimum, when an inmate leaves his cell to go to the excercise pen, the door is opened automatically by a control officer, the door to the excercise pen is also controlled electronicly.

112. The contact that correctional staff do have with inmates often occures in a routined setting while inmates are in hand cuffs & waist chains, such as during an escort to another point in the prison, all visits are conducted by telephone through a thick glass window preventing opportunity for human touch given the remoteness and distance of the prison plaintiff hardly gets any visits. No phone calls are permitted, those incarserated in the SHU for any length of time are severly deprived of any human contact, regardless of whether they are single celled or double celled.

113. Defendants know that plaintiffs SHU yard conditions are "hauntingly similar to that of caged felines in a zoo" Madrid supra. at 1229-30 defendants have "attempted to reduce physical contact between inmates and staff [to every] extent possible" Ibid defendants know that the conditions in the SHU amount "to a virtual total deprivation, including insofar as possible the deprivation of human contact" Ibid. defendants know that "there is little doubt that by any measuring stick that PBSP SHU, by design, lies on harsh end of the SHU spectrum. Ibid defendants know that a severe reduction in enviornmental stimulation & social isolation can have serious phychiatric consequences, and that these consequenses are typically manifested by the conditions cited above Id at 1230-32

114. Defendants know that the conditions imposed on plaintiff causes most inmates to experiance some degree of physiological trama in reaction to their extream socin issolation & the severity of the restricted enviornmental stimulation in the SHU" Madrid at 1230-32. Defendants also know that the conditions they've subjected plaintiff too, can press the

32

1. OUTTER BOUNDS OF WHAT MOST HUMANS CAN PHYCHOLOGICALLY TOLERATE Ibid

2. 115. DEFENDANTS KNOW VIA THE STATISTICAL DATA & EVIDENCE GATHERED IN MADRID, AND AFTER

3. MADRID, NAMELY THE INCREASE OF "PHYCH-MEDICATION" PROVIDED/USED BY SHU INMATES- THAT

4. THE CONDITIONS IN THE SHU CAN CAUSE ADVERSE & IRREPAIRABLE PHYCHOLOGICAL DAMAGE - AND

5. THAT THE PHYCHOLOGICAL EFFECT HAS CAUSED SOME INMATES TO COMMIT SUICIDE. BASED ON

6. LACK OF STIMULATION & CONTACT, & SHU CONDITIONS.

7. 116. DEFENDANTS ALSO KNOW THAT THE CONDITIONS IN THE SHU - THE LACK OF EXCERCISE AND MOVEMENT

8. CAN ALSO CAUSE PHYSICAL PAIN & DAMAGE - NAMELY JOINT AND CARTILEGE DAMAGE - GIVEN THE

9. LACK OF MOVEMENT.

10. 117. DISPITE THE KNOWLAGE OF PHYCHOLOGICAL AND PHYSICAL DAMAGE, HARM, THAT SHU CONDITIONS

11. CAN CAUSE ON PLAINTIFF, DEFENDANTS ARE DELIBERATELY INDIFFERENT TO PLAINTIFFS MENTAL AND

12. PHYSICAL HEALTH, BECAUSE THEY CONTINUE TO IMPOSE SUCH TERMS ON HIM, WITHOUT PENOLOGICAL

13. JUSTIFICATION, DEFENDANTS GRANNIS & WILLKER INTENTIONALLY COVER UP THESE VIOLATIONS. (PARA 99 )

14. FACTS PERTAINING TO MAIL AT PBSP SHU. [FIRST TWO LETTERS]

15. 118. DEFENDANTS REPEATEDLY VIOLATE PLAINTIFFS FIRST AMENDMENT RIGHTS, PROPERTY INTERESTS,

16. STATE REGULATIONS, AND ATTORNEY CLIENT PRIVILEGES WITHOUT PENOLOGICAL JUSTIFICATION.

17. 119. ON 1-20-08 PLAINTIFF RECEIVED TWO NOTICES INDICATING THAT LETTERS PLAINTIFF SENT OUT

18. ON JAN 8TH-08 WERE READ DISAPPROVED FOR MAILING. ONE LETTER WAS STOPPED BECAUSE DEFENDANTS

19. ASSERT IT PROMOTED GANG ACTIVITIES, - THAT IT CONTAINED CODED MESSAGES & PROVIDED LOCATION

20. & INFORMATION INVOLVING ANOTHER INMATE. (EX J 212 ) THE OTHER DEFENDANTS ALLEGED CONTAINED

21. 3RD PARTY CORRESPONDENCE, THEY ALLEGE IT CONTAINED CODED MESSAGES - AND ATTEMPTED TO

22. INFORM THIRD PARTY OF PERSONS LOCATION ( EX J.213)

23. 120. DEFENDANTS COUNTESS & BRANDON MADE NO NOTATION AS TO THE DISPOSITION OF THE LETTER AS

24. MANDATED CCR 3147.6(b). PLAINTIFF DENYES THAT ANY GANG OR ILLICIT ACTIVITIES WERE DISCUSED

25. IN THE LETTER CCR 3000, 3023. PLAINTIFF ASSERTS THAT THE CENSORSHIP OF OUTGOING MAIL

26. VIOLATED HIS FIRST AMENDMENT RIGHT BECAUSE IT WAS NOT NECESSARY TO PROTECT SUBSTANTIAL

27. PUBLIC INTERESTS. PLAINTIFF ASSERTS THAT THESE ALEGATIONS ARE FALSE AND FABRICATED IN

28. ORDER TO RETAIN PLAINTIFF IN THE SHU AS VALIDATED.

| PAGE NUMBER | · | / / / | |
|---|---|---|---|
| | | | |

121. DEFENDANTS HAVE DECIDED TO KEEP THE LETTER INDEFINATELY WITHOUT INDICATION OR FINDING THAT THE MAILING OF THE LETTER WOULD JEOPARDIZE INSTITUTIONAL SECURITY. THE ALLEGATION THAT IT WAS INTENDED AS 3RD PARTY MAIL IS SPECULATORY, PRISON OFFICIALS CURRENTLY STAMP ALL OUT GOING MAIL TO PREVENT 3RD PARTY COMMUNICATIONS. PLAINTIFF ASSERTS THAT THE INTENDED RECIPIENTS ARE NOT VALIDATED, AND THAT THE RETAINING OF THE LETTER VIOLATES A PROPERTY INTEREST CCR 3136(a)(b); 3147b(b)

122. DEFENDANT WISE IS ALSO LIABLE FOR THE CONSTITUTIONAL VIOLATIONS ALLEGED (SEE PARA 118-121) HE REFUSES TO PROCESS THE LETTER OR RETURN THEM BACK TO PLAINTIFF STATING THAT THEY ARE INVESTIGATING "PRISON GANGS" - YET WHEN PLAINTIFF ASKED "WHAT DOES THAT GOT TO DO WITH THESE LETTERS OR ME?" WISE RESPONDED "NOTHING" - WHEN PLAINTIFF ASKED HIM HOW HE COULD ALLEGE THESE LETTERS HAVE GANG ACTIVITY - WISE STATED HE "CAN'T" - THAT HE ASSUMES "ITS GANG ACTIVITY" WHEN HE CAN'T UNDERSTAND THE LETTER - WHICH ESTABLISHES - THAT DEFENDANTS VIOLATE CONSTITUTIONAL RIGHTS BASED ON IGNORANCE, AND THAT DEFENDANTS GANG ACTIVITY POLICIES ARE SO VAGUE AND OVER BROAD THAT EVEN THEY DON'T UNDERSTAND IT.

123. BY RETAINING THE LETTER INDEFINATELY, AND PLACING A COPY OF IT IN PLAINTIFFS C-FILE DEFENDANTS WISE, HOPEL, COUNTESS, & BRANDON HAVE NOT ONLY VIOLATED A PROPERTY INTEREST BUT A LIBERTY INTEREST GIVEN THAT THE TIME IN WHICH TO PROVIDE RULES VIOLATION REPORT HAS EXPIRED.⁸ THUS IT IS EQUIVALENT TO A DISMISSAL OF CHARGES & CCR 3326(a)(2)(3) PROHIBITS THE RETENTION OF SUCH EVIDENCE IN PLAINTIFFS C-FILE. INDEFINATE RETENTION OF THE LETTER FOR INVESTIGATIONS IS AN UNDERGROUND POLICY.

(h) 3RD LETTER

124. ON 1-20-08, PLAINTIFF RECEIVED NOTICE FROM DEFENDANTS PUENTE & BRANDON INDICATING THAT THEY STOPPED ANOTHER LETTER ON 1-15-08 BECAUSE IT ALLEGEDLY PROMOTED GANG ACTIVITIES, IT WAS ALLEGEDLY THIRD PARTY CORRESPONDENCE BEING MAILED TO AN "ACUÑA" AND WAS DEEMED TO THREATEN PENOLOGICAL INTERESTS.

125. DEFENDANTS OPTED TO RETAIN THE LETTER FOR INVESTIGATIVE PURPOSE. PLAINTIFF ASSERTS THAT THESE ALLEGATIONS ARE FALSE, PLAINTIFF DENYS HE WROTE TO ANY ACUÑA ON 1-15-08. PLAINTIFF

8. DEFENDANTS SUBSEQUENTLY NOTED THAT THEY WERE RETAINING THE LETTER PENDING DISCIPLINARY ACTION (SEE ¶ 212-13) IE A RULES VIOLATION ET SEQ

asserts he has written to his fiancee' family who are NOT incarcerated. Plaintiff asserts that a review of the letter will establish that it does not mention an acuna. Plaintiff asserts that no gang activities are discused in the letter - that puente, and brandons allegations are speculator or fabricated or misconstrued.

126. Plaintiff asserts that anything discussed in his letters always deals with personal family matters, legal matters, progress on legal cases/litigation, that plaintiff has worked on, or advice to plaintiffs fiancee to expand a legitimate clothing store ran and owned by their family.

127. Plaintiff asserts that the reading and retention of the letter violated his first amendment rights because it was NOT necessary to protect substantial public interests - the fact plaintiff was not given a rules violation for gang activities - ccr 3000, 3023 establishes the evidence of gang activity[s] is insufficient under due process. defendants assertion that the letter was 3rd party communication is ___ speculatory prison officials stamp all out going letters to prevent such communications, plaintiff asserts that the retention of this letter violates his propierty interests. ccr 3136(a)(b):3147(a)(6).

128. defendants wise & hopel are also liable for the constitutional violations alleged hereto [see para 124-127] they refuse to process the letter or return it to plaintiff stating they are investig-ating prison gangs - again plaintiff asked wise "what does that got to do with this letter or me?" wise replied "nothing". wise admitted he does not speak spanish - the letter was written in spanish - that defendant puente read the letter, and wise is simply assuming its gang related because he "cant understand it" - which again establishes that the gang activity policies definitions are so vague and overbroad that not even officers understand them. - thus they violate inmates rights and keep letters based on ignorance.

129. defendants hopel, wise, puente & brandon have violated plaintiffs propierty interest in ccr 3136(a)(b):3147(a)(6) by retaining the letter dispite the fact that no disciplinary proceedings have occured Ibid in such a case regulations require that they mail or return the letter to plaintiff Ibid, defendants also violated a liberty interest by keeping the letter in plaintiffs c-file for future vindication - given that since they retained the letter for disciplinary proceedings (ex J. p. 22) which were never issued and too late to

1. BE INITIATED - THEN CCR 3326(a)(2)(3) prohibits such a letter to be retained in plaintiffs

2. C-File, given that the refusal to provide the rules violation is equivalent to a dismissal

3. of charges, defendants indefinate retention of letters policy constitutes an under

4. ground policy - not promulgated in compliance with the APA.

5. (c) FACTS PERTAINING TO LEGAL MAIL ATTORNEY CLIENT PRIVILEGE.

6. 126. Plaintiff is in the process of obtaining post conviction discovery pursuant to Cal. Pen.

7. Code 1054.9 The trial court appointed the post conviction assistance center to represent

8. plaintiff in those matters. Plaintiff has written his attorneys numerous times, and

9. prison officials logs books reflect that his attornies (Ralph. J. Novotney JR & Gigi

10. (Gordon) have written him.

11. 127. On Dec-07, plaintiff sent legal mail to his attorney Ralph J. Novotney at the post conv-

12. iction Assistance center. The letter was signed, processed and mailed as confidential legal mail.

13. However because plaintiff forgot to put the city on the address it was returned.

14. 128. _____ Defendant Bacci brought the letter to plaintiff, and told plaintiff he

15. was instructed by IGI to open and read plaintiffs letter. Plaintiff objected on the grounds

16. that it violated his attorney client privilege, and Bacci did not hold the rank of a captain

17. much less did he have a warent to read the letter.

18. 129. Bacci told plaintiff IGI told him to read it- so he was going to read it- when

19. plaintiff asked who from IGI told him - Bacci violated the injunction barring a code

20. of silence [Madrid] by refusing to disclose the name of the IGI official who instructed

21. Bacci to violate plaintiffs rights.-

22. 130. Plaintiff informed Bacci that "Mr Novotney" was his lawyer - and that the post

23. conviction center is a legitimate law firm- Bacci stated "I know hes a lawyer." I've

24. checked with the mail room but how do I know hes your lawyer" - plaintiff informed

25. Bacci that he can easily verify its his lawyer by making a phone call - and that

26. plaintiff has a right to correspond with any attorney confidentially, regardless of representation

27. 131. Bacci - stated he was still going to read the letter because plaintiff forgot to

28. put the name of the "city" on the address.- when plaintiff informed Bacci that a!

36

| PAGE NUMBER | DATE | SUBJECT |
|---|---|---|
| • | / / | |
| | | |

1  Simple CHECK will VERIFY THAT THE REST OF THE Address (ie POST CONVICTION ASSISTANCE

2  CENTER, 1950 SANTELLE Blvd. SUITE 310) CAN CONFIRM THAT THE LAW FIRM IS IN "Los Angeles"

3  WHERE PLAINTIFFS ATTORNEY (RALph Novotney) IS Employed. BACCI RESPONDED "I KNOW I'VE

4  Already CHECKED" BUT HE WAS STILL going TO Read PLAINTIFFS LETTER - PLAINTIFF REQUESTED

5  TO KNOW WHO inSTRUCTED HIM TO READ THE LETTER BACCi RESPONDED "I'll TAKE

6  FUl RESPONSibility". BACCI THEN deliberately Violated PLAINTIFFS ATTORNEY CliENT

7  privilege UNder THE 1ST, 4TH, ANd 14TH AMENds; CCR 3341, 3343, 3344: PEN. Code 2610(b)

8  BECAUSE HE opend & read PLAINTIFFS LETTER TO HIS ATTORNEY ENTIRELY WITHOUT A SEARCH WARRENT

9  NOR PENological JUSTIFICATION.

10  132. PLAINTIFF IS INFORMED ANd BELIEVES THAT THE MEMBERS OF IGI WHO inSTRUCTED BACCi

11  TO READ PLAINTIFFS LEGAL LETTER - WERE, WISE, PUENTE, COUNTESS, & BRANdON, PLAINTIFF IS iNFORMED

12  ANd BELIEVES THAT OFFICERS JOHNSON, ANd HAROLd OUT OF THE MAIL ROOM iNCOURAGED BACCi TO

13  READ THE LETTER BY STAMPING ON iT "[THIS] DOES NOT MEET THE CRITERIA FOR CONFIdENTIAL MAIl"

14  THUS THEY CAUSED ANd CONTRIBUTED TO THE CONSTITUTIONAL VIOLATIONS AllEGED HERE TO.

15  133. EVEN IF THE MISSING CITY ON THE ENVELope CALLED IN QUESTION THE Address, DEFENdANTS

16  KNEW, BACCi COULD NOT REAd IT BECAUSE THEY VERIFIEd ANd CONFIRMED iT BElonGed TO A LEGITIMATE

17  LAW FIRM IN Los Angeles WHERE "NOVOTNEY" WORKED, Additionally BACCi IS NOT A FACILITY

18  CAPTAIN. CCR 3145(b)(c)

19  134. DEFENdANTS, BACCi, WISE, PUENTE, COUNTESS, BRANdON, JOHNSON & HAROLd HAVE INFLICTED MENTAL

20  EMOTIONAL ANGUISH ON PLAINTIFF - PLAINTIFF CAN NO longER COMFETRALLY EXCERCISE HIS RIGHTS TO

21  discuss HIS CASE CONFIdENTIALLY WITH HIS ATTORNEY - BY pointing OUT STRATIGIES - deFENSES

22  THEORIES ET SEQ... WITH OUT WORRYING THAT deFENdANTS WILL INTRUDE ON HIS ATTORNEY

23  CliENT privilege & READ ANd disclose THE privilEGED INFORMATION - WHICH WILL THEN BE

24  USEd AGAINST HIM.

25       FACTS PERTAINING TO LETTER SWITCHING

26  135. PLAINTIFF HAS FILED NUMEROUS CHALLENGES AGAINST MAIL policies - VALidATIONS ET SEQ

27  AGAINST deFENdANTS, INCLUDING deFENdANTS PUENTE & COUNTLESS, All deFENdANTS ARE AWERE

28  OF PLAINTIFFS HISTORY OF CHALLENGING policies ET SEQ... Judicially ANd AdMINISTRATIVELY.

CAMBRIDGE®

136. ON FEB. 24-08 PLAINTIFF SENT A VERY PERSONAL LETTER TO HIS girlfriend DISCUSSING A VERY PERSONAL PROBLEM HIS girlfriend WAS HAVING WITH HIS EX WIFE & DAUGHTER, IN THE LETTER TO HIS girlfriend PLAINTIFF WAS "VENTING" AND ANGRY WITH HIS "EX-WIFE" AND MADE SEVERAL COMMENTS ABOUT HIS EX WIFE & ASSURED HIS girlfriend HE WAS GOING TO TELL HIS EX WIFE SOMETHING IN REGARDS TO THIS ISSUE.

137. ON FEB. 24-08 DEFENDANT HARMON COLLECTED THE LETTER & HE, BARNETT, PUENTE, & COUNTESS HELD & SCREENED THE LETTER, HOWEVER INSTEAD OF MAILING IT TO PLAINTIFFS girlfriend -THEY WAITED UNTIL PLAINTIFF WROTE TO HIS EX WIFE & DAUGHTER - AND THEN PLACED THE girlfriends LETTER IN THE EX WIFES / DAUGHTERS LETTER; AS CAN BE EXPECTED ONCE PLAINTIFFS EX-WIFE GOT THE LETTER - SHE READ THE COMMENTS MADE ABOUT HER, WAS FURIOUS & CUT OFF PLAINTIFFS COMMUNICATION WITH HIS DAUGHTER.

138. DEFENDANTS HAD NO PENOLOGICAL JUSTIFICATION IN SENDING THE LETTER TO PLAINTIFFS EX WIFE, THEY did IT SOLY TO RETALIATE AGAINST PLAINTIFF FOR HIS JAIL HOUSE LAWYERING IN VIOLATION OF THE FIRST AMENDMENT. - TO MALICIOUSLY & SADISTICALLY INFLICT MENTAL AND EMOTIONAL / PHYCHOLOGICAL DAMAGE ON PLAINTIFF IN VIOLATION OF THE 8TH AMENDS BY RUINING PLAINTIFFS RELATIONSHIP WITH HIS DAUGHTER CAUSING HIM STRESS, & EMOTIONAL ANGUISH, THEY ALSO VIOLATED PLAINTIFFS PRIVICY INTEREST UNDER CCR 3190:4TH AMENDS, AND HIS FIRST AMENDMENT RIGHTS TO CORRISPOND WITH HIS girlfriend.

FACTS PERTAINING TO SUPERVISORY OFFICIALS FAILURE TO CORRECT OR STOP CONSTITUTIONAL VIOLATIONS

139. PLAINTIFF FILED AN ADMINISTRATIVE APPEAL & PUT DEFENDANTS J. PEREZ, T. P. WAN, R. HALL KEN CLARK, M, JENSEN, AND GRANNIS ON NOTICE, THAT THEIR SUBORDINATES HAD AND WERE ILLEGALLY SEGRAGATING HIM, IN VIOLATION OF DUE PROCESS & PLAINTIFFS liberty INTERESTS (SEE PARA 6-18  )

140. PLAINTIFF FILED AN ADMINISTRATIVE APPEAL & PUT DEFENDANTS. MAY, RIVERA, K. ALLISON, R. GOMEZ CLARK, ALLEN, & GRANNIS, - THAT THEIR SUBORDINATES HAD EXCEED THE STATUTORY MAXIMUM INVES- TIGATIVE PERIOD - THAT PLAINTIFF WAS ILLEGALLY BEING SEGRAGATED IN VIOLATION OF HIS RIGHTS TO DUE PROCESS, AND WITH OUT THE REQUIRED ACTUAL CLASSIFICATION IN VIOLATION OF DUE PROCESS (SEE EX C p.100-114

150. PLAINTIFF FILED AN ADMINISTRATIVE APPEAL & PUT DEFENDANTS PINEDA, T. WAN, HALL, CLARK A.A READ, & GRANNIS ON NOTICE, THAT THEIR SUBORDINATES HAD VIOLATED PLAINTIFFS RIGHTS, BEFORE DURING AND AFTER THE VALIDATION PROCESS - THAT THEY HAD RETALIATED AGAINST PLAINTIFF FOR

CAMBRIDGE®

| PAGE NUMBER | DATE | SUBJECT |
|---|---|---|
| | / / | |
| | | |

1. HIS JAIL HOUSE LAWYER ACTIVITIES, THAT THEY HAD COMMITTED ACTS OF MISCONDUCT & WERE WITHHOLDING

2. PIVITOL EXCULPATORY EVIDENCE (SEE PARA 30-60 ), ON MAY 9-07 PLAINTIFF ALSO PUT DEFENDANTS

3. RUFF, BERIVER, AND FISHER ON NOTICE OF THESE ACTS OF MISCONDUCT & CONSTITUTIONAL VIOLATIONS (THIS)

4. 151. PLAINTIFF FILED TWO ADMINISTRATIVE APPEALS & PUT DEFENDANTS RIVERA, ALLISON, FISHER CLARK

5. GRANNIS & GOMEZ, ON NOTICE, THAT THEIR SUBORDINATES HAD BREACH A CONTRACT- WERE VIOLATING

6. DUE PROCESS BY HOLDING RUBBERSTAMP COMMITTEES,-THAT THEY ILLEGALLY IMPOSSED AN INDETERMINATE

7. SHU TERM WITH OUT AUTHORITY - IN VIOLATION OF DUE PROCESS (EX G 174-87, H 188)

8. 152. PLAINTIFF HAS FILED SEVERAL APPEALS, / COMPLAINTS PUTTING DEFENDANT WISE, SILVA, & HOPE/

9. ON NOTICES WITH RESPECT TO UNCONSTITUTIONAL MAIL POLICIES & PRACTICESS BY THEIR SUBORDINATES.

10. (SEE PARA 118-38 ANTE)

11. 153. DISPITE BEING PUT ON NOTICE THAT PLAINTIFFS CONSTITUTIONAL RIGHTS WERE BEING VIOLATED AS

12. ALLEGED IN THIS COMPLAINT EACH SUPERVISORY OFFICIAL NAMED HERE TO (PARA 139-152) FAILED TO ADDIQUATELY

13. INVESTIGATE AND ACT TO STOP THE CONSTITUTIONAL VIOLATIONS TO WHICH THEY HAD NOTICE THUS THEY

14. CONTRIBUTED TO THEM.

### IV LEGAL CLAIMS

15. ### FIRST CAUSE OF ACTION

16. (FEDERAL DUE PROCESS- OPPORTUNITY TO PRESENT VIEWS TO DECISION MAKER

17. PRIOR TO DECISION TO TRANSFER PLAINTIFF TO Ad-SEG)

18. 154. PLAINTIFF REALLEGES AND INCORPORATES BY REFERANCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

19. 155. DEFENDANT QUINONEZ VIOLATED PLAINTIFFS RIGHTS TO DUE PROCESS, BY DEPRIVING HIM ANY

20. OPPORTUNITY TO BE HEARD AND PRESENT HIS VIEWS TO QUINONEZ PRIOR HIS DECISION TO SEGRAGATE

21. PLAINTIFF, QUINONEZ HAD MADE THE DECISION TO SEGRAGATE PLAINTIFF, AND ORDERED THE SEGRAGATION

22. BEFORE PLAINTIFF WAS EVER HEARD, PLAINTIFF WAS IN Ad-SEG, BEFORE QUINONEZ EVEN SPOKE TO HIM

23. ### SECOND CAUSE OF ACTION

24. (FEDERAL DUE PROCESS - RIGHT TO A FAIR NOTICE)

25. 156. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

26. 157. DEFENDANT DIAZ & QUINONEZ VIOLATED PLAINTIFFS RIGHTS TO DUE PROCESS BY FAILING TO PROVIDE

27. PLAINTIFF OF A "NOTICE" OF CHARGES FORMING THE BASES OF THE INITIAL SEGRAGATION-SO THAT

28. PLAINTIFF CAN PREPAIR A DEFENSE. THE NOTICE MEARLY STATED INVESTIGATIONS-WITH OUT NOTIFYING

CAMBRIDGE®

39

| PAGE NUMBER | DATE | SUBJECT |
|---|---|---|
| | / / | |
| | | |

1 PLAINTIFF WHAT THE INVESTIGATION WAS FOR.

2              THIRD CAUSE OF ACTION

3 (FEDERAL DUE PROCESS- VAGUE, OVER BROAD NOTICE DEPRIVES RIGHT TO PREPARE FOR ICC)

4 158. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

5 159. DEFENDANTS, QUINONEZ, DIAS, WARD & GARCIA VIOLATED PLAINTIFFS RIGHTS TO DUE PROCESS, BY

6 REFUSING TO PROVIDE PLAINTIFF AN ADIQUATE NOTICE OF CHARGES, AND EVIDENCE USED TO RETAIN HIM,

7 24 HOURS PRIOR TO THE ICC HEARING SO THAT PLAINTIFF CAN PREPAIR A DEFENSE. THE NOTICE PROVIDED

8 PLAINTIFF WAS UNCONSTITUTIONALLY VAGUE, & DEFENDANT DIAS AGREED (SEE PAR 7 SUPRA) IT MEARLY

9 STATED "INVESTIGATIONS" WITHOUT ELABORATING WHAT THE INVESTIGATION WAS FOR (EX B. p. 82) PLAINTIFF

10 WAS NOT NOTIFIED WHAT RULE HE BROKE- IN ORDER TO PREPAIR AND MARSHAL OUT THE FACTS AT ICC.

11 THE FACT THAT HE WAS FINALLY NOTIFIED AT THE HEARING IS IRRELEVENT AS DUE PROCESS REQUIRED

12 THE NOTICE TO BE PROVIDED BEFORE THE HEARING.

13              4TH CAUSE OF ACTION.

14 (FEDERAL DUE PROCESS - RIGHT TO EXAMINATION OF EVIDENCE USED TO SEGRAGATE)

15 160. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

16 161. DEFENDANTS QUINONEZ, DIAZ, WARD & GARCIA VIOLATED PLAINTIFFS RIGHTS TO DUE PROCESS BY

17 REFUSING TO PROVIDE HIM WITH ALL EVIDENCE BEING USED TO SEGRAGATE & INVESTIGATE PLAINTIFF FOR

18 A PROPER INVESTIGATION & DEFENSE, INCLUDING ALL RELEVANT & IMPORTANT DOCUMENTS CENTRAL TO THE

19 CONSTRUCTION OF A DEFENSE, AND ALL EVIDENCE BEING USED AGAINST PLAINTIFF INCLUDING INFORMATION

20 PLAINTIFF ALLEGEDLY WROTE CCR 3315 ET SEQ.- 3321 ET SEQ, 3378 ET SEQ.- SO THAT PLAINTIFF CAN

21 RESPOND TO IT. QUINONEZ SPECIFICALLY STATED PLAINTIFF WILL NOT SEE ANYTHING UNTIL AFTER HIS

22 INVESTIGATION THUS HE DELIBERATELY VIOLATED DUE PROCESS

23              5TH CAUSE OF ACTION

24 (FEDERAL DUE PROCESS- LIBERTY INTERESTS RETENTION BASED ON UNRELIABLE INSUFFICIENT EVIDENCE)

25 162. PLAINTIFF REALLEGES AND INCORPORATES BY REFEFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

26 163. DEFENDANTS QUINONEZ, DIAZ, WARD & GARCIA, & D. OFTEDAHL, DECISION TO SEGRAGATE PLAINTIFF FOR

27 SIX MONTHS VIOLATED DUE PROCESS, BECAUSE THEIR DECISION WAS BASED ON INSUFFICIENT EVIDENCE,

28 THE FACT THAT THEY MEARLY SEGRAGATED PLAINTIFF TO "INVESTIGATE" HIM AND SEE IF THEY

CAMBRIDGE®

40

| PAGE NUMBER | DATE | SUBJECT |
|---|---|---|
| | / / | |
| | | |

1. could find something to validate him on establishes - that at the time of their decision, the

2. evidence was insufficient.[17] Additionally they violated plaintiffs liberty interests which

3. require that prior to segregating an inmate for validation, prison officials must FIRST

4. have first hand information - which is reliable - that plaintiff has knowingly committed.

5. illegal acts of misconduct on behalf of the gang CCR 3000, 3023, 3321(b). 3378(c)(1)(2). 3378(c)

6. (8)(H). 3378(f). Here at the time of the segregation defendants knew they had no such

7. evidence (SEE FOOT NOTE 2 Below) Diaz conceed plaintiffs name had not even came up.

**6TH CAUSE OF ACTION**

(14TH AMENDMENT - LIBERTY INTEREST - DUE PROCESS)

10. 164. plaintiff realeges & incorporates by reference all previous paragraphs of this complaint.

11. 165. DEFENDANTS QUINONEZ, DIAZ, WARD, GARCIA & OFTEdAHAL, VIolATEd plaintiffs liberty interests

12. BY SEGREGATING HIM, THEY new THEY had no evidence THAT plaintiff WAS A SECURITY THREAT,

13. BUT rather than releasing plaintiff in compliance with CCR 3335, 3336, 3339, 3334 1.5(c)(3)

14. THEY ordered his segregation for six months, - simply BECAUSE they did not want plaintiff

15. on their yard which violates due process as the segregation was a pretext for solitary

16. confinement.

**7TH CAUSE OF ACTION**

(14TH AMENDMENT liberty INTEREST DUE process)

19. 166. plaintiff realeges & incorporates by reference all previous paragraphs of this complaint.

20. 167. DEFENDANTS QUINONEZ, DIAZ, WARD, GARCIA & OFTEdAHAL violated plaintiffs liberty interest

21. in CCR 3341.5(c)(5) BY ordering and segregating plaintiff for six months for investigations,

22. when CCR 3341.5(c)(5) mandated that defendants cease investigations after 12 months

23. and that all investigations be conducted in the 9.p (c.hid) Here three years of investigat-

24. ions confirmed plaintiff was inactive - thus defendants 6 month additional investigation.

25. exceeded the 12 month statutory maximum. - Additionally the liberty interest mandated

26.

27. 17. Indeed Quinonez admitted defendants knew they had no evidence forming the bases of the segregation - that the only reason plaintiff was segregated was because someone simply did not want him on their yard - thus they circumvented the requirement of having evidence first - when they segregated plaintiff to look for evidence.

41

| PAGE NUMBER | DATE | SUBJECT |
|---|---|---|
| . | / / | |
| | | |

1. THAT THE INVESTIGATION BE CONDUCTED WHILE PLAINTIFF IS IN THE G.P - HERE DEFENDANTS ORDERED

2. THAT IT BE CONDUCTED IN THE ASU.

3. ### 8TH CAUSE OF ACTION.

4. (14TH AMENDMENT liberty INTERESTS - DUE PROCESS)

5. 168. PLAINTIFF REALEGES & INCORPORATES by REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

6. 169. DEFENDANTS QUINONEZ, DIAZ, WARD, GARCIA & OETEDAHAL VIOLATED PLAINTIFFS liberty INTEREST

7. IN CCR 3378(6)(X9)(h) WHICH MANDATES THAT PRIOR TO SEGREGATION OF INACTIVE STATUS INMATES, THAT

8. THE COMMITTEE FIRST HAVE ONE RELIABLE SOURCE OF gang ACTIVITY - AND THAT THE OCS FIRST

9. DESIGNATE PLAINTIFF AS "CURRENTLY ACTIVE" - HERE THERE WAS NO EVIDENCE OF gang ATIVITY,

10. NOR HAD THE OCS RESTORED PLAINTIFFS CURRENT ACTIVE STATUS, YET DISPITE THE LACK OF

11. EVIDENCE & LACK OF CURRENT ACTIVE STATUS DEFENDANTS SEGRAGATED PLAINTIFF WHO REMAINED

12. ON INACTIVE STATUS - SIMPLY BECAUSE QUINONEZ "HAD A HARD ON FOR" HIM - AND "SOMEONE

13. didn't want [PLAINTIFF] ON THEIR YARD" ESTABLISHING THAT THE SEGREGATION WAS A PRETEXT

14. FOR SOLITARY CONFINEMENT.

15. ### (9TH CAUSE OF ACTION)

16. (1ST AMENDMENT RIGHT TO PETITION FOR REDRESS OF griviance; 14TH AMENDS liberty INTEREST)

17. 170. PLAINTIFF REALEGES & INCORPORATES by REFERANCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

18. 171. DEFENDANT DIAZ VIOLATED PLAINTIFFS FIRST AMENDMENT RIGHTS TO PETITION FOR REDRESS OF

19. grievance, AND PLAINTIFFS liberty INTEREST IN APPEALING ALL ADVERSE ACTIONS CCR 3084.1, BY

20. THROWING AWAY PLAINTIFFS administrative APPEALS CHALLENGING, HIS QUINONEZ, AND ICC, CSR'S

21. ILLEGAL ACTIONS (SEE CAUSES OF ACTION 1-8 ANTE). DIAZ THROUGH AWAY THESE APPEALS KNOWING

22. THAT EXHAUSTION IS A PREREQUIST TO COURT ACCESS.

23. ### 10TH CAUSE OF ACTION

24. (14TH AMENDMENT liberty INTEREST DUE PROCESS)

25. 172. PLAINTIFF REALEGES & INCORPORATES by REFERANCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

26. 173. DEFENDANTS DIAZ, WARD GARCIA        B. PETERSON, W. POOLE, P. MENDEZ, RIVERA,

27. HANSON, JIMMY CLARK HUTCHINS, LAWRENCE, REYNOSO, & ELLIT VIOLATED PLAINTIFFS liberty

28. INTERESTS IN CCR 3341.5(C)(5); 3375 et SEQ... 3378(C)(7) WHICH REQUIRED AND MANDATED AN

42

| PAGE NUMBER | / | / | SUBJECT |
| --- | --- | --- | --- |
| . | | | |
| | | | |

1  ANNUAL CLASSIFICATION HEARING ON NOV. 14·06, AT WHICH TIME THEY WERE TO REVIEW PLAINTIFFS

2  INACTIVE STATUS VALIDATION & ORDER THAT ALL INVESTIGATIONS INTO PLAINTIFFS GANG STATUS CEASE,

3  AND THAT PLAINTIFF BE TRANSFERED TO A 270 LEVEL DESIGN. (ibid) THEY'RE FAILURE TO DO SO

4  RESULTED IN THE ILLEGAL SEGREGATION - EXCESSIVE INVESTIGATION & CAUSED/CONTRIBUTED TO

5  THE ILLEGAL VALIDATION.

6                    11TH CAUSE OF ACTION

7           (8TH AMENDMENT - DELIBERATE INDIFFERANCE EXCESSIVE FORCE)

8  174. PLAINTIFF REALEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

9  175. PEREZ, PAZ, DALEY, CLAUSINGS MUÑOS, & OMOS MORSE VIOLATED PLAINTIFFS EIGHT AMENDMENT RIGHTS

10 BY THEIR USE OF EXCESSIVE FORCE - NAMELY A HIGH POWERED CHEMICAL AGENT (WHICH THEY

11 SPRAYED ON PLAINTIFF AND HIS ENTIRE CELL) TO RETREVE A SIMPLY "PLASTIC TRAY." THERE WAS NO

12 PENOLOGICAL JUSTIFICATION FOR THE USE OF SUCH EXCESSIVE FORCE, DEFENDANTS KNEW PLAINTIFF

13 WAS SINGLE CELLED, WAS SECURELY IN HIS CELL AND INCAPABLE OF ESCAPE, HARMING ANY ONE,

14 CAUSING RIOTS, NOR DAMAGING VALUABLE STATE PROPERTY. NEVERTHELESS DEFENDANTS WERE

15 DELIBERATELY INDIFFERENT TO PLAINTIFFS PHYSICAL AND MENTAL WELL BEING BY UTILIZING SUCH

16 EXCESSIVE FORCE, SOLY TO INFLICT PAIN & MENTAL PHYSICAL ANGUISH AS PLAINTIFF EXPERIANCED

17 AN UNBEARABLE BURNY SENSATION IN HIS EYES, LUNGS, GENITALS - AND REMANDER OF HIS BODY.

18 176. DEFENDANTS, HUTCHINS, RAYNOSO HACKER & ROBERSON CAUSED AND CONTRIBUTED TO THE CONE-

19 TITUTIONAL VIOLATION ALLEGED HERE TO GIVEN THAT THEY ORDERED THE EXCESSIVE FORCE & INFLICT-

20 ION OF UNNECESSARY PAIN, KNOWING PLAINTIFF WAS SINGLE CELLED, AND WAS NOT TRYING TO

21 ESCAPE, NOR COULD HE HARM ANY ONE, NOR CAUSE A RIOT NOR DAMAGE VALUABLE PROPERTY.

22 177. DEFENDANTS, QUINONEZ & DIAZ CONTRIBUTED AND CAUSED THESE CONSTITUTIONAL VIOLATIONS

23 BECAUSE HAD THEY NOT ILLEGALLY HAD PLAINTIFF SEGRAGATED (SEE CAUSES OF ACTION 1-10 ANTE)

24 PLAINTIFF WOULD NOT HAVE HAD EXCESSIVE FORCE USED AGAINST HIM IN ASU - AND SUFFERED

25 THE UNWANTON, UNNECESSARY INFLICTION OF PHYSICAL & PHYCHOLOGICAL PAIN ALLEGED HERETO.

26                    12TH CAUSE OF ACTION

27      ( 8TH AMENDMENT - DELIBERATE INDIFFERANCE, FAILURE To TIMELY REMOVE FROM CELL)

28 176. PLAINTIFF REALEGES & INCORPORATES BY REFERANCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT

177. MORSE, PAZ, DALEY, CLAUSINGS, MUÑOS, OMOS, AND PEREZ VIOLATED PLAINTIFFS 8TH AMENDMENT RIGHT, BECAUSE ONCE PLAINTIFF TURNED OVER THE FOOD TRAY VOLUNTARY STRIPPED DOWN, AND OFFERED TO BE RESTRAINED THERE WAS NO PENOLOGICAL JUSTIFICATION FOR DEFENDANTS-TO TAKE THEIR TIME IN REMOVING PLAINTIFF FROM HIS CELL BY INSISTING THAT EACH BODY PART BE REVIEWED SLOWLY-AND IN A CERTAIN ORDER ("RIGHT FOOT NOT LEFT FOOT"-WHICH MADE NO DIFFERENCE) AND ONCE HAND CUFFED THERE WAS NO PENOLOGICAL JUSTIFICATION IN WAITING UNTIL PLAINTIFF WAS PUT IN LEY RESTRAINTS TO REMOVE HIM FROM THE CELL, DEFENDANTS WERE SOLY DOING EVERYTHING IN THEIR POWER TO PROLONG THE REMOVAL OF PLAINTIFF FROM HIS CELL-IN ORDER TO PUNISH PLAINTIFF, BY EXACERBATING INFLICTION OF MENTAL EMOTIONAL, AND PHYSICAL PAIN & SUFFERING & HUMILIATION.

178. DEFENDANTS, HUTCHINS, RAYNOSO, HACKER & ROBERSON, CONTRIBUTED TO THESE CONSTITUTIONAL VIOLATIONS BY REFUSING/FAILING TO ORDER THAT THEIR SUBORDINATES TO IMMEDIATELY REMOVE PLAINTIFF FROM THE CELL, GIVEN THAT PROLONGING HIS INFLICTION OF PAIN & HUMILIATION WAS NOT NECESSARY (SEE PARA 21-25 AND 177)

179. DEFENDANTS, QUINONEZ & DIAZ CONTRIBUTED & CAUSED THESE CONSTITUTIONAL VIOLATIONS, BECAUSE HAD THEY NOT ILLEGALLY SEGREGATED PLAINTIFF (SEE CAUSES OF ACTION 1-10 ANTE) PLAINTIFF WOULD NOT HAVE SUFFERED THE UNWANTON, UNNECESSARY INFLICTION OF HUMILIATION, PHYSICAL & PHYCHOLOGICAL PAIN ALLEGED HERETO.

## 13TH CAUSE OF ACTION

(8TH AMENDMENT-DELIBERATE INDIFFERENCE TO HAZZARDOUS LIVING CONDITIONS)

180. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

181. MORSE, PEREZ, DALEY, CLAUSINGS, MUÑOS, OMOS, PEREZ, PAZ, HUTCHINS, RAYNOSO, HACKER & ROBERSON VIOLATED PLAINTIFFS 8TH AMENDMENT RIGHTS, BECAUSE THEY KNEW PLAINTIFFS CELL WAS DRENCHED WITH THE CHEMICAL AGENT, YET RATHER THAN FIRST DECONTAMINATING PLAINTIFFS CELL OR MOVING PLAINTIFF INTO A CELL WHICH WAS NOT CONTAMINATED-THEY DELIBERATELY SUBJECTED PLAINTIFF TO HAZZARDOUS LIVING CONDITIONS, BY PLACING PLAINTIFF IN THE SAME CELL WHICH WAS FRESHLY DRENCHED WITH THE CHEMICAL AGENT, WHICH REPEATED AND PROLONGED PLAINTIFFS MENTAL, EMOTIONAL & PHYSICAL PAIN AND SUFFERING - PLAINTIFF WAS BURNING FROM HEAD TO TOE, PLAINTIFF WAS BREATHING THOSE CHEMICALS FOR DAYS AND EXPERIANCING PAIN, WITHOUT PENOLOGICAL JUSTIFICATION, EXACERBATING PLAINTIFFS PAIN WAS THAT DEFENDANTS-[SOLY TO INFLICT PAIN] REFUSED TO PROVIDE PLAINTIFF CLEANING MATERIALS (SEE PARA 184-86 INFRA) THIS AFTER THE AGENT DRIED IT TURNED TO DUST, WHICH CAUSED PLAINTIFFS BODY TO BURN MORE, AND INFLICTED PAIN ON PLAINTIFFS

44

1  lungs & caused plaintiff to choke for almost 10 days, thus threatening his mental & physical well being.

2  182. Defendants all new plaintiff would be exposed to the dangerous chemical agent again & be subjected

3  to unnecessary infliction of pain, if he was placed back in his cell with out it being decontaminated,

4  nevertheless they were deliberately indifferent to plaintiffs mental & physical well being by putting

5  plaintiff back in that cell without decontaminating it, which also risked plaintiffs health & violated

6  ordinary standards of decency, as discribed in paragraphs 18-29 supra

7  183. Defendants Quinonez & Diaz caused & contributed to these constitutional violations, given that

8  had they not illegally segragated plaintiff as alleged in paragraphs 6 - 18    supra, these constitu-

9  tional violations & infliction of pain would not have occured.

10                    14TH CAUSE OF ACTION

11        (8TH Amendment - Deliberate indifference to lifes basic necessities)

12  184 Plaintiff incorporates by reference & realleyes all previous paragraphs of this complaint,

13  185 — Morse, Daley, Clausings, Muños, Omos, Perez, Paz, Hutchins, Raynoso, Hacker & Roberson, violated

14  plaintiffs 8TH Amendment rights by their deliberate indifference to plaintiffs basic needs of adiquate

15  sanitation, warmth, bedding, a matress, toilet paper, soap, toothpaist, tooth brush, changes of cloths

16  shoes & plaintiffs rights to be free from the unnecessary & wanton infliction of pain as discribed in

17  para 18-29 supra. Defendants exacerbated the infliction of physical, mental & emotional pain &

18  anguish by subjecting plaintiff to sleep in a chemichally contaminated cell, wearing the same

19  contaminated underwear which caused further pain to his genitals, Defendants refused to even

20  provide plaintiff with sanitation supplies so that he can decontaminate the cell himself nor soap

21  so he can wash the dangerous, painful agent off of his body, & no blankets sheets & a matress to sleep

22  in & cover himself at night & no shoes so he does not have to walk on the chemical agent, these

23  deprivations served no penological purpose but were soly ment to punish, based on defendants policy

24  of depriving lifes basic necessities unless gradually re-earned within a ten day span. these

25  conditions in combination deprived plaintiff of lifes basic necessities & constituted a complete dis-

26  regard for plaintiffs mental emotional, & physical well being in violation of ordinary standards of decency.

27  187. Quiñnnez & Diaz caused & contributed to these deprivations/violations given that had they not

28  illegally segragated plaintiff (see para 6 - 18 ante) this wouldnt have happened to plaintiff.

                              43

15TH CAUSE OF ACTION

(8TH AMENDMENT EXCESSIVE FORCE)

185. PLAINTIFF REALEGES AND INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT,

186. DEFENDANT HOLMES VIOLATED PLAINTIFFS 8TH AMENDMENT RIGHTS BY SQUEEZING PLAINTIFFS HAND CUFFS, SLAMING PLAINTIFF AGAINST SEVERAL WALLS AND AGAINST A METAL SHELF - AND THEN PRESSING PLAINTIFF AGAINST IT, PLAINTIFF WAS IN HAND CUFFS HE POSED NO SECURITY THREAT - THE FACT THAT PLAINTIFF TOLD HOLMES "I'M NOT TALKING TO YOU, THIS IS BETWEEN ME AND QUINONEZ" WAS NOT A PENOLOGICAL JUSTIFICATION TO ASSULT PLAINTIFF, THE EXCESSIVE FORCE WAS SOLY USED TO CAUSE THE INFLICTION OF PHYSICAL AND MENTAL/EMOTIONAL PAIN AGAINST PLAINTIFF, QUINONEZ IS EQUALLY LIABLE & CONTRIBUTED TO THE ASSULT, BECAUSE HE WAS A SUPERVISORY OFFICIAL WHO WAS PRESENT & DID NOTHING TO STOP THE CONSTITUTIONAL VIOLATION,

16TH CAUSE OF ACTION

(8TH AMENDMENT - CONSPIRACY TO KILL OR HAVE PLAINTIFF ASSULTED)

187. PLAINTIFF REALEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

188. DEFENDANTS HOLMES, & QUINONEZ DID CONSPIRE TO HAVE PLAINTIFF KILLED OR ASSULTED BY FALSELY STATING IN A CHRONO THAT PLAINTIFF AGREED TO COOPERATE WITH THE IGI UNIT DURING THE INTERVIEW, KNOWING THAT SUCH A STATEMENT COULD BE CONSTRUED BY INMATES/STAFF AS "SNITCHING" - THUS SUBJECTING PLAINTIFF TO DEATH OR ASSULT. THUS HOLMES & QUINONEZ VIOLATED PLAINTIFFS 8TH AMENDMENT RIGHS AND 42 U.S.C. 1983 †1985.

189. DEFENDANTS SMITH, PINEDA, WAN, RIVERA & CLARK CONTRIBUTED TO THESE CONSTITUTIONAL VIOLATIONS AND WERE A PART OF THIS CONSPIRACY - BY THWARTING AN INVESTIGATION, AND COVERING UP THE EXCESSIVE FORCE (SEE PAR 185-86) AND CONSPIRACY TO KILL OR HAVE PLAINTIFF ASSULTED - WHEN THEY REFUSED TO PROCESS PLAINTIFFS APPEAL, TO COVER UP FOR THEIR SUBORDINATES ACTIONS, WHICH CAUSED THE CHRONO TO REMAIN IN PLAINTIFFS C-FILE KNOWING THE HARM IT COULD CAUSE PLAINTIFF.

17TH CAUSE OF ACTION

(14TH AMENDMENT LIBERTY INTEREST - 1ST AMENDMENT & MADRID INJUNCTION)

189. PLAINTIFF REALEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

190. DEFENDANTS SMITH, PINEDA, WAN & CLARK, VIOLATED PLAINTIFFS LIBERTY INTERESTS CCR 3084.1, AND THE MADRID INJUNCTION, BARRING THE CODE OF SILENCE, THEY KNEW THAT THE "USE OF EXCESSIVE FORCE BY HOLMES", QUINONEZ" FAILURE TO ACT, "QUINONEZ & HOLMES "CONSPIRACY TO KILL/HAVE PLAINTIFF ASSULTED" & THEIR "PLACEMENT OF FALSE PREJUDICIAL INFORMATION IN THE VALIDATION CHRONO" - WERE ADVERSE

46

ACTIONS & HAD NOT BEEN RAISED IN ANY DUPLICATIVE APPEAL BY PLAINTIFF. THEY LABLED IT AS SUCH IN ORDER TO VIOLATE PLAINTIFFS LIBERTY INTERESTS IN APPEALING ADVERSE ACTIONS CCR 3084.1, HIS FIRST AMENDMENT RIGHTS TO PETITION FOR REDRESS OF GRIEVIANCES — AND TO COVER UP ALLEGATIONS OF OFFICER MISCONDUCT AS PART OF A WIDELY KNOWN & ENFORCED CODE OF SILENCE - IN VIOLATION OF THE MADRID INJUNCTION. DEFENDANTS KNOW THAT WHEN THEY DO NOT PROCESS SUCH APPEALS- ALLEGATIONS OF OFFICER MISCONDUCT GO UNREPORTED, UNDOCUMENTED UNIVESTIGATED & THE OFFICERS GET AWAY WITH IT.

### 18TH CAUSE OF ACTION

#### (liberty interest - underground code of silence)

191. PLAINTIFF INCORPORATES & REALLEGES ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

192. DEFENDANTS SMITH, PINEDA, WAN & CLARK HAVE VIOLATED PLAINTIFFS LIBERTY INTEREST BY ENFORCING THEIR SYSTEMATIC CODE OF SILENCE ON PLAINTIFF TO COVER UP OFFICER MISCONDUCT (SEE PARA 189-90 ANTE). THIS POLICY WAS ENFORCED WITH OUT COMPLYING WITH THE MANDATORY PROVISIONS OF THE APA SEE PEN.CODE 5058; GOV.CODES 11340.5 AND 11342(g).

### 19TH CAUSE OF ACTION

#### (14TH AMENDMENT DUE PROCESS - LIBERTY INTEREST RIGHT TO NOTICE)

193. PLAINTIFF INCORPORATES & REALLEGES ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

194. DEFENDANTS HOLMES & QUINONEZ VIOLATED PLAINTIFFS RIGHTS TO DUE PROCESS & LIBERTY INTEREST BY REFUSING TO PROVIDE PLAINTIFF A FAIR NOTICE & DISCLOSURE OF ALL EVIDENCE ...... 24 HOURS PRIOR TO THE VALIDATION HEARING, TO PREPAIR A DEFENSE. DEFENDANTS WAITED UNTIL THE HEARING TO INFORM PLAINTIFF THAT THE PHONE BOOK WAS FOUND ON A PRISON PLAINTIFF HAS NEVER BEEN TOO, THAT THEY DID NOT KNOW HOW LONG SANSONE HAD PLAINTIFFS INFORMATION FOR, WHETHER PLAINTIFF GAVE IT TO SANSONE, AS FOR ITEM 2, PLAINTIFF WAS NOT NOTIFIED UNTIL THE HEARING THAT THE LETTER DISCRIBED (EX E. 144) DID NOT EXIST, BUT RATHER THAT THE BASES OF THIS ITEM WAS WHAT AN INFORMANT TOLD THEM, UNTIL THE HEARING PLAINTIFF WAS LEAD TO BELIEVE DEFENDANTS HAD A LETTER - HE WAS EVEN SHOWN AN EXTRANEOUS LETTER. THUS PLAINTIFF WAS DEPRIVED HIS DUE PROCESS & LIBERTY INTEREST CCR 3378(c)(6)(A)-(D) RIGHTS TO NOTICE & TO PREPAIR A DEFENSE. THE FACT PLAINTIFF ATTEMPTED TO PRESENT A DEFENSE ONCE NOTIFIED IS IRRELEVANT, QUININEZ ENDED THE HEARING EMEDIATELY & PLAINTIFF WAS ENTITLED TO A 24 HOUR ADVANCED NOTICE.

47

## 20TH CAUSE OF ACTION

### (14TH AMENDMENT - DUE PROCESS liberty INTEREST)

195. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE All PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

196. DEFENDANTS QUINONEZ & HOLMES DEPRIVED PLAINTIFF OF HIS RIGHTS TO DUE PROCESS & liberty INTERESTS UNDER CCR 3321(e)(3)(B); 3378(c)(6)(B)(C), 3378(c)(8)(C)(G)(H), BY REFUSING TO DISCLOSE ALL EXCULPATORY & ALL INFORMATION WHICH DOES NOT JEAPORDIZE INSTITUTIONAL SECURITY FOR A DEFENSE, BY FAILING TO DISCLOSE WHEN SANSONE WAS VALIDATED - HOW LONG HE HAD PLAINTIFFS INFORMATION - ALL EVIDENCE PLAINTIFF HAD NEVER BEEN AROUND HIM - A COPY OF THE PHONE BOOK - THE ALLEGED DATE OF WHEN PLAINTIFF WROTE THE LETTER - WHETHER THE INFORMANT ACTUALLY SEEN THE LETTER - OR HAD THE CAPPABILITY OF SEEING IT - WHETHER HE SIMPLY HEARD ABOUT IT & PROVIDED HEARSAY - AS TO THE UNRELATED LETTER - A COPY OF IT, THE DATE IT WAS INTERCEPTED/WRITTEN, WHO WAS IT INTERCEPTED FROM - A COPY OF THE ENVELOPE IT WAS SENT IN & WHOS NAME WERE ON THE ENVELOPE & THE RELATIONSHIP OF THE SENDER & ADDRESSEE. DEFENDANTS KNEW THAT SUCH EVIDENCE WAS EXCULPATORY, & CONTRADICTED THE INFORMANT WHOSE STATEMENTS CANNOT BE ACCEPTED WITHOUT CORROBORATION.

197. DEFENDANTS KNEW THAT THE PHONE BOOK & LETTER DID NOT THREATEN INSTITUTIONAL SECURITY IF DISCLOSED OTHERWISE THEY WOULD NOT HAVE SHOWED IT TO PLAINTIFF, DEFENDANTS VIOLATED PLAINTIFFS liberty INTEREST BY DESIGNATING IT CONFIDENTIAL WITH OUT HOLDING THE RANK OF CAPTAIN CCR 3321(d)(2)

## 21ST CAUSE OF ACTION

### (14TH AMENDS - liberty INTERESTS)

198 PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE All PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

199. DEFENDANTS HOLMES & QUINONEZ VIOLATED PLAINTIFFS liberty INTEREST BY REFUSING TO DOCUMENT & SUBMIT PLAINTIFFS VIEWS TO THE OCS WITH THE VALIDATION PACKAGE & PROVIDE PLAINTIFF COPIES OF ALL EVIDENCE SUBMITTED - WITH A 14 DAY ADVANCED NOTICE PRIOR TO SUBMISSION AS IS MANDATED CCR 3378 (C)(6)(A)(2). DEFENDANTS WARD, RIVERA, REYNOSO, HACKER, ELLIOT, MAY, LAURANCE SELVY, & FEIGEN CONTRIBUTED TO THESE CONSTITUTIONAL VIOLATIONS BECAUSE PLAINTIFF PROVIDED THEM NOTICE OF IGI'S OMISSIONS & CONSTITUTIONAL VIOLATIONS (EX F. 154-72) AND THEY FAILED TO ACT & CURE THESE DEFICIANCIES BY RETURNING THE ITEM BACK TO IGI FOR REINVESTIGATION IN COMPLIANCE WITH PLAINTIFFS liberty INTEREST UNDER CCR 3378(c)(7).

## 22nd CAUSE OF ACTION

11. THE SIMPLY SUBMITTED THEIR OWN VIEWS WHICH WERE FALSE MISLEADING - AND DEPRIVED PLAINTIFF OF HIS RIGHTS TO A NOTICE - HIS RIGHTS TO A DEFENSE & RIGHTS TO AN IMPARTIAL FACTFINDER

48

(1ST AMENDS - JAIL HOUSE LAWYER ACTIVITIES)

1  200. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

2  201. DEFENDANTS, DIAZ, QUIÑONEZ, HOLMES, BERVIER, FISHER & RUFF HAVE VIOLATED PLAINTIFFS 1ST AMENDS.

3  RIGHTS IN THAT HIS VALIDATION & CONFINEMENT IN THE SHU IS BASED WHOLLY OR IN PART UPON PLAINTIFFS

4  LEGAL & LEGITIMATE JAIL HOUSE LAWYER ACTIVITIES RELATED TO & IN THE FURTHERANCE OF PROVIDING LEGAL

5  ASSISTANCE, TO OTHER PRISONERS, IN THAT SAID JAIL HOUSE LAWYER ACTIVITIES DID NOT CONSIST OF & WERE

6  NOT IN THE FURTHERANCE OF ANY ILLEGAL PRISON GANG ACTIVITY WHATSOEVER. PLAINTIFFS VALIDATION/SHU

7  PLACEMENT ON THIS BASES IS NOT REASONABLY RELATED TO ANY LEGITIMATE PENOLOGICAL INTEREST.

8  ## 23RD CAUSE OF ACTION

9  (FIRST AMENDMENT - RETALIATION)

10  202. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

11  203. DEFENDANTS, DIAZ, QUIÑONEZ, HOLMES HAVE VIOLATED PLAINTIFFS 1ST AMENDMENT RIGHTS IN THAT

12  HIS VALIDATION & SEGRAGATION CONSTITUTES RETALIATORY ACTION TAKEN AGAINST PLAINTIFF FOR THE EXCERCISE

13  OF HIS CONSTITUTIONALLY PROTECTED RIGHT TO ENGAGE IN LEGAL & LEGITIMATE JAIL HOUSE LAWYER ACTIVITIES

14  RELATED TO & IN THE FURTHERANCE OF PROVIDING LEGAL ASSISTANCE TO PRISONERS, WHERE SUCH ASSOCIATIONS

15  [JAIL HOUSE LAWYERING] WERE NOT FOR THE PURPOSE OF ENGAGING IN OR FURTHERING ANY ILLEGAL PRISON GANG

16  ACTIVITY WHATSO EVER. THIS RETALIATORY ACTION DID NOT ADVANCE LEGITIMATE PENOLOGICAL GOALS &

17  WAS NOT TAILORED NARROWLY ENOUGH TO ACHIEVE SUCH GOALS.

18  ## 24TH CAUSE OF ACTION

19  (14TH AMENDS - LIBERTY INTEREST & CONSPIRACY)

20  205. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT

21  206. DEFENDANTS QUIÑONEZ & HOLMES, DID CONSPIRE TO VALIDATE PLAINTIFFS LIBERTY INTERESTS/ CONSTITUTIONAL

22  RIGHTS AS ALLEGED HEREIN WHEN THEY FALSIFIED EVIDENCE, SUBMITTED A FALSE 1030 REFLECTING THAT THEY

23  HAD A LETTER THAT INDICATED PLAINTIFF WAS ASKING TO CONTROL C-YARD (EX E. 144) AND UTILIZED A

24  FORGED/ALTERED DOCUMENT TO CORROBORATE THEIR INFORMANT IN VIOLATION OF PEN.CODE 115(a)-(c); 118(a); 134

25  182, THUS THEY ARE LIABLE UNDER 42 U.S.C. 1983 : 1985

26  ## 25TH CAUSE OF ACTION

27  (14TH AMENDS - EQUAL PROTECTION CLAUSE)

28  207. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

44

208. DEFENDANTS, HOLMES, QUINONEZ, RUFF, BERIVER, FISHER, HUTCHINS, WARD, RIVERA, LEE, ELLIOT, REYNOSO HACKER, LAURANCE, FEIGEN, SELVY, CLARK, DIAZ, HOREL, BRADBARY, NEALY, HUBBART, TILTON, RIANDA, SPEER, SILVA WOODFORD VIOLATED PLAINTIFFS RIGHTS TO THE EQUAL PROTECTION OF THE LAWS, BECAUSE THEY SEGRAGATED & OR IMPOSED A SIX YEAR MINIMUM SHU TERM ON PLAINTIFF FOR THE ALLEGED CONDUCT OF ASSOCIATION, WITH OUT PROVIDING PLAINTIFF ET AL...THE SAME PANOPLY OF DUE PROCESS PROTECTIONS AFFORED TO INMATES WHOVE ALLEGEDLY COMMITTED WORSE CONDUCT CCR 3315-3320 ET SEQ

## 26TH CAUSE OF ACTION

### ( 14TH AMENDS - DUE PROCESS-LIBERTY INTEREST)

209. PLAINTIFF INCORPORATES & REALLEGES ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

210. DEFENDANTS, RUFF, BERIVER & FISHER VIOLATED PLAINTIFFS DUE PROCESS & LIBERTY INTEREST CCR3378(C)(6) (A)-(E), RIGHTS TO NOTICE, BY DESIGNATING THE VALIDATION ITEM AS "COMMUNICATIONS"-WITHOUT PROVIDING PLAINTIFF A NOTICE OF SUCH DESIGNATION 24 HOURS IN ADVANCE TO PREPAIR A DEFENSE.

## 27TH CAUSE OF ACTION

### (14TH AMENDS - RIGHT TO IMPARTIAL DECISION MAKER)

211. PLAINTIFF INCORPORATES & REALLEGES ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

212. DEFENDANTS QUINONEZ & HOLMES DEPRIVED PLAINTIFF OF AN IMPARTIAL HEARING WITH THE OCS BY SUBMITTING FALSE INFORMATION-WHICH MADE PLAINTIFF APPEAR TO BE A RACIST AGAINST WHITE PEOPLE (SEE PAR 48 ANTE) DEFENDANTS RUFF, BERIVER & FISHER ARE ALL WHITE-THEY COULD NOT HAVE MADE AN IMPARTIAL DECISION- ONCE THEY READ QUINONEZ & HOLMES MISLEADING SUBMISSIONS.

## 28TH CAUSE OF ACTION

### (14TH AMEND, DUE PROCESS-LIBERTY INTEREST INSUFFICIENCY)

213. PLAINTIFF INCORPORATES ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

214. DEFENDANTS, QUINONEZ, HOLMES, FISHER & RUFF, BERIVER, HUCHINS, WARD, RIVERA, LEE, ELLIOT, REYNOSO HACKER, LAURANCE, FEIGEN, SELVY CLARK, DIAZ HOREL SILVA BRADURY & NEALY, HAVE VIOLATED PLAINTIFFS RIGHTS TO DUE PROCESS & LIBERTY INTEREST BY VALIDATING & SEGRAGATING PLAINTIFF BASED ON INSUFFICIENT EVIDENCE WHICH DOES NOT CONSTITUTE GANG ACTIVITY NAMELY "KNOWINGLY COMMITTING ILLEGAL ACTS OF MISCONDUCT ON BEHALF OF THE GANG" CCR3000, 3023, 33786(1)(2) THE LACK OF RULES VIOLATION ESTABLISHES THE LACK OF EVIDENCE & THE INFORMANT SOLY OFFERS PLAINTIFFS NAME IN RELATION TO A LETTER WITH OUT ACTIVITY CCR3378(C)(8)(M).

29TH CAUSE OF ACTION

(14TH AMENDMENT - DUE PROCESS LIBERTY INTEREST - LACK OF RELIABILITY)

215. PLAINTIFF REALLEGES AND INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT

216. DEFENDANTS, QUINONEZ, HOLMES, FISHER, RUFF, BERIUER, HUTCHINS, WARD, RIVERA, LEE, ELLIOT, REYNOSO HACKER, LAURANCE, FEIGEN, SELVY, CLARK, DIAZ, HOREL, SILVA, BRADBARY & NEALY HAVE VIOLATED PLAINTIFFS RIGHTS TO DUE PROCESS & LIBERTY INTEREST BY VALIDATING & OR SEGRAGATING PLAINTIFF BASED ON EVIDENCE THEY KNOW IS NOT RELIABLE CCR 3321(b)(1)(2): 3321(c)(1)-(5); 3378(6). DEFENDANTS AGREE THEY MONITORED PLAINTIFFS MAIL - THEY HAD A DUTY TOO (EX A.p 7/ ) CCR 3341.5(6)(5) - YET THEY DO NOT HAVE THE LETTER PLAINTIFF ALLEGEDLY WROTE, THUS THEY KNOW THAT THE INFORMANT IS LYING OR UNRELIABLE, & YET THEY VALIDATED & SEGRAGATED PLAINTIFF ON SUCH INFORMATION.

30TH CAUSE OF ACTION

(14TH AMENDS. DUE PROCESS LIBERTY INTEREST - LACK OF CORROBORATION).

217. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

218. DEFENDANTS, QUINONEZ, HOLMES, FISHER, RUFF, BERIUER, HUTCHINS, WARD, RIVERA, LEE, ELLIOT REYNOSO HACKER, LAURANCE, FEIGEN, SELVY, CLARK, DIAZ, HOREL, SILVA, BRADBARY & NEALY, HAVE VIOLATED PLAINTIFFS RIGHTS TO DUE PROCESS & LIBERTY INTEREST CCR 3321(b)(1)(2): 3378(c)(8)(H); 3378(c), BY VALIDATING & OR SEGRAGATING PLAINTIFF BASED ON UNCORROBORATED EVIDENCE, DEFENDANTS DO NOT HAVE THE LETTER IN QUESTION - THUS THERES NO WAY TO CORROBORATE WHETHER THE INFORMANT STATED THE TRUTH, IF THE LETTER WAS FOUND ON THE INFORMANT - THEN HIS STATEMENT THAT "ITS PLAINTIFFS" IS UNCORROBORATED - THERE IS NO CORROBORATION THAT PLAINTIFF HAD EVER WRITEN OCOTORENA, OR KNEW HIM, NOR HAS EVER BEEN AROUND HIM - PLAINTIFF HAD BEEN ON LOCK DOWN SINCE SEPT 2006. - AND IN ASU SINGLE CELLED SINCE JAN. 9. 2006 IT IS IMPOSSIBLE FOR THE INFORMANT TO HAVE SEEN THE LETTER. HEARSAY CANNOT BE RELIED UPON CCR 3378(c)(8)(H) - NOR CAN DEFENDANTS RELY ON THE UN RELATED LETTER ESPECIALLY IF THE UNCORROBORATED INFORMANT WAS CAUGHT MAILING IT - AND SIMPLY SAID IT WAS PLAINTIFF & BECAUSE THAT DOCUMENT WAS FORGED AND ALTERED.

31ST CAUSE OF ACTION

(14TH AMENS. DUE PROCESS LIBERTY EVIDENCE - INSUFFICIENT VALIDATION ITEMS)

219. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

220. DEFENDANTS, QUINONEZ, HOLMES, DIAZ, FISHER, RUFF, BERIUER, HUTCHINS, WARD RIVERA, LEE, ELLIOT REYNOSO, HACKER, LAURANCE, FEIGEN, SELVY, CLARK HOREL SILVA BRADBARY & NEALY, HAVE VIOLATED PLAINTIFFS RIGHTS TO DUE PROCESS & LIBERTY INTERESTS, CCR 3341.5(c)(5)(6) 3378(c)(u)(2) 3378(c) BY

51

1  validating & or segragating plaintiff based on insufficient evidence - <u>ONE ITEM</u>, when prison regulations
2  read in conjuction mandate that after the 12 month investigation defendants need three <u>NEW</u> items of
3  gang activity. <u>CCR 3341.5(c)(5): 3378(c)(12): 3378(c)</u>. The old validation items can no longer be used for
4  validation purpose given that they are no longer "current" within the within the meaning of <u>six</u>
5  <u>years</u> nor do they constitute gang activity "as defined in 3000" <u>Ibid</u>

### 32nd CAUSE OF ACTION

### (1st Amends Right to Associate, Speech / overbroad Regulations)

7  221. Plaintiff realleges & incorporates by reference all previous paragraphs of this complaint.
8  222. Defendants, Tilton, Woodford, Hubbart, Rianda, Speer, Quinonez, Holmes, Diaz, Fisher, Ruff, Beriver
10 Hutchins, Ward, Rivera, Lee, Elliot, Reynoso, Hacker, Laurence, Feigen Selvy, Clark, Horel, Silva, Bradbury
11 Neny, Wise, Puente, Countess, & Brandon, violated plaintiffs 1st Amendment rights, by promulgating, implem-
12 enting & or enforcing overbroad rules & regulations which unjustifiably curtail plaintiffs limited rights
13 of speech & association, said rules / regulations are punitive they forbid contact with alleged affiliates/
14 inmates even though plaintiff has no knowlage & has been given no notice of the inmates alleged
15 affiliation - the rules are so overbroad - that Wise"et al... dont even understand them - he conceeds
16 that he assumes something "is gang activity"- when he does "not understand it". The said rules/regulations
17 are not reasonably related to any legitimate penological interest.

### 33rd CAUSE OF ACTION

### (Federal due process - Vague "gang ACTIVITY" policy)

20 223. Plaintiff realleges & incorporates by reference all previous paragraphs of this complaint.
21 224. Defendants Quinonez, Holmes, Tilton, Woodford, Hubbart, Speer, Rianda, Fisher, Ruff, Beriver,
22 Hutchins, Ward, Rivera, Lee, Elliot, Reynoso, Hacker, Laurence, Feigen, Selvy, Clark, Horel, Silva,
23 Bradbury, Neny, Wise, Countess, Brandon, & Puente, violated plaintiffs due process rights by implement-
24 ing/enforcing vague gang activity policies, to validate segragate, & deprive correspondence. The policy
25 is so vague that it deprived plaintiff "Notice" of prohibited conduct subjecting him to a six year term,
26 & penalties - & forces plaintiff to guess at its meaning. The policy is so vague that "Wise"et al...defines
27 it as anything "he cant understand" (see par 122 ante) if a High ranking gang officer cannot underst-
28 and defendants & his own "gang activity" definiton/policies, then how can the "unlettered" inmate?

<div align="center">52</div>

## 34TH CAUSE OF ACTION

### (FEDERAL DUE PROCESS)

226. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

227. DEFENDANTS HUTCHINS, MAY, RIVERA, HACKER, LAURANCE, SILVA, NEALY & PARKER VIOLATED PLAINTIFFS DUE PROCESS RIGHTS TO A MEANINGFUL COMMITTEE REVIEW & RIGHT TO BE PRESENT WHEN DECISIONS ARE MADE, BECAUSE THEY HAD ALREADY MADE THEIR DECISION TO IMPOSE A SHU TERM-& OR TO RETAIN PLAINTIFF IN SHU.-BEFORE PLAINTIFF EVEN ENTERED THE ROOM.-"SATF" DEFENDANTS EVEN HAD THEIR DECISION ALREADY TYPED OUT AND DID NOT ALLOW PLAINTIFF TO SPEAK, PBSP DEFENDANTS ADMIT GOING TO ICC IS MEANINGLESS-BECAUSE THEY CANNOT DO ANYTHING, BUT CONTINUE RETENTION.-THIS ESTABLISHES DEFENDANTS CONDUCT ICC IN ROTE FASHION AND THAT ICC IS ALWAYS NOTHING MORE THAN A PRETEXT FOR INDEFINATE SOLITARY CONFINEMENT.

## 35TH CAUSE OF ACTION

### (FEDERAL DUE PROCESS - LIBERTY INTEREST)

228. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

229. DEFENDANTS, HUTCHINS, WARD, MAY, RIVERA, HACKER, LAURENCE, REYNOSO, ELLIOT, SILVA, NEALY & PARKER, VIOLATED PLAINTIFFS LIBERTY INTEREST IN REMAINING IN THE g.P., BEING RELEASED OR CONSIDERED FOR RELEASE, SEE CCR 3335, 3336, 3339, 3341.5(A)(2); 3341.5(C)(S); 3341.5G(S). BY ALWAYS ISSUING DENIALS, PRIOR TO PLAINTIFF ATTENDING ICC, (DISPITE PLAINTIFF'S NOT HAVING LOST HIS INACTIVE STATUS-NOR POSING A SECURITY THREAT) & BY DEFENDANTS ADMITION THAT THEY CANNOT & WILL NOT DO ANYTHING ELSE UNTIL 2012, DEFENDENTS THUS HAVE VIOLATED PLAINTIFFS LIBERTY INTEREST AS ALLEGED HERETO.

## 36TH CAUSE OF ACTION

### (FEDERAL DUE PROCESS- LIBERTY INTEREST)

230. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

231. DEFENDANTS, HUTCHINS, MAY, RIVERA, HACKER, LAWRANCE, WARD, REYNOSO, ELLIOT, SILVA, NEALY, & PARKER VIOLATED PLAINTIFFS LIBERTY INTEREST BY RENDERING A RUBBERSTAMP ICC DECISION, WITHOUT CONSIDER-ING EVIDENCE PLAINTIFF PRESENTED WHICH RENDERED THE RETAINING EVIDENCE QUESTIONABLE (EX F 145-72) WHICH ——— MANDATED A REMAND OF THE ITEM TO IGI FOR INVESTIGATION/REJECTION CCR3378C(7)

## 37TH CAUSE OF ACTION

### (FEDERAL DUE PROCESS)

232. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT

53

233. DEFENDANTS, LEE, HUTCHINS, MAY, RIVERA, HACKER, LAURANCE, WARD, RAYNOSO, & ELLIOT VIOLATED PLAINTIFFS DUE PROCESS RIGHT TO PRESENT HIS VIEWS, EVIDENCE & DOCUMENTATION TO BE CONSIDERED BEFORE ANY DECISION IS MADE, MAY ADMITTED THAT ICC DID NOT READ NOR CONSIDER PLAINTIFFS VIEWS/DOCUMENTATION, THE 114 ALREADY REFLECTED WHAT DECISION WOULD BE MADE PRIOR TO PLAINTIFFS ICC ATTENDANCE - ADDITIONALLY THE ICC'S DECISION WAS ALREADY "TYPED OUT" BEFORE PLAINTIFF PRESENTED HIS VIEWS, DOCUMENTATION & EVIDENCE - THUS DEFENDANTS VIOLATED PLAINTIFFS RIGHTS AS ALLEGED HERETA AND ICC IS NOTHING MORE THAN A PRETEXT FOR SOLITARY CONFINEMENT.

### 38TH CAUSE OF ACTION

### (FEDERAL DUE PROCESS - LIBERTY INTEREST)

234. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

235. DEFENDANTS, LEE, HUTCHINS, MAY, RIVERA, HACKER & LAURENCE VIOLATED PLAINTIFFS RIGHTS TO DUE PROCESS BY BASING THEIR DECISION TO SEGREGATE IN PART ON THE PHONE BOOK (EX G, 181) WHICH THE OCS FOUND WAS NOT RELIABLE & REJECTED (EX C. 110 ) THUS THEY ALSO VIOLATED PLAINTIFFS LIBERTY INTEREST IN EXPECTING THAT DEFENDANTS WOULD BE AWHERE THAT THE ITEM WAS REJECTED CCR3378(c)(6)(G) AND THAT THEY WOULD NOT MAKE DECISIONS BASED ON UNRELIABLE MATIRIAL. CCR3321(b)(1) THIS AGAIN ESTABLISHES THAT ICC'S ARE SHAMS.

### 39TH CAUSE OF ACTION

### (FEDERAL DUE PROCESS)

236. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

237. DEFENDANTS, WARD, RIVERA, REYNOSO & ELLIOT VIOLATED PLAINTIFFS RIGHTS UNDER DUE PROCESS TO A MEANINGFUL ICC REVIEW, & RIGHTS TO BE PRESENT WHEN DECISIONS ARE MADE. DEFENDANTS MADE THEIR DECISION TO SEGREGATE BEFORE PLAINTIFF ATTENDED ICC - THEY EVEN HAD SAID DECISION PRETYPED TO INCLUDE MINOR CHANGES TO COMPLY WITH CSP'S ORDER. WHICH ESTABLISHES THE COMMITTEE WAS A SHAM - IT WAS HELD IN ROTE FASHION & WAS A PRETEXT FOR INDEFINATE SOLITARY CONFINEMENT.

### 40TH CAUSE OF ACTION

### (FEDERAL DUE PROCESS - LIBERTY INTEREST)

238. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

239. DEFENDANTS WARD, RIVERA, REYNOSO & ELLIOT VIOLATED PLAINTIFFS RIGHTS TO DUE PROCESS & LIBERTY INTEREST BY ACCEPTING AS CONCLUSIVE IGI'S FINDINGS THAT PLAINTIFF WROTE A LETTER & THEIR AFTER IMPOSSING AN INDETERMINATE SHU TERM ON PLAINTIFF WITHOUT EVEN VERIFING IF PLAINTIFF ACTUALLY WROTE THE LETTER - WHETHER THE LETTER MENTIONS AN ATTEMPT TO CONTROL C-FACILITY - OR WHETHER IF THE LETTER WAS SIMPLY

CAUGHT ON THE INFORMANT WHO WAS MAILING IT TO HIS HOME & WAS NOW Simply SHIFTING BLAME, AND INTERPRETING IT FOR igi TO gAIN FAVOR. IF THE LATTER did OCCURE THEN DEFENDANTS VIOLATED [ALSO] PLAINTIFFS LIbERTY INTEREST - BECAUSE THEY SEgRAGATED PLAINTIFF BASED ON UNCORROBORATED & UNRELIABLE INFORMATION CCR 3321(b)(1) - AND THEY FAILED TO REMAND THE EVIDENCE BACK TO igi, FOR INVESTIGATION/REJECTION CCR 3378(c)(7).

### 41ST CAUSE OF ACTION

( FEDERAL dUE PROCESS-LIBERTY INTEREST)

240. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

241. DEFENDANTS QUIÑONEZ, HOLMES, DIAZ, HUTCHINS, WARD, RIVERA, LEE ELLIOT, REYNOSO, HACKER, LAURENCE, FEIGEN, SELVY, CLARK, HORE, BRADBURY, SILVA, NEALY & PARKER VIOLATED PLAINTIFFS RIGHTS TO dUE PROCESS & LIBERTY INTEREST BY ENDORCING HIM & SEGRAGATING HIM IN THE SHU, WITHOUT EVIDENCE, - FINDING - OR THE OCS EVER RESTORING PLAINTIFFS "CURRENTLY ACTIVE STATUS" WHICH WAS A PRERIQUISIT AND DEPRIVES DEFENDANTS AUTHORITY TO SEGRAGATE PLAINTIFF CCR 3378(g)(h).

### 42nd CAUSE OF ACTION

"    "  "

"  "  "  "

"  "  "

(FEDERAL DUE PROCESS-LIBERTY INTEREST-BREACH OF CONTRACT)

242. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

243. DEFENDANTS, HUBBART, RIANDA, SPEERS, QUINONEZ, HOLMES, FISHER, RUFF, BERIVER, HUTCHINS, WARD RIVERA, LEE, ELLIOT, REYNOSO, HACKER, LAURANCE, FEIGEN, SELVY, CLARK, DIAZ, HOREL, SILVA, BRADBURY & NEALY, HAVE VIOLATED PLAINTIFFS RIGHTS TO DUE PROCESS & LIBERTY INTERESTS Gov. Code 814: 844, 6(a) BECAUSE THE ITEM THEY USED TO SEND AND RETAIN PLAINTIFF IN THE SHU, IS NOT PART OF THE WRITEN AGREEMENT BETWEEN PLAINTIFF & DEFENDANTS (EX C 1/2  ) OCOTORENA IS NOT A MEMBER-AND PLAINTIFF NEVER POSSESSED ANY OF THE ITEMS FORBIDED IN THE CONTRACT. (IBID) THUS BY SENDING & RETAINING PLAINTIFF IN THE SHU DEFENDANTS HAVE KNOWINGLY BREACHED THE TERMS OF THE CONTRACT.

## 43RD CAUSE OF ACTION

### (FEDERAL DUE PROCESS)

244. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

245. DEFENDANTS HUBBART, RIANDA & SPEER VIOLATED PLAINTIFFS RIGHTS TO DUE PROCESS-BY FORCING PLAINTIFF TO ENTER INTO A WRITEN CONTRACT-WHICH WAS MADE UNDER DURRESS/COERSION, WITHOUT EXPLAINING PLAINTIFFS RIGHTS (SEE PARA 3, 243) AND WITHOUT PROVIDING COUNSEL & THEN SEGRAGATING PLAINTIFF FOR ALLEGED BREACH OF CONTRACT.

## 44TH CAUSE OF ACTION

### (FEDERAL DUE PROCESS. LIBERTY INTEREST)

246. PLAINTIFF INCORPORATES BY REFERENCE & REALLEGES ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

247. DEFENDANTS HUBBART, RIANDA, SPEER, QUINONEZ HOLMES, FISHER, RUFF, BERIVER, HUTCHINS, WARD, RIVERA, LEE, ELLIOT, REYNOSO, HACKER, LAURANCE, FEIGEN, SELVY, CLARK, DIAZ HOREL, SILVA, BRADBARY & NEALY HAVE VIOLATED PLAINTIFFS LIBERTY INTEREST BY ORDERING AND RETAINING PLAINTIFF IN THE SHU-BASED ON BREACHING PROVISIONS IN A CONTRACT WHICH IS UNENFORCIBLE BECAUSE IT HAS NOT BEEN LEGALLY PROMULGATED IN COMPLIANCE WITH THE APA. PEN. CODE 5058: GOV. CODE 11340. 5(a); 11342(g)

## 45TH CAUSE OF ACTION

### (FEDERAL DUE PROCESS. LIBERTY INTEREST)

248. PLAINTIFF INCORPORATES BY REFERENCE & REALLEGES ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

249. DEFENDANTS SILVA, COX, NEALY, & PETERSON HAVE VIOLATED PLAINTIFFS LIBERTY INTEREST BY REFUSING TO REFER HIS CASE FOR DESIGNATION, OF INACTIVE STATUS - BASED ON AN ITEM OF "ASSOCIATION" DISPITE

56

THE FACT THAT THE REGULATIONS MANDATE ACTIVITY CCR 3341.5(C)(5):3378(C) - DEFENDANTS KNOW THE DIFFERENCE BETWEEN ASSOCIATION CCR 3378(C)(4) AND GANG ACTIVITY CCR 3000,3023, DISPITE THEIR KNOWLAGE OF NO EVIDENCE OF 'GANG ACTIVITY' WITHIN A SIX YEAR PERIOD - THEY REFUSE TO DESIGNATE & REFER PLAINTIFFS CASE FOR INACTIVE STATUS RELEASE IN COMPLIANCE WITH CCR 3341.5(C)(5):3378(C).

## 46TH CAUSE OF ACTION

### ( 8TH AMENDMENT DISPROPROTIONATE SENTENCE),

250 PLAINTIFF INCORPORATES BY REFERENCE & REALLEGES ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

251. DEFENDANTS HUBBART, TILTON, WOODFORD, RIANDA SPEER, QUINONEZ, HOLMES FISHER, RUFF, BERUER HUTCHINS WARD, RIVERA, LEE, ELLIOT, REYNOSO, HAKER, LAURANCE, FEIGEN, SELVY, CLARK, DIAZ, HOREL, SILVA BRADBARY & NEALY, HAVE VIOLATED PLAINTIFFS 8TH AMENDMENT RIGHTS - BECAUSE PLAINTIFFS SIX YEARS TO LIFE SHU TERM FOR AN ALLEGED LETTER IS DISPROPORTIONATE IN LIGHT OF PLAINTIFF HISTORY OF LACK OF MISCONDUCT & WHEN COMPARIRED TO OTHER STATES SHU TERMS FOR "SIMILAR CONDUCT" AND TO THIS STATES SHU TERMS FOR OFFENSES OF MURDER ASSULT OR ATTEMPTED MURDER. - WHICH ARE WORSE OFFENSES THAN ALLEGED ASSOCIATION.

## 47TH CAUSE OF ACTION

### ( 8TH AMENDMENT CRUEL & UNUSUAL PUNISHMENT-DELIBERATE INDIFFERENCE TO INHUMANE CONDITIONS IN THE SHU)

252 PLAINTIFF REALLEGES AND INCORPORATES BY REFERANCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT

253. DEFENDANTS HUBBART, RIANDA, SPEER, QUINONEZ, HOLMES, FISHER, RUFF, BERIVER, HUTCHINS WARD, RIVERA, LEE, ELIOT, REYNOSO, HACKER LAURANCE, FEIGEN, SELVY, CLARK DIAZ, HOREL, SILVA, BRADBARY & NEALYS DESISION TO SEGREGATE PLAINTIFF IN THE SHU FOR 6 YEARS TO LIFE VIOLATES PLAINTIFFS EIGHTH AMENDMENT RIGHTS BY THEIR DELIBERATE INDIFFERENCE TO PLAINTIFFS PHYSICAL & MENTAL WELL-BEING WHEN DEFENDANTS ARE AWARE OF THE INHUMANE CONDITIONS THAT PLAINTIFF HAS BEEN EXPOSED TO AS DISCRIBED IN PARAGRAPHS 105-17 SUPRA CAN PRESS THE OUTTER BOUNDS OF WHAT MOST HUMANS CAN PHYCHOLOGICALLY TOLORATE, DEFENDANTS KNOW THAT LONG SHU RETENTION CAN CAUSE DAMAGE, PAIN TO PLAINTIFFS JOINTS AND CARTLEYE - THAT IT CAN ADVERSLY AFFECT HIM PHYCHOLOGICALLY - AS HAS BEEN DEMONSTRATED BY THE STATISTICAL EVIDENCE IN MADRID - THE OVERWHELMING INCREASE IN PHYCH MEDICATION PROGRAMS INMATES HAVE BEEN PLACED ON SINCE MADRID - AND THE ALARMING SUICIDE RATES IN THE SHU BASED ON LACK OF STIMULATION AND LACK OF HUMAN CONTACT. ET SEQ

48TH CAUSE OF ACTION

(FEDERAL DUE PROCESS-LIBERTY INTEREST-1ST AMENDS)

254. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

255. DEFENDANTS WILLBER, READ, & GRANNIS VIOLATED PLAINTIFFS 1ST AMENDMENT RIGHTS TO PETITION FOR REDRESS OF GRIVIANCES & PLAINTIFFS LIBERTY INTEREST TO APPEAL ADVERSE COMMITTEE ACTIONS TWHICH ORDER FURTHER SEGRAGATION. CCR3084.1(a); 3084.5(a)(3)(A). THE DENIAL OF PLAINTIFFS RIGHTS WAS BASED ON UNDERGROUND POLICES (PARA 99 ANTE) & NOT REASONABLY RELATED TO PENOLOGICAL CONSERNS. HOREL CONTRIBUTED TO THESE VIOLATIONS FOR NOT HIRING & INSURING THAT APPEALS COORDINATORS PROCESS APPEALS IN COMPLIANCE WITH LAW CCR.3084.3(a).

49TH CAUSE OF ACTION

(FEDERAL DUE PROCESS-LIBERTY INTEREST/MADRID INJUNCTION)

256. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

257. DEFENDANTS WILLBER, READ & GRANNIS VIOLATED PLAINTIFFS LIBERTY INTEREST BY ENFORCING AN UNDERGROUND POLICY - WHICH PROHIBITS APPEALING COMMITTEE ACTIONS, WITHOUT COMPLIANCE WITH APA. PEN.CODE 5058; GOV.CODE 11340.5(a); 11342(g). DEFENDANTS ARE VIOLATING THE MADRID INJUNCTION - BECAUSE THEIR POLICY AMOUNTS. TO A COVER UP - GIVEN THAT WITHOUT PROCESSING AN APPEAL- ALLEGATIONS OF COMMITTEE MISCONDUCT GO UN-REPORTED & UNINVESTIGATED. HOREL CONTRIBUTED TO THESE VIOLATIONS BY FAILING TO HIRE & SUPERVISE APPEALS COORDINATORS WHO PROCESS APPEALS IN COMPLIANCE WITH LAW CCR3084.3(a)

50TH CAUSE OF ACTION

(FEDERAL DUE PROCESS-LIBERTY INTEREST)

258. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

259. DEFENDANTS PUENTE & BRANDON VIOLATED PLAINTIFFS RIGHTS TO DUE PROCESS & LIBERTY INTEREST CCR332 ET-SEQ. BY REFUSING TO DISCLOSE A LETTER WRITTEN BY PLAINTIFF ALLEGEDLY DISCUSSING GANG ACTIVITY - PLAINTIFF DENIES DISCUSING GANG ACTIVITY IN ANY LETTER - HE IS UNAWHERE WHAT LETTER DEFENDANTS REFER TO & WITHOUT A COPY OF IT HES BEING DEPRIVED ADIQUATE NOTICE FOR A DEFENSE.

51ST CAUSE OF ACTION

(1ST, 4TH AND 14TH AMENDMENTS)

260. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

261. DEFENDANTS, BRANDON, COUNTESS & PUENTE VIOLATED PLAINTIFFS 1ST, 4TH AND 14TH AMENDS, RIGHTS BY READING & INDEFINATELY RETAINING OUT GOING MAIL, WITHOUT VERIFYING NOR PROFFERING

EVIDENCE, THAT IT WAS NECESSARY TO PROTECT THE PUBLIC- OR TO SEARVE COMPELLING GOVERNMENTAL INTEREST. OFFICERS ERRONEOUSLY/ILLEGALLY RELIED ON THE "INSTITUTIONAL SECURITY" STANDARD - TO READ AND KEEP THE LETTERS(EXJ., 112-13, 22). ASSUMING ARGUENDO THE REASONABLY RELATED TO PENOLOGICAL CONCERS STANDARD IS APPLICABLE - THEY STILL VIOLATED PLAINTIFFS RIGHTS- GIVEN THAT ANY THREAT TO SECURITY IS DEMINISHED BECAU-SE THESE WERE OUT GOING LETTERS-& PRISON OFFICIALS STAMPED THEM TO ENSURE THEY ARE NOT REINTRODU-CED BACK INTO THE INSTITUTION.

### 52ⁿᵈ CAUSE OF ACTION
(FEDERAL DUE PROCESS- )

262. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.
263. DEFENDANTS, COUNTESS, PUENTE BRANDON,& WISE VIOLATED PLAINTIFFS RIGHTS TO DUE PROCESS BY KEEPING PLAINTIFFS OUT GOING LETTERS UNDER THE SPECULATION  THAT PLAINTIFF WAS WRITING TO 3RD PARTIES-DISCUSSING GANG ACTIVITY- CODED MESSAGES,- PLAINTIFF DID NOT WRITE ANY LETTERS TO 'ANY ONE', - DISCUSSING CODED GANG ACTIVITY.-THE FACT THAT NO RULES VIOLATION WAS ISSUED ESTABLISHES- THE LACK OF EVIDENCE, ADDITIONALLY WISE ADMITTED HE SIMPLY ASSUMES LETTERS ARE CODED & CONTAIN GANG ACTIVITY WHEN HE CANNOT UNDERSTAND THEM, DEFENDANTS ARE SOLY TRYING TO KEEP PLAINTIFF VALIDATED BASED ON TRUMPT UP ALLEGATIONS.

### 53RD CAUSE OF ACTION
(FEDERAL DUE PROCESS-PROPERTY INTEREST)

264. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.
265. DEFENDANTS PUENTE COUNTESS, WISE BRANDON,& HOREL VIOLATED PLAINTIFFS PROPERTY INTEREST BY INDEFINATELY KEEPING PLAINTIFFS OUTGOING LETTERS FOR INVESTIGATIONS INTO DISCIPLINARY ACTION. CCR 3136(a)(b):3047(a)(6) MANDATES THAT UNLESS THE LETTER IS BEING USED FOR DISCIPLINARY ACTION IT MUST BE MAILED OUT OR RETURED TO PLAINTIFF. WISE CONCEEDS THAT THEIR INVESTIGATION HAS NOTHING TO DO WITH PLAINTIFF NOR THE LETTER- ADDITIONALLY THE STATUTE OF LIMITS TO FILE DISCIPLINARY ACTION HAS LONG ELAPSED- NO SUCH ACTION WAS TAKEN THUS PLAINTIFF IS ENTITLED TO THE SENDING OR RETURN OF THE LETTER, IN COMPLIANCE WITH LAW

### 54TH CAUSE OF ACTION
(FEDERAL DUE PROCESS - LIBERTY INTEREST)

266. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

267. DEFENDANTS, BRANDON, PUENTE, COUNTESS, WISE & HOREL, VIOLATED PLAINTIFFS LIBERTY INTERESTS BY PLACING THE LETTER(S) RELATED INFORMATION IN PLAINTIFFS C-FILE, DEFENDANTS RETAINED THOSE LETTERS - FOR DISCIPLINARY ACTION, YET DISMISSED SUCH ACTIONS BY NOT FILING THEM, INSUCH A CASE CCR3326(2)(3) MANDATES THAT DEFENDANTS NOT PLACE SUCH INFORMATION NOR RELATED INFORMATION IN PLAINTIFFS C-FILE.

### 55TH CAUSE OF ACTION

( 1ST 4TH & 14TH AMENDS- ATTORNEY CLIENT PRIVILEGE)

268. PLAINTIFF INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

269. DEFENDANTS BACCI, JOHNSON & HAROLD, VIOLATED PLAINTIFFS ATTORNEY CLIENT PRIVILEGE UNDER THE 1ST 4TH 14TH AMENDS, & CCR3137, 3341(B) ETSEQ. 3343-3344 ET SEQ... PEN. CODE 2601(b), WHEN BACCI DELIBERATELY OPENED & READ PLAINTIFFS LETTER TO HIS ATTORNEY - WITHOUT PLAINTIFFS CONCENT, WITH OUT A SEARCH WARRANT & WITHOUT CAUSE, DEFENDANTS KNEW IT WAS LEGAL MAIL GOING TO A LEGITIMATE ATTORNEY, WORKING OUT OF A LEGITIMATE FIRM, WHEN JOHNSON & HAROLD STAMPT IT AS NOT BEING CONFIDENCIAL - AND BACCI READ IT,[12] NEVERTHELESS THEY VIOLATED PLAINTIFFS RIGHTS AS ALLEGED HERETO.

270. DEFENDANTS WISE, PUENTE, COUNTESS & BRANDON CAUSED & CONTRIBUTED TO THESE CONSTITUTIONAL VIOLATIONS AS BACCI ADMITTED THAT THEY INSTRUCTED HIM TO READ PLAINTIFFS LETTER - THUS VIOLATING HIS RIGHTS.

### 56TH CAUSE OF ACTION

(1ST, 4TH, 14TH AMENDMENT - PRIVICY INTEREST)

271. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

272. DEFENDANTS, HARMAN, BASNETT, PUENTE & COUNTESS VIOLATED PLAINTIFFS RIGHTS TO CORRESPONDENCE & PRIVICY INTEREST UNDER THE 1ST, 4TH, 14TH AMENDS CCR3139 BY RETAINING A LETTER PLAINTIFF SENT TO HIS GIRLFRIEND - AND SENDING IT TO PLAINTIFFS EX WIFE SO SHE COULD READ THE VERY PERSONAL LETTER, DEFENDANTS ACTIONS SERVED NO PENOLOGICAL JUSTIFICATION BUT WAS SOLY MENT TO CAUSE PLAINTIFF MENTAL EMOTIONAL & PHYCHOLOGICAL HARM.

### 57TH CAUSE OF ACTION

( 1ST AMENDMENT RETALIATION)

273. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

274. DEFENDANTS, HARMAN, BASNETT, PUENTE & COUNTESS, VIOLATED PLAINTIFFS 1ST AMENDS RIGHTS IN

12. ADDITIONALLY THEY ALL KNEW BACCI WAS NOT A FACILITY CAPTAIN THUS LACKED THE AUTHORITY IN ANY EVENT TO READ THE LETTER.

60

THAT THEIR SENDING PLAINTIFFS LETTER (TO HIS GIRLFRIEND) TO PLAINTIFFS EX WIFE, SO SHE CAN READ WHAT PLAINTIFF SAID ABOUT HER (PRIVITY) CONSTITUTED RETALIATORY ACTION TAKEN AGAINST PLAINTIFF FOR THE EXERCISE OF HIS CONSTITUTIONALLY PROTECTED RIGHT, TO ENGAGE IN LEGITIMATE JAIL HOUSE LAWYERING - BY CHALLENGING DEFENDANTS POLICIES & ILLEGAL ACTIONS. THIS RETALIATORY ACTION DID NOT ADVANCE LEGITIMATE PENOLOGICAL GOALS, & WAS NOT TAILORED NARROWLY ENOUGH TO ACHIEVE SUCH GOALS - IT WAS SIMPLY MENT TO INFLICT PUNISHMENT ON PLAINTIFF BY CAUSING HIM PROBLEMS WITH HIS DAUGHTERS MOTHER - & HENCE MENTAL EMOTIONAL & PHYCHOLOGICAL ANGUISH.

### 58TH CAUSE OF ACTION
### (8TH AMENDMENT-DELIBERATE INDIFFERENCE TO MENTAL WELL BEING)

275. PLAINTIFF REALLEGES & INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

276. DEFENDANTS, HARMAN, BARNETT, PUENTE & COUNTESS VIOLATED PLAINTIFFS 8TH AMENDMENT RIGHTS BY THEIR DELIBERATE INDIFFERENCE TO PLAINTIFF MENTAL EMOTIONAL & PHYCHOLOGICAL WELL BEING - WHEN THEY PLACED PLAINTIFFS PRIVIT LETTER TO HIS GIRLFRIEND - INSIDE A SUBSEQUENT LETTER TO HIS EX WIFE - KNOWING IT WOULD DAMAGE THE RELATIONSHIP - WITH PLAINTIFFS EX-WIFE & DAUGHTER - PLAINTIFF IS SUFFERING MENTAL ANGUISH, BASED ON THE LOSS OF HIS RELATIONSHIP WITH HIS DAUGHTER - DEFENDANTS ACTIONS SERVED NO PENOLOGICAL PURPOSE BUT TO INFLICT MENTAL/PHYCHOLOGICAL ANGUISH & PAIN.

### 59TH CAUSE OF ACTION
### (VIOLATION OF MANDATORY DUTIES - STATE LAW)

277. PLAINTIFF REALLEGES AND INCORPORATES BY REFERENCE ALL PREVIOUS PARAGRAPHS OF THIS COMPLAINT.

(A) CCR 3321(B)(3)(B), AND 3378 ET SEQ.. IMPOSES A MANDATORY DUTY ON EACH DEFENDANT TO DISCLOSE ALL EVIDENCE PIVITAL TO A DEFENSE WHICH DOES NOT JEAPARDIZE INSTITUTIONAL SECURITY IN A TIMELY FASHION.

(B) CCR 3321(B)(3)(B)(C)(1)(S) IMPOSES A MANDATORY DUTY ON EACH DEFENDANT TO REFRAIN FROM UTILIZING EVIDENCE WHICH IS NOT RELIABLE NOR CORROBORATED AGAINST PLAINTIFF IN ANY ADVERSE MANNER.

(C) CCR 3000, 3023, 3378(C)(1)(2) IMPOSES A MANDATORY DUTY ON EACH DEFENDANT - TO NOT SEGREGATE NOR VALIDATE PLAINTIFF WITH OUT FIRST HAVING THREE ITEMS ESTABLISHING THAT WITH IN SIX YEARS PLAINTIFF IS KNOWINGLY COMMITTING ILLEGAL ACTS OF MISCONDUCT ON BEHALF OF A PRISON GANG.

(D) CCR 3378(C)(8)(H) - IMPOSES A MANDATORY DUTY ON EACH DEFENDANT TO NOT VALIDATE NOR SEGREGATE PLAINTIFF BASED ON HEARSAY.

(E) CCR 3341.5(C)(5); 3378(F) IMPOSES A MANDATORY DUTY ON EACH DEFENDANT - THAT THEY HOUSE

INACTIVE STATUS INMATES (PLAINTIFF) IN THE GIP – TO CEASE ANY INVESTIGATIONS AGAINST HIM IN 12 MONTHS [42] & TO NOT RESEGRAGATE UNLESS A NEW ITEM OF GANG ACTIVITY IS FOUND WITHIN THE 12 MONTH INVESTIGATION.

(f) CCR 3378(c)(b) IMPOSES A MANDATORY DUTY ON EACH DEFENDANT PROHIBITING THEIR RESEGRAGATION OF PLAINTIFF UNLESS THE OCS HAS RESTORED THE CURRENTLY ACTIVE STATUS.

(g) CCR 3378(c)(7) IMPOSES A MANDATORY DUTY ON ICC MEMBERS TO REMAND NEW EVIDENCE & QUESTIONABLE VALIDATION SOURCES BACK TO IGI FOR INVESTIGATION.

(h) CCR 3375 IMPOSES A MANDATORY DUTY ON ALL ICC MEMBERS TO PROVIDE PLAINTIFF AN ANNUAL CLASSIFICATION HEARING – AND TRANSFER CONSIDERATION.

(i) CCR 3084.6 IMPOSES A MANDATORY DUTY ON EACH DEFENDANT TO PROCESS ALL INMATE APPEALS CHALLENGING ADVERSE ACTIONS.

(j) PEN. CODE 5058: GOV. CODE 11340.5: 11342(g) IMPOSES A MANDATORY DUTY ON EACH DEFENDANT TO NOT ENFORCE, ET SEQ... ANY RULE POLICY GUIDELINE, CRITERION ET SEQ, WITHOUT FIRST PROMULGATING IT IN COMPLIANCE WITH THE APA.

(k) CCR 3378(c)(6)(A)(D) IMPOSES A MANDATORY DUTY ON EACH DEFENDANT TO RECORD AND SUBMIT PLAINTIFFS VIEWS TO THE OCS – ALONG WITH THE VALIDATION PACKAGE & TO PROVIDE PLAINTIFF A 14 DAY NOTICE PRIOR TO DOING SO.

(l) PEN. CODE 115(a)(c): 118(a):134.182, MAKES IT A CRIME TO UTILIZE, FORGED, FALSE OR ALTERED DOCUMENTS.

(m) CCR 3335,3336,3339 IMPOSES A MANDATORY DUTY ON EACH DEFENDANT TO RELEASE PLAINTIFF FROM THE ADSEG/SHU IMMEDIATELY UNLESS HE POSES A PRESENT SECURITY THREAT.

(n) CCR 3341.5 (c)(2)(A)(1): 3341.5 (c)(3) IMPOSES A MANDATORY DUTY ON EACH DEFENDANT TO CONSIDER PLAINTIFFS ADSEG/SHU RELEASE AND TO RELEASE HIM AT ICC/UCC UNLESS PLAINTIFF IS CURRENTLY A SECURITY THREAT.

(o) CCR 3341.5 (c)(5): 3378(c) IMPOSES A MANDATORY DUTY ON EACH DEFENDANT TO DESIGNATE PLAINTIFF IN ACTIVE IF HE HAS NO GANG ACTIVITY IN SIX YEARS.

(p) CCR 3378(c)(6)(G) IMPOSES A MANDATORY DUTY ON EACH DEFENDANT TO BE AWEAR OF AND NOT RELY ON ITEMS REJECTED BY THE OCS.

(q) GOV. CODES 814:844.6(a), IMPOSES A MANDATORY DUTY ON EACH DEFENDANT NOT TO BREACH THE TERMS OF A WRITEN AGREEMENT & LIABILITY DAMAGES FOR SUCH BREACH OF AGREEMENT

12. AND ORDER PLAINTIFFS TRANSFER AFTER THE 12 MONTH INVESTIGATION

(R) CCR 3084.3(a) imposes a mandatory duty on the warden to hire appeals coordinators who will process appeals in compliance with law.

(S) CCR 3136(a)(b); 3147(a)(b) imposes a mandatory duty on each defendant to mail or return plaintiffs correspondence unless it is being used for disciplinary action.

(T) CCR 3326 (2)(8) imposes a mandatory duty on each defendant to refrain from placing or keeping any information in plaintiffs c-file related to a dismissed disciplinary action.

(U) CCR 3130 imposes a mandatory duty on each defendant to not invade or inhibit the privicy between inmates and their correspondents.

278. Each and every defendant-named in this complaint violated their mandatory duties, and plaintiffs state rights as alleged in this complaint.

## 60TH CAUSE OF ACTION

### (Federal due process- failure to correct)

279. Plaintiff realleges & incorporates by reference all previous paragraphs of this complaint. Defendants Ruff, Beriver, Fisher, Perez, Wan, Hall Clark, Jensen Grannis, Rivera, Allison, Gomez Allen, Pineda, .... Read, D. Fisher Wise, Wilber and Horel, violated plaintiffs rights to due process by failing to correct all constitutional violations named in this complaint to which they had notice, thus they contributed to these violations.

## 61ST CAUSE OF ACTION

### (Failure to Lawfully administer, train and supervise)

280. Plaintiff realleges & incorporates by reference all previous paragraphs of this complaint.

281. Defendants, Tilton, Hubbart, Rianda, Speer, Ruff, Beriver, Fisher, Clark, Horel, & Grannis - are supervisory officials -they have a duty to establish policies & procedures for the administration of SATF, & PBSP. Supervisory defendants have a duty to perform & execute their duties in a manner consistent with state & federal law. Supervisory defendants have a duty to train & supervise subordinate employees

(a) The continued use of underground regulations violated plaintiffs rights as discribed in the preceding causes of action.

(b) The failure to clarify gang activity policies violated plaintiffs rights as discribed in the preceding causes of action.

63

(c) SUPERVISORY DEFENDANTS HAVE FAILED TO ACT SO THAT SUBORDINATE EMPLOYEES DO NOT VIOLATE PLAINTIFFS RIGHTS AS ALLEGED HERE IN - THUS THEY'VE BEEN DELIBERATELY INDIFFERENT TO PLAINTIFFS RIGHTS.

(d) SUPERVISORY BREACHED THEIR DUTIES TO LEGALLY ADMINISTER THE PRISON AND TO TRAIN & SUPERVISE SUBORDINATES, WHERE PLAINTIFFS RIGHTS WERE VIOLATED AS THE RESULT OF THE ENFORCEMENT OF UNDER GROUND REGULATIONS & OFFICIAL CUSTOMS & POLICIES.

(B) THE LACK OF TRAINING AND SUPERVISION IS REFLECTED BY THE FACT THAT HOLMES DID NOT KNOW ABOUT THE CASTILLO v. ALEMIEDA SETTLEMENT HE ADMITTED HE'S NEVER READ IT - QUINONEZ STATED AND CONVINCED THE COMMITTEE THAT THE CASTILLO SETTLEMENT IS NOT APPLICABLE TO ANY ONE EXCEPT CASTILLO, & YET THE TERMS OF THIS SETTLEMENT WERE PROMULGATED 3 YEARS AGO IN THE TITLE 15 !!! SEE CCR 3378 ET SEQ... "MAY" & ALL ICC OFFICIALS DO NOT EVEN REALIZE THAT THEY HAVE THE AUTHORITY TO NOT ONLY CONSIDER PLAINTIFFS RELEASE - BUT A DUTY TO RELEASE HIM - OR REFERE QUESDONABLE EVIDENCE BACK TO IGI - THEY STATE THEY HAVE NO AUTHORITY, BUT SEE CCR 3335, 3336, 3339, 3341.5(a)(2)(A)(1)' 3341.5 (c)(3)(; 3378(d). WISE HAS NO IDEA WHAT GANG ACTIVITY IS! HE ASSUMES ITS "CODED" AND "GANG ACTIVITY" WHEN EVER HE DOES NOT UNDERSTAND A LETTER. "BACCI, DOES NOT REALIZE HE IS NOT A CAPTAIN - THUS HAS NO AUTHRITY WHATSOEVER TO EVEN READ LEGAL MAIL. - HOLMES & QUINONEZ ARE NOT CAPTAINS, AND DO NOT REALIZE THEY CANNOT DESIGNATE ITEMS CONFIDENTIAL. CCR 3321 ET SEQ... GRANNIS HAS GIVEN WILLBER AN "OKAY" TO STOP OBEYING ESTABLISHED LAW BY REFUSING TO PROCESS APPEALS.

282. SUPERVISORY DEFENDANTS BREACHED THEIR DUTIES TO LEGALLY ADMINISTER THE PRISON & TO TRAIN & SUPERVISE SUBORDINATES WHERE PLAINTIFFS RIGHTS WERE VIOLATED AS A RESULT OF DEFENDANTS ACTING IN VIOLATION OF DEFENDANTS POLICIES, PRACTICES & STATE & FEDERAL LAW AS ALLEGED IN THIS COMPLAINT - THUS SUPERVISORY DEFENDANTS NOT ONLY CONTRIBUTED TO BUT CAUSED THE CONSTITUTIONAL VIOLATIONS, ALLEGED THROUGHOUT THIS COMPLAINT.

## V. CAUSATION

AS A DIRECT & PROXIMATE RESULT OF THE AFFORMENTIONED ACTS/OMISSIONS ON THE PART OF DEFENDANTS PLAINTIFF HAS SUFFERED AND CONTINUES TO SUFFER GENERAL & SPECIAL DAMAGES IN AN AMOUNT TO BE PROVEN AT TRIAL. PLAINTIFF HAS NO PLAIN, ADEQUATE OR COMPLETE REMEDY AT LAW TO REDRESS THE WRONGS DESCRIBED HEREIN. PLAINTIFF HAS BEEN & WILL CONTINUE TO BE IRREPARABLY INJURED BY THE CONDUCT OF DEFENDANTS UNLESS THE COURT GRANTS THE DECLARATORY AND INJUCTIVE RELIEF WHICH PLAINTIFF SEEKS.

## VI. PRAYER FOR RELIEF

WHEREFORE PLAINTIFF RESPECTFULLY PRAYS THE FOLLOWING RELIEF:

1. A DECLARATORY JUDGEMENT THAT DEFENDANTS ACTS & PRACTICES DESCRIBED HERE IN VIOLATE PLAINTIFFS RIGHTS AS ALLEGED HEREIN.

2. A PRELIMINARY & PERMINATE INJUNCTION WHICH PROHIBITS & REQUIRES THAT DEFENDANTS, THEIR EMPLOYEES/SUCCESSORS (i) CEASE ANY & ALL HARASMENT, INFLICTION OF MENTAL ANGUISH, RETALIATION & REPRISALS FOR PLAINTIFFS COURT LITTIGATION & LEGAL ASSISTENCE TO PRISONERS (ii) CEASE SEGRAGATING PLAINTIFF WITHOUT FIRST PROVIDING HIM AN OPPORTUNITY TO BE HEARD & PRESENT HIS VIEWS TO THE DECISION MAKER (iii) CEASE SEGRAGATING PLAINTIFF BASED ON NO EVIDENCE -& SOLY TO FIND EVIDENCE (iv) CEASE SEG-RAGATING PLAINTIFF FOR VAGUE INVESTIGATIONS WHICH PROVIDE HIM NO NOTICE TO PREPAIR A DEFENSE & DISCLOSE ALL EVIDENCE/BASES USED TO SEGRAGATE 24 HOURS PRIOR TO ICC FOR DEFENSE/EXAMINATION

(v) CEASE PRACTICE OF EXCEEDING THE 12 MONTH INVESTIGATION PERIOD -& MANDATE THAT SAID INVESTIGATA-ONS BE CONDUCTED WHILE PLAINTIFF IS ON THE G.P. (vi) CEASE PRACTICE OF SEGRAGATING PLAINTIFF UNLESS DEFENDANTS FIRST HAVE SUFFICIENT, RELIABLE CORROBORATED EVIDENCE THAT PLAINTIFF IS KNOWINGLY COMMITT-ING ILLEGAL ACTS OF MISCONDUCT ON BEHALF OF THE GANG CCR 3000, 3023, 3378(f) WITHIN THE YEAR OBSERVAT-ION PERIOD CCR 3341.5(c)(5) (vii) VACCATE THE VALIDATION & SEGRAGATION ORDER & RELEASE PLAINTIFF (viii) CEASE PRACTICE OF SEGRAGATING PLAINTIFF WITHOUT FINDING & EVIDENCE THAT PLAINTIFF IS CURRENTLY ACTIVE OR A SECURITY THREAT (ix) CEASE PRACTICE OF COVERING UP OFFICER MISCONDUCT BY REFUSING TO PROCESS INMATE APPEALS (x) CEASE PRACTICE OF REFUSING TO PROCESS INMATE APPEALS OR THROWING THEM AWAY & IMPLEMENT POLICIES TO STOP THIS PROBLEM AT ALL INSTITUTIONS (xi) ONCE 12 MONTH OBSERVATION PERIOD ENDS ORDER IMMEDIATE ANNUAL REVIEWS - AND TRANSFERS TO PLAINTIFF ET SEQ CCR 3375, 3341.5(c)(5)

(xii) EXPUNGE FROM C-FILE HOLMES & QUINONEZ FALSE & MISLEADING STATEMENTS TO THE OCS (xiii) VACCATE THE OCS DECISION & ORDER A NEW & FAIR ONE, WHERE (A) PLAINTIFF IS DISCLOSED ALL EVIDENCE INCLUDING A COPY OF ANY LETTER AND ENVELOPE IT WAS MAILED IN (B) PLAINTIFF IS DISCLOSED ALL EVIDENCE WHICH IS EXCULPATORY & DOES NOT JEAPARDIZE INSTITUTIONAL SECURITY (C) PLAINTIFF IS NOTIFIED WHAT IS THE EXACT BASES FOR THE VALIDATION & WHAT CATEGORY IT FALLS UNDER (D) WHERE ALL FALSE, UNRELIABLE ALTERED OR FORGED DOCUMENTS ARE NOT USED IN ANY WAY (g) WHERE PLAINTIFF IS PROVIDED A 24 ADVANCE NOTICE TO PREPAIR HIS VIEWS - WHICH ARE THEN RECORDED & PRESENTED TO AN IMPARTIAL OCS - WITH PLAINTIFF BEING NOTIFIED 14 DAYS BEFORE ITS SUBMITTED AND (h) WHERE DEFENDANTS DO NOT RELY ON FALSE, UNCORROBORATED & INSUFFICIENT/UNRELIABLE EVIDENCE TO VALIDATE AND SEGRAGATE.

(xiv) CEASE USE OF ALL UNDERGROUND PRACTICES/POLICIES, UNTIL COMPLIANCE WITH APA. (XV) ONCE 12 MONTH OBSERVATION IS OVER REQUIRE THAT DEFENDANTS FIRST HAVE THREE NEW ITEMS OF GANG ACTIVITY AS DEFINED IN CCR 3000, 3023 PRIOR TO VALIDATING & SEGREGATING PLAINTIFF (xvi) CEASE VALIDATING AND SEGREGATING PLAINTIFF BASED ON UNRELIABLE & UNCORROBORATED INFORMANTS (xvii) PRIOR TO IMPOSING A SHU TERM FOR THE CONDUCT OF ASSOCIATION/GANG ACTIVITY, PROVIDE PLAINTIFF EQUAL DUE PROCESS PROTECTIONS AFFORDED TO OTHER INMATES FOR WORSE CONDUCT UNDER WOLFF V. MCDONNELL & CCR 3315-3320 ETSEQ.

(xviii) CEASE USE OF DRB CONTRACT WITHOUT ENSURING THE CONTRACT IS LEGAL, THAT PLAINTIFF FULLY UNDER-STANDS HIS RIGHTS & THAT DEFENDANTS ABIDE BY ITS TERMS & NOT BREACH IT. (xix) IMPLEMENT CLEAR & FAIR PRISON GANG MANAGEMENT POLICY THAT (a) PROVIDES ADEQUATE NOTICE OF WHAT CONDUCT IS PROSCRIBED & WHAT CONDUCT IS PERMITTED (b) DEFINE "GANG ACTIVITY" "THREAT" "INACTIVE & ACTIVE AFFILIATED" "INVOLVEMENT IN GANG ACTIVITY" "ASSOCIATION" (c) PROVIDES CLARITY FOR ENFORCEMENT WHICH DOES NOT REACH A BROAD RANGE OF INNOCENT CONDUCT NOR PROVIDES UNBRIDLED DISCRETION TO DEFENDANTS (d) PROVIDE TRAINING & REASONABLE, MINIMAL STANDARDS TO GUIDE DEFENDANTS WHEN JUDGING WHETHER OR NOT AN INMATE IS A PRISON GANG AFFILIATE OR THREAT TO THE SAFETY OF OTHERS OR INSTITUTIONAL SECURITY.

(xx) CEASE PRACTICE OF PRE-DETERMINING PLAINTIFFS FURTHER SEGREGATION WITHOUT FIRST ALLOWING HIM TO BE PRESENT - TO PRESENT HIS VIEWS, AN EXAMINATION OF EVIDENCE - A REFERENCE OF QUESTIONABLE EVIDENCE USED TO SEGREGATED BACK TO IGI FOR INVESTIGATION, AND A CONSIDERATION & OR RELEASE OF PLAINTIFF TO THE GP. (xxi) CEASE PRACTICE OF CONDUCTING MEANINGLESS ICC COMMITTEES - WHICH ACCEPT IGI'S ET-AL'S FINDINGS AS CONCLUSIVE & PROVIDE NO INDEPENDANT REVIEW. (xxii) CEASE PRACTICE OF DENYING INACTIVE STATUS ELIGIBILITY BASED ON MEAR ASSOCIATION - RATHER THAN REQUIRED "ACTIVITY" (xxiii) CEASE DISPROPORTION-ATE 6 YEARS TO LIFE SHU TERM BASED ON MEAR ASSOCIATION/MEMBERSHIPS WITH OUT CONDUCT.

(xxix) ELIMINATE INHUMANE & UNCONSTITUTIONAL CONDITIONS IN THE SHU. (xxx) CEASE PRACTICE OF RETAIN-ING INDEFINATELY & READING OUT GOING MAIL (xxxi) PROVIDE PLAINTIFF COPIES OF ALL RETAINED LETTER- RETURN OR FORWARD THE ORIGINALS & REMOVE ANY COPIES FROM HIS C-FILE (xxxii) CEASE INVADING ATTORNEY CLIENT PRIVILEGE (xxxiii) CEASE INVADING THE PRIVICY OF CORRESPONDENCE - AND DO NOT SWITCH LETTERS!

(xxxix) CEASE PRACTICE OF UTILIZING HIGH POWERED CHEMICAL AGENTS TO RETREIVE SIMPLE PLASTIC FOOD TRAYS (xxxx) CEASE PRACTICE OF PROLONGING THE REMOVAL OF INMATE WHO VOLUNTEERS TO BE REMOVED FROM CELL AFTER HES BEEN EXPOSED TO THE CHEMICAL AGENT (xxxxi) CEASE DEPRAVATION OF LIFES BASIC NECESSITIES (xxxxii) CEASE USE OF EXCESSIVE FORCE AGAINST PLAINTIFF (xxxxii) CEASE SUBJECTING PLAINTIFF

To Hazeardous living conditions(xxxxiii) Appoint a court monitor.

3. Compensatory damages of $75,000ᵉᵉ jointly and severally from defendants Daley, Clausings, Perez Munos, Morse & Mos, Hutchins, Reynoso, Hacker, Roberson, Quinonez & Diaz, for the mental emotional physical anguish pain & suffering as alleged in the eleventh cause of action.—plus $85,000ᵉᵉ in punitive damages from each of these defendants, for infliction of pain & suffering & for intentionally violating plaintiffs rights as alleged hereto. Ibid

4. Compensatory damages of $75,000ᵉᵉ jointly & severally from defendants Daley, Paz Morse, Clausings Munos, Omos, Hutchins, Reynoso, Hacker, Roberson, Quinonez & Diaz, for mental emotional, anguish Humiliation, pain & suffering as alleged in the 12ᵀᴴ cause of action. plus $85,000ᵉᵉ in punitive damages from each of these defendants, for the infliction of Humiliation, pain, suffering & for intentionally violating plaintiffs rights as alleged herein Ibid.

5. Compensatory damages of $75,000ᵉᵉ jointly & severally from defendants Daley, Paz, Morse, Clausings Munos, Omos, Hutchins, Reynoso, Hacker, Roberson, Quinonez & Diaz for mental, emotional, anguish, pain & suffering as alleged in the 13ᵀᴴ cause of action. plus $85,000ᵉ in punitive damages from each of these defendants, for the infliction of pain suffering & for violating plaintiffs rights as alleged herein Ibid

6. Compensatory damages of $75,000ᵉᵉ jointly & severally from defendants Daley, Paz, Morse, Clausings Munos, Omos, Hutchins, Reynoso, Hacker, Roberson, Quinonez & Diaz for mental, emotional, anguish, pain & suffering as alleged in the 14ᵀᴴ cause of action. plus $85,000ᵉᵉ in punitive damages from each of these defendants, for the infliction of pain suffering & for violating plaintiffs rights as alleged herein Ibid

7. Compensatory damages of $350,000ᵉᵉ jointly & severally, from defendants Holmes & Quinonez, for the physical, mental, emotional anguish & pain & suffering inflicted on plaintiff by the use of excessive force & conspiracy against plaintiff as alleged in the 15ᵀᴴ and 16ᵀᴴ causes of action, plus $400,000ᵉᵉ in punitive damages for deliberately violating plaintiffs constitutional rights as alleged hereto.

8. Compensatory damages of $100,000ᵉᵉ jointly & severally from defendants Smith, Pineda, Wan & Clark for covering up the excessive force & conspiracy against plaintiff as alleged in the 17ᵀᴴ-18ᵀᴴ causes of action, which caused plaintiff mental emotional anguish!—plus $50,000ᵉᵉ in punitive damages for violating plaintiffs rights as alleged hereto. Ibid

9. Compensatory damages of $100ᵉ a day for plaintiffs segragation to the present from Jan.9.07 to the present—jointly & severally from defendants Quinonez, Diaz, Holmes, Clark Speer, Beruiva

RUFF, TILTON, WOODFORD, HUBBART, RIANDA, SPEER, E.FISHER, RUFF, GRANNIS, READ, JENSEN, ALLEN, HUTCHINS, WARD WAN ALLISON, OFTEDAHL, SELVY, FEIGEN, MENDEZ, REYNOSO, GARCIA ELLIOT, LAWRENCE RIVERA, MAY PETERSON HANDSON, POOLE, HALL, R.GOMEZ, D.FISHER SMITH, LEE, HACKER, PINEDA & PEREZ TO COVER FOR PLAINTIFFS MENTAL EMOTION & PHYCHOLOGICAL ANGUISH AS A RESULT OF HIS SEGRAGATION.

10. COMPENSATORY DAMAGES OF $100ºº A DAY FOR PLAINTIFFS SEGRAGATION FROM NOV. 27-07 TO THE PRESENT, JOINTLY & SEVERALLY FROM DEFENDANTS HOREL BRADBURY, SILVA, NEALY,COX & PARKER TO COVER FOR PLAINTIFFS EMOTIONAL & PHYCOLOGICAL ANGUISH AS A RESULT OF HIS SEGRAGATION

11. PUNITIVE DAMAGES OF $50,000ºº FROM ANY DEFENDANT FOUND TO HAVE INTENTIONALLY DENIED PLAINTIFFS RIGHTS WITH RESPECT-& RELATED TO HIS SEGRAGATION/VALIDATION.

12. DAMAGES OF /SANCTIONS OF $5,000ºº FROM ANY DEFENDANT TO THE COURT ET AL..WHO IS FOUND TO HAVE VIOLATED THE MADRID INJUNCTION.

13. COMPENSATORY DAMAGES IN THE AMOUNT OF $15,000ºº JOINTLY & SEVERALLY FROM DEFENDANTS PUENTE, COUNTESS, WISE BRANDON,& HOREL TO COVER FOR PLAINTIFFS MENTAL EMOTIONAL & PHYCOLOGICAL ANGUISH AS A RESULT OF THEIR ACTIONS ALLEGED IN THE 50TH TO 54TH CAUSES OF ACTION. PLUS $10,000ºº IN PUNITIVE DAMAGES FOR VIOLATING PLAINTIFFS RIGHTS AS ALLEGED HEREIN IBID

14. COMPENSATORY DAMAGES IN THE AMOUNT OF $20,000ºº JOINTLY & SEVERALLY FROM DEFENDANTS BACCI, JOHNSON, HAROLD WISE, PUENTE, COUNTESS & BRANDON TO COVER FOR PLAINTIFFS MENTAL EMOTIONAL ANGUISH AND STRESS CAUSED BY THEIR INTRUSION INTO PLAINTIFFS ATTORNEY CLIENT PRIVILEGE, PLUS $50,000ºº IN PUNITIVE DAMAGES FOR INTENTIONALLY VIOLATING PLAINTIFFS RIGHTS.

15. COMPENSATORY DAMAGES OF $30,000ºº JOINTLY & SEVERALLY FROM DEFENDANTS HARMAN, BASNETT, PUENTE & COUNTESS TO COVER FOR THE PHYCHOLOGICAL MENTAL & EMOTIONAL ANGUISH, CAUSED BY THIER ACTIONS ALLEGED IN THE 56TH TO 58TH CAUSES OF ACTION, PLUS $50,000ºº IN PUNITIVE DAMAGES FOR VIOLATING PLAINTIFFS RIGHTS AS ALLEGED IN THESE CAUSES OF ACTION.

16. PLAINTIFFS COSTS OF SUIT, THAT DEFENDANTS PAY FOR ALL COSTS AND REASONABLE ATTORNEYS FEES PURSUANT TO 42 U.S.C. 1983 & ANY OTHER GROUNDS AUTHORIZED BY LAW.

17. TRIAL BY JURY, INCLUDING TO THE EXTENT THAT LEGITIMATE SECURITY CONCERNS DICTATE, IN JUDICIAL PROCEEDING REGARDING ANY FACTUAL & LEGAL ISSUES WITHIN THIS COMPLAINT

18. FOR FURTHER RELIEF THE COURT DEEMS JUST.

1

2

3

4     I declare under penalty of perjury that the foregoing is true and correct.

5

6     Signed this ____5th____ day of ___April_____, 20_08_

7

8

9                              (Plaintiff's signature)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                              - 69

| NO.: K-78581 | NAME: MANRIQUEZ | CDC-128-G (Rev. 2/96) |
|---|---|---|
| Custody: MAX | Assignment: Indeterminate SHU | |
| Comments: DEPARTMENTAL REVIEW BOARD | | |

| Location: COR SHU | | PS: 53 | Enemy: YES | LWOP |
|---|---|---|---|---|
| Gang: INACTIVE MEXICAN MAFIA ASSOCIATE | | | Prior DRB: YES | Restitution: N/A |
| Holds/Wants/Detainers: NONE | | | | |

**REASON FOR REFERRAL:** This case has been referred to the DRB for *subsequent review* for consideration of release from SHU of an inmate approved by DRB to be inactive however, retained in SHU by DRB for institution security.

**CASE FACTORS:** Inmate Manriquez is a 30-year-old, first-termer, who was received into CDCR on 12-18-97 from Los Angeles County for three counts of First-Degree Murder and one count of Second-Degree Murder. He was sentenced to Life Without the Possibility of Parole plus seven years. There are no arrests noted for arson, escape, or sex related crimes. There are no medical or mental health concerns noted. GPL is 9.9.

Inmate Manriquez has remained disciplinary free throughout his term. The institution advised he has one CDC Form 128-A, counseling chrono, for Use of a Fish Line in the SHU Law Library.

**CIRCUMSTANCES:**

*Gang Validation:*
- Inmate Manriquez was originally validated as an associate of the Mexican Mafia (EME) prison gang on 4-27-98. The LEIU re-affirmed the validation on 9-9-03.
  ○ Validation information indicated Inmate Manriquez was not in a position of leadership.
- Inmate Manriquez was subsequently transferred to Pelican Bay State Prison (PBSP) SHU on 6-12-98.
- The IGI at PBSP reviewed him for inactive status and noted no new gang activity since 1998. It is noted that Inmate Manriquez was in SHU housing throughout the entire six-year review period. The IGI referred his case to LEIU for validation of inactive status (CDC Form 128-B dated 7-1-04).
- The LEIU validated Inmate Manriquez as an inactive associate of the EME on 8-3-04.

*DRB Appearance:*
- Inmate Manriquez appeared before the DRB on 9-22-04 at PBSP SHU. At that time, the committee attempted to speak with Inmate Manriquez regarding his gang association. He continued to deny associating with gang members and stated he only provides assistance to inmates with their legal work. He became very agitated with the committee and was aggressive and hostile during simple conversation. He then threatened the committee stating, "you deny my release and I will tear up your process." After the interview, the DRB expressed concern regarding release of Inmate Manriquez to the GP. The committee gave him an option of staying at PBSP SHU or transferring to California State Prison, Corcoran (COR) SHU. He chose to transfer. The DRB stated they would review his case after six months at COR SHU.
  - Inmate Manriquez was transferred to COR SHU on 1-11-05.
  - Inmate Manriquez has remained disciplinary free.
  - Inmate Manriquez signed the notice advising him of the conditions of his release on 9-9-05.

| Date: 9-13-05 | Classification: DRB ACTION | INST: COR |
|---|---|---|

| NO.: K-78581 | NAME: MANRIQUEZ | CDC-128-G (Rev. 2/96) |
|---|---|---|
| Custody: MAX | Assignment: Indeterminate SHU | |
| Comments: DEPARTMENTAL REVIEW BOARD | | |

**INSTITUTION STAFF RECOMMENDATION:** The institution made no recommendation; however, noted the inmate's request for placement at California Correctional Institution (CCI) Level IV 180-design or California State Prison, Sacramento Level IV 180-design.

**CLASSIFICATION SERVICES RECOMMENDATION:** After a review of the information provided, CSU noted the LEIU validated him as inactive and he has agreed to a conditional release with the understanding that he cannot participate in gang activities. Also noted was the fact that Inmate Manriquez has remained in SHU for over seven years and has never been housed in a GP setting. CSU believes that Inmate Manriquez should be given the opportunity to program in the GP and recommends the DRB approve release from SHU and transfer to CCI IV 180.

**DRB ACTION OF 9-13-05:** Inmate Manriquez made a personal appearance before DRB on this date. He was in good health and ready to proceed. He was cooperative and receptive during the hearing. Inmate Manriquez attempted to serve the Chairperson with legal documents, however without representation present, the Chairperson advised the inmate to utilize the standard process for serving a departmental employee notice of the intent to sue. The DRB discussed the inmate's in-custody behavior and his alleged gang involvement. Inmate Manriquez denied any gang membership. The committee attempted to discuss a 1997 stabbing assault against Inmate Manriquez and he refused to discuss the situation. The committee explained that potential safety concerns need to be addressed and Inmate Manriquez indicated that he had no safety issues. The DRB notes that Inmate Manriquez has remained disciplinary free for the past seven years and free of documented gang activity for over six years. The DRB explained that all inmates are required to double-cell in the GP and he stated that would not be a problem. Based on consideration of all case factors, the DRB elects to release Inmate Manriquez from SHU and approve transfer to California Substance Abuse Treatment Facility and State Prison at Corcoran (SATF) Level IV for 180-design housing. The DRB reviewed all case factors, both the COR and CSU recommendations, and elects to take the following actions:

COR

1. Confirm the inmate's inactive gang status.
2. Approve transfer to SATF Level IV for 180-design housing.
3. The COR Classification and Parole Representative (C&PR) to facilitate this transfer within 30 days after receiving this action.
4. The COR C&PR to complete the CDC Form 840 with applicable transfer information/administrative determinates, including "INA" (pursuant to CCR Section 3375.2), update the CDC Form 812 and CDC Form 127 prior to transfer.

SATF

1. Grant Close A custody for a minimum of 12 months.
2. WG/PG A2/B effective date of transfer.
3. Review for double-cell housing and house accordingly.
4. The receiving IGI to monitor the inmate's activities.

| Date: 9-13-05 | Classification: DRB ACTION | INST: COR |
|---|---|---|

A-71

| NO.: K-78581 | NAME: MANRIQUEZ | CDC-128-G (Rev. 2/96) |
|---|---|---|
| Custody: MAX | Assignment: Indeterminate SHU | |
| Comments: DEPARTMENTAL REVIEW BOARD | | |

5. Staff to advise Inmate Manriquez that any future gang activity/involvement may result in an active gang validation and return to a SHU program.
6. Receiving staff may evaluate this case in 12 months for transfer consideration/alternate placement commensurate with the inmate's case factors.

RETAIN DRB TRANSFER CONTROL:   YES ☐  NO ☒

**MEMBERS:**  **S. HUBBARD,** Associate Director (A)
Division of Adult Institutions

**D. SPEER,** Assistant Director (A)
Law Enforcement and Investigations Unit

**L. RIANDA,** Chief
Classification Services Unit

**RECORDER:**  **D. ROTHCHILD,** Correctional Counselor III
Classification Services Unit

L. RIANDA, Chief
Classification Services Unit

S. HUBBARD, Associate Director (A)
Division of Adult Institutions

| Date: 9-13-05 | Classification: DRB ACTION | INST: COR |
|---|---|---|

A-72

C5.702W

# INMATE COPY

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

CDC128G

| | | | |
|---|---|---|---|
| **CDC NUMBER:** K78581 | **CS/LEVEL:** 52/IV | **WG/PG:** A2/B EFF 11-15-05 | **ACTION:** INITIAL REVIEW. RELEASE TO |
| **NAME:** MANRIQUEZ | **CUSTODY:** CLO-A | **ASSIGN:** U/A | FACILITY-C GP. ESTABLISH CLO-A |
| **REL DATE:** | **NEXT CLASS:** 11-06 | **CCCMS:** NO, PER CDC | CUSTODY, WG/PG A2/B EFF 11-15-05. |
| **REL TYPE:** LWOP | **HOUSING:** C5 102 | **128-C DATED 9-9-05** | PLACE ON SUPPORT SERVICES |
| | | | WAITING LIST. DOUBLE-CELL CLEAR. |

**INMATE MANRIQUEZ, K78581**, appeared before **FACILITY C, UNIT CLASSIFICATION COMMITTEE** for **INITIAL REVIEW**. "S" is a **Hispanic, First Termer** received by CDC on 12/18/1997 from LA County for P187 Murder 1st. **Term:** LWOP. **Restitution:** $200 LA County # BA109306. Received by CSATF on 11/15/2005 from COR, as a Non-Adverse TX with a WGPG of D1.

**C-FILE REFLECTS:** **Discharged numbers:** N/A. **Arson:** None. **Escape:** None. **Sex Offense:** None. **GPL:** GED. **HWD/CDC 850:** No Holds. **FPTTP:** N/A. **Gang:** LA Puente, validated inactive EME associate, AKA: 'Spanky' & 'Danny'. **Enemies:** Yes, noted on CDC 812. **Registrations:** PC296 Notification required. **SVP:** N/A. **Disciplinary History:** None. **Close Custody:** 5-years remaining at close custody. **Medical Status:** FD/FH clear (12-23-97). **CCCMS:** No, per CDC 128-C dated 9-9-05. **EOP:** No, per CDC 128-C dated 9-9-05. **MDO:** N/A, no mental health history. **TB code:** 22 per CDC 128-C dated 5-4-05. **Disability Verification:** N/A. SAP: Ineligible due to VIO & Life. CAMP: Ineligible due to VIO & Life. MSF: Ineligible due to VIO & Life. MCCF: Ineligible due to VIO & Life. CCF: Ineligible due to VIO & Life. Restitution Center: Ineligible due to VIO & Life. CCRC: Ineligible due to VIO & Life. Next BPT: N/A. County of residence: LA. **Confidential File:** Reviewed. **Reviewed and Updated:** CDC127, CDC 812, CDC 840. **PC3058.6 Applicable:** Yes, it restricts reductions to inmate's release date within the last 75-days of release to special orders (eg.) Court, BPT, Appeals). **PC3058.8 Applicable:** No. Inmate was given 72-hour notice Per CCR 3375(F)(1). PC2930-2933: Complied with notice requirements. Initial Classification not held within 14-days of inmate reception due to Administrative error.

**COMMITTEE ACTIONS:** **Release to Facility-C GP. Establish CLO-A custody, WG/PG A2/B eff 11-15-05. Place on Support Services waiting list. Double-cell clear. Cell/Dorm:** Dorm/Cell no special restrictions. **WGPG: A2/B eff 11-15-05. Assignment: U/A. Justification for committee action: Initial.**

**COMMENTS:** "S" stated that he can safely program on Facility-C at SATF.

Inmate participated and agreed with committee action. Inmate was advised of his right to appeal committee action (s).

| | | |
|---|---|---|
| *(signature)* | | *(signature)* |
| **B. PETERSON** | **W. POOLE (A)** | **P. MENDES (A)** |
| **CC-I/RECORDER** | **CC-II** | **CAPTAIN/CHAIRPERSON** |
| **ACTION DATE:** 12/7/2005 | **INITIAL REVIEW** | **CSATF/SP**    vw: CI 94 |

EXHIBIT A -73-

# INMATE/PAROLEE
# APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region
1. _SATF-2_
2.

Log No.
1. _07-01670_
2.

Category
_7_

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| DANiel MANRiquEz | K-78581 | | ASU - cell/22- |

A. Describe Problem: 1). SATF PRisON OFFiCiAls - iN PARTiCulAR CAPTAiN DiAZ is ViolATiNG MY liBERTY iNTEREST iN CCR 3084.1 et SEq., BY FAiliNG To PROCESS ANd TiMElY ANSWER MY APPEals - ANd/oR BY discARdiNG MY APPEals, iN ViolATiON OF MY 14TH AMENdMENT RiGHTS. FACTS: CCR 3084.1(a) CREATES A liBERTY iNTEREST BECAUSE iT PROVidES THAT "ANY iNMATE OR PAROlEE UNdER THE dEPARTMENTS JURISdiCTiON MAY APPEAL ANY dEPARTMENTAL, dECisiON, ACTiON, CONdiTION, oR Policy WHiCH THEY CAN dEMONSTRATE AS HAViNG AN AdVERSE EFFECT UPON THEiR WElFAiR." - SiMilARlY 3084.6 CREATES A liBERTY iNTERESTS BECAUSE iT MANdATES THAT All APPEals MUST BE TiMElY PROcEsSEd ANd RESPONdEd TOO. ON OR ABOUT JAN 10-07 I SUBMiTTEd AN APPEAl diRECTlY To CAPTAiN diAZ TiMElY CHAllENGiNG MY RETENTiON/PlACEMENT iN ASU'S illEGAl POliciES ANd ATTAchEd A CiTiZENS COMPlAiNT To iT (SEE EXHiBiT A HERETO) - OVER A WEEK lATER I SUBMiTTEd [CONT P.5 iNFRA]

If you need more space, attach one additional sheet.

B. Action Requested: 1) AN iNVESTiGATiON iNTO THis MATTER(2) THAT All STEPS ARE TAKEN To PROCESS ANd ANSWER BOTH MY APPEals BEFORE THE TiME liMiTTATiONS ElAPS (3) loCATE THOSE APPEals iF diAZ THROUGH THEM AWAY THAT HE BE disCiPliNEd ANd THE ATTACHEd TWO COPiES OF THOSE APPEals BE PROCESS (4) CEASE dESTROYiNG iNMATES APPEals - oR AdMiT THAT THE AdMiNisTRATiVE REMEdiES ARE FUTil iNAdiQUATE AT SATF (5) EACH dEFENdANT iNCludiNG diAZ PAY ME 100,000.00 iN PUNiTiVE dAMAGES FOR ViolATiNG MY RiGHTS AS AllEGEd HERETO ANd CONSPiRiNG To dEPRiVE ME OF AdMiNiSTRATiVE/JUdiciAl REViEW

Inmate/Parolee Signature: _____   Date Submitted: MAR. 26 - 07

CSATF APPE
APR 0 5 2007

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

BYPASS

Staff Signature: _____   Date Returned to Inmate: _____

(vertical stamp) INMATE APPEALS BRANCH   JUL 13 2007   RECEIVED

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

Signature: _____   Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

EXHiBiT B  73-A

7



First Level    ☐ Granted    ☒ P. Granted    ☐ Denied    ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _4-17-07_    Due Date: _5-30-07_

Interviewed by: _____

_see attached_

Staff Signature: _____    Title: _Lt._    Date Returned: _____ CSATF APPEALS

Division Head Approved:
Signature: _____    Title: _AW_    Date to Inmate: JUN 1 2007

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response. MY APPEALS HAVE NOT BEEN GRANTED IN FULL - MY APPEALS HAVE YET TO BE PROCESSED - LT J.PEREZ AND T.P WAN, HAVE VIOLATED MY FEDERAL DUE PROCESS RIGHTS/ LIBERTY INTERESTS BY FAILING TO CONDUCT AN ADDEQUATE INVESTIGATION OF THIS MATTER - AND PREVENT THE CONSTITUTIONAL VIOLATIONS BY LOCATING AND PROCESSING THE APPEALS - AND INSURING THAT ALL CONSTITUTIONAL VIOLATIONS ALLEGED HERETO CEASE.' THUS THEY ARE EQUALLY LIABLE - FOR ALL VIOLATIONS ALLEGED HERE TO. AND MY APPEALS SHOULD BE GRANTED IN FULL

Signature: _____    Date Submitted: _JUNE 6-07_

Second Level    ☐ Granted    ☒ P. Granted    ☐ Denied    CSATF APPEALS

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: JUN 0 8 2007    Due Date: _7-9-07_
☒ See Attached Letter

Signature: _____    CSATF APPEALS    Date Returned: _____
Warden/Superintendent Signature: _____    Date Returned to Inmate: _____ 2007

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.
dissatisfied All of the above reviewers have violated my rights to due process (14th amend.) by failing to conduct an adequate investigation! and not granting the appeal-first off as of yet they have not submitted my appeals nor processed them- instead to deprive me court access (1st 14th amends) they make the appeals terminate attachments! -this violates my liberty interest because I had a right to appeal adverse decisions.CCR 3084 et seq... Yet Captain Dias- and the above reviewers deprive me of this basic right! In order to close the doors to court access- given the exhaustion requirement- to cover up their constitutional violations like dias

Signature: _____    Date Submitted: _7-10-07_

For the Director's Review, submit all documents to:    Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

0701611

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other
☒ See Attached Letter

DEC 0 6 2007
Date: _____

CDC 602 (12/87)

1. INCORPORATE AND REALLEGE ALL ARGUMENTS IN THIS 602 AND ITS ATTACHMENTS

B-74

CONTINUED FROM SEC. A ANTE..

TO CAPTAIN DIAZ ANOTHER APPEAL CHALLENGING THE ICC, HEARING AND ILLEGAL DECISION TO RETAIN ME FOR 180 BASED ON ITS UNCONSTITUTIONAL POLICIES (EXHIBIT B HERETO)[1] — GIVEN THAT BOTH THESE ISSUES CANNOT BE RESOLVED BY THE INFORMAL AND FORMAL LEVEL — THEN THEY ARE "BY PAST" TO THE FIRST LEVEL WHICH GIVES THE OFFICER[S] A TOTAL OF 50 <u>WORKING DAYS</u> TO RESPOND. — GIVEN THAT THE TIME LAPS TO RESPOND AND PROCESS THESE APPEAL IS APPROACHING — I'VE SENT NUMEROUS REQUESTS FOR INTERVIEW TO CAPTAIN DIAZ INQUIRING ABOUT THESE APPEALS, I'VE ALSO ASKED OTHER INMATES TO ASK DIAZ ABOUT THESE APPEALS — DIAZ HAS TOLD THEM "THATS BETWEEN THE ADMINISTRATION AND MANRIQUEZ" — HE'S YET TO RESPOND TO MY REQUESTS. — IT IS WELL KNOWN THAT THE 602 PROCESS HERE AT SATF IS A SHAM AS APPEALS ARE ROUTINELY DISCARTED[2] — DEPRIVING INMATES THEIR LIBERTY INTERESTS TO APPEAL — AND PETITION FOR GRIEVANCE GIVEN THAT EXHAUSTION IS A PREREQUISIT TO FILING — FOR HABEAS RELIEF OR A SUIT IN FEDERAL COURT.

1. BOTH EXHIBITS ARE INCORPORATED AS FULLY SET FORTH HERETO.
2. THUS I LITTERALLY HAVE TO HAND COPY EACH APPEAL I SUBMIT !!!

3

B-75

EXHIBIT
A

B-76

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region    Log No.    Category
1. _____ PERMANENT ATTACHMENT
2. _____ DO NOT REMOVE

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| DANiel MANRIQUEZ | K-7858 | | C-8 215 |

**A. Describe Problem:** LT QUINONEZ OF THE IGI & CAPTAIN DIAZ ARE guilty OF DELIBERATELY AND MALITIOUSLY VIOLATING MY CONSTITUTIONAL RIGHTS TO DUE PROCESS AND TO BE FREE FROM CRUEL AND UNUSUAL TREATMENT, BY TRANSFERRING ME AND HOUSING ME IN THE ASU, WHERE I WAS SUBJECTED TO degrading inHuMAN conditions, BASED ON VAGUE OVERBROAD INFORMATION WITHOUT FIRST PROVIDING ME A FAIR NOTICE AND AN OPPORTUNITY FOR A REBUTTAL IN VIOLATION OF MY 1ST, 8TH AND 14TH AMENDMENT RIGHTS, ADDITIONALLY ALL SUPERVISORY OFFICIALS NAMED HERETO ARE EQUALLY LIABLE FOR THEIR FAILURE TO TRAIN AND SUPERVISE FACTS: ON JAN 9-07 WHILE PETITIONER WAS IN HER CELL OFFICER ORTIZ AND JOHN DOE #1, TOLD ME AND MY CELLIE THAT THEY NEED TO SEARCH OUR CELL, WE CUFFED UP AND I WAS PRACTICALLY dRAGGED BY OTHER OFFICERS IN COLD WEATHER TO THE PROGRAM OFFICE, I ASKED WHAT THIS WAS ABOUT AND WAS TOLD I DONT KNOW, QUINONEZ CALLED AND SAID GO GET MANRIQUEZ" I WAS THEN PLACED IN A SMALL COLD CAGE, STRIPED OUT AND LEFT IN MY UNDERWEAR WITHOUT SHOES FOR SEVERAL (CONTINUED P.3 INFRA)

If you need more space, attach one additional sheet.

**B. Action Requested:** 1. AN INVESTIGATION INTO THIS MATTER 2. THAT THIS 602 BE PLACED IN DIAZ, AND QUINONEZ PERSONAL FILES FOR 5 YEARS, 3. PROVIDE ME WITH A NOTICE OF CHARGES AGAINST ME 4. GIVE ME A COPY OF AII EVIDENCE BEING USED TO RETAIN ME. 5. CEASE USING VAGUE AND OVER BROAD POLICIES - 6. ORDER MY IMMEDIATE RELEASE, 7. IMPLEMENT ENFORCE AND TRAIN ALL IGI AND STAFF AS TO CASTILLO SETTLEMENT. 7. REJECT ANY EVIDENCE AGAINST ME AS NOT RELIABLE 8. CEASE VIOLATING MY CONSTITUTIONAL RIGHTS AS ALLEGED HERETO. 8. THAT EACH DEFENDANT NAMED HERE IN - PAY ME 100⁰⁰ EACH IN COMPEN-SATORY dAMAGES FOR MENTAL EMOTIONAL DISTRESS - FOR EVERY DAY I REMAIN IN AdSEG/SHU, AND THAT THEY EACH PAY ME 100⁰⁰ IN PUNITIVE DAMAGES - FOR EACH DAY (100⁰⁰ PER DAY) THAT I AM HELD IN AdSeg/SHU FOR VIOLATING MY CONSTITUTIONAL RIGHTS AS Alleged HERE TO

Inmate/Parolee Signature: _____    Date Submitted: JAN. 10-07

**C. INFORMAL LEVEL** (Date Received: _____)

Staff Response: _____

INMATE APPEALS BRANCH · JUL 13 2007 · RECEIVED

Staff Signature: _____    Date Returned to Inmate: _____

PERMANENT ATTACHMENT
DO NOT REMOVE

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim    CDC Appeal Number: _____

1. I SUCCESSFULLY SUED CDC TO BE RELEASED FROM THE SHU IN MANRIQUEZ V. DRB ___ I HAVE BEEN INFORMED THAT QUINONEZ HAS TOLD INDIVIDUALS THAT HE HAS A HARD ON TO GET ME, THUS I ALSO ALLEGE THAT MY SEGRAGATION IS NOT ONLY UNCONSTITUTIONAL BUT IS MADE IN RETALIATION FOR EXCERCIZING MY RIGHTS TO PETITION FOR GRIVIANCES AND COURT ACCESS - CONCURRENTLY WITH THIS COMPLAINT IM SUBMITTING A COMPLAINT TO THE dEPARTMENT OF JUSTICE FOR CIVIL AND CRIMINAL PROSECUTION AGAINST LT QUINONEZ.

R-77

HOURS WITHOUT BEING PROVIDED A NOTICE OF CHARGES OR AN OPPORTUNITY FOR A REBUTTAL. SEVERAL HOURS LATER I WAS PROVIDED A COPY OF THE ADMINISTRATIVE LOCK UP ORDER INDICATING THAT I WAS BEING PLACED IN ADMINISTRATIVE SEGREGATION AT THE ORDER OF LT QUINONEZ PENDING "INVESTIGATION" (WITHOUT ANY ELABORATION AS TO WHAT I WAS BEING INVESTIGATED FOR) AND THAT I WOULD REMAIN IN ADSEG UNTIL IGI COMPLEATES THE ALLEGED INVESTIGATION AND ICC REVIEW (EX A HERETO) I WAS THEN BRISKED AWAY TO 8BIK, AND FOR TWO DAYS WAS SUBJECTED TO INHUMANE, UNSANITARY AND DEGRADING CONDITIONS AS I WAS NOT PROVIDED A CHANGE OF UNDERGARMENTS FOR A FEW DAYS (8TH AMENDS)

ON WEDNESDAY, I WAS INTERVIEWED BY CAPTAIN DIAZ WHO ALSO REFUSED TO PROVIDE ME A NOTICE OF CHARGES OR AN OPPORTUNITY TO BE HEARD HE SIMPLY INDICATED "YOU READ THE LOCK UP ORDER ITS PRETTY MUCH VAGUE, IT SAYS INVESTIGATION, BUT THATS ALL I CAN TELL YOU", WHEN I INFORMED HIM OF MY RIGHTS TO A NOTICE OF CHARGES AND AN OPPORTUNITY TO PRESENT A DEFENSE AND NEW RIGHTS ACCORDING TO CASTILLO, HE INDICATED THEY DID NOT HAVE TO PROVIDE ME WITH ANY OF THAT BECAUSE I WAS NOT BEING VALIDATED, THAT THEY CAN PUT ME IN ADSEG TO INVESTIGATE ME IF THEY WANTED, WHEN I INFORMED HIM I STILL HAVE A RIGHT TO A NOTICE, AND REBUTTAL, HE REFUSED TO SPEAK ANY MORE STATING YOU'RE "WELL READ, AND IM NOT GOING TO DEBATE OR TALK TO YOU ABOUT THIS ANYMORE BECAUSE I KNOW YOU'RE GONNA SUE US, AND TEN YEARS FROM NOW YOU'RE GONNA USE MY WORDS AGAINST ME" (IN OTHER WORDS HE KNEW WHAT WAS BEING DONE WAS ILLEGAL AND HE WAS KNOWINGLY VIOLATING MY CONSTITUTIONAL RIGHT, HE EXPECTED TO BE SUED AND DIDNT WANT TO FURTHER INCRIMINATE HIMSELF), DIAZ NEXT REQUESTED IF I WANTED TO PRESENT A DEFENSE, AND IF I WANTED AN "IE", FOOR ICC-I TOLD HIM "YES" THATS "WHY THE LAW MANDATES THAT I FIRST BE GIVEN NOTICE OF WHAT IM ACCUSED OF, THIS WAY I CAN PRESENT A DEFENSE, I ALSO REMINDED HIM THAT THE CASTILLO SETTLEMENT WAS BASED INPART ON CDC'S USE OF VAGUE AND OVER BROAD POLICIES TO SEGRAGATE PEOPLE, HE AGAIN REFUSED TO GIVE ME NOTICE ONE IGI OFFICER ADMITTED HE HAD YET TO READ THE CASTILLO SETTLEMENT- DIAZ AFFIRMED THE DESISION TO SEGRAGATE- AND I WAS TAKEN BACK TO MY CELL WITHOUT A NOTICE OR AN OPPORTUNITY TO BE HEARD.

IST CAUSE OF ACTION: DUE PROCESS IN THE ADMINISTRATIVE CONTEXT REQUIERS THAT PRISON OFFICIALS PROVIDE THE PRISONER WITH A NOTICE OF CHARGES AGAINST HIM AND AN OPPORTUNITY TO PRESENT HIS VIEWS TO THE PRISON OFFICIAL CHARGED WITH DECIDING WHETHER TO TRANSFER HIM TO ADSEG "ROJAS.V. CAMBRA 1 997 WL 294409 (N.d CAl); BARNETT V. CENTONI 31 F.3d 813, 815 (9TH CIR 1994) THIS IS CONSISTENT WITH THE U.S SUPREME COURTS RECENT RULING (APPLICABLE TO ALL PRISONERS) THAT IT IS UNCONSTITUTIONAL TO DEPRIVE INMATES OF A "NOTICE" AND ADIQUATE OPPORTUNITY TO BE HEARD PRIOR TO THE TRANSFER TO ADSEG, FAILING TO GIVE INMATE SUFFICIENT NOTICE OF GROUNDS SERVING AS THE BASES FOR THEIR RETENTION AND FAILING TO GIVE THE INMATE SUFFICIENT OPPORTUNITY TO UNDERSTAND THE REASONING AND EVIDENCE USED TO RETAIN THEM IS UNCONSTITUTIONAL WILKERSON V. AUSTIN ET al..125 §CT. 2384 (2005). THERE IS NO DISPUTE QUINONEZ FAILED TO PROVIDE ME ANY NOTICE OF CHARGES AND ANY OPPORTUNITY TO BE HEARD PRIOR TO MY TRANSFER TO ADSEG, (THIS BELL CANNOT BE UNRUNG) INDEED HE HAD ALREADY MADE THAT DETERMINATION TO SEGRAGATE ME WITHOUT FIRST AFFORDING ME THESE CONSTITUTIONAL PROTECTIONS, DIAZ ALSO KNOWING IT WAS UNCONSTITUTIONAL ("I KNOW YOU'RE GONNA SUE") APPROVED OF THE LOCK UP ORDER A FEW DAYS LATER WITHOUT AFFORDING ME ANY NOTICE OR OPPORTUNITY TO REBUT ANY AEVIDENCE AGAINST ME. BOTH THESE MEN CANNOT SAY THAT THEY DID NOT KNOW THIS WAS ILLEGAL TO STAVE OFF A §1983 SUIT HOPE V. PELZER (2002) 122 §CT. 2308 - FOR MORE THAN A

B-78

the penitent hearing of due process has been established where a prisoner is entitled to be heard and in order that they may enjoy that right they must be notified. Wilkenson supra (quoting Baldwin v.Hale 1 Wall 223,233 (1864))

2nd CAUSE OF ACTION (NOTICE WAS VAGUE AND OVER BROAD AND FAILS TO GIVE SUFFICIENT NOTICE 24 HOURS BEFORE ICC FOR A DEFENSE) INMATES MUST RECIEVE A NOTICE OF CHARGES AGAINST THEM 24 HOURS BEFORE THE ICC HEARING, WOLFF V. McDONNELL 418 U.S. AT 564, AS I TOLD DIAZ - THE PURPOSE OF THE NOTICE IS TO INFORM [THE INMATE] OF THE CHARGES AND ENABLE HIM TO MARSHALL THE FACTS TO PREPARE A DEFENSE Id 564 HERE THE NOTICE WAS UNCONSTITUTIONALLY VAGUE IN VIOLATION OF THE 14TH AMENDMENT BECAUSE IT MERELY STATES "INVESTIGATION" WITH OUT ELABORATING FOR WHAT, THIS AS OF YET FAILS TO PROVIDE ME ANY BASES FOR WHAT, TO PRESENT A DEFENSE AT THE ICC HEARING, INDEED THIS NOTICE IS WORSE THAN PROVIDING ME WITH A MERE NAME OF A RULE I ALLEGEDLY VIOLATED PINO V. DALSHEIM 605 F.SUPP. AT 1313, THE LAW IS CLEAR - A PRISONER MUST KNOW THE RULE HE IS ALLEGED TO HAVE BROKEN IN ORDER TO KNOW HOW TO MARSHALL OUT THE FACTS AND PRESENT A DEFENSE AT A HEARING WOLFF AT 564. THIRD CAUSE OF ACTION: HOLDING ME IN ADSEG PENDING AN INVESTIGATION IS ILLEGAL IN VIOLATION, OF COURT INJUNCTIONS, LIBERTY INTERESTS AND DUE PROCESS BECAUSE IT CIRCUMVENTS THE RULES FOR RETAINING INMATES, CONTRARY TO CAPT. DAIZ, MISGUIDED VIEW OF THE LAW, NOTHING ALOWS HIM OR QUINONEZ TO PUNISH INMATES AS THEY PLEASE, UNDER THE GUISE OF "INVESTIGATION", THE 9TH CIRCUIT AND LEGISLATURE MADE IT CLEAR THAT NO DECISION TO SEGRAGATE SHALL BE BASED ON ANY INFORMATION CONFIDENTIAL OR NOT UNLESS THE DETERMINATION WAS MADE PRIOR TO THE SEGRAGATION, THAT THE INFORMATION WAS, CCR 3321(b)(2); CATO V.RUSHEN 824 F.2d 704 (9TH CIR 1987), NEW LAWS NAMELY "CASTILLO V. ALEMEIDA C94-28 MJJ (SEP 22-2005) MAKES IT EVEN HARDER BECAUSE, PRIOR TO SEGRAGATION AN INMATE MUST BE DESIGNATED "CURRENTLY ACTIVE", THE USE OF CONFIDENTIAL INFORMANTS, AND HEARSAY IS PROHIBITED - INFORMANTS CANNO LONGER RELAY THE NAME OF AN INMATE IN CONNECTION WITH A PRISON GANG, BUT MUST RELAY TO SPECIFIC ACTS OF ILLEGAL MISCONDUCT THAT THE INMATE DID ON BEHALF OF THE GANG (EXHIBIT B : 3000, 3023, 3378(c)1, 3378.8(H)) THE FACT THAT I HAVE NOT BEEN GIVEN A 115 RULES VIOLATION OR DIA REFERAL ESTABLISHES THAT IM BEING RETAINED UNDER INSUFFICIENT EVIDENCE[2] HERE DIAZ, AND QUINONEZ, DELIBERATELY CIRCUMVENTED THE PROCESS, THEY SEGRAGATED ME TO INVESTIGATE IF THEY HAVE SOMETHING "RELIABLE" RATHER THAN FIRST FINDING IT IS. THE ONLY INFRENCE IS - ITS NOT RELIABLE. BUT NEVER THE LESS THEY DELIBERATELY VIOLATE MY RIGHTS, AND PUNISHING ME BY HOLDING ME UNDER CONDITIONS WHICH JUDGE HENDERSON FOUND CAN PRESS THE OUTTER BOUNDS OF WHAT MOST HUMANS CAN TOLORATI FOURTH CAUSE OF ACTION: TO HOLD ME IN ADSEG PENDING INVESTIGATION VIOLATES MY LIBERTY INTEREST IN CCR 3341.5(c)(5) THE EQUAL PROTECTION AND DUE PROCESS CLAUSE OF THE 14TH AMENDMENT. THE REGULATION STATES "AN INMATE DETERMINED TO BE AN INACTIVE GANG AFFILIATE WILL BE TRANSFERED TO THE GENERAL POPULATION FOR AN OBSERVATION NOT TO EXCEED 12 MONTHS," HERE, THREE CONSECUTIVE YEARS OF INVESTIGATIONS BY PBSP, COR SHU, AND SATF ALL DETERMINED I WAS INACTIVE.[3] THUS DEFFENDANTS ARE FAR EXCEEDING THE 12 MONTH MAXIMUM BY MORE THAN TWO YEARS - MORE OVER THE INVESTIGATION (PERSUANT TO MY LIBERTY INTEREST) IS SUPPOSED TO BE CONDUCTED IN THE G.P.! INWOODFORD, HUBERT, PHILER, RIANDA, CASTRO. THE WARDEN AND ASS WARDEN AT SATF, ARE EQUALLY LIABLE, FOR THEIR FAILURE TO TRAIN AND SUPERVISE THESE OFFICERS, AND CURB THESE CONSTITUTIONAL VIOLATIONS.

---

2. UNDER THE TOUSSAINT INJUNCTION AND CASTILLO SETTLEMENT - DEFENDANTS ARE UNDER COURT MONITOR - YET DISPITE KNOWING THEY COULD BE HELD IN CONTEMPT - STILL CONTINUE TO VIOLATE MY RIGHTS - AND INJUNCTIONS / COURT SETTLEMENTS.

3. INDEED DIAZ AND QUINONEZ HAVE ADMITTED MY NAME HAS NOT COME UP - INFACT ALL OFFICERS CONCEED IVE BEEN A MODLE PRISONER!

<u>CASTILLO V. ALAMEIDA</u> C-94-2847MJJ (JUNE 1-2004 - SEPT 23-04) SETTLEMENT.

IS TO BE AMENDED INTO THE TITLE 15: (SEE CCR 3378 et seq....)

1. CDC IS REQUIRED TO FIND THAT ANY SHU PRISONER BE AN "ACTIVE" GANG MEMBER IN PRIOR TO APPROVING A PRISON GANG VALIDATION.

2. CDC IS REQUIRED TO HAVE AN "ARTICULABLE BASES" (MEANING SOMETHING THAT INCLUDES REASONABLE FACTS) AS TO WHY A SOURCE ITEM IS INDICATIVE OF GANG ACTIVITY. CDC IS REQUIRED TO DOCUMENT THIS ARTICULATIBLE BASES'

3. GANG ACTIVITY IS DEFINED AS ANY ILLEGAL, UNLAWFUL, OR CRIMINAL ACTIVITY DONE IN FURTHERANCE OF THE GOALS OF A PRISON GANG.

4. PRIOR TO APPROVAL OF AN VALIDATION, CDC IS REQUIRED TO GIVE THE PRISONER NOTICE OF THE CONSIDERED SOURCE ITEMS.

5. PRIOR TO APPROVAL OF A VALIDATION, CDC IS REQUIRED TO ASK FOR AND RECORD (IE DOCUMENT) AN INMATES VIEWS ON THE CONSIDERED SOURCE ITEMS, AND FORWARD THE INMATES VIEWS TO THE VALIDATION DECISION MAKERS.

6. CDC CAN NO LONGER RELY ON CONFIDENTIAL INFORMANTS WHO PROVIDE NOTHING MORE THAN A NAME OF A PRISONER IN CONNECTION TO A PRISON GANG. CONFIDENTIAL INFORMANTS MUST REFER TO SPECIFIC ACTS THAT AN INMATE ALLEGEDLY DID IN CONNECTION WITH A PRISON GANG.

7. CDC CAN NO LONGER RELY ON "HEARSAY" FROM CONFIDENTIAL INFORMANTS, INFORMANTS MUST HAVE PERSONAL KNOWLEGE OF THE CONFIDENTIAL INFORMATION DISCLOSED.

8. CDC CAN NO LONGER USE ONE INCIDENT REPORTED BY SEVERAL SOURCES (CONFIDENTIAL OR OTHERWISE) AS MULTIPLE SOURCE ITEMS, AND INSTEAD MUST COUNT ONE INCIDENT, REGARDLESS OF THE NUMBER OF SOURCES, AS ONE SOURCE ITEM

9. CDC MUST TRAIN ALL IGIS AND LEIU STAFF ON THESE NEW CHANGES IN A TIMELY FASHION.

10. CDC MUST CONSIDER DEVELOPING A TRAINING AND INFORMATION VIDIO FOR PRISONERS ON GANG TOPICS.

EXHIBIT A

B-80

NAME DANIEL MANRIQUEZ     No. K-78581.          DATE OF INCIDENT JAN. 9, & 10 OR 11 -07

NAME OF OFFICER:

CAPTAIN DIAZ

LT. A QUINONEZ


DISCRIPTION OF EVENTS: THE 602 IS INCORPORATED AS FULLY SET FORTH HERETO.


'YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER [THIS INCLUDES A DEPARTAMENTAL PEACE OFFICER] FOR ANY IMPROPER POLICE [OR PEACE] OFFICER CONDUCT. CALIFORNIA LAW REQUIRES THAT THIS AGENCY HAVE A PROCEDURE, TO INVESTIGATE CITIZENS [INMATE OR PAROLEES] COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE, THIS AGENCY MAY FIND AFTER AN INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED, IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN [OR INMATE/PAROLEE] COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS. IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE. IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE. [AN INMATE/PAROLEE WHO MAKES A COMPLAINT AGAINST A DEPARTMENTAL PEACE OFFICER KNOWING IT IS FALSE MAY BE ISSUED A SERIOUS DISCIPLINARY RULES VIOLATION IN ADDITION TO BEING PROSECUTED ON THE MISDEMENOR CHARGE]


I HAVE READ AND UNDERSTAND THE ABOVE STATEMENT

DANIEL MANRIQUEZ # K-78581
ASU-122

B-81

ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE
CDC 114-D (Rev 10/98)

DEPARTMENT OF CORRECTIONS

$(8-2/5)$

| DISTRIBUTION: | |
|---|---|
| WHITE – CENTRAL FILE | CANARY - WARDEN |
| BLUE – INMATE (2ᴰ copy) | PINK – HEALTH CARE MGR |
| GREEN – ASU | GOLDENROD – INMATE (1ˢᵀ copy) |

INMATE'S NAME

**MANRIQUEZ**

CDC NUMBER

**K-78581**

## REASON (S) FOR PLACEMENT (PART A)

☒ PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS

☒ JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY

☒ ENDANGERS INSTITUTION SECURITY    ☐ UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT:

On Tuesday, January 9, 2006 you Inmate Manriquez, K-78581, are being placed in Administrative Segregation by the Institutional Gang Investigator (IGI) pending investigation. You are deemed a threat to the safety and security of this institution, its staff and inmates. You will remain in Administrative Segregation until IGI has completed its investigation and pending ICC review. Your visiting; credit earnings and privilege group status are subject to change.

This placement order is being ordered by Institutional Gang Investigator Lt. A. Quinones.

☐ CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL)    ☐ IF CONFIDENTIAL INFORMATION USED, DATE OF DISCLOSURE:

| DATE OF ASU PLACEMENT | SEGREGATION AUTHORITY'S PRINTED NAME | SIGNATURE | TITLE |
|---|---|---|---|
| 1 9 07 | A. Quinones, IGI | | Lieutenant |

| DATE NOTICE SERVED | TIME SERVED | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE | SIGNATURE | STAFF'S TITLE |
|---|---|---|---|---|
| 1/9/07 | 1420 | R. Ramos | | C/O |

☒ INMATE REFUSED TO SIGN    INMATE SIGNATURE    CDC NUMBER

## ADMINISTRATIVE REVIEW (PART B)

The following to be completed during the initial administrative review by Captain or higher by the first working day following placement

| STAFF ASSISTANT (SA) | | INVESTIGATIVE EMPLOYEE (IE) | |
|---|---|---|---|
| STAFF ASSISTANT'S NAME | TITLE | INVESTIGATIVE EMPLOYEE'S NAME | TITLE |
| N/A | | | |

**IS THIS INMATE:**

| | | | | | |
|---|---|---|---|---|---|
| LITERATE? | ☐ YES ☐ NO | EVIDENCE COLLECTION BY IE UNNECESSARY | | ☐ YES ☐ NO |
| FLUENT IN ENGLISH? | ☐ YES ☐ NO | DECLINED ANY INVESTIGATIVE EMPLOYEE | | ☐ YES ☐ NO |
| ABLE TO COMPREHEND ISSUES? | ☐ YES ☐ NO | ASU PLACEMENT IS FOR DISCIPLINARY REASONS | | ☐ YES ☒ NO |
| FREE OF MENTAL HEALTH SERVICES DELIVERY SYSTEM NEEDS? | ☐ YES ☐ NO | DECLINED 1ˢᵀ INVESTIGATIVE EMPLOYEE ASSIGNED | | ☐ YES |
| DECLINING FIRST STAFF ASSISTANT ASSIGNED? | ☐ YES | | | |

Any "NO" requires SA assignment

☒ NOT ASSIGNED

Any "NO" may require IE assignment

☐ NOT ASSIGNED

### INMATE WAIVERS

☐ INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER    ☐ INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME

☐ NO WITNESSES REQUESTED BY INMATE    INMATE SIGNATURE    DATE

### WITNESSES REQUESTED FOR HEARING

| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
|---|---|---|---|
| | | | |
| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
| | | | |

**DECISION:** ☐ RELEASE TO UNIT/FACILITY    ☒ RETAIN PENDING ICC REVIEW    ☐ DOUBLE CELL    ☒ SINGLE CELL PENDING ICC

REASON FOR DECISION:

RETAIN IN ASU PENDING ICC

| ADMINISTRATIVE REVIEWER'S PRINTED NAME | TITLE | DATE OF REVIEW | TIME | ADMINISTRATIVE REVIEWER'S SIGNATURE |
|---|---|---|---|---|
| | CAPTAIN | 10.07 | | |

| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME (if necessary) | | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE (if necessary) | | DATE OF REVIEW |
|---|---|---|---|---|
| | | | | |

See Chronological Classification Review document (CDC 128 – G) for specific hearing information

B-82



B-83

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region

Log No.

Category

1. _____    1. _____

2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse ~~effect~~ With the exception of Serious CDC 115's, classification committee actions, and classification and staff representative decisions, you must first ~~informally seek relief~~ through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may ~~send~~ your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

PERMANENT ATTACHMENT DO NOT REMOVE

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|-------------------|
| DANiel MANRIQUEZ | K-78581 | | ASU 122-L |

A. Describe Problem: SATF WARDEN, ICC MEMBERS J. WARD D. GARCIA, CAPT. DIAZ And LT QUINONEZ, Violated my liberty intERESTS Rights To DUE PROCESS COURT SETTLEMENTS And INTUNCTIONS, BY DEPRIVING ME A NOTICE OF CHARGES 24 HOURS PRIOR TO ICC FOR A DEFENSE -And THEIR DECISION TO RETAIN ME FOR 180 DAYS BASED ON VAGUE OVERBROAD And INSUFFICIENT EVIDENCE IN VIOLATION OF THE 5TH And 14TH AMENDMENT. FACTS: AFTER BEING SEGREGATED BY QUINONEZ, And RETAINED BY DIAZ BASED ON A VAGUE "INVESTIGATION" WITHOUT PROVIDING ME NOTICE AS TO WHAT THE INVESTIGATION WAS FOR FOR A DEFENSE, I APPEARED BEFORE THE ICC ON 1-17-07. AS OF YET NO NOTICE WAS PROVIDED TO ME - I REQUESTED TO KNOW THE CHARGES AGAINST ME And A COPY OF ALL OF THE evidence BEING USED-I WAS TOLD THAT THEY WERE GOING TO RETAIN ME FOR 180 DAYS TO ALOW QUINONEZ TO INVESTIGATE The RETAIN And FIND ANY EVIDENCE TO DEVALIDATE ME - I OBJECTED And INFORMED THE COMMITTEE THAT 3 YEARS OF INVESTIGATIONS, BY IGI, PERSU, COM SHU
(CONT. P. 3 INFIN

If you need more space, attach one additional sheet.

B. Action Requested: 1. AN INVESTIGATION OF THIS MATTER, (2) VACCATE THE ICCS DECISION And RELEASE ME ASAP (3) COMPLY WITH THE CASTillo SETTLEMENT And TOUSSAINT MANDATE (4) PROVIDE ME WITH AN ADIQUATE NOTICE OF CHARGES, All EVIDENCE BEING USED TO RETAIN ME FOR INVESTIGATION, All EXCULPATORY EVIDENCE -And OPPORTUNITY FOR A NEW DEFENCE -And NEW ICC HEARING (5) TRAIN All IGI And STAFF AS TO CASTillo SETTLEMENT (6) CEASE ANY INVESTIGATIONS AGAINST ME (7) CEASE VIOLATING MY CONSTITUTIONAL Rights AS AllEGED HERE TO (8) REJECT ANY EVIDENCE USED AGAINST ME AS INSUFFICIENT / UNRElIABlE. (9) THAT EACH DEFENDANT PAY ME $100¤¤ PER DAY FOR EVERY DAY THAT I SPEND IN AdSEG /SHU FOR EMOTIONAL MENTAL DISTRESS (COMPENSATORY dAMAGES) And THAT THEY AlSO PAY ME $100¤¤ PER DAY FOR EVERY DAY THAT I SPEND IN AdSEG/SHU - IN PUNITIVE dAMAGES FOR THE VIOLATION OF MY CONSTITUTIONAL Rights AS AllEGED HERE TO.

Inmate/Parolee Signature: _____    Date Submitted: JAN 19-07

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____
_____
_____
_____

PERMANENT ATTACHMENT DO NOT REMOVE

INMATE APPEALS BRANCH
RECEIVED JUL 13 2007

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____
_____
_____
_____
_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

: DEFENDANTS J. WOODFORD, SUE HUBERT, C. PLILER (LEIU) CASTRO, And SATF WARDEN ARE All EQUALLY liAblE FOR All CONSTITUTIONAL ET SEQ... VIOLATIONS AllEGED IN THIS 602 GIVEN THAT IT IS THEIR DUTY TO TRAIN And SUPPERVISE THESE EMPLOYEES, -And CURB THESE CONSTITUTIONAL VIOLATIONS THEIR FAILURE TO ACT CAUSED THE VIOLATION OF MY RIGHTS.

B-84

AND SAFE- HAD ALREADY CONFESSED ME INACTIVE - THAT IT WAS ILLEGAL TO HAVE AN INACTIVE INMATE IN THE HOLE - THAT THEY'VE ALREADY EXCEEDED THE TWO YEAR STATUTORY MAXIMUM BY SEVERAL YEARS - AND THAT THE CASTILLO SETTLEMENT PROHIBITS THE RETENTION OF INMATES UNLESS THERE'S FIRST A FINDING THAT HE'S CURRENTLY ACTIVE - AT THAT POINT LT QUINONEZ INTERJECTED A FALSELY TESTIFIED THAT CASTILLO WAS NOTHING MORE THAN A SETTLEMENT BETWEEN CDC AND CASTILLO AND IT APPLIES TO NO ONE ELSE BUT HIM- THE ICC THEN WITH DUE NOTICE OF EVIDENCE SENTENCED ME TO 180 DAYS IN THE ADSEG - WHEN I ASKED FOR THE EVIDENCE BEING USED AGAINST ME QUINONEZ STATED "YOU'LL GET IT WHEN I'M DONE WITH MY INVESTIGATION". FIRST, THERE IS NO DISPUTE THAT I HAVE A LIBERTY INTEREST IN FREEDOM FROM AD SEG. TOUSSAINT V. MCCARTHY 801 F.2d 1080,1094-95 (9THCIR.1986)(SEE CAL.CODE regs CITED,CCR 3335(a);3336,3339;3341.5(c)(3)(c)3378 et seq...) GIVEN THAT MY REMOVAL FROM THE EXP. TO AD SEG (STH PLACES AN ATYPICAL AND SIGNIFICANT HARDSHIP ON ME IN RELATION TO THE ORDINARY INCIDENTS OF PRISON LIFE. MADRID V. GOMEZ ; WILKERSON V. AUSTIN, 125 S.CT.2384 (2005)

.1ST CAUSE OF ACTION: THERE IS NO DISPUTE THAT ALL MEMBERS OF THE COMMITTEE, WHEN AFFIRMING THE SEGREGATION ORDER AND ISSUING THE 180 DAY RETENTION, KNEW THAT MY RIGHTS TO DUE PROCESS HAD BEEN VIOLATED, BECAUSE I WAS NEVER PROVIDED A NOTICE OF CHARGES/ALLEGATIONS AND DOCUMENTATION SUPPORTING THOSE ALLEGATIONS- NOR AN OPPORTUNITY TO PRESENT MY VIEWS TO QUINONEZ NOR DIAZ PRIOR TO THEIR DECISION TO SEGREGATE AND RETAIN ME NOR WAS I GIVEN A NOTICE OF CHARGES TO PREPAIR A DEFENSE AGAINST THEM AT LEAST 24 HOURS BEFORE THE HEARING! MEMBERS OF THE COMMITTEE KNEW THAT DUE PROCESS IN THE ADMINISTRATIVE CONTEXT REQUIRES THAT PRISON OFFICIALS PROVIDE THE PRISONER WITH A NOTICE OF CHARGES AGAINST HIM AND AN OPPORTUNITY TO PRESENT HIS VIEWS TO THE PRISON OFFICIAL CHARGED WITH DECIDING WHETHER TO TRANSFER HIM TO ADSEG PRIOR TO THAT DECISION "BARNETT V. CENTONI 31 F.3d 813 (9TH CIR.1994): TOUSSAINT V. RAWLAND, 711 F.SUPP 536,548-49 (N.D. CA 1989) THE SUPREME COURT RECENTLY REAFFIRMED THIS. WILKERSON V. AUSTIN 125 F.CT.2384 ___ (2005) THE LAW HAS BEEN THE SAME FOR OVER A 100 YEARS (3hud) THUS PRISON OFFICIAL CANNOT SAY, THEY DIDN'T KNOW, THIS TO LEAVE OFF A SUIT. HARON P.FELTER (2002)122 S.CT 2508. YET DISPITE THEIR KNOWLAGE THAT I WAS NEVER NOTIFIED THAT AN INVESTIGATION WAS TO DETERMINE WHETHER THEY COULD REVINIDATE ME, THEY HELD THEIR KANGAROO COURT DISPITE THE LACK OF NOTICE DEPRIVED ME OF AN OPPORTUNITY TO PREPAIR A DEFENSE! AND THEN OPTED TO RETAIN ME 180 DAYS BASED ON THAT UNFAIR PROCEEDING! THE LAW REQUIRES THAT I BE PROVIDED ADEQUATE NOTICE AT LEAST 24 HOURS BEFORE THE HEARING. WOLFF V. MCDONNELL 418 V.S. AT 564 - THE NOTICE WHICH STATED "INVESTIGATION" WAS UNCONSTITUTIONALLY VOGUE - IT DID NOT PROVIDE ME "SUFFICIENT NOTICE OF CHARGES TO ENABLE [ME] TO MARSHALL THE FACTS AND PREPAIR A DEFENSE" WOLFF SUPRA 3d 564 THE FACT THAT ONCE NOTIFIED OF THE HEARING - I TRIED TO PRESENT A DEFENSE - DOES NOT RENDER IT FAIR/CONSTITUTIONAL - I SHOULD HAVE BEEN NOTIFIED 24 HOURS IN ADVANCE!

2ND CAUSE OF ACTION: DENIAL OF DUE PROCESS RIGHT TO BE INFORMED/PROVIDED WITH ALL EVIDENCE BEING USED AGAINST ME IN INVESTIGATION FOR A PROPER MOTIVATION AND DEFENSE! THE LAW IS CLEAR, I HAD THE RIGHT AT THIS HEARING TO BE INFORMED OF THE EVIDENCE QUINONEZ (WHO HAS TOLD PEOPLE E READS IS FOR MELL) USING AGAINST ME TO INVESTIGATE, SO THAT I COULD RESPOND TO IT CIPRIANI. COGHLINE 31 F.3d 53,56 (2nd CIR.1994)(ACCUSED MUST BE GIVEN SOME EVIDENCE AS THE FACT FINDER) THIS INCLUDES ALL RELEVANT AND IMPORTANT DOCUMENTS CENTRAL TO THE CONSTRUCTION OF A DEFENSE, SMITH DEP. OF COR 936 F.2d 1139 (1ST CIR.1991) AND ANY THING BEING USED AGAINST ME, WHETHER SPECIFIC, ALLEGATIONS OF MISCONDUCT - OR ITEMS. I ALLEGEDLY ROTE CCR. 3315,3321 et seq... 3378 et seq... TOBY V. KANE 976 F.2d 1396 (9thCIR. 1992)(INMATE CHARGED WITH WRITING THREATENING LETTER SHOULDING HAVING BEEN PERMITTED TO SEE THE LETTER AND THE HEARING OFFICER SHOULDING READ THE LETTER HIMSELF RATHER THAN RELYING ON A SECOND HAND DISCRIPTION OF IT) STROED V. POLICE 638 F.SUPP 1019,1023 (D.MASS 1986)(INMATE CHARGED WITH WRITING A TAINTING LETTER, SHOULDEN BEEN ALLOWED TO INSPECT I) MORE THERE IS NO DISPUTE THAT I WAS NOT PROVIDED AN OPPORTUNITY TO VIEW/EXAMINE ANY EVIDENCE BEING USED AGAINST ME TO PREPAIR A DEFENSE 4 CONTRARY WHEN ASKED TO SEE IT - AND I INFORMED THEM OF THE CASTILLO SETTLEMENT I WAS FALSELY TOLD BY QUINONEZ THAT CASTILLO IS NOT APPLICABLE BY LIMITATION TO CASTILLO AND THAT I WILL NOT BE ALLOWED TO SEE ANYTHING UNTIL AFTER THE INVESTIGATION. HOWEVER DUE PROCESS

---

1. QUINONEZ PERPETRATED A FRAUD BECAUSE HE GAVE THE ICC INCORRECT LEGAL ADVISE WITHOUT HAVING A LICENCE TO PRACTICE LAW - AND HE ILLEGALLY IMPERSONATED A LAWYER!

3

REQUIRES THAT THE EVIDENCE AT LEAST AT THE HEARING NOT AFTER IT, FRANCESS V. COUGHLINE 891 F. 2d, 93 (2nd CIR 1989) MOREOVER THE HEARING VIOLATED DUE PROCESS - BECAUSE SINCE AT MOST THIS IS AN "INVESTIGATION" - THEN THERE MUST BE EVIDENCE EXHONERATING ME WHICH WAS NOT DISCLOSED. CAMPELL V. HESHMAN 931 F. 2d, 1212, 1214 (7TH CIR 1991) EXCULPATORY EVIDENCE MUST BE DISCLOSED TO PRISONER) CHAVIS V. ROWE 643 F. 2d, 1281, 1285, 86 (7TH CIR 1981) (REPORT THAT TENDED TO SHOW THE PRISONER WAS NOT GUILTY SHOULD'VE BEEN DISCLOSED).

3RD CAUSE OF ACTION: THE ICCR DETERMINATION TO SEGREGATE ME IS BASED ON INSUFFICIENT EVIDENCE - AND ITS 180 DAY RETENTION FOR INVESTIGATION AS TO WHETHER TO VALIDATE IS UNCONSTITUTIONAL, MY LIBERTY INTEREST REQUIRES THAT THERE FIRST BE SUFFICIENT EVIDENCE, OF BEING CURRENTLY ACTIVE WHICH IS RELIABLE PRIOR TO MY RETENTION. CCR 3321(a)(2), 3378 ET SEG... CATO V. RUSHEN 824 F. 2d. 704 (9TH CIR 1987), UNDER THE NEW CASTILLO SETTLEMENT, PRISON OFFICIALS, MUST HAVE FIRST HAND KNOWLEDGE THAT I COMMITTED AN ILLEGAL ACT OF SERIOUS MISCONDUCT ON BEHALF OF THE GANG - WITH THE PRIOR DESIGNATION OF BEING "CURRENTLY ACTIVE" PRIOR TO THE DECISION TO SEGREGATE/RETAIN ME (EXHIBIT A CCR 3000, 3023, 3378 ET SE. HERE, THE IRC DELIBERATELY CIRCUMVENTED THE PROCESS BECAUSE THEY OPTED TO RETAIN ME WITHOUT FIRST DETERMINING IF THERE WAS ANY EVIDENCE WHICH WAS RELIABLE AND SATISFIED CASTILLO TO VALIDATE ME AND SHOW I WAS CURRENTLY ACTIVE PRIOR TO THE RETENTION! THUS BECAUSE THAT ASSESSMENT WAS NEVER MADE - AND THIS IS NOTHING MORE THAN "INVESTIGATION" - THEN THE DECISION TO RETAIN ME IS BASED ON INSUFFICIENT EVIDENCE AND IS ILLEGAL UNDER SUPERINTENDANT V. HILL.

4TH CAUSE OF ACTION: THE DECISION TO RETAIN ME (AN INACTIVE INMATE) VIOLATES MY LIBERTY INTEREST AND TOUSAINTS INJUNCTION. HERE AN EXSISTING INVESTIGATION BY PBSP ESTABLISHED I WAS NOT AN ACTIVE GANG AFFILIATE (SEE C-FILE) THE DRB CONFIRMED IT, YET SENT ME TO COR.SHU FOR ANOTHER, YEAR INVESTIGATION WHICH AGAIN CONFIRMED I WAS NOT ACTIVE (STILL) THE DRB ORDERED MY TRANSFER TO SATF FOR ANOTHER YEAR INVESTIGATION WHICH ALSO UNEARTHED NO EVIDENCE OF CURRENT GANG ACTIVITY. INFACT, QUINONEZ NEVER HEARD OF ME. AND ALL STAFF, INCLUDING DIAZ CONFIRMED I WAS A MODEL PRISONER, AND NOW, IN AN ATTEMPT TO SINGLE ME OUT, QUINONEZ WITH THE ICC CONSENT, HAVE PLACED ME IN ADSEG TO INVESTIGATE IF I AM ACTIVE. THE PROBLEM IS I HAVE AN EQUAL PROTECTION, AND LIBERTY INTEREST RIGHT TO NOT BE IN AD SEG BECAUSE I'm CURRENTLY DESIGNATED "IN ACTIVE" CCR 3335(a) 3336, 3339(a): 3346.5(a)(2)(B)(C)(3)(c)(S) TOUSSAINTS INJUNCTION PROHIBITS MY HOUSING IN ADSEG (SECOND) MY LIBERTY INTEREST IN CCR 3341.5(CCX) ONLY, AUTHORIZES MY INVESTIGATION FOR 12 MONTHS WHICH MUST BE DONE WHILE IN THE G.P. - HERE, THE INVESTIGATION IS BEING CONDUCTED IN THE HOLE/ADSEG - AND FAR EXCEEDS THE 12 MONTH MAXIMUM - GIVEN THAT, MULTIPLE INVESTIGATIVE AGENCIES, WITH FAR MORE EXPERIENCE, THAN QUINONEZ, HAVE DONE THREE YEARS OF INVESTIGATIONS AND HAVE CLEARED ME OF GANG ACTIVITY, THUS ANOTHER INVESTIGATION IS ARBITRARY, DISPROPORTIONATE AND AN EXCESSIVE ABUSE OF POWER. MACKEY.V. DYKE 29 F. 3d. 1086 (6TH CIR 1994) (KEEPING A PRISONER AFTER THE TIME HAS EXPIRED VIOLATES DUE PROCESS); CHILDS V. PELLEGRIN 822 F. 2d. 1382, 1388 (6TH CIR 1987) (KEEPING PRISONER IN ADSEG FOR CONDUCT HAS ALREADY BEEN CLEARED OF VIOLATES DUE PROCESS) SINCE QUINONEZ HAS TOLD PEOPLE HES OUT TO GET ME, THEN THIS INVESTIGATION IS NOTHING MORE THAN A PRETEXT FOR SOLITARY CONFINEMENT. TOUSSAINT V. MCCARTHY 801 F. 2d, AT 1102

5TH CAUSE OF ACTION: THE IRC KNOWINGLY VIOLATED MY CONSTITUTIONAL RIGHTS BY RETAINING ME FOR 180 DAYS, FOR INVESTIGATIONS, BASED ON INSUFFICIENT, FABRICATED EVIDENCE - THE 180 DAY RETENTION FAR EXCEEDS THE 120 DAYS PERMITTED BY TOUSSAINT AT 803 6TH CAUSE OF ACTION: SINCE IDC IS AN ORGANIZATION - AND THE ACTS COMMITTED BY THE DEFENDANTS CITED ABOVE, WAS IN THE FURTHERANCE OF THEIR ORGANIZATION - TO VIOLATE MY RIGHTS - RETAIN ME, ILLEGALLY IN ADSEG, AND DEPRIVE ME OF JOB OPORTUNITYS THEN DEFENDANTS ACTIONS VIOLATED FEDERAL RICO STATUTES.

7. THERE WAS NO VIABLE BASIS TO DEPRIVE ME A CELLMATE.

---

2. SINCE INMATES CAN ONLY BE VALIDATED IF THERE IS ANY EVIDENCE OF CURRENT GANG ACTIVITY AS DEFINED AS ILLEGAL ACTS OF MISCONDUCT ON BEHALF OF THE GANG WITH IN A 6 YEARS CCR 3000, 3023, 3341.5(2)(15)(6): 3378 ET SEQ... UNLESS QUINONEZ HAS SUCH EVIDENCE I'm STILL INACTIVE AND ITS ILLEGAL TO RETAIN ME.

<u>CASTILLO V. ALAMEIDA C-94-2847 MJJ (JUNE 1-04; SEPT 23-04) SETTLEMENT.</u>

IS TO BE AMENDED INTO THE TITLE IS: (SEE CCR.3378 et seq...)

1. CDC IS REQUIRED TO FIND THAT ANY SHU PRISONER BE AN "ACTIVE" GANG MEMBER IN PRIOR TO APPROVING A PRISON GANG VALIDATION.

2. CDC IS REQUIRED TO HAVE AN "ARTICULABLE BASES" (MEANING SOMETHING THAT INCLUDES REASONABLE FACTS) AS TO WHY A SOURCE ITEM IS INDICATIVE OF <u>GANG ACTIVITY</u>. CDC IS REQUIRED TO DOCUMENT THIS ARTICULABLE BASES.

3. GANG ACTIVITY IS DEFINED AS ANY ILLEGAL, UNLAWFUL, OR CRIMINAL ACTIVITY DONE IN FURTHERANCE OF THE GOALS OF A PRISON GANG.

4. PRIOR TO APPROVAL OF A VALIDATION, CDC IS REQUIRED TO GIVE THE PRISONER NOTICE OF THE CONSIDERED SOURCE ITEMS.

5. PRIOR TO APPROVAL OF A VALIDATION CDC IS REQUIRED TO ASK FOR AND RECORD (IE, DOCUMENT) AN INMATES VIEWS ON THE CONSIDERED SOURCE ITEMS, AND FORWARD THE INMATES VIEWS TO THE VALIDATION DECISION MAKERS.

6. CDC CAN NO LONGER RELY ON CONFIDENTIAL INFORMANTS WHO PROVIDE NOTHING MORE THAN A NAME OF A PRISONER IN CONNECTION TO A PRISON GANG, CONFIDENTIAL INFORMANTS MUST REFER TO SPECIFIC ACTS THAT AN INMATE ALLEGEDLY DID IN CONNECTION WITH THE GANG.

7. CDC CAN NO LONGER RELY ON "HEARSAY" FROM CONFIDENTIAL INFORMANTS, INFORMANTS MUST HAVE PERSONAL KNOWLEDGE OF THE CONFIDENTIAL INFORMATION DISCLOSED.

8. CDC CAN NO LONGER USE ONE INCIDENT REPORTED BY SEVERAL SOURCES (CONFIDENTIAL OR OTHERWISE) AS MULTIPLE SOURCE ITEMS & INSTEAD MUST COUNT ONE INCIDENT, REGARDLESS OF THE NUMBER OF SOURCES AS ONE SOURCE ITEM.

9. CDC MUST TRAIN ALL IGIS AND LEIU STAFF ON THESE NEW CHANGES IN A TIMELY FASHION.

10. CDC MUST CONSIDER DEVELOPING A TRAINING AND INFORMATION VIDIO FOR PRISONERS ON GANG TOPICS.

EXHIBIT B                    B-87

CDC 128G (REV. 7/92)

| NO: K-78581 | NAME: MANRIQUEZ | | HOUSING: ASU -122W |
|---|---|---|---|
| CUSTODY: MAX S | PS: 52 | RC: 7-15-07 | ACTION: INITIAL REVIEW: RETAIN |
| DATE:LWOP | WGPG: D1D 1-09-07 | | ASU PENDING COMPLETION OF IGI |
| ASSIGN: ASU | ETHNIC/AGE: HISP | GPL: GED | INVESTIGATION. REFER CSR RX 180-DAYS EXTENSION. MAX S CUSTODY; WG/PG D1D. APPROVE 'SINGLE-CELL'; WALK-ALONE YARD. |

Inmate MANRIQUEZ, ('S'), CDC K-78581, made a personal appearance before SATF Administrative Segregation Unit (ASU) Institutional Classification Committee (ICC) on this date for the purpose of Initial Review. 'S' was originally placed in ASU on 1-09-07 from Facility 'C' "pending IGI investigation". It is noted that inmate Manriquez is not currently participating in the Mental Health Services Program per CDC-128C dated 9-09-05. Dr. Jordan, Mental Health Services representative, reviewed inmate and determined that no mental health concerns were present and 'S' agreed with clinician's assessment.

Committee notes 'S' is currently designated a Validated "Inactive" member of the Mexican Mafia prison gang per CDC-128B-2 dated 8-03-04. The Institutional Gang Investigator, (IGI) has requested 180-days ASU retention to investigate and evaluate prison gang status. During committee, 'S' expressed his disagreement with committee action and also requested to be approved for double-cell status.

**COMMITTEE'S ACTIONS**: ICC elects to retain in ASU pending completion of IGI investigation. Refer CSR RX 180-days extension; change custody from CLO AS to MAX S, change WG/PG from A2B to D1D effective 1-09-07. Use of Force was explained, property was approved, and non-contact visits were explained and approved

**DOUBLE/SINGLE CELL REVIEW**: After review of pertinent case factors, ICC elects to retain single-cell housing.

**YARD REVIEW:** ICC reviewed for exercise yard and elects to retain on 'walk-alone' yard.

**INMATE PARTICIPATION:** Inmate participated and disagreed with committee's decision, stating that he would appeal committee's decision. 'S' was advised of his right to appeal committee's action.


J. WARD
**CHIEF DEPUTY WARDEN**
**CHAIRPERSON**

D. GARCIA
**ASST.C&PR**
**MEMBER**

F. R. COREÑO, CC II (A)
**RECORDER**


DR. JORDAN
**MENTAL HEALTH**
**MEMBER**

R. DIAZ
**CAPTAIN**
**MEMBER**


DATE: 1-17-07    ICC/ASU          CLASSIFICATION       INST: CSATF-SP


EXHIBIT
B
27

B-88

State of California                                                     Department of Corrections
                                                                              CDC 128-G

No. K-78581                          NAME:  MANRIGUEZ

*Comment*:      **180 day ASU extension from ICC action of 1-17-07 approved to complete investigation
relative to inmate's current involvement with a prison gang.**

**Return to CSR no later than 7/16/2007 with status update.**

                                    D Oftedahl, CSR

Date: 2/14/2007              Classification  - CSR ACTION                    SATF

ASU-122U
Coreno

# INMATE COPY

EXHibiT
B 89

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
California Substance Abuse Treatment Facility and State Prison at Corcoran
900 Quebec Ave.
P.O. Box 7100
Corcoran, CA 93212



May 16, 2007

Inmate Manriquez CDC# K-78581
California Substance Abuse Treatment
Facility and State Prison at Corcoran
P.O. Box 7100
Corcoran CA  93212

Subject: **STAFF COMPLAINT RESPONSE – APPEAL #SATF-Z-07-01670**

**APPEAL ISSUE:**  Inmate Manriquez claims that SATF officials in particular Captain Diaz is violated his liberty interest in CCR 3084.1 by failing to process his appeals in a timely manner.

Inmate Manriquez is requesting that an investigation be conducted in to this matter.  Inmate Manriquez also request that his appeals be processed according to procedure.  Inmate Manriquez further request that he be paid $100,000 in punitive damages due to his rights being violated.

**DETERMINATION OF ISSUE:**  A review of the allegations of staff misconduct presented in the written complaint has been completed.  Based upon this review your appeal has been handled as follows:

☒  **PROCESSED AS A STAFF COMPLAINT APPEAL INQUIRY**
☐  **REFERRED TO THE OFFICE OF INTERNAL AFFAIRS** (Note: You will be notified of the conclusion of any internal affairs investigation.)

**SUMMARY FOR APPEAL INQUIRY:**  On May 12, 2007, Lieutenant J. Perez interviewed Inmate Manriquez in regards to this appeal.    Inmate Manriquez reiterated what was on the appeal.  Inmate Manriquez had nothing else to add.

Facility C Captain, R. Diaz was interviewed regarding this appeal.

**FINDINGS FOR AN APPEAL INQUIRY:**  Your appeal is PARTIALLY GRANTED at the ☒ First Level ☐ Second Level, as an inquiry into your allegation has been conducted.   Furthermore, your appeals will be processed according to CCR 3084.1.    ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE.   As such, results of any inquiry/investigation will not be shared with staff, members of the public, or inmates. Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the

B-90

Inmate *Manriquez K-78581*                                Attachment E 10/06
Appeal Log #*SATF-Z-07-01670*
Page 2

placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process.

Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process. If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review. Once a decision has been rendered at the Director's Level of Review, your administrative remedies will be considered exhausted.

J. Perez
Correctional Lieutenant
Facility 6

                                        5/16/07
                                        Date

T. P. Wan
Associate Warden/Complex II

                                        7/31/07
                                        Date

B-91

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
California Substance Abuse Treatment Facility and State Prison at Corcoran
900 Quebec Ave.
P.O. Box 7100
Corcoran, CA 93212



July 2, 2007

Inmate Manriquez, K78581
California Substance Abuse Treatment
Facility and State Prison at Corcoran
P. O. Box 7100
Corcoran, CA 93212

Second Level Response
Log # SATF-Z-07-01670

## ISSUE:

Pursuant to Administrative Bulletin 05-03, the Warden's Designee has determined that your appeal would be processed as a staff complaint. You were advised via the Separation of Staff Complaint Issues Form that any other issues raised during the course of your appeal had to be appealed within 15 working days of reception of that form. You contend that Facility Captain R. Diaz is violating your liberty interest by not responding your appeals or by discarding them entirely. You request that an investigation be conducted into this matter. You request that the attached appeals be answered. You request that Captain Diaz be disciplined. You request that inmate appeals stop being destroyed. Finally, you request $100,000.00 in damages.

## INTERVIEWED BY:

J. Perez, Correctional Lieutenant, on 5/12/07.

## REGULATIONS:

The rules governing this issue are taken from the California Penal Code (PC) and the California Code of Regulations (CCR) Title 15.

**PC 832.7 (a) (e). Personnel records; confidentiality; discovery; exceptions; complaint disposition notification**
**PC 832.8. Personnel records**
**CCR 3004. Rights and Respect of Others.**
**CCR 3391 (a). Employee Conduct.**

## SUMMARY:

R. Hall, Appeals Coordinator, investigated your appeal at the Second Level of Review (SLR).

8-92

Manriquez, K78581
Log # Z-07-01670
Page 2

Upon review of the documentation submitted, it has been determined that your allegations have been reviewed and evaluated by Administrative Staff and an Appeal Inquiry has been completed.

In the event that staff misconduct was substantiated, the institution would take the appropriate course of action. All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public or the inmate population, and would not be released to you. However, upon completion of the Appeal Inquiry you are to be notified by the assigned reviewer that an inquiry has been completed or that your complaint was referred to the Office of Internal Affairs (OIA). In this case, your complaint was processed as a Staff Complaint Appeal Inquiry. On 5/30/07, J. Hutchins, Chief Deputy Warden, reviewed and approved the Staff Complaint Appeal Inquiry.

Although you have the right to submit an appeal as a staff complaint, your request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the appeals process. Your request for monetary compensation is also beyond the scope of the appeals process.

You have failed to provide any additional information/evidence at the SLR to modify the First Level Decision. It is notable that the attached appeals dated 1/11/07 and 1/19/07 are permanent attachments to this staff complaint.

## DECISION:

Your appeal is **partially granted.** Partially granted in that an Appeal Inquiry has been conducted into your allegation of staff misconduct. All other requests in regard to your allegation of staff misconduct are denied.

You are advised that this issue may be submitted for a Director's Level of Review if desired.

KEN CLARK
Warden

B-93

STATE OF CALIFORNIA —DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

## INMATE APPEALS BRANCH

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



August 13, 2007

MANRIQUEZ, DANIEL, K78581
California Substance Abuse Treatment Facility and
State Prison at Corcoran
P.O. Box 7100
Corcoran, CA 93212-7100

RE: IAB# 0701611    SATF-07-01670    STAFF COMPLAINTS

Mr. MANRIQUEZ:

The Inmate Appeals Branch, California Department of Corrections and Rehabilitation (CDCR) acts for the Director, Division of Adult Institutions, at the third level of appeal. The Branch examines and responds to inmate and parolee appeals that are submitted on a CDC Form 602, Inmate/Parolee Appeal Form, after the institution or parole region has responded at the Second Level of Appeal.

Institution and parole staff are available to assist you in obtaining additional copies of forms and documents required to submit an appeal. The inmate library offers resources and assistance to obtain general information regarding regulations, procedures, policies, and government agency addresses. Additionally, your assigned Counselor or Parole Agent, or the Appeals Coordinator can answer any questions you may have regarding the appeals process. The Inmate Appeals Branch appreciates your responsible use of the appeal system to address your grievance.

The Inmate Appeals Branch has received an appeal from you and has determined that it does not comply with the appeal procedures established in California Code of Regulations (CCR) Title 15, Article 8, and is being screened-out and returned to you pursuant to CCR 3084.3 for the following reason(s):

Your appeal is incomplete, please include the following supporting documentation:

- CDCR Form 1858, Rights and Responsibilities Statement

N. GRANNIS, Chief
Inmate Appeals Branch

B-94

Dear chief inmate appeals

At your request I've included a rights & responcibility statement. — And am resubmitting please take notice that I submitted this as a normal 602 — SATF apperently turned it into a staff complaint — And at no time did they request that I submit a CDC — 1858 form. — It is my understanding — from reading CCR 3084.3 — That only the appeals coordinator can screen out an appeal which they never did. — With that said I resubmit — In compliance with your request   Thank you

Daniel. Manriquez # K-7858/
SATF ASU 122.

B-95

STATE OF CALIFORNIA                                                        DEPARTMENT OF CORRECTIONS

CDC 1858 (2/97)                                          ↑

# RIGHTS AND RESPONSIBILITY STATEMENT

*The California Department of Corrections has added departmental language (shown inside brackets, in non-boldface type) for clarification purposes.*

**Pursuant to Penal Code 148.6, anyone wishing to file an allegation of misconduct by a departmental peace officer must read, sign and submit the following statement:**

**YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER** [this includes a departmental peace officer] **FOR ANY IMPROPER POLICE** [or peace] **OFFICER CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS'** [or inmates'/parolees'] **COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN** [or inmate/parolee] **COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.**

**IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE. IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE.** [An inmate/parolee who makes a complaint against a departmental peace officer, knowing it is false, may be issued a serious disiplinary rule violation, in addition to being prosecuted on a misdemeanor charge.]

| COMPLAINANT'S PRINTED NAME | COMPLAINANT'S SIGNATURE | DATE SIGNED | |
|---|---|---|---|
| DANIEl . MANRiQUEZ | | 8-17-07 | |
| INMATE/PAROLEE PRINTED NAME | INMATE/PAROLEE'S SIGNATURE | CDC NUMBER | DATE SIGNED |
| | | | |
| RECEIVING STAFF'S PRINTED NAME | RECEIVING STAFF'S SIGNATURE | DATE SIGNED | |
| | | | |

DISTRIBUTION.
ORIGINAL -
Public - Institution Head/Parole Administrator
Inmate/Parolee - Attach to CDC form 602
Employee - Institution Head/Parole Administrator
COPY - Complainant

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:   DEC 0 6 2007

In re:   Manriquez, K-78581
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

IAB Case No.: 0701611          Local Log No.: SATF 07-01670

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner Michael H. Jensen, Facility Captain.  All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:**  It is the appellant's position that Correctional Captain (Capt.) Diaz and other California Substance Abuse Treatment Facility and State Prison at Corcoran (SATF) staff are failing to follow the regulations and respond to his appeals in a timely fashion.  The appellant requests his appeals are answered prior to their time limits expiring and for SATF to admit the administrative remedies are inadequate.  The appellant requests to be compensated $100,000.00 by Capt. Diaz and the other defendants.

**II   SECOND LEVEL'S DECISION:**  The reviewer found that a supervisory staff member was assigned to conduct an Inquiry into this matter.  The Inquiry Investigator reviewed the submitted material and interviewed the involved parties.  The Second Level of Review (SLR) informed the appellant his appeal was granted in part in that an Inquiry was conducted and there would be no reprisals taken against him for his having filed the complaint.

**III   DIRECTOR'S LEVEL DECISION:** Appeal is denied.

> **A.   FINDINGS:**  Upon review of the documentation submitted, it is determined that the appellant's allegations against SATF, and Capt. Diaz in particular, has been reviewed and evaluated by administrative staff and an Inquiry has been completed at the SLR.  In the event that staff misconduct was substantiated, the institution would take the appropriate course of action.  All staff personnel matters are confidential in nature and pursuant to state law, the results of any Inquiry of staff misconduct shall not be released to the public, inmates/parolees, or other staff.  The appellant was notified only of the conclusion of the Inquiry.

> The Director's Level of Review has reviewed the appeal documentation, including the Inquiry, and has determined SATF properly reviewed the appellant's complaint that SATF does not respond to appeals in a timely manner.

> **B.   BASIS FOR THE DECISION:**
> California Penal Code Section: 832.7, 832.8
> California Code of Regulations, Title 15, Section: 3004, 3084.1, 3391
> Administrative Bulletin (AB) 05/03: PROCESSING OF INMATE/PAROLEE APPEALS, CDC FORMS 602, WHICH ALLEGE STAFF MISCONDUCT

> **C.   ORDER:**  No changes or modifications are required by the institution.

B-97

MANRIQUEZ, K-78581
CASE NO. 0701611
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, PBSP
       Appeals Coordinator, PBSP
       Appeals Coordinator, SATF

B-98

GIANT TIMELY COMMITTEE ETSEQ.

RECEIVED

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region    Log No.    Category

OCT 30 2007  1. SATF-Z  1. 07-3222  2.

INMATE APPEALS BRANCH

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|-----------------|
| DANIEL MANRIQUEZ | K-78581 | | ASU 122 |

A. Describe Problem: SATF WARDEN, ASSISTANT WARDEN, FACILITY CAPTAIN DIAZ, C-YARD SBIK COUNSELOR JOHN DOE AND COUNSELOR HANDLSON - HAVE VIOLATED MY LIBERTY INTERESTS PROTECTED BY THE 14TH AMENDMENT - AND ITS EQUAL PROTECTION CLASE BY REFUSING TO GRANT ME AN ANUAL COMMITTEE And TRANSFER/RELEASE OF Ad seg. FACTS * I WAS ORDERED RELEASED BY THE DRB. SEPT 2005, - AND TRANSFERED TO SATF FOR A 12 MONTH OBSERVATION AT WHICH TIME I would BE ELIGIBLE FOR TRANSFER (SEE C-FILE) CCR 3341.5(EX5), I WAS RELEASED NOV.15-05, TO SATF - SOMETIME IN NOVEMBER, 2006 I SPOKE TO JOHN DOE (PERSON) REMINDED HIM OF THE DRB ORDER - AND CCR 3341.5(EX5) MANDATORY LANGUAGE THAT I WAS ONLY SUPPOSED TO BE HOUSED AND RETAINED AT SATF FOR A 1 YEAR MAXIMUM, - HE INTURN INFORMED ME - THAT - THIS WOULD BE DECIDED AT MY CLASSIFICATION ANUAL REVIEW - (CONTINUED AT P 3)

If you need more space, attach one additional sheet.

B. Action Requested (1) THAT I BE GRANTED AN ANUAL COMMITTEE AND ALL ITS BENIFITS NOW (2) THAT ANY OBSERVATIONS, RETENTIONS OF ME BY IGI CEASE (3) THAT I BE TRANSFERED -Eligible FOR TRANSFER To A (TIP ASAP. (4) ANY INFORMATION FOUND _____ AFTER Dec 18.06 - Be REJECTED BECAUSE IT _____ WAS FOUND BECAUSE OF THE VIOLATION OF MY CONSTITUTIONAL RIGHTS AS ALLEGED HERETO. (5) _____ (SEE P 4 INFRA.)

Inmate/Parolee Signature: _____  Date Submitted: April 22-06

CSATF APPEALS

INFORMAL LEVEL (Date Received: 6/20/07)  APR 2 4 2007

Staff Response: Partially granted On 7/3/07 ICC will address one new review period to adjust your PS from 52 to 50. IGI has completed their process and per 128B-2 dtd 4/16/07, you are a Validated associate of the Mexican Mafia. I have no control over which documents were used; however your docs were forwarded to SSU and only one document was used for validation, which was conf. remember 2/9/07. The 12/26/06 document was not accepted for validation purposes. Per Title 15 Section 3378, all validation requirements have been met.

Staff Signature: _____  Date Returned to Inmate: 2 Jul 07

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

DISSATISFIED - YOU MISS THE POINT HAD I BEEN GRANTED A TIMELY HEARING/ ICC/ ICC - _____ AND AFFORDED ALL THE RIGHTS IN-CLUDING AN ORDER FOR TRANSFER - AND ORDER TO CEASE INVESTIGATION - THEN I WOULD NOT HAVE BEEN VALIDATED - SINCE YOU ADMIT ITS TOO LATE - THEN YOU MUST AWARD ME - DAMAGES. ITS YOUR FAULT THAT IM HER FOR NOT COMPLYING W/ CCR 3341.5(EX5) AND DRB ORDER (See C-File) ADDITIONALLY ANY THING USED EXCEEDS THE STATUTE OF LIMITS AND IS VOID - ABSENT 2 MORE ITEMS. CCR 3341.5(EX5) 3378(c)(1)(2) - 3378(d)

Signature: _____  Date Submitted: JUN 4-07

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

CSATF APPEALS
APR 2 4 2007

CSATF APPEALS
JUL 1 6 2007  CSATF APPEALS  JUL 1 0 2007

* I.G.I. QUINONEZ & HOLMS ARE EQUALLY LIABLE FOR THE CONSTITUTIONAL WRONGS ALLEGED HEREIN.

EXHIBIT C
100  3 C-  100

First Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other    CSA APPEALS

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: ___ JUL 1 6 2007 ___ Due Date: 8-28-07

Interviewed by: A. Kivew  CCII                                                8-27-07

SEE ATTACHMENT

Staff Signature: _____    Title: CCII    Date Completed: 8-15-07
Division Head Approved:
Signature: R. allison    Title: AW    Returned: CSATF APPEALS
Date to Inmate: AUG 2 0 2007

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response. DISSATISFIED BOTH REVIEWERS VIOLATED due PROCESS BY NOT GRANTING my APPEAL. WHICH IS INCORPORATED And REALEGED AS FULLY SET FORTH HERETO. THE REVIEWERS ARE WRONG(1)CCR 3341.SC(S) mandated THE INVESTIGATION To STOP IN ONE YEAR! WHILE IN GP.(2) I did NOT BREACH THE TERMS OF THE AGREEMENT EVERY ONE INVOLVED did-violating liberty INTEREST Gov. code 844.66) And 814.2, AS THE ITEM USED did NOT FAIL WITHIN THE THE CONTRACT WHICH PROHIBITED ONLY WRITING MEMBERS-And POSSE TION OF CERTAIN ITEMS (3) THE AGREEMENT EXPIRED AFTER A YEAR (4) IT IS UNENFORCABLE BECAUSE IT WAS NOT KNOWINGLY & INTELLIGENTLY MADE WITH ADVICE OF COUNSEL-WAS MADE UNDER DURESS, I WAS NOT TOLD IT WAS NOT NECESSARY-And HAS NOT BEEN ADOPTED IN ACCORD WITH APA Gov. Code
Signature: _____    Date Submitted: 8-26-07

Second Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other    CSATF APPEALS    10-15-07

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: ___ AUG 2 9 2007 ___ Due Date: 9-27-07
☒ See Attached Letter

CSATF APPEALS

Signature: _____    Date Completed: OCT 1 7 2007
Warden/Superintendent Signature: O. Fulz    Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response. DISSATISFIED.
APPELLANT INCORPORATES And REALLEGES ALL PREVIOUS ARGUMENTS AS FULLY SET FORTH HERETO. THE REVIEWER MISSES THE POINT: HAD THEY COMPLIED WITH MY LIBERTY INTEREST And GRANTED APPEAL-I WOULD NOT HAVE GOT REVALIDATED IT WAS THEIR FAULT-SECOND IT WAS ILLEGAL-To SEND ME To THE ASU FOR MORE INVESTIGATION-ONCE THE 12 MONTHS WERE UP CCR 3341.SC(S) THUS ANYTHING FOUND WAS THE FRUIT OF A ILLEGAL INVESTIGATION - FINALLY AS STATED IN SECTION F ABOVE I didNT VIOLATE THE TERMS OF THE AGREEMENT-THE ITEM IS THUS INSUFFICIENT.
Signature: _____    Date Submitted: OCT. 24-07

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____
☒ See Attached Letter    JAN 2 4 2008
CDC 602 (12/87)    Date: _____

*. IF THIS is deemED "ACTIVITY" THEN THE AGREEMENT And PRISON POLICIES RULES VIOLATE THE 1ST AND 14TH AMEN BECAUSE IT is VAGUE And OVER BROAD-NOT PROVIDING ME NOTICE AS To WHAT IS PROHIBITED /ACTIVITY-WHICH FORCES ME To GUESS AT ITS MEANING-And DENIES ME OPPORTUNITY To PRESENT A defense!-FURTHER IT VIOLATES liberty INTERESTS And FEDERAL DUE PROCESS BECAUSE (see ABOVE)    C-101

CONTINUED FROM p.1 sec A.

HE INDICATED THAT DESPITE MY LAST ANUAL REVIEW BEING IN AUG. 2005- THAT HERE I

WOULD BE GIVEN MY ANUAL IN DEC.18-06 THE YEAR I CAME TO PRISON. (ITS ANNIVERSARY).

— DECEMBER CAME AND LEFT - AND BECAUSE NO ANUAL WAS GIVEN - IN COMPLIANCE WITH THE

DRB ORDER MY RIGHTS TO EQUAL PROTECTION, AND LIBERTY INTERESTS SEE CCR.3341.5(c)(5) (INMATES

CATEGORIZED AS INACTIVE WHO ARE SUITABLE FOR SHU RELEASE SHALL BE TRANSFERRED TO THE GENERAL

POPULATION OF A LEVEL 4 FACILITY FOR A PERIOD OF OBSERVATION THAT SHALL BE NO GREATER THAN 12

MONTHS! UPON COMPLETION OF THE PERIOD OF OBSERVATION, THE INMATE SHALL BE HOUSED [IN A

DIFFERENT FACILITY]) SEE CCR.3378(c)(7) (THE CDC FORM 812A & 812B SHALL BE REVIEWED BY A

CLASSIFICATION COMMITTEE. AT EACH ANUAL HEARING AND UPON ANY REVIEW FOR TRANSFER CONSIDERATION

THIS SHALL BE DOCUMENTED ON A CDC FORM 128 G. CLASSIFICATION CHRONO. QUESTIONABLE GANG IDENTIFICATION

NOTATIONS OR NEW INFORMATION SHALL BE REFERRED TO A GANG INVESTIGATOR FOR INVESTIGATION).

BECAUSE THE DEFENDANTS NEVER HELD AN ANUAL— IGI CONTINUED TO MONITOR ME.—I REMAINED

IN THIS PRISON, AND WAS SUBSEQUENTLY PLACED IN THE HOLE FOR OBSERVATION - LONG PASSED MY

12 MONTH MAXIMUM, IN VIOLATION OF MY LIBERTY INTEREST''—ADDITIONALLY NO REVIEW WAS GIVEN

TO MY 812 INACTIVE STATUS, THEIR (THE DEFENDANTS FAILURE TO GRANT AN ANUAL -AND TRANSFER

CAUSED THE SEGRAGATION - AND A POSSIBLE VALIDATION - WHICH WOULD NOT HAVE OCCURED HAD THEY

ADHERED TO THE RULE OF LAW.

. I HAVE WRITTEN SEVERAL NOTES TO COUNSELOR HANDSON ABOUT MY ANUAL REVIEW - AND

HAVE EXPLAINED TO HIM I'VE YET TO HAVE ONE - MY REQUESTS HAVE BEEN IN VAIN-

WHICH IS ADDING TO THE CONSTITUTIONAL VIOLATIONS DISCRIBED ABOVE, AND AGAIN DEPRIVING

ME THE SAME RIGHTS, OF HAVING A TRANSFER, AND ANY OBSERVATIONS TO CEASE —(NOTABLY SINCE

I CANNOT GO TO A LEVEL 3 - I WOULD APPEAR TO BE 270 ELIGIBLE)-AND A REVIEW OF THE

812A & 812B INFORMATION.-AND ALL BENIFITS INCLUDING POINT REDUCTIONS ET SEQ.— WHICH

GO WITH CLASSIFICATION COMMITTEES. CCR.3341.5.(c)(5), 3375.3(d) ET SEQ.— 3378.(c)(7).

MORE OVER ALL DEFENDANTS ARE DEPRIVING ME OF MY RIGHTS TO HAVE ANY GANG INFORMATION

A AD SEG CONDITIONS IMPOSE A SIGNIFICANT AND ATTYPICAL HARD SHIP ON ME IN RELATION TO THE

ORDINARY INCIDENTS OF PRISON LIFE - SEE MADRID.V.GOMEZ__ F.SUPP.— (N.D CAL 1995) FOR

DISCRIPTION OF CONDITIONS                    C-102

WHICH IS QUESTIONABLE TO BE REFERED TO THE IGI FOR INVESTIGATION CCR 3378 &(9).[12]

CLEARLY THIS VIOLATES MY liberty INTEREST IN FREEDOM FROM RESTRAINT GIVEN THAT ANY INFORMATION IGI IS USING TO RETAIN ME, DOES NOT MEET THE REQUISIT CURRENTLY ACTIVE DEFINITION "AS DEFINED IN 3000, AND 3341.5 CKS) "3378 C)(9)— A READING OF THESE REGULATIONS REQUIRES THAT THERE BE EVIDENCE WITH IN THE PAST SIX YEARS IVE KNOWINGLY COMMITTED ILLEGAL OR CRIMINAL ACTS OF MISCONDUCT CLASSIFIED AS SERIOUS ON BE HALF OF THE GANG. — BECAUSE THEIRES NO SUCH EVIDENCE THEN IM STILL INACTIVE —NOT A SECURITY THREAT AND MY liberty INTERESTS, CCR 3335 (9) 3336, 3338(9) 3341.5 (3)(3), 3341.5 (3)(8) :3378(9)(1) AND CCR 3000, 3023 —AND THE MADRID AND TOUSSAINT INJUNCTIONS MANDATE MY FREEDOM.

BECAUSE THE FAILURE TO ABIDE BY LAW CAUSED MY SUBSEQUENT AD SEG RETENTION, AND POSSIBLY A VALIDATION —BASED ON OBSERVATIONS —INVESTIGATIONS WHICH SHOULD'VE ENDED IN DEC 18, 2006, THEN ANY INFORMATION (AND CURRENT RETENTION) BASED ON ITEMS FOUND AFTER THAT DATE SHOULD NOT AND CANNOT BE USED — BECAUSE IT WOULD VIOLATE THE liberty INTERESTS AND CONSTITUTIONS CITED ABOVE AND CAUSE ME TO BE PLACED IN SHU/AdSeg CONDITIONS WHICH IMPOSE AN ATYPICAL AND SIGNIFICANT HARD SHIP IN RELATION TO ORDINARY INCIDENTS OF PRISON LIFE.

(ACTION REQUESTED CONTINUED FROM p.8 SEC.B)

~~[struck through text]~~
~~[struck through text]~~ — THAT I BE AWARDED $25,000⁰⁰ FROM EACH PERSON NAMED IN THIS COMPLAINT IN COMPENSATORY DAMAGES FOR MENTAL EMOTIONAL DISTRESS AND THAT THESE SAME individuals AWARD ME $100,000⁰⁰ IN PUNITIVE DAMAGES FOR VIOLATING MY CONSTITUTIONAL RIGHTS AS ALLEGED HERE TO

CCR 3378(C)(2) REQUIRS THAT THE IGI ET SEQ... REVIEW AND VERIFY TO DETERMINE IF ANY INFORMATION ENTERED INTO THE 812-A & B FORM SHOW CURRENT GANG ACTIVITY —SINCE GANG ACTIVITY IS DEFINED AS ILLEGAL ACTS OF MISCONDUCT CLASSIFIED (ON BEHALF OF THE GANG) AS SERIOUS — AND NON EXISTS THE INFORMATION USED TO RETAIN ME IS QUESTIONABLE AND SHOULD'VE BEEN REFERED BACK TO THEM FOR REJECTION.          (4)                    C - 103

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the INFORMAL Level

*July 10, 2007*

**MANRIQUEZ, K78581**
*ASU100000000122U*

Log Number: SATF-Z-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*You have submitted an appeal that duplicates a previous appeal upon which a decision has*
*been rendered or is pending (CCR 3084.3(c)(2)).*

*You may submit an appeal regarding committe. However, you have submitted SATF-07-*
*02097 regarding gang validation, remove request regarding IGI/validation.*

Appeals Coordinator

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be
automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be
appealed. If you believe this screen out is in error, please return this form to the Appeals
Coordinator with an explanation of why you believe it to be in error, and supporting
documents. You have only 15 days to comply with the above directives.

**PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE**

C-109

REQUEST FOR INTERVIEW TO APPEAL ꟼ0ꟼdINATORI FꞮM MANꞦIQUEZ K-7858 ASU
Cell# 122

gꞦEETING, THEꞦES BEEN A MISTAKE THIS IS AN APPEAL ꞦEGAꞦdING THE FAILUꞦE TO GIVE ME
AN ANUAL - WHICH I APPEATED MONTHS AGO - AND YOU FOꞦWAꞦDED TO COUNSELOꞦS -
I WAS ꞡꞬ NOW EXHAUSTING IT, - HOWEVER TO Avoid DELAYS I'VE COMPLIED
WITH YOUR REQUEST - AS YOU CAN SEE I REMOVED (BLACKED OUT THE ꞦEQUEST ꞦEGAꞦDING
THE VALIDATION )#91 - THE ꞦEST DEAꞦS W/ THE UNTIMELYNESS ▓▓▓ lie I'M JUST
EXHAUSTING THATS All - ▓▓▓▓▓▓▓▓ THANK YOU FOR YOUR TIME
                                                          SINCERELY

1. WEAꞦING WHAT THEY'RE ꞏTHE COMMITTEE
   VIOLATED CCR. 334h. 5(C)(5) AND DRb ORDER — I'M JUST EXHAUSTING FAILURE TO GIVE ME A TIMELY ▓▓▓ ANUAL CAUSED - THEY

C-105

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
**CALIFORNIA SUBSTANCE ABUSE TREATMENT FACILITY AND**
**STATE PRISON AT CORCORAN**
900 Quebec Avenue, P.O. Box 7100
Corcoran, CA 93212



**DATE**:      August 15, 2007

**TO**:       Inmate Manriquez, CDC # K-78581

**SUBJECT**:   First Level Response

**APPEAL LOG NUMBER**: SATF-Z-07-03222

**INTERVIEWED BY**:      A. Rivera, CCII

**APPEAL DECISION**:     Denied.

**APPEAL ISSUE:**   You claim your annual review was not conducted in a timely manner
and you were not referred for transfer therefore, IGI was able to investigate you beyond
the one-year observation period after release from SHU. You request any information
obtained after your annual date be rejected and not used in your re-validation. You
request monetary damages from involved staff.

**APPEAL RESPONSE:**   Your appeal has received careful consideration and has been
thoroughly researched.   Your appeal was referred for First Level Review on 7-17-07.
CCII A. Rivera interviewed you on 8-15-07 concerning any additional information you
wish to add to your appeal and you stated there was no additional information. You
explained that your due process rights had been violated because your annual review
was not completed as scheduled, therefore any information obtain after your annual
date of 11-1-06 should not be allowable in determining your gang status. You stated per
DRB order your activity relevant to gangs was to be under observation for one year and
you were to be reviewed at your annual review for transfer. You claim that if your annual
review would have been completed as scheduled, you would not be undergoing re-
validation at this time.

A review of your central file reveals you arrived endorsed to SATF-IV, per DRB action
dated 9-13-05, on 11-15-05. Your annual review is scheduled to occur during the month
of November. A review of your central file indicates your annual review was not
completed in November as scheduled, however this does not alleviate your
responsibility to comply with the terms of: "Notice of Conditions of Inactive Validation"
which you signed on 9-8-05. You request monetary damages due to your annual review
not being conducted as scheduled, however monetary damages are beyond the scope
of the 602 process.

The Notice of Conditions of Inactive Validation, see attachment, clearly explain any one
incident of failure to adhere to the conditions of inactive status may result in your
revalidation as an active gang member and or return to the SHU.  As a Validated
inactive member of a prison gang, IGI will monitor your activity beyond your one-year
observation period after your release from SHU. IGI has the authority to review any
inmate in CDCR at any time regarding gang activity. IGI determined you failed to

C-106

IM MANRIQUEZ, K-78581
LOG # SATF-Z-07-03222
Page 2 of 2

comply with the Conditions of Inactive Validation and submitted your case to LEIU for Validation and you were revalidated as an Active associate of the Mexican Mafia per 128B2 dated 4-16-07.

**APPEAL DECISION**:  Considering the above information, your appeal is Denied at the First Level of Review.

**Interviewer**
A. RIVERA
Correctional Counselor II
Administrative Segregation
CSATF/SP at Corcoran

**Reviewer**
K. Allison
Associate Warden
Complex I
CSATF/SP at Corcoran

C -107

STATE OF CALIFORNIA – DEPARTMENT OF CORRECTIONS AND REHABILITATION                ARNOLD SCHWARZENEGGER, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
California Substance Abuse Treatment Facility and State Prison at Corcoran
900 Quebec Ave.
P.O. Box 7100
Corcoran, CA 93212



October 16, 2007

Inmate Manriquez, K78581
California Substance Abuse Treatment
Facility and State Prison at Corcoran
P. O. Box 7100
Corcoran, CA 93212

Second Level Appeal Response
Log # SATF-Z-07-03222

## ISSUE:

You contend that on 11-15-05 you were released from the Security Housing Unit (SHU) as an inactive Mexican Mafia Prison Gang associate. Since then, you contend your annual review was never conducted, while you were housed on Facility C, General Population. You contend that had your annual review been conducted, you would not have been re-validated in that the California Code of Regulation (CCR), Title 15, Section, 3341.5 (c) (5), is very specific; that you are to only be observed for a period of 12 months regarding your gang activity/association. You also contend that had your annual review been conducted you would have been put up for transfer to an alternate institution.

You are requesting 1) an annual review be conducted and all of the benefits that come along with it; 2) the Institutional Gang Investigator cease observing you; 3) you be transferred to a 270 institution; 4) any information discovered after December 18, 2006, be rejected because it is a violation of your Constitutional Rights; and 5) you be monetarily compensated.

## INTERVIEWED BY:

A. Rivera, Correctional Counselor II, on 8-15-07.

## REGULATIONS:

The rules governing this issue are taken from the CCR, Title 15:

**CCR 3375. Classification Process.**
**CCR 3341.5. Segregated Program Housing Units.**
**CCR 3378. Documentation of Critical Case Information.**

## SUMMARY:

R. Gomez, Appeals Coordinator, investigated your appeal at the Second Level of Review. The investigation revealed you did not abide by the Notice of Conditions of

C-108

Manriquez, K78581
Appeal Log # Z-07-03222
Page 2

Inactive Validation and you were re-validated as a Mexican Mafia Prison Gang associate. A reliable source was used to re-validate you: confidential memorandum dated 2-9-07 (communications and informants). Additionally, the Classification Staff Representative of 10-3-07 endorsed you to Pelican Bay State Prison SHU via Corcoran State Prison SHU to serve an Indeterminate SHU term (see attached copy of 128G dated 10-3-07).

On this date you were transferred to Corcoran State Prison and your file could not be reviewed to see if your annual review has been conducted. My recommendation to you, is that if your annual review has not been conducted that you request one at the receiving institution.

**DECISION:**

The appeal is denied. The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

KEN CLARK
Warden

CSATF APPEALS
OCT 1 7 2007

C - 109

STATE OF CALIFORNIA
CDC 128-B-2 (4/07)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

---

**INMATE'S NAME: MANRIQUEZ, DANIEL**                                    **CDCR NUMBER:  K78581**

---

On 4/09/07 a gang validation package regarding subject was received from Institution Gang Investigator A. QUINONES at CSATF.  Subject was originally validated on **4/27/98** under CDCR number **K78581** as an **ASSOCIATE** of the **MEXICAN MAFIA PRISON GANG.**  S's validation status was reviewed/upheld by the SSU Validation Committee on 9/09/03.  S validation status was reviewed again on 8/03/04 resulting in a status change to **INACTIVE.**  This CDC-128B2 reflects subsequently received information which again updates Subject's status.

**TOTAL NUMBER OF ITEMS SUBMITTED FOR REVIEW:  (2)**

The following items **meet** the validation requirements:

1. Confidential Memorandum dated 2/09/07 (Communications and Informants)

**TOTAL NUMBER OF ITEMS WHICH MEET VALIDATION REQUIREMENTS:  (1)**

The following items **do not meet** the validation requirements and were/shall not be used as a basis for validation:

1. Confidential Memorandum dated 12/26/06 (Written Material – Name found in another validated associates address book does not support current activity on MANRIQUEZ'S part)

**TOTAL NUMBER OF ITEMS WHICH DO NOT MEET VALIDATION REQUIREMENTS:  (1)**

**ACTION OF REVIEWER**

Pursuant to the validation requirements established in 15 CCR Section 3378, DANIEL MANRIQUEZ is:

☒  **VALIDATED**          ☐  **REJECTED**

as an associate of the **MEXICAN MAFIA** prison gang.

| | | |
|---|---|---|
| **CHAIRPERSON** | **REVIEWER** | **MEMBER** |
| **PRINTED NAME** | **PRINTED NAME** | **PRINTED NAME** |

**COMMITTEE
DATE:  4/16/2007**

Everett W. Fischer

---

**DISTRIBUTION:**
Original - Central File
Copy - Classification & Parole Representative/Parole Administrator I
Copy - Institutional Gang Investigator/Region Gang Coordinator
Copy – Office of Correctional Safety – Special Service Unit
Copy - Inmate/Parolee _____ by _____

**ACTIVE/INACTIVE REVIEW**

**NOV  – 9  2012**

**ELIGIBILITY DATE**

---

State of California

No. K-78581

NAME: MANRIQUEZ

Department of Corrections
CDC 128-G

Comments: PBSP-SHU endorsed via COR-SHU to serve an Indeterminate SHU term. CS = 58. SHU Inmate endorsed by previous CSR action. Previous CSR concerns, as noted in CSR action dated 9/27/07 have been addressed. LIFE Without Parole Status is noted. Madrid chrono of 8/15/07 noted. TB Code is 22. CDC 812 is noted. Confidential file is noted. PBSP SHU is currently closed to intake. Per Departmental policy, prison gang associates/members are to be housed at PBSP. He should be transferred to COR-SHU enroute to PBSP SHU. He is to be placed on the waiting list at COR for PBSP-SHU, and transferred when a bed/bus seat becomes available. Retention in ASU is approved pending transfer. This transfer approval expires 1/31/2008 and will require return to CSR for re-authorization.

Date: 10/3/2007

D.Selvy, CSR

Classification - CSR ACTION

SATF
COR

C-11F

STATE OF CALIFORNIA                                                  DEPARTMENT OF CORRECTIONS
                                                                    CDC 128B (REV. 4/74)

## NAME and NUMBER: **MANRIQUEZ, K-78581**

NOTICE OF CONDITIONS OF INACTIVE VALIDATION

You are being scheduled for review by the Departmental Review Board (DRB) as a validated Inactive Gang Member / Associate. Based on your newly designated inactive status, the DRB may elect to conditionally release you from a Security Housing Unit (SHU) to a general population facility.

You are hereby notified that as a condition of your release to the general population, you will be required to submit to a photograph of all tattoos and body markings and you must refrain from participation in <u>any</u> gang activity or association with <u>any</u> gang members.

**A single incident of any of the following may result in your return to a SHU program:**

1.   Self-admission of gang involvement / association.
2.   Any new tattoos or body markings deemed to be gang related.
3.   Use of hand signs, distinctive clothing, graffiti, etc., which have been identified by gang coordinators/investigators as being used by and distinctive to specific gangs.
4.   Possession of any material or document evidencing gang affiliation such as membership or enemy lists, constitutions, organizational structures, codes, training material, etc., of specific gangs.
5.   Possession of individual or group photographs with gang connotations such as those which include insignia, symbols, or validated gang affiliates.
6.   Documentation by staff of visual or audible observations, which reasonably indicate affiliation with gang activity or association with gang members as outlined in the California Code of Regulations, Title 15, section 3378(c).
7.   Confidential information that meets the criteria set forth in the California Code of Regulations, Title 15, Section 3321, that evidences gang activity or association with gang members.
8.   A finding of guilty regarding any serious rule violation, whether gang related or not, that merits a new SHU term under the California Code of Regulations, Title 15, section 3341.5(c).

You are advised to release to prison staff any materials in your property that meet the above conditions of your release to the general population. Should any of these items be found in your property <u>at any time</u>, they will be viewed as evidence of current gang activity or other misconduct.

I have read and understand the above conditions of my release to a general population facility and agree to these conditions. I understand that violation of any of these conditions may result in my being revalidated as an "active" gang member and/or returned to a SHU program.

_____                    Sep. 9 - 05
Signature of Inmate                                      Date

M., DOTSON _____                         9-9-05
Signature of staff witness                              Date

Orig:       Central File
Cc:         Receiving Institution
            Inmate

**DATE:SEPT. 08, 2005      (NOTICE OF CONDITIONS OF INACTIVE VALIDATION)      CDC 128B**
**************************************************************************************

C-112

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:        **JAN 2 4 2008**

In re:    Daniel Manriquez, K78581
          Pelican Bay State Prison
          P.O. Box 7000
          Crescent City, CA 95531-7000

          IAB Case No.: 0712716          Local Log No.: SATF-07-03222

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner E. Allen, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that his rights under the Fourteenth amendment were violated because he was not granted an annual review and transfer/release from the Administrative Segregation Unit (ASU) once his 12-month Inactive Validation Observation period had been completed. The appellant contends that in September 2005, the Departmental Review Board ordered he be released from the ASU and transferred to the California Substance Abuse Treatment Facility (SATF) for a 12-month inactive gang observation period. The appellant contends that he was released on November 15, 2005, and that he should have been seen by a Unit Classification Committee for his annual review in November of 2006. However, staff informed him that his annual review period had changed to December 2006 based on his initial incarceration. The appellant claims that he was not seen for his annual review in December and that because of the delay in his annual review the Institution Gang Investigators (IGI) continued to monitor him past the one year observation period. The appellant claims that staff's failure to abide by the law caused him to be re-housed in the ASU and to possibly be re-validated. The appellant requests to be taken to committee for his annual review and to be transferred out of the SATF as soon as possible. He is also requesting that observations conducted by the IGI cease and that information found after December 18, 2006, be rejected. The appellant requests to be awarded $25,000 from each person named in the complaint for mental and emotional distress. He also requests that those individuals award him $100,000 for punitive damages for violating his constitutional rights.

**II    SECOND LEVEL'S DECISION:** The reviewer found that the appellant did not abide by the Notice and Conditions of Inactive Validation; therefore, he was re-validated as a Mexican Mafia Prison Gang associate. On October 3, 2007, the Classification Staff Representative endorsed the appellant to the Pelican Bay State Prison (PBSP) Security Housing Unit (SHU) to serve an Indeterminate Security Housing Unit (SHU) term based on his association with the Mexican Mafia prison gang. The appellant was endorsed for transfer via CSP-Corcoran State Prison (CSP-COR) based on bed availability at PBSP-SHU. The appellant's central file was not available for review at CSP-COR; therefore, staff could not address the appellant's concerns regarding his annual review. The appellant was advised that if his annual review had not been conducted he should request it at the receiving institution. The appeal was denied at the Second Level of Review.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

   **A.    FINDINGS:** The appellant's argument that he would not have been re-housed in the ASU and re-validated as a Mexican Mafia prison gang associate had he been seen for his annual review on time is unfounded. The appellant's request to have the IGI stop the observation process and dismiss any finding that were discovered after the one year mark are denied as the IGI has the authority to review the appellant at any time. The appellant has been advised that monetary damages are beyond the scope of the departmental appeal process. The Director's Level of Review (DLR) supports the institutions decision and notes that the appellant did not provide additional documentation to warrant a different decision by the DLR.

   **B.    BASIS FOR THE DECISION:**
   California Code of Regulations, Title 15, Section: 3341.5, 3375, 3378

C-113

DANIEL MANRIQUEZ, K78581
CASE NO. 0712716
PAGE 2

**C. ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, PBSP
       Appeals Coordinator, PBSP
       Appeals Coordinator, SATF

C-114

# INMATE/PAROLEE
## APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region    Log No.    Category

1. ___SATF2___    1. __07-01304__    **7**

2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| DANIEL·MANRIQUEZ | K-7858 | | ASU-Cell #122 |

**A. Describe Problem:** ASU OFFICIALS AT SATF NAMELY J.HUTCHINS (A.WARDEN) CAPTAIN REYNOSO, LT.HACKER, SGT MUÑOZ, OFFICERS C.CLAUSING, OMOS, AND D.DALEY, WERE DELIBERATELY INDIFFERENT, AND VIOLATED MY CONSTITUTIONAL RIGHTS UNDER THE 8TH AND 14TH AMENDMENT, BY (1) UTILIZING THE UNNECESSARY USE OF A CHEMICAL AGENT TO RETRIEVE A SIMPLE TRAY-AND SUBJECTING ME TO DELIBERATE MENTAL EMOTIONAL PHYSICAL PAIN/SUFFERING BY NOT TIMELY REMOVING ME FROM THE CHEMICALLY DRENCHED CELL (2) FAILING TO DECONTAMINATE THE PEN/CLEAN IM BEFORE RETURNING ME TO IT AND (3) BY BEING DELIBERATELY INDIFFERENT TO MY NEEDS FOR ADEQUATE SANITATION, WARMTH, BEDDING, CLOTHING, SUFFICIENT CLOTHING, HYGIENE AND FREEDOM FROM MENTAL EMOTIONAL, PHYSICAL PAIN AND SUFFERING* **FACT:** ON FEB. 28-07 DEFENDANTS ALLEGE I REFUSED TO HAND OVER A PLASTIC TRAY, UNCOVER MY DOOR AND CUFF UP. HUTCHINS AND REYNOSO ORDERED MY EXTRATION, UNDER THE DIRECTION AND SUPERVISION OF (CONT p. 3 INFRA)

If you need more space, attach one additional sheet.

**B. Action Requested:** (1) AN INVESTIGATION INTO THIS MATTER (2) CEASE THESE ILLEGAL POLICIES (3) THAT EACH DEFENDANT HUTCHINS, REYNOSO HACKER, MUÑOZ, CLAUSING, OMOS, DALEY, DIAZ, QUINONEZ AND HOLMS AWARD ME $75,000.⁰⁰ EACH IN COMPENSATORY DAMAGES, FOR THE MENTAL EMOTIONAL, PHYSICAL ANGUISH, PAIN AND SUFFERING ALLEGED HERE IN, PLUS $5,000.⁰⁰ EACH FOR THE INFLICTION OF PHYSICAL PAIN, INJURY, THE CONDITIONS THE FORCED ME TO LIVE UNDER AND VIOLATION OF MY CONSTITUTIONAL RIGHTS AS ALLEGED TO.

Inmate/Parolee Signature: _____    Date Submitted: MAR.10-06

C. INFORMAL LEVEL (Date Received: _____)

Staff Response: _____

_____

_____

**BYPASS**

Staff Signature: _____    Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

**BYPASS**

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

*AS FAR AS LIABILITY GOES - CAPT. DIAZ, QUINONEZ/HOLMS ARE EQUALLY LIABLE BECAUSE HAD THEY NOT PLACED ME IN AdSeg BASED ON NO EVIDENCE BUT A CONSPIRACY TO BE RID OF ME IN THE FIRST PLACE NONE OF THESE CONSTITUTIONAL VIOLATIONS WOULD HAVE OCCURED.

EXHIBIT B-4b

CSATF APPEALS
MAR 1 8 2007

SATF APPEALS
MAR 2 3 2007

INMATE APPEALS BRANCH
RECEIVED
JUN 22 2007

EXHIBIT B
115

**CSATF APPEALS**

First Level: ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other

MAR 2 3 2007

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: 5-9-07

Interviewed by: LT R. Tolson on 4/17/07 IN ASU. SEE MEMORANDUM

DATED 4/17/07 -

_____

Staff Signature: _____ Title: LT    Date Completed: **CSATF APPEALS**

Division Head Approved: K. Allison    Title: AW    Returned APR 3 0 2007

Signature: _____    Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

DISSATISFIED APPELLANT INCORPORATES AND REITERATES ALL ARGUMENTS/GROUNDS RAISED PREVIOUSLY AS FULLY SET FORTH HERE TO, FOR ALL EXHAUSTION PURPOSES - AND SUBMITS THAT NOT ONCE DOES THE REVIEWER DENY THAT EXCESSIVE FORCE WAS USED, THAT DEFENDANTS FAILED TO DECONTAMINATE MY CELL PRIOR TO PUTTING ME IN IT - AND THAT THEY SUBJECTED ME TO LIVING CONDITIONS AFTER THE INCIDENT WHICH WERE UNSANITARY AND VIOLATED MY 8TH

Signature: _____    **CSATF APPEALS** Date Submitted: MAY 2-07

Second Level: ☐ Granted  ☒ P. Granted  ☐ Denied  ☐ Other MAY 0 4 2007

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____ Due Date: 6-4-07

☒ See Attached Letter

Signature: _____    Date Completed: 6-8-07

Warden/Superintendent Signature: J.J. Steel    Date Returned to Inmate: **CSATF APPEALS**

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.  MY APPEAL SHOULD HAVE BEEN GRANTED FULLY.    JUN 1 2 2007

DISSATISFIED, THE WARDEN KEN CLARK - ASSISTANT WARDEN J. HUTCHINS - AND DEPUTY WARDEN J. WARD AND R GOMEZ HAVE VIOLATED MY FEDERAL DUE PROCESS RIGHTS BY FAILING TO FULLY INVESTIGATE THIS APPEAL - THIS WAS TURNED INTO A CITIZENS COMPLAINT BY SATF - IN ORDER TO COVER UP THE VIOLATIONS OF MY RIGHTS - ADDITIONALLY - NOT ONCE DID GOMEZ et al MENTIONED AS TO WHETHER OFFICERS FAILED TO ORDER THE DECONTAMINATION OF MY CELL OR DO IT THEM SELFS - THEY DIDNT (EXHIBIT A) THERE FAILURE TO DO SO VIOLATED MY 8TH AMENDMENT RIGHTS - ADDITIONALLY I SHOULD BE FINANTIALLY COMPENSATED - THE SWEET TIME THE IT TOOK TO GET ME OUT OF THE CELL AND DEPRIVATION OF LIFES BASIC NECESSITIES WAS NOT TO RESTOR ORDER BUT TO CAUSE MALICIOUS INFLICTION OF PAIN IN VIOLATION OF THE 8TH AM

Signature: _____    Date Submitted: 6-19-07

For the Director's Review, submit all documents to:  Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other _____

☒ See Attached Letter    SEP 2 0 2007

CDC 602 (12/87)    Date: _____

EXHIBIT F
47

D. 116

CONT FROM P.1 SEC A ANTE...

LT, HACKER, AND SGT MUÑOZ. C/O'S CLAUSING AND OMOS INSERTED THE NOSILE OF THE DANGEROUS CHEMECAL "AGENT 'X60 BRD" AND OFFICER/SGT MUÑOZ BATHED MY CELL, AND I WITH THE CHEMICAL AGENT. I INSTENTLY BEGAN TO CHOKE, AND BEGAN TO EXPERIANCE UNBEARABLE LUNG AND CHEST PAIN, AND AN UNBEARABLE BURNING SENSATION IN MY EYES, SKIN AND GENITALS, I UNCOVERED MY door INSTENTLY, REMOVED MY CLOTHING AND VOLUNTEERED TO BE RESTRAINED, HOWEVER DISPITE MY NOT POSSING ANY THREAT, SGT MUÑOZ, CLAUSING, OMOS, AND D. DALEY REFUSED TO REMOVE ME FROM THE CELL - THUS PROLONGING THE PAIN, INSTEAD THEY TOOK THEIR TIME AND REQUESTED THAT I HAND THEM THE TRAY WHICH WAS IN PLAIN SIGHT. DISPITE MY CONTINUACE SUFFERING/CHOKING I MANAGED TO COMPLY - AND OFFERED TO CUFF UP AGAIN, BUT THE OFFICERS REFUSED - AND INSTEAD TOOK THEIR TIME, AS IF THEY WERE PLAING GAMES BY REPEATEDLY REQUESTING TO VIEW CERTAIN PARTS OF MY ANATOMY - AND DEMANDED THAT THE VIEWING OF THOSE PARTS BE IN A CERTAIN ORDER WITH PROLONGED INTERVALS (IE .."NO, I SAID RIGHT FOOT FIRST NOT LEFT FOOT") THIS WAS UNNECESSARY AND SERVED NO PURPOSE. AFTER I WAS FINALLY REMOVED FROM MY CELL EVERYTHING, INCLUDING LIFES BASIC NECESSITIES WERE TAKEN. HOWEVER INSTEAD OF PROVIDING PLACING ME IN ANOTHER CELL, OR DECONTAMINATING THIS CELL, I WAS PLACED BACK INTO THE SAME CELL WEARING THE SAME UNDERWEAR, WHICH WERE DRENCHED WITH THE CHEMECAL AGENT. THE CHEMICAL AGENT WAS STILL ALL OVER THE FLOOR, WALLS AND DRIPPING FROM THE ROOF WHICH CAUSED ME MENTAL, EMOTIONAL PHYSICAL PAIN SUFFERING AS IT BURNED MY BEAR FEET SOMEMORE, IT WAS BURNING MY BODY AS IT WAS FALLING ON ME AND CAUSING ME TO CHOKE, COUGH, AND EXPERIANCE PAIN FROM INHALING IT. I REQUESTED LIFES BASIC NECESSITIES, IE SANITATION SUPPLIES TO CLEAN THIS MY SELF, CHANGE OF UNDERWEAR, SOME CLOTHING, BEDDING, MATRESS SHEETS, TOILLET PAPER AND HYGINE, BUT WAS DENIED THESE ITEMS, BASED ON HACKER AND REYNOSOS POLICY OF NOT GIVING IN MATES NOTHING ON THE FIRST NIGHT - THEN PROVIDING THEM ONE THING AT A TIME, - I WAS FORCED TO SLEEP (ATTEMPT TO) IN A COLD EMPTY CELL, FILLED WITH CHEMICAL AGENT WHICH CAUSED ME UNBEARABLE PAIN. AND LIVED UNDER THESE SAME CONDITIONS WITH OUT LIFES BASIC NECESSITIES - OR CHANGES IN CLOTHING - CLEANING SUPPLIES AND MATRESS - FOR ALMOST TEN DAYS OR MORE.

1ST CAUSE OF ACTION: COURTS HAVE ALREADY FOUND THAT THE UNNECESSARY USE OF CHEMICAL AGENTS IS UNLAWED. RUIZ V. ESTELLE 503 F.SUPP 1265, 1305 (S.D 1982) THEIRE USE ARE LIMITTED TO SITUATIONS INVOLVING ——— THREAT OF BODILY HARM TO OTHERS OR TO PREVENT ESCAPE. BATTLE V. ANDERSON 376 F. SUPP. 402, 433 (ED. OK 1974), SPAIN V. PROCUNIER 600 F. 2D 186 (9TH CIR 1979) (HOLDING GAS MAY ONLY BE USED IN DANGEROUS AMOUNTS IF THERE IS A THREAT OF INJURY TO PERSONS OR SUBSTANTIAL AMOUNTS OF VALUABLE PROPERTY) THUS ITS USE HERE WAS NOT WARRENTED, I WAS SINGLE CELLED, WAS IN A CELL, NOT CAPABLE OF CAUSING RIOTS, OR HARMING ANYONE, AND THE PROPERTY IN QUESTION WAS A CHEAP PLASTIC TRAY! THUS ESTABLISHING THE USE WAS UNLAWED. LOCK V. JENKINS 641 F. 2D 488, 495-96 (TEAR GAS CANNOT BE USED TO RETRIEVE A METAL TRAY!) EXACERBATING THIS SITUATION/PAIN, AND HUMILIATION WAS THAT ONCE I VOLUNTEERED TO BE RESTRAINED ⟶

& TO AVOID EXCESS VERBAGE - FOR ALL PRACTICAL PERPOSES LT HACKER, CAPT RAYNOSO ARE LIABLE FOR ALL ACTIONS OF THE OFFICERS BECAUSE THEY ACTED UNDER THEIR ORDERS AND SUPERVISION. OR HACKER/RAYNOSO FAILED TO STOP THE CONSTITUTIONAL VIOLATIONS

F. 48                    D - 117

DEFENDANTS, ~~Orge 3; Obrushing~~ 2427-MLP did deliberately ~~thing~~ intend on July 2008 deliberate ~~gl~~ 50 of my REMOVAL FROM THE CELL - IN ORDER TO EXACERBATE MY unnecessary MENTAL EMOTIONAL, PHYSICAL PAIN AND SUFFERING AND HUMILIATION.

SECOND CAUSE OF ACTION: HAZARDOUS LIVING CONDITIONS, HERE ALL DEFENDANTS ABOVE SUBJECTED ME TO HAZARDOUS LIVING CONDITIONS BECAUSE, RATHER THAN MOVING ME TO A CELL WHICH WAS NOT CONTAMINATED, OR DECONTAMINATING THIS CELL/CLEANING IT, THEY IMMEDIATELY PLACED ME IN THE SAME CELL WHICH WAS DRENCHED WITH THE CHEMICAL AGENT, CAUSING ME REPEATED AND PROLONGED PAIN SUFFERING FROM HEAD TO TOE, I WAS BREATHING IN THESE CHEMICALS FOR DAYS - AND IN PAIN, EVEN AFTER THE CHEMICALS DRIED THEN TURNED INTO DUST WHICH STILL BURNED MY BODY AND CAUSED ME PAIN IN MY LUNGS AND CHOKING - FOR NEARLY 10 DAYS. WHICH THREATENED MY MENTAL, PHYSICAL WELL BEING, - THE LAW IS CLEAR PRISON OFFICIALS MUST PROVIDE UNHAZARDOUS SHELTERING WHICH DOES NOT THREATEN INMATES PHYSICAL WELL BEING. HELLING V. MCKINLEY 113 SCT. 2475 (1993); HOPOWIT V. SPELLMAN 753 F.2d. 779, 784 (9TH CIR 1985) EXPOSING INMATES TO LIVING CONDITIONS WHERE THERE ARE TOXIC SUBSTANCES VIOLATES THE CONSTITUTION. HELLING SUPRA AT 2481, POWELL V. LENNAN 914 F.2d. 1459-63 (11TH CIR 1990) (EXPOSURE TO ASPESTUS CONSTITUTED DELIBERATE INDIFFERENCE) THE DEFENDANTS ALL KNEW I WOULD BE EXPOSED TO THESE CHEMICALS AND SUFFER PAIN IF THEY PLACED ME BACK IN THAT CELL WITHOUT CLEANING / DECONT-AMINATING IT, NEVER THE LESS THEY WERE DELIBERATELY INDIFFERENT TO MY MENTAL, AND PHYSICAL WELL BEING AND PLACED ME BACK IN THAT CELL WITHOUT DECONTAMINATION, WHICH WAS A RISK TO MY HEALTH AND VIOLATED ORDINARY STANDARDS OF DECENCY.

3rd CAUSE OF ACTION: THE DEFENDANTS WERE DELIBERATELY INDIFFERENT TO MY BASIC NEED, OF ADIQUATE SANITATION, WARMTH BEDDING/MATTRESS, HYGIENE, WARMTH AND MY RIGHT TO BE FREE FROM THE UNWANTON AND UNNECESSARY INFLICTION OF PAIN. HERE FOR THE FIRST NIGHT I HAD TO SLEEP IN THE SAME CONTAMINATED CELL, WEARING THE SAME CONTAMINATED UNDERWEAR WHICH CAUSED PAIN TO MY GENITALS, THE CELL WAS EMPTY, AND I WAS PROVIDED NOTHING TO CLEAN IT, NO TOILET PAPER, NO BLANKETS SHEETS TOWELS, MATTRES - NOTHING! THE NEXT DAY I WAS ONLY GIVEN A BLANKET, AND REMAINED IN THE SAME CONDITIONS, BASED ON REYNOSO / HACKINS POLICY I WAS NOT GIVEN LIFES BASIC NECESSITIES (AS DISCRIBED ABOVE) - IMEDIATELY BUT, WAS GIVEN ONE THING AT A TIME, AND NO CHANGES IN CLOTHING NOR NOTHING TO WASH THE ill CLOTHING I GRADUALLY GAINED ~~wh~~ ~~win~~ NOR EXCHANGE OF CLOTHING UNTIL PASSED THE 10 DAYS, THESE CONDITIONS IN COMBINATION DEPRIVED ME OF LIFES BASIC NECESSITIES. IT AMOUNTED TO A DISREGARD TO MY MENTAL AND PHYSICAL HEALTH. I WAS IN NO DIFFERENT SITUATION THAN AN INMATE IN A FECES SMEARED CELL, JOHNSON V. PELKER 891 F.2d 136,139 (7TH CIR 1989) THE LAW IS CLEAR THAT A SANITARY ENVIORNMENT IS A BASIC HUMAN NEED THAT A PENAL INSTITUTION MUST PROVIDE, INMATES MUST HAVE ADIQUATE CLEANING SUPLIES TOUSSAINT. V. MCCARTHY 597 F.SUPP. 1388 1411 (N.D. CA. 1984) AND THAT THE DEPRIVATION OF SOAP TOOTH PAST TOILET PAPER, TOOTH BRUSH/S FOR ANY PERIOD OF TIME VIOLATES DUE PROCESS WILLIAMS V. I CC COMMITTEE 812 F.SUPP. 1029 (N.D. CA) 1992) AS DOES THE DEPRIVATION OF CLEAN CLOTHING - THE DENIAL TO OUR ABILITY TO CLEAN IT OURSELFS AND TO HAVE ~~enough~~ ENOUGH CLOTHING TO WEAR WHILE ONE CHANGE IS BEING WASHED HAZEN V. PASLEY 768 F.2d 226-28 N. 2 (8TH CIR UP) FINALLY THE DEPRIVATION OF BEDDING AND A MATRESS FOR ALMOST 10 DAYS VIOLATED MY CONSTITUTIONAL RIGHTS. CARTER. V. KNOX 753 F.SUPP. 1370 CE:d TENN 1989)

2 AND TO ~~the~~

F 4/9

D-118

STATE OF CALIFORNIA – DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR
DIVISION OF ADULT INSTITUTION
CALIFORNIA SUBSTANCE ABUSE TREATMENT FACILITY AND
STATE PRISON-CORCORAN
900 QUEBEC AVE, P.O. BOX 7100
CORCORAN, CA 93212
(559) 992-7100



# Memorandum

Date:    April 17, 2007

To:    Inmate Manriquez, K-78581, and ASU-122L

Subject: **STAFF COMPLAINT RESPONSE, APPEAL #SATF-Z-07-01304**

APPEAL ISSUE:  It is alleged that Correctional Staff at CSATF in the Administrative Segregation Unit (ASU) violated your constitutional rights by utilizing chemical agents to retrieve a food tray from your cell, subjecting you to deliberate mental emotional; physical pain and suffering by not timely removing you from the cell after the chemical agents were disbursed.

DETERMINATION OF ISSUE:    A review of the allegations of staff misconduct presented in the written complaint has been completed.  Based upon this review your appeal has been handled as follows:

☒  PROCESSED AS A STAFF COMPLAINT APPEAL INQUIRY
☐  REFERRED TO THE OFFICE OF INTERNAL AFFAIRS (Note: You will be
    notified of the conclusion of any internal affairs investigation)

SUMMARY FOR APPEAL INQUIRY: On April 17, 2007 at approximately 0930 hours Lieutenant R. Tolson interviewed you in the Administrative Segregation Unit (ASU). You have a TABE score of 4.0. Effective communication was established and reasonable accommodation was not required. All information was read to you and you did acknowledge that all information was clearly understood. You had no additional information to provide and refused to answer additional questions raised by the interviewer regarding this staff complaint. I reviewed the 837 Incident Report dated February 28, 2007 authored by Lieutenant M. Hacker, for the Specific Crime of "Tactical Cell Extraction Necessitating the Use of Force".

FINDINGS FOR AN APPEAL INQUIRY:   You appeal is denied at the First Level of Review. Administrative staff has conducted an inquiry into your allegation. ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE.  As such, results of any inquiry/investigation will not be shared with staff, members of the public, or inmates. Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process.

EXHIBIT F-50                    D-119

Appeal Log No.: SATF-Z-07-01304
Inmate Manriquez, K78581
ASU-122L

Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process. If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review. Once a decision has been rendered at the Director's Level of Review your administrative remedies will be considered exhausted.

R. TOLSON
Correctional Lieutenant
E1 Ad-Seg
CSATF/SP at Corcoran

K. ALLISON
Associate Warden
Complex I
CSATF/SP at Corcoran

CSATF APPEALS
APR 3 0 2007

F-51

D 120

STATE OF CALIFORNIA                                    DEPARTMENT OF CORRECTIONS AND REHABILATION

CDC 1858 (2/97)

# RIGHTS AND RESPONSIBILITY STATEMENT

The California Department of Corrections has added departmental language (shown inside brackets, in non-boldface type) for clarification purposes.

**Pursuant to Penal Code 148.6, anyone wishing to file an allegation of misconduct by a department peace officer must read, sign and submit the following statement:**

**YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER** [this includes a departmental peace officer] **FOR ANY IMPROPER POLICE** [or peace] **OFFICER CONDUCT, CALIFORNIA LAW REQUIRES THIS AGENCY  TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS'** [or inmates'/parolees'] **COMPLAINTS.    YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY.  CITIZEN** [or inmate/ parolee] **COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.**

| COMPLAINANT'S PRINTED NAME | COMPLAINANT'S SIGNATURE | DATE SIGNED | |
|---|---|---|---|
| INMATE/PAROLEE PRINTED NAME   M ANRIQUEZ | INMATE/PAROLEE'S SIGNATURE | CDC NUMBER   K78581 | DATE SIGNED   4/17/07 |
| RECEIVING STAFF'S PRINTED NAME   R Tolson | RECEIVING STAFF'S SIGNATURE | DATE SIGNED   4/17/07 | |

DISTRIBUTION:
ORGINAL –
Public – Institution Head/Parole Administrator
Inmate/Parolee – Attach to CDC form 602
Employee – Institution Head/Parole Administrator
COPY - Complainant

F-52                                    D-121

STATE OF CALIFORNIA – DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
California Substance Abuse Treatment Facility and State Prison at Corcoran
900 Quebec Ave.
P.O. Box 7100
Corcoran, CA 93212



June 8, 2007

Inmate Manriquez, K78581
California Substance Abuse Treatment
Facility and State Prison at Corcoran
P. O. Box 7100
Corcoran, CA 93212

Second Level Appeal Response
Log # SATF-Z-07-01304

## ISSUE:

Although the appellant has the right to submit an inmate/parolee appeal form, CDC 602, per Administrative Bulletin # 05-03 the Warden or the Warden's designee will determine if the CDC 602 will be processed as a staff complaint. In your case, the Warden's designee determined that your appeal would be processed as a Staff Complaint Appeal Inquiry.

You contend that on February 28, 2007, while being housed in the Administrative Segregation Unit (ASU) here at the California Substance Abuse Treatment Facility and State Prison (CSATF-SP) at Corcoran Correctional Staff violated your constitutional rights. You contend a cell extraction was ordered and custody staff bathed your cell with chemical agents. You contend staff took their time in removing you from the contaminated cell. You also contend you were placed back into the same contaminated cell. You contend the aforementioned caused mental, emotional and physical pain. You are requesting 1) an investigation into the matter; 2) cease these illegal policies and; 3) you be awarded $75,000.00 from each defendant for compensatory damages and $85,000.00 for from each defendant for punitive damages.

## INTERVIEWED BY:

R. Tolson, Correctional Lieutenant, on 4-17-07.

## REGULATIONS:

The rules governing this issue are taken from the Penal Code (PC), the California Code of Regulations (CCR), Title 15, and Administrative Bulletin (AB) 05-03:

> ❖ **PC 832.7 (a) (e). Personnel records; confidentiality;**
>   **discovery; exceptions; complaint disposition notification**
> ❖ **PC 832.8. Personnel records**
> ❖ **CCR 3004. Rights and Respect of Others.**
> ❖ **CCR 3391 (a). Employee Conduct.**
> ❖ **AB 05-03 Processing of Adult Inmate/Parolee Appeals.**
>   **CDC Form 602, Which allege Staff Misconduct.**

F-53

D-122

Manriquez, K78581
Appeal Log # Z-07-01304
Page 2

## SUMMARY:

R. Gomez, Appeals Coordinator, investigated your appeal at the Second Level of Review. Upon review of the documentation submitted, it has been determined that your allegations have been reviewed and evaluated by Administrative Staff and an Appeal Inquiry has been completed.

In the event that staff misconduct was substantiated, the institution would take the appropriate course of action. All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public or the inmate population, and would not be released to you. However, upon completion of the Appeal Inquiry you are to be notified by the assigned reviewer that an inquiry has been completed or that your complaint was referred to the Office of Internal Affairs. In this case, your complaint was processed as a Staff Complaint Appeal Inquiry. On 4-27-07 J. Ward, Chief Deputy Warden, reviewed and approved the Staff Complaint Appeal Inquiry.

Although the appellant has the right to submit an appeal, the request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the appeals process. Your request to be monetarily compensated is also beyond the scope of the appeals process.

## DECISION:

Your appeal is partially granted. Partially granted in that an inquiry into you allegations has been conducted. All other requests are denied. The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

J. Wischlung

**KEN CLARK**
**Warden**

CSATF APPEALS

JUN 1 2 2007

F.54

D.123



F.55

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART C- STAFF REPORT**
CDCR 837-C (Rev. 07/05)

PAGE __1__ OF __1__

| INCIDENT LOG NUMBER |
|---|
| SATF-09-07-02-0076 |

| NAME: LAST | FIRST | MI | DATE OF INCIDENT | TIME OF INCIDENT |
|---|---|---|---|---|
| Roberson | R█████ | | 02/28/07 | 655 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 250257 | E1 Lieutenant | 10 YR.  11 MO. | 02/28/07 | ASU |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE | ☐ N/A |
|---|---|---|---|---|
| F/S | 0630-1430 | Tactical Cell Extraction Nec. Use of O.C | 3005(b) | |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|
| ☐ PRIMARY | See 837-B2 | See 837-B1 |
| ☒ RESPONDER | | |
| ☐ WITNESS | | |
| ☐ VICTIM | | |
| ☐ CAMERA | | |

| FORCE USED BY YOU | WEAPONS AND SHOTS FIRED BY YOU | | CHEMICAL AGENTS USE BY YOU |
|---|---|---|---|

FORCE USED BY YOU:
☐ WEAPON
☐ PHYSICAL
☐ CHEMICAL
☒ NONE

FORCE OBSERVED BY YOU:
☐ WEAPON
☐ PHYSICAL
☐ CHEMICAL
☒ NONE

WEAPONS AND SHOTS FIRED BY YOU:
NO.:
☐ MINI-14 _____
☐ 9 MM _____
☐ 38 CAL _____
☐ SHOTGUN _____
☒ N/A

NO.:    TYPE:
☐ 37MM _____ _____
☐ 40 MM _____ _____
☐ L8 _____ _____
☐ 40 MULTI _____ _____
☐ HFWRS
☐ BATON

CHEMICAL AGENTS USE BY YOU:
TYPE:
☐ OC _____
☐ CN _____
☐ CS _____
☐ OTHER: _____
☒ N/A

| EVIDENCE COLLECTED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|---|
| ☐ YES  ☒ NO | ☒ N/A | ☒ N/A | ☐ YES  ☒ NO | ☐ YES  ☒ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301 / 3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES  ☒ NO | ☒ N/A | ☒ N/A | ☐ BODILY  ☒ N/A  ☐ UNKNOWN  ☐ OTHER: _____ | ☐ YES  ☒ NO |

**NARRATIVE:**

On February 28, 2007 I responded to the Administrative Segregation Unit from Housing Unit E1. to assist with the extraction of forty-four (44) Southern Hispanic inmates that refused to return their morning meal food trays. I assisted Incident Commander Lieutenant M. Hacker with the logistics of directing staff and obtaining additional resources required to complete the extractions. Additionally upon completion of the extractions I assisted Lieutenant Hacker in reviewing and gathering reports related to the incident.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | DATE |
|---|---|---|---|
| _(signature)_ | Lt. | 54114 | 02/28/07 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| M. Hacker  Lt  _(signature)_ | 2/28/07 | ☒ YES  ☐ NO | ☐ YES  ☒ NO | 2/28/07 |

Distribution:   Original: Incident Package    Copy: Reporting Employee    Copy: Reviewing Supervisor

D-125

F 56

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART C1 - SUPPLEMENT**
CDCR 837-C1 (Rev. 07/05)

PAGE __3__ OF __4__

INCIDENT LOG NUMBER
SATF-09-07-02-0076

NAME: LAST
DALEY

FIRST
D

MI

TYPE OF INFORMATION:
[X] CONTINUATION OF REPORT    [ ] CLARIFICATION OF REPORT    [ ] ADDITIONAL INFORMATION

NARRATIVE:

DECONTAMINATION. AT 1548 WE ASSEMBLED IN FRONT OF CELL 104 OCCUPIED BY CORDOVA (K-64110) AND MORENO (P-57790) AFTER MULTIPLE ORDERS TO CUFF UP AT 1549 CLAUSING AND OMOS INSERTED THE X-10 B.R.D. AS MUNOZ DISPERSED THE O.C. CORDOVA AND MORENO THEN COMPLIED WITH THE ORDERS MUNOZ GAVE THEM. I THEN CUFFED UP BOTH INMATES AND THEN PEREZ APPLIED LEG RESTRAINTS ON THEM BOTH. THE DECONTAMINATION TEAM THEN TOOK BOTH INMATES TO THE SHOWERS FOR DECONTAMINATION. AT 1557 WE ASSEMBLED IN FRONT OF CELL 109 OCCUPIED BY OSUNA (V-02590) AND HARO (J-36101) AFTER MULTIPLE ORDERS TO CUFF UP AT 1558 CLAUSING AND OMOS INSERTED THE X-10 B.R.D. AS MUNOZ DISPERSED THE O.C. OSUNA AND HARO THEN COMPLIED WITH THE ORDERS MUNOZ GAVE THEM. I THEN CUFFED UP BOTH INMATES AND THEN PEREZ APPLIED LEG RESTRAINTS ON THEM BOTH. THE DECONTAMINATION TEAM THEN TOOK BOTH INMATES TO THE SHOWERS FOR DECONTAMINATION. AT 1611 WE ASSEMBLED IN FRONT OF CELL 112 OCCUPIED BY HARO (V-18074) AND BONIFACIO (T-88383) AFTER MULTIPLE ORDERS TO CUFF UP AT 1612 CLAUSING AND OMOS INSERTED THE X-10 B.R.D. AS MUNOZ DISPERSED THE O.C. HARO AND BONIFACIO DID NOT COMPLY SO AT 1613 MUNOZ UTILIZED A T-16 GRENADE. HARO AND BONIFACIO THEN COMPLIED WITH THE ORDERS MUNOZ GAVE THEM. I THEN CUFFED UP BOTH INMATES AND THEN PEREZ APPLIED LEG RESTRAINTS ON THEM BOTH. THE DECONTAMINATION TEAM THEN TOOK BOTH INMATES TO THE SHOWERS FOR DECONTAMINATION. AT 1622 WE ASSEMBLED IN FRONT OF CELL 116 OCCUPIED BY CARRILLO (T-55897) AND GUERRERO (H-38157) AFTER MULTIPLE ORDERS TO CUFF UP AT 1623 CLAUSING AND OMOS INSERTED THE X-10 B.R.D. AS MUNOZ DISPERSED THE O.C. CARRILLO AND GUERRERO DID NOT COMPLY RIGHT AWAY BUT THEN COMPLIED WITH THE ORDERS MUNOZ GAVE THEM. I THEN CUFFED UP BOTH INMATES AND THEN PEREZ APPLIED LEG RESTRAINTS ON THEM BOTH. THE DECONTAMINATION TEAM THEN TOOK BOTH INMATES TO THE SHOWERS FOR DECONTAMINATION. AT 1644 WE ASSEMBLED IN FRONT OF CELL 120 OCCUPIED BY TORRES (P-98683) AND RIOS (P-88846) AFTER MULTIPLE ORDERS TO CUFF UP AT 1645 CLAUSING AND OMOS INSERTED THE X-10 B.R.D. AS MUNOZ DISPERSED THE O.C. TORRES AND RIOS COMPLIED WITH THE ORDERS MUNOZ GAVE THEM. I THEN CUFFED UP BOTH INMATES AND THEN PEREZ APPLIED LEG RESTRAINTS ON THEM BOTH. THE DECONTAMINATION TEAM THEN TOOK BOTH INMATES TO THE

[X] CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| | /o | 56909 | | 2-28-07 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| R. ROBERSON | 2/28/07 | [X] YES [ ] NO | [ ] YES [X] NO | 2/23/17 |

Distribution: Original: Incident Package    Copy: Reporting Employee    Copy: Reviewing Supervisor

F 57

D-126

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
**CRIME / INCIDENT REPORT**
**PART C1- SUPPLEMENT**
CDCR 837-C1 (Rev. 07/05)

PAGE _4_ OF _4_

INCIDENT LOG NUMBER
SATF-09-07-02-0076

| NAME: LAST | FIRST | | MI |
|---|---|---|---|
| DALEY | D███ | | W |

TYPE OF INFORMATION:

☒ CONTINUATION OF REPORT     ☐ CLARIFICATION OF REPORT     ☐ ADDITIONAL INFORMATION

NARRATIVE:

SHOWERS FOR DECONTAMINATION. AT 1651 WE ASSEMBLED IN FRONT OF
CELL 122 OCCUPIED BY INMATE MANRIQUEZ (K-78581). AFTER MULTIPLE
ORDERS TO CUFF UP AT 1652 CAUSING AND OMOS INSERTED THE X-10
B.R.D. AS MUNOZ DISPERSED THE O.C. MANRIQUEZ COMPLIED WITH
THE ORDERS MUNOZ GAVE HIM. I THEN CUFFED MANRIQUEZ AND
PEREZ THEN APPLIED LEG RESTRAINTS ON HIM. THE DECONTAMINATION
TEAM THEN TOOK HIM TO THE SHOWER FOR DECONTAMINATION.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| ✓ | 4/1 | 56909 | ███ | 2-28-07 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| R. ROBERSON LT. | 2/28/07 | ☒YES ☐NO | ☐ YES ☒NO | 2/28/17 |

Distribution:  Original: Incident Package    Copy: Reporting Employee    Copy: Reviewing Supervisor

D.127

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C1-SUPPLEMENT**
CDCR 837-C1 (Rev. 07/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE _6_ OF _7_

INCIDENT LOG NUMBER
SATF-09-07-02-0076

NAME: LAST
MASIEL

FIRST
A█████████

TYPE OF INFORMATION:

[X] CONTINUATION OF REPORT    [ ] CLARIFICATION OF REPORT    [ ] ADDITIONAL INFORMATION

NARRATIVE:

RESULTS. AT 1623 C/Os OMOS AND CLAUSING INSERT THE X10 B.R.D. SGT MUNOZ THEN DISPERSED THE X10. AT WHICH TIME WINDOW COVERS CAME DOWN. AT 1625 BOTH INMATES SUBMIT TO HANDCUFFS, APPLIED BY C/O DALEY AT 1626 BOTH INMATES WERE ESCORTED OUT OF THE CELL C/O PEREZ THEN APPLIED LEG RESTRAINT C/Os MORSE AND PAZ ESCORTED I/M GUERRERO TO SHOWER #1 C/O JIMENEZ AND RODRIGUEZ ESCORTED I/M CARRILLO TO SHOWER #2 FOR DECONTAMINATION AT 1629 7219s WERE PERFORMED AT 1635 BOTH INMATES WERE ESCORTED BACK TO THERE CELL. AT 1642 C. PENNY ADDRESSED CELL 120 OCCUPIED BY I/Ms TORRES P98683 AND RIOS P88846 WITH NO RESULTS. AT 1643 LT HARPER ADDRESSED CELL 120 WITH NO RESPONSE AT 1644 TEAM 2 ASSEMBLED AT THE DOOR. WERE SGT MUNOZ GAVE ORDERS FOR BOTH INMATES TO CUFF UP AND EXIT THE CELL WITH NEGATIVE RESULTS. AT 1645 C/Os OMOS & CLAUSING INSERTED THE X10 B.R.D. SGT MUNOZ THEN DISPERSED THE X10 AT WHICH TIME WINDOW COVERINGS CAME DOWN. AT 1646 BOTH INMATES SUBMITTED TO HANDCUFFS APPLIED BY C/O DALEY AT 1647 BOTH INMATES WERE ESCORTED OUT OF THE CELL WERE C/O PEREZ APPLIED LEG RESTRAINTS C/Os MORSE AND PAZ THEN ESCORTED I/M RIOS TO SHOWER #2 AND C/O JIMENEZ AND RODRIGUEZ ESCORTED I/M TORRES TO SHOWER #2 FOR DECON= TAMINATION. AT 1648 7219 WAS PERFORMED AT 1649 BOTH INMATES WERE ESCORTED BACK TO THERE CELL. AT 1650 C. PENNY ADDRESSED CELL 122 OCCUPIED BY INMATE MANRIQUEZ K78581 WITH NO RESULTS. AT 1651 LT HARPER ADDRESSED MANRIQUEZ WITH NO RESPONSE AT 1652 TEAM 2 ASSEMBLED AT THE DOOR WERE SGN MUNOZ GAVE ORDERS FOR HIM TO CUFF UP WITH NEGATIVE RESULTS. C/Os OMOS AND CLAUSING THEN INSERTED THE X10 B.R.D. INTO THE CELL. SGT MUNOZ THEN DISPERSED THE X10. WINDOW COVERINGS THEN CAME DOWN AT 1653 I/M MANRIQUEZ SUBMITTED TO HANDCUFFS APPLIED BY C/O DALEY AT 1654 BOTH

[X] CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE C/O | BADGE # 55722 | ID # ████████ | DATE 2/28/07 |
|---|---|---|---|---|

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED 2/28/07 | APPROVED [ ] YES [ ] NO | CLARIFICATION NEEDED [ ] YES [X] NO | DATE 2/28/07 |
|---|---|---|---|---|

Distribution: Original: Incident Package    Copy: Reporting Employee    Copy: Reviewing Supervisor

F.59

D.128

STATE OF CALIFORNIA

**CRIME / INCIDENT REPORT**
**PART C1-SUPPLEMENT**
CDCR 837-C1 (Rev. 07/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE _7_ OF _7_

INCIDENT LOG NUMBER
_SATF-04-07-02-0076_

| NAME: LAST | FIRST | |
|---|---|---|
| ANASIBZ | A▓▓▓ | ▓▓▓ |

TYPE OF INFORMATION:

☒ CONTINUATION OF REPORT      ☐ CLARIFICATION OF REPORT      ☐ ADDITIONAL INFORMATION

NARRATIVE:

INMATES WERE ESCORTED OUT OF THERE CELL WERE C/O PEREZ APPLIED LEG RESTRAINTS. C/OS MORSE AND PAZ THEN ESCORTED MANRIQUEZ TO SHOWER #2 FOR DECONTAMINATION. AT 1655 A-1219 WAS DONE AT 1659 INMATE MANRIQUEZ WAS ESCORTED BACK TO HIS CELL. THIS CONCLUDES MY REPORT AS SCRIBE FOR TEAM 2.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE C/O | BADGE # 55722 | ID # ▓▓▓ | DATE 2/28/07 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED 2/28/07 | APPROVED ☒ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☒ NO | DATE 2/28/07 |

Distribution:    Original: Incident Package    Copy: Reporting Employee    Copy: Reviewing Supervisor

F-60

D. 129

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
CRIME / INCIDENT REPORT
PART C1-SUPPLEMENT
CDCR 837-C1 (Rev. 07/05)

PAGE 6 OF 6

INCIDENT LOG NUMBER
SATF- 09-07-02-0076

| NAME: LAST | FIRST | MI |
|---|---|---|
| Perez | R▓▓▓ | |

TYPE OF INFORMATION:
☑ CONTINUATION OF REPORT    ☐ CLARIFICATION OF REPORT    ☐ ADDITIONAL INFORMATION

NARRATIVE:

in inserting the (X10 BRD) into cell 116. Sgt Munoz operated the charging handle of the (X10 BRD) and administered O.C. Inmates Guerrero and Carrillo complied with orders to cuff up. Officer D Daley then placed hand cuffs on Inmates Guerrero and Carrillo. once both Inmates were out of their cell I placed leg lorns on Inmates Guerrero and Carrillo. Inmates Guerrero and Carrillo were then escorted for decontamination by the decontamination team. At approximately 1644 hours team #2 assembled in front of cell 120 occupied by Inmates Rios (P83846) and Inmates Torres (P93683) Sgt Munoz gave both Inmates multiple orders to cuff up both Inmates refused all orders to cuff up. At approximately 1645 hours Sgt Munoz instructed officers Clausing and Omos in inserting the (X10 BRD) into cell 120. Sgt Munoz operated the charging handle of the (X10 BRD) and administered O.C. officers Clausing and Omos then removed the (X10 BRD) Inmates Rios and Torres complied with orders to cuff up. officer D Daley then placed hand cuffs on Inmates Rios and Torres. once both Inmates were out of their cell I placed leg lorns on Inmates Rios and Torres. Inmates Rios and Torres were then escorted for decontamination by the decontamination team. At approximately 1651 hours team #2 assembled in front of cell Asu 122 occupied by Inmate Manriquez (K78581) Sgt Munoz gave Inmate Manriquez multiple orders to cuff up Inmate Manriquez refused all orders from Sgt Munoz to cuff up. At approximately 1652 hours. Sgt Munoz instructed officers Clausing and Omos inserting the (X10 BRD) into cell Asu 122. Sgt Munoz operated the charging handle of the (X10 BRD) and administered O.C. officers Clausing and Omos then removed the (X10 BRD) Inmate Manriquez then complied with orders to cuff up. officer D Daley then placed hand cuffs on Inmate Manriquez. once Inmate Manriquez was out of his cell I placed leg lorns on him. Manriquez was then escorted for decontamination by the decontamination team.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF R. Perez | TITLE c/o | BADGE # 59639 | ID # ▓▓▓ | DATE 2/28/07 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) R Robertson Lt. | DATE RECEIVED 2/28/07 | APPROVED ☑ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☑ NO | DATE 2/28/07 |

Distribution: Original: Incident Package    Copy: Reporting Employee    Copy: Reviewing Supervisor

F.64

O.130

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C1-SUPPLEMENT**
CDCR 837-C1 (Rev. 07/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE ___ OF ___

INCIDENT LOG NUMBER SATF
0967 02 0076

NAME: LAST ___  FIRST ___  MI

TYPE OF INFORMATION:
☒ CONTINUATION OF REPORT   ☐ CLARIFICATION OF REPORT   ☐ ADDITIONAL INFORMATION

NARRATIVE:

I GRABBED GUERREROS' RIGHT BICEP WITH LEFT HAND, ESCORTED TO B SECTION SHOWER DECONTAMINATED WITH COPIOUS AMOUNT OF WATER AND RETURNED BACK TO CELL 116. AT 1647 HOURS, ASU CELL 120 OCCUPIED BY YM'S RIOS P85846 120L AND TORRES P98683 120U I OBSERVED X-10 AND UTILIZED. AFTER YM RIOS WAS REMOVED FROM CELL I GRABBED YM RIOS' RIGHT BICEP WITH LEFT HAND, ESCORTED TO B SECTION SHOWER, DECONTAMINATED WITH COPIOUS AMOUNT OF WATER AND RETURNED BACK TO CELL 120. FINALLY, ASU CELL 122 SOLELY OCCUPIED BY YM MANRIQUEZ K78561 122U I OBSERVED X-10 AND UTILIZED. AFTER MANRIQUEZ WAS REMOVED FROM CELL I GRABBED YM MANRIQUEZ' RIGHT BICEP WITH MY LEFT HAND, ESCORTED TO B SECTION SHOWER, DECONTAMINATED WITH COPIOUS AMOUNT OF WATER AND RETURNED BACK TO 122. PRIOR TO ALL INMATES MENTIONED IN MY REPORT TAKEN BACK TO THEIR ASSIGNED CELLS THEY WERE MEDICALLY EVALUATED 7219 AND ESCORTED BACK WITH NO FURTHER INCIDENT.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE Clo | BADGE # 51658 | ID # | DATE 2/28/07 |
|---|---|---|---|---|

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED 2/28/07 | APPROVED ☒ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☒ NO | DATE 2/28/07 |
|---|---|---|---|---|

Distribution  Original: Incident Package   Copy: Reporting Employee   / Copy: Reviewing Supervisor

F-62

D-131

STATE OF CALIFORNIA                                                                      DEPARTMENT OF CORRECTIONS AND REHABILITATION
CRIME / INCIDENT REPORT
PART C1-SUPPLEMENT
CDCR 837-C1 (Rev. 07/05)                    PAGE __5__ OF __5__          INCIDENT LOG NUMBER
                                                                        SATF - 09-07-02-0076

| NAME: LAST | FIRST | MI |
|---|---|---|
| Morse | | |

TYPE OF INFORMATION:
☒ CONTINUATION OF REPORT     ☐ CLARIFICATION OF REPORT     ☐ ADDITIONAL INFORMATION

NARRATIVE:

WHILE HOLDING THE SAFETY TRIANGLE WITH MY LEFT HAND, OFFICER PAZ AND MYSELF ESCORTED I/M HARO TO A SECTION SHOWER, REFUSED DECONTAMINATION AND RETURNED BACK TO 109. AT 1616 HOURS, ASU CELL 112 OCCUPIED BY I/M'S HARO K18074 112L AND BONIFACIO T88383 112U T OBSERVED X-10 BRD AND O.C. GRENADE UTILIZED. AFTER HARO WAS REMOVED FROM CELL I GRABBED HARO'S LEFT ARM WITH MY RIGHT HAND WHILE HOLDING THE SAFETY TRIANGLE WITH MY LEFT HAND. OFFICER PAZ AND MYSELF ESCORTED I/M HARO TO B SECTION SHOWER, DECONTAMINATED WITH COPIOUS AMOUNTS OF WATER AND RETURNED BACK TO 112. AT 1626 HOURS, ASU CELL 116 OCCUPIED BY I/M'S GUERRERO H38157 116L AND CARILLO T55297 116UI OBSERVED X-10 BRD UTILIZED. AFTER GUERRERO WAS REMOVED FROM CELL I GRABBED GUERRERO'S LEFT ARM WITH MY RIGHT HAND WHILE HOLDING THE SAFETY TRIANGLE WITH MY LEFT HAND, ESCORTED B SECTION SHOWER, DECONTAMINATED WITH COPIOUS AMOUNTS OF WATER AND RETURNED BACK TO CELL 116. AT 1647 HOURS, ASU CELL 120 OCCUPIED BY I/M'S RIOS P88846 120L AND TORRES P9 86831 200 I OBSERVED X-10 BRD UTILIZED. AFTER I/M RIOS WAS REMOVED FROM CELL I GRABBED I/M TORRES[BOS] LEFT ARM WITH MY RIGHT HAND WHILE HOLDING THE SAFETY TRIANGLE WITH MY LEFT HAND, ESCORTED TO B SECTION SHOWER, DECONTAMINATED WITH COPIOUS AMOUNTS OF WATER AND RETURNED BACK TO CELL 120. FINALLY, ASU CELL 122 SOLELY OCCUPIED BY I/M MANRIQUEZ K78581 122U I OBSERVED X-10 BRD UTILIZED, AFTER MANRIQUEZ WAS REMOVED FROM CELL I GRABBED I/M MANRIQUEZS LEFT ARM WITH MY RIGHT HAND WHILE HOLDING THE SAFETY TRIANGLE WITH MY LEFT HAND, ESCORTED TO B SECTION SHOWER, DECONTAMINATED WITH COPIOUS AMOUNTS OF WATER AND RETURNED BACK TO 122. PRIOR TO ALL INMATES MENTIONED IN MY REPORT TAKEN BACK TO THEIR ASSIGNED CELLS THEY WERE MEDICALLY EVALUATED 7219 AND ESCORTED BACK WITH NO FURTHER INCIDENT.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| C. Morse | CORRECTIONAL OFFICER | 72826 | | 2/28/07 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| [signature] Sgt CMC | 2/28/07 | ☒ YES ☐ NO | ☐ YES ☒ NO | 2/28/07 |

Distribution:  Original: Incident Package   Copy: Reporting Employee   / Copy: Reviewing Supervisor

F.63

D.132

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C1- SUPPLEMENT**
CDCR 837-C1 (Rev. 07/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

| PAGE _8_ OF _8_ | INCIDENT LOG NUMBER<br>SATF-09-07-02-0076 |
|---|---|

| NAME: LAST | FIRST | MI |
|---|---|---|
| HACKER | M████████ | ████████ |

TYPE OF INFORMATION:

[X] CONTINUATION OF REPORT      [ ] CLARIFICATION OF REPORT      [ ] ADDITIONAL INFORMATION

**NARRATIVE:**

At approximately 1644 hours, I ordered extraction team #2 to extract Inmates Torres P98683 and Rios P88846 from ASU Cell-120. Extraction Team# 2 approached ASU Cell-120. Correctional Sergeant C. Munoz administered 1 burst of O.C. Pepper Spray through the cuff port utilizing the X-10 BRD which had the desired effect as both inmates complied to orders. Both inmates were placed in mechanical restraints (Handcuffs and Leg Irons) and were escorted to the ASU showers by Decontamination Team 1and 2 where they were decontaminated with copious amounts of cool running water and medically cleared for rehousing by medical staff. Both inmates were escorted back to their assigned cell without further incident.

At approximately 1652 hours, I ordered extraction team #2 to extract Inmate Manriquez K78581 from ASU Cell-122. Extraction Team# 2 approached ASU Cell-122. Correctional Sergeant C. Munoz administered 1 burst of O.C. Pepper Spray through the cuff port utilizing the X-10 BRD which had the desired effect as Inmate Manriquez complied to orders. He was placed in mechanical restraints (Handcuffs and Leg Irons) and escorted to the ASU showers by Decontamination Team 2 where he was decontaminated with copious amounts of cool running water and medically cleared for rehousing by medical staff. Inmate Manriquez was escorted back to his assigned cell without further incident.

This concludes my involvement in this incident.

[X] CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE<br>LT | BADGE #<br>56,454 | ID #<br>████████ | DATE<br>03/01/07 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED<br>[ ] YES [ ] NO | CLARIFICATION NEEDED<br>[ ] YES [ ] NO | DATE |

Distribution:     Original: Incident Package     Copy: Reporting Employee     Copy: Reviewing Supervisor

F-64

9.133

STATE OF CALIFORNIA
CRIME / INCIDENT REPORT
PART C1-SUPPLEMENT
CDCR 837-C1 (Rev. 07/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE 5 OF 5

INCIDENT LOG NUMBER

S Atf 09-07-02-0076

| NAME: LAST | FIRST | MI |
|---|---|---|
| Ymos | | |

TYPE OF INFORMATION:

☒ CONTINUATION OF REPORT    ☐ CLARIFICATION OF REPORT    ☐ ADDITIONAL INFORMATION

NARRATIVE:

Rios P88846 Sgt Munoz gave both I/m's numerous orders to take down the window coverings down and to submit to hand cuffs, with negative results. I grabbed the right side of the X-10 B.R.D. and assisted Officer Clausing in inserting the X-10 B.R.D through the food port of cell 120. Sgt Munoz operated the clamping handle of the X-10 B.R.D and administered O.C. into the cell. Then both inmates complied with Sgt Munoz orders. Officer Daley applied hand cuffs on both inmates. After the cell door opened officer R.Perez applied leg restraints on both inmates. Decontamination staff escorted I/m Torres and I/m Rios to the showers for decontamination. At Approximately 1651 hours we assembled (Team) in front of cell 122 occupied by I/m Manriquez K78581 Sgt Munoz gave I/m Manriquez numerous orders to take down the window coverings and to submit to hand cuffs, with negative results. I grabbed the right side of X-10 B.R.D. and assisted officer Clausing in inserting the X-10 B.R.D through the food port of cell 122. Sgt Munoz operated the clamping handle of the X-10 B.R.D and administered O.C. into the cell. I/m Manriquez then complied with Sgt Munoz orders. Officer Daley then applied restraints on I/m Manriquez. After the cell door opened Officer R.Perez applied leg restraints on I/m Manriquez. Decontamination Staff escorted the I/m to the shower for decontamination with out any further incident

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| | C/O | 60606 | | 2-28-07 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| R Roberson | 2/28/07 | ☒YES ☐NO | ☐ YES ☒NO | 2/28/07 |

Distribution:  Original: Incident Package    Copy: Reporting Employee    Copy: Reviewing Supervisor

F-65

D.134

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C1-SUPPLEMENT**
CDCR 837-C1 (Rev. 07/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE **6** OF **6**

INCIDENT LOG NUMBER
SATF-09-07-02-0076

NAME: LAST
Clausing

FIRST
M

MI

TYPE OF INFORMATION:
☒ CONTINUATION OF REPORT  ☐ CLARIFICATION OF REPORT  ☐ ADDITIONAL INFORMATION

NARRATIVE:
At approximately 1645 hours Sergeant C. Munoz instructed me to assist Officer J. Quos with the insertion of the X10 Barricade Removal Device by grabbing the left side handle and inserting it into the food port of cell ASU-120. Sergeant C. Munoz then activated the charging handle of the BRD and administered OC into cell ASU-120. Both inmates in cell ASU-120 complied with orders to submit to handcuffs by placing their hands through the food port of cell ASU-120. Officer D. Daley then applied handcuffs to Inmate Torres P-90663 and Inmate Rios P-80046. The door of cell ASU-120 was opened and both inmates exited the cell of ASU-120. Officer R. Paez instructed both inmates to kneel onto the floor and applied leg restraints to both inmates. Decontamination staff then escorted both inmates to "A" sector shower for decontamination.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE Correctional Officer | BADGE # 42473 | ID # | DATE 2-28-07 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) R. ROBERSON | DATE RECEIVED 2/28/07 | APPROVED ☒YES ☐NO | CLARIFICATION NEEDED ☐ YES ☒NO | DATE 2/28/07 |

Distribution:  Original: Incident Package  Copy: Reporting Employee  Copy: Reviewing Supervisor

F-66

D-135

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C1- SUPPLEMENT**
CDCR 837-C1 (Rev. 07/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

PAGE __7__ OF __7__

INCIDENT LOG NUMBER
SATF-09-07-02-0076

| NAME: LAST | FIRST | MI |
|---|---|---|
| MUNOZ | C | - |

TYPE OF INFORMATION:

[X] CONTINUATION OF REPORT     [ ] CLARIFICATION OF REPORT     [ ] ADDITIONAL INFORMATION

NARRATIVE:
Officers rehoused both inmates into cell 120 without further incident. At approximately 1651 hours,
assembled cell extraction team #2 in front of cell 122 currently occupied by inmate Manriquez (K78581,
ASU-122U). I gave inmate Manriquez multiple orders to remove the window coverings, turn on the cell
light, relinquish the food trays, and cuff up to which were met with negative results. I then instructed
Officer J. Omos and Officer M. Clausing to insert the X10 Barricade Removal Device (BRD) through the
food port into the cell. I then dispersed 1 burst of O.C. pepper spray into the cell. I then instructed both
Officer to remove the BRD at which time I closed the food port. I then ordered inmate Manriquez to
remove the window coverings, turn on the cell light and relinquish the food trays to which he complied. I
then performed an unclothed body search on inmate Manriquez with negative results. I order inmate
Manriquez to cuff-up to which he complied. Officer D. Daley applied handcuffs on inmate Manriquez. I
then instructed the ASU Control Booth Officer to open the cell door. Decontamination/Escort Officers took
control of inmate Manriquez at which time Officer R. Perez applied Leg Restraints to the inmate. Inmate
Manriquez was then escorted to the section shower where he was decontaminated with copious amount
of cool running water. Medical staff conducted a medical evaluation (7219) on inmate Manriquez and
medically cleared him for rehousing. Inmate Manriquez was escorted back into cell 122 by
Decontamination/Escort Officers without further incident. It should be noted due to the amount of inmates
being extracted and escorted by Decontamination/Escorting Officers from both teams to and from the
showers, I was unable to identify which Officers escorted what inmate and how.

[ ] CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID # | DATE |
|---|---|---|---|---|
| *(signature)* | Sgt | 60,906 | | 02/28/07 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| M. Hedger *(signature)* | 2/28/07 | [X] YES [ ] NO | [ ] YES [X] NO | 2-28-07 |

Distribution:   Original: Incident Package   Copy: Reporting Employee   Copy: Reviewing Supervisor

F-67

D.135

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date:      SEP 2 0 2007

In re:    Daniel Manriquez, K78581
California Substance Abuse Treatment Facility and
State Prison at Corcoran
P.O. Box 7100
Corcoran, CA 93212-7100

IAB Case No.: 0617289           Local Log No.: SATF-07-01304

This matter was reviewed on behalf of the Director of the California Department of Corrections and
Rehabilitation (CDCR) by Appeals Examiner A. A. Read. All submitted documentation and supporting
arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that on February 28, 2007, the appellant's
constitutional rights were violated by California Substance Abuse Treatment Facility (SATF) staff. The
appellant states that a cell extraction was ordered and custody staff sprayed the appellant's cell with chemical
agents due to the appellant allegedly refusing to turn over a plastic tray, uncover the appellant's cell door and
to be placed in handcuffs. The appellant states that he uncovered his cell door, removed his clothing and
volunteered to be restrained but staff took their time and requested that the appellant hand over the tray,
which was in plain sight. It is contended that after the appellant complied with their request, the appellant
was still made to wait while staff requested to view certain parts of the appellant's body. After the appellant
was removed from his cell, it is further contended that the appellant was placed back into the same
contaminated cell. The appellant claims the aforementioned actions caused mental, emotional and physical
pain. The appellant requests that an investigation into the matter is conducted and that staff cease these
illegal policies. It is also requested that the appellant is awarded $75,000.00 from each defendant for
compensatory damages and $85,000.00 from each defendant for punitive damages.

**II   SECOND LEVEL'S DECISION:** The reviewer found that the appellant's concerns have been properly
addressed by involved and/or assigned SATF staff. The Second Level of Review (SLR) states that the
appellant was interviewed on April 17, 2007, by Correctional Lieutenant R. Tolson regarding the appellant's
appeal issues. The reviewer states that the appellant's appeal was granted in part at the SLR, in that a
thorough confidential appeal inquiry into the appellant's allegations was conducted by administrative staff.
The appellant was advised that the appeal inquiry was completed; however, the appellant was not advised of
the specific finding, as all staff complaint findings are confidential and would not be released to the appellant.
All staff personnel matters are confidential in nature and as such, results of any inquiry will not be shared
with staff, members of the public or inmates. Although, the appellant has the right to submit a staff
complaint, a request for administrative action regarding staff or the placement of documentation in a staff
member's personnel file is beyond the scope of the staff complaint process. Based upon the aforementioned
information, the SLR granted in part the appeal.

**III   DIRECTOR'S LEVEL DECISION:** Appeal is denied.

   **A.  FINDINGS:** The documentation and presented arguments are persuasive that the appellant has failed
   to support his appeal issue with sufficient evidence or facts to warrant a modification of the SLR. The
   examiner reviewed California Code of Regulations, Title 15, Section (CCR) 3004, Rights and Respect of
   Others, CCR 3268, Use of Force, CCR 3271, Responsibility of Employees, and CCR 3391, Employee
   Conduct, and concurs with the assessment of the institution that the appellant's appeal issues have been
   appropriately and properly addressed. Upon review of the documentation submitted, it is determined that
   the appellant's allegations have been reviewed and evaluated by administrative staff and an inquiry has
   been completed at the SLR. The examiner contacted J. Jasso, SSA, in the SATF Appeals Office on
   August 27, 2007, to request and obtain a copy of the finalized inquiry report. On August 27, 2007, the
   examiner received a faxed copy of the inquiry report containing the institution's decision and/or action

D. 137

DANIEL MANRIQUEZ, K78581
CASE NO. 0617289
PAGE 2

taken regarding the appellant's complaint. In the event that staff misconduct was substantiated, the institution would take the appropriate course of action. All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public or the inmate population, and would not be released to the appellant. Although the appellant has the right to submit an appeal as a staff complaint, the request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the appeals process. The appellant's request for monetary compensation will not be addressed since such a decision or finding is beyond the scope of the inmate appeals process. The appellant has not shown any documentation or other verified evidence that would lend credence to his appeal issues and requests. The appellant has been duly informed regarding his appeal issues and responding institutional staff has addressed all pertinent areas of his complaint. The examiner finds that the appellant has failed to present any new documentation and/or evidence that would substantiate his claim; therefore, justification for intervention at the Director's Level of Review is not warranted.

**B. BASIS FOR THE DECISION:**
California Penal Code Section: 832.5, 832.7, 832.8, 5058
CCR: 3001, 3004, 3005, 3084.1, 3268, 3268.1, 3268.2, 3270, 3271, 3335, 3391
CDC Operations Manual Section: 13030.10, 31140.14
Administrative Bulletin (AB) 98/10: PROCESSING OF INMATE/PAROLEE APPEALS, CDC FORMS 602, WHICH ALLEGE STAFF MISCONDUCT
AB 05/03: PROCESSING OF ADULT INMATE/PAROLEE APPEALS, CDC FORM 602, WHICH ALLEGE STAFF MISCONDUCT

**C. ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR. If dissatisfied, the appellant may forward this issue to the California Victims Compensation and Government Claims Board, (formerly known as the State Board of Control), Government Claims Unit, P.O. Box 3035, Sacramento, CA 95812-3035, for further review.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, SATF
        Appeals Coordinator, SATF

602 & CITIZENS COMPLAINT
**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region: 1. SATF2    Log No. 1. 07-01428    Category 7
2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Daniel MANRIQUEZ | K-78581 | | ASU 122 |

**A. Describe Problem:** QUINONEZ, AND HOLMS, ARE VIOLATING MY LIBERTY INTERESTS AND COMMITTING illegal ACTS, IN A CONSPIRACY TO VALIDATE ME FOR MY JAIL HOUSE LAWYERING AS discribed BELOW, IN VIOLATION OF MY 1ST, 5TH AND 14TH AMENDMENT RIGHTS* FACTS; I HAVE FILED COUNTLESS CHALLENGES ADMINISTRATIVELY AND JUDICIALLY, ON BEHALF OF MYSELF AND OTHERS AGAINST UNCONSTITUTIONAL POLICIES, MOST NOTABLY WAS MY CASE IN "MANRIQUEZ V. DRR No. HCPRO4-5241(del NORTE 2005)IN WHERE I OBTAINED A FAVORABLE RULING AGAINST IGIS SUPPERVISORS, QUINONEZ IS WELL AWAREER OF MY JAIL HOUSE LAWYERING, INFACT HE ONCE IMPLIED THAT HE WOULD LEAVE ME ALONE IF I CEASED FILING SUITS/APPEALS. I CONTINUED TO DO SO AS IS MY RIGHT, AND QUINONEZ BEGAN TELLING INMATES (1° HE HAS "A HARD ON FOR ME" (OUT TO GET ME) ON JAN 9-07 I WAS SEGREGATED PENDING "INVESTIGATION", I WAS RETAINED BY ICC FOR SIX MONTHS AFTER QUINONEZ FALSELY TESTIFIED AT ICC THAT THE CASTILLO V. ALEMEIDA SETTLEMENT WAS INAPPLICABLE TO ANY ONE EXCEPT CASTILLO. 3 TO 4 WEEKS LATER QUINONEZ & HOLMS PULLED
(CONT. P. 3 INFR.)

If you need more space, attach one additional sheet.

**B. Action Requested:** (1) AN INVESTIGATION INTO THIS MATTER (2) A COPY OF THIS COMPLAINT BE PLACED INTO THE OFFICERS FILES FOR 5 YEARS SEE PEN CODE 832. S. DISCLOSURE OF THE LETTER-ENVELOPE, PHONE BOOK AND ALL EXCULPATORY INFORMATION NAMED IN THIS 602(3) CEASE THE VALIDATION PROCESS(4) RELEASE ME FROM ADSEG SHU (4) EXPUNGE FROM MY C-FILE ALL UNRELIABLE FALSE ALTERED AND FORGED SOURCE ITEMS(5) REJECT ANY VALIDATION/SEGRAGATION BASED ON THESE ITEMS(6) A PROSECUTION OF QUINONEZ * HELMS FOR THEIR CRIMES AGAINST ME AND VIOLATING MY CIVIL RIGHTS(7) CEASE USING ITEMS THAT ARE NOT RELIABLE, DO NOT CONSTITUTE GANG ACTIVITY AND POLICIES THAT ARE VAGUE OVERBROAD(8) THAT BOTH OFFICERS PAY ME $100,000ᵉᵃᶜʰ EACH IN COMPENTENTARY DAMMAGES FOR MENTAL AND EMOTIONAL DISTRESS, AND EACH AWARD ME $250,000 IN PUNITIVE DAMAGES FOR VIOLATING MY RIGHTS AS ALLEGED HERETO(9) VACATTE THE CCR 3378(V6)(A)(6) HEARING.

**CSATF APPEALS**
APR 0 3 2007

Inmate/Parolee Signature: _____    Date Submitted: MAR. 16-07

**C. INFORMAL LEVEL** (Date Received: _____ )

Staff Response: _____

BYPASS

INMATE APPEALS BRANCH
RECEIVED JUN 20 2007

Staff Signature: _____    Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

Signature: _____    Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number: _____
Board of Control form BC-1E, Inmate Claim

*..BY REGULATIONS CODES ET seq.. SIGHTED HERE AFTER CONSTITUTE A VIOLATION OF A liberty INTEREST PROTECTED BY THE 14TH AMENDMENT. CALIFORNIA PRISONERS HAVE A LIBERTY INTEREST IN BEING FREE FROM ADSEG/SHU CONDITIONS MADRID V. GOMEZ 889 F.SUPP.1146— (WD CAL 1995) SINCE IGI IS AN ORGANIZATION- THE 602 SHOWS THEY'RE COMMITTING CRIMES FOR IT AND DEPRIVING ME JOB OPORTUNITEES, THEY'RE THEN VIOLATING FEDERAL RICO STATUTES DIAZ V. 100 OFFICERS— F.3d—(9TH CIR 2006)(EN BANK)    C-28    EXE 139

**CSATF APPEALS**

First Level  ☐ Granted  ☒ P. Granted  ☐ Denied  ☒ Other _____  APR 0 3 2007

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____  Due Date: **5-15-07**

Interviewed by: *See response*

Staff Signature: _____  Title: **Lieutenant**  Date Completed: ~~CSATF APPEALS~~

Division Head Approved:  Title: **AWCS(A)**  Returned **MAY 1 4 2007**
Signature: _____  Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response. I INCORPORATE AND REALLEGE ALL ALLEGATIONS MADE PREVIOUSLY

I WANT ALL RELIEF REQUESTED - THIS 602 WAS NOT GRANTED IN FULL THE REMAINING ITEM IS IS EQUALLY FALSE FABRICATED UNRELIABLE AS THE PHONE BOOK ITS NOT PROPERLY CONFIDENTIAL - IT DOESNT CONSTITUTE GANG ACTIVITY NOR HAS IGI ARTICULATED HOW IT DOES - NOT ONCE DID THE REVIEWER ADDRESS THE ALLEGATION OF FORGERY - AND FOR THE SAME REASONS ALLEGED IN THE 602 ALL OCS MEMBERS WHO VALIDATED ME ON THIS ITEM ARE EQUALLY LIABLE FOR ACCEPTING IT.

Signature: _____  Date Submitted: **MAY 17-07**

Second Level  ☐ Granted  ☒ P. Granted  ☐ Denied  ☐ Other  **CSATF APPEALS**

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: **MAY 2 1 2007**  Due Date: **6-19-07**
☒ See Attached Letter

Signature: _____  *CCII*  Date Completed: **CSATF APPEALS**

Warden/Superintendent Signature: _____  Date Returned to Inmate: JUN 1 2 2007

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response. I INCORPORATE AND REALLEGE EVERY THING IN THIS 602. QUINONEZ/HOLMS HAD A DUTY NOT TO SUBMIT UTILIZE FALSE INSUFFICIENT OR UNRELIABLE EVIDENCE 3378(c)(6)(2) et seq. - THE ORS HAD THE SAME DUTY NOT TO ACCEPT IT - PINEDA, WAN, HUTCHIN AND CLARK (AND ALL OTHER REVIEWERS) ARE ALSO LIABLE BECAUSE THEY'RE VIOLATING DUE PROCESS BY NOT CORRECTING THE DUE PROCESS VIOLATIONS WHICH I'VE NOTIFIED THEM OF AND NOT CONDUCTING AN ADEQUATE INVESTIGATION. THERE IS STILL NO INVESTIGATION FINDING AS TO WHETHER I HAD WITHHELD EXCULPATORY EVIDENCE. (WHETHER HE HAD A GRUDGE, WAS AN ENEMY - CONSPIRACIES AGAINST ME etc.) IF SO IT SHOULD NOT HAVE BEEN SUBMITTED/ACCEPTED. RELEASE SHOULD'VE BEEN GRANTED AS IVE NOT BEEN VALIDATED CURRENTLY ACTIVE BY THE OCS - THUS THERES NO AUTHORITY TO RETAIN ME 3378(d)(b) - NOT ONCE IS IT DISPUTED - THAT ITEM 2 IS VAGUE IN VIOLATION OF THE 1ST AND 14TH AMENDMENT - BECAUSE IT DOES NOT PROVIDE SUFFICIENT NOTICE - WHETHER ITS A LETTER - A CI, BOTH OR ANY CONDUCT I'VE DONE - PREPARE A DEFENSE - THERES NO AFFIRMATIVE STATEMENT THAT SAFETY CONCERNS PREVENT DISCLOSURE OF NAME, OR LETTER - NOR THAT CI IS CORROBORATED 8381 et seq. - 3378(c)(8)(H) 3378(F). IF HE SAID I WROTE IT AND LETTER WAS FOUND ON HIM HE IS STILL UNCORROBORATED AND CANT BE USED (STILL) AGAIN THIS DOES NOT CONSTITUTE EVIDENCE OF GANG ACTIVITY 3000,3023,3341(c)(5)(R) 3378 et seq.. IT ONLY SHOWS ASSOCIATION - IF IT IS ACTIVITY - THEN CDCS POLICIES (CREATED BY THE DIRECTOR - AND ENFORCED BY DEFENDANTS) ARE VAGUE AND OVER BROAD VIOLATING THE 1ST AND 14TH AMENDS - BECAUSE THEY DONT PROVIDE NOTICE THAT ASSOCIATIONS/WRITING ASSOCIATES IS GANG ACTIVITY CARRYING WITH IT INDICIA OF WRONG DOING (AND SIX YEAR TERM) GIVEN ASSOCIATES ARE ALLOWED IN THE 9.P 3378(d), FORCED ME TO GUESS AT ITS MEANING.

Signature: _____  Date Submitted: **6-18-07**

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other _____  **C-29**
☒ See Attached Letter

Date: **AUG 3 0 2007**

CDC 602 (12/87)

E-74?

& HUTCHKINS AND CLARKS FAILURES TO PROVIDE AN ADEQUATE REVIEW AND INVESTIGATION CAN BE ASSESSED BY THEIR STATEMENT THAT I WAS ADVISED TO ADDRESS ALL OTHER ISSUES IN A SEPARATE COMPLAINT, (SEE JUNE 11-07 RESPONCE), - WHICH I DID IN APPEAL # 07-01809 - AND IT WAS CONSOLIDATED BY PINEDA AND WAN - AT THE FIRST LEVEL - AND ADDRESSED (PARTIALLY (See MAY 9-07 REEPONCE) - YET CLARK AND HUTCHINS DID NOT EVEN KNOW THIS - THUS THEIR FAILURE TO ADDRESS/GRANT THE COMPLETE APPEAL VIOLATES FEDERAL DUE PROCESS - AND CONTRIBUTES TO THESE VIOLATIONS.

ME OUT & ADMITTED THAT THEY ARE NOT RESPONSIBLE FOR MY SEGRAGATION, THAT THEY DID NOT HAVE ANY EVIDENCE AGAINST ME THAT SOME-ONE "RAIL ROADED HIM" INTO COMMING AFTER ME, THAT THE REASON I WAS SEGRAGATED, WAS BECAUSE SOMEONE (IMPLYING CAPT DIAZ) DID NOT WANT ME ON C-YARD (THUS ESTABLISHING I WAS BEING ILLEGALLY HOUSED IN ADSEG BASED ON NO EVIDENCE). ON MAR 7-07 THESE OFFICERS AGAIN HAD ME PULLED OUT UNDER THE PRETEXT THAT A "SGT WANTED TO SEE ME". QUINONEZ TOLD ME "THIS TIME ITS SERIOUS THIS TIME ITS ME."

I WAS TOLD I WAS BEING REVALIDATED BASED ON TWO ITEMS (SEE EXHIBIT A-1+A-2). I WAS AGAIN FALSELY INFORMED BY QUINONEZ, THAT THE CASTILLO SETTLEMENT WAS INAPPLICABLE, I ASKED FOR AS MUCH INFORMATION AS POSSIBLE IN ORDER TO PREPAIR A DEFENSE FOR THE CCR 3378(A)(AHU) HEARING. QUINONEZ TOLD ME HE WOULD DISCLOSE AS MUCH INFORMATION AS POSSIBLE AT THE HEARING (SEE EXHIBIT B FOR MY AFFIDAVIT OF HEARING)

1. THERE IS NO DISPUTE, I WAS DEPRIVED MY RIGHT TO SUFFICIENT, FAIR NOTICE AND disclosure OF ALL EVIDENCE DISCOVERED AT THE HEARING 24 HOURS IN ADVANCE FOR A DEFENSE, IGT WAITED UNTIL THE HEARING TO INFORM ME THAT THE PHONE BOOK WAS FOUND IN CCI (A PRISON THAT I'VE NEVER BEEN TOO) ON AN INMATE THEY DIDN'T KNOW, WHO THEY DIDN'T KNOW HOW LONG HE'S HAD IT FOR, WHETHER I GAVE IT TO HIM OR AS TO ITEM 2, I WAS NEVER TOLD THAT THE LETTER DISCRIBED IN THE 1030 DID NOT EXIST, THAT THE BASES OF THIS ITEM, WAS THAT A "CI" TOLD HIM I WROTE SUCH A LETTER. UP UNTIL AND DURING THE HEARING I WAS LEAD TO BELIEVE THAT THEY HAD SUCH A LETTER, THEY EVEN TRIED TO SHOW ME AN EXTRANEOUS ONE (EXHIBIT A-2(B)) IT WASENT UNTIL IT BACK FIRED THAT I WAS NOTIFIED, WHICH DEPRIVED ME OF MY RIGHT TO PRESENT & PREPAIR A DEFENSE CCR 3378(C) (6)(A)(1) WOLFF V. MCDONELL 418 U.S. AT 564. THE FACT THAT I ATTEMPTED TO PRESENT A DEFENSE ONCE NOTIFIED IS IRRELEVANT, QUINONEZ ENDED THE HEARING IMMEDIATELY. AND THE LAW MANDATES A 24 HOUR NOTICE IN ADVANCE!

2. I WAS DEPRIVED EXCULPATORY, NON CONFIDENTIAL INFORMATION FOR A DEFENSE CCR 3321(A)(1,b): 3378(C)(6)(8) ETSEQ... I WAS NOT TOLD (1) WHEN SANSONE WAS VALIDATED (2) HOW LONG DID HE HAVE MY NAME #, ALL EVIDENCE ESTABLISHING I'VE NEVER BEEN AROUND HIM (3) NOR A COPY OF THE PHONE BOOK AS FOR ITEM 2, I WAS NEVER PROVIDED A DATE OF WHEN I ALLEGEDLY WROTE THE LETTER (2) WHETHER THE CI ACTUALLY SEEN OR WAS IN THE CAPA-SITY OF SEEING THE ALLEGED LETTER (3) WHETHER HE SIMPLY HEARD ABOUT THE LETTER (FIRST HAND/ HEARSAY), AS TO THE UNRELATED LETTER, I WAS SHOWN I WAS NEVER PROVIDED A COPY OF IT (2) THE DATE THIS LETTER WAS WRITTEN/ INTERCEPTED (3) WHO WAS THIS LETTER INTERCEPTED FROM (4) A COPY OF THE ENVELOPE IT WAS SENT IN (5) WHOSE NAMES (ADDRESSEE & SENDER) WERE ON THE ENVELOPE, WHAT WAS THEIR RELATIONSHIP. THIS IS ALL PIVITOL ESPECIA-LY SINCE IT PROVES MY INNOCENCE, THAT IGT ET AL.. ARE SETTING ME UP, AND BECAUSE IT DISCREDITS THE "CI" WHOSE INFORMATION CANNOT BE ACCEPTED WITHOUT RELIABLE CORROBORATION CCR 3321(A)(6)(1)(2): CAMPBELL V. HENMAN 931 F.2d AT 1214 (EXCULPATORY EVIDENCE, REPORTS SHOWING INMATE MIGHT NOT BE GUILTY MUST BE DISCLOSED) YOUNG V. KANO 926 F.2d, 1396 (INMATE CHARGED WITH WRITING LETTER MUST BE PERMITTED COPY OF IT AND ENVELOPE) NOTABLY NONE OF THE ABOVE ITEMS ARE PROPERLY CONFIDENTIAL ESPECIALLY SINCE I WAS ALOWED TO SEE THE PHONE BOOK AND UNRELATED LETTER, AND IGT ANSWERED MANY OF MY INQUIRIES, THUS THEY CAN NO LONGER BE DEEMED CONFIDENTIAL, ESPECIALLY SINCE HOLMS DOES NOT HAVE THE CAPACITY TO DO SO WITHOUT VIOLATING MY LIBERTY INTEREST CCR 3321 ET SEQ... HIS BEAR CITATIONS TO SELF INCRIMINATION AND INVESTIGATION (EX A-1-2) IS INSUF-FICIENT, BECAUSE THAT IS NOT A PART OF THE CRITERION IDENTIFIED IN 3321 ET SEQ... THE CRITERIA BEING USED TO DENY ME THIS INFORMATION IS UN-ENFORCIBLE, AND VIOLATES MY LIBERTY INTEREST BECAUSE IT HAS NOT BEEN LEGALLY PROMULGATED IN ACCORD WITH THE APA. GOV.CODE 11340.5(A) ETSE

3. THE EVIDENCE USED IS FALSE INSUFFICIENT, FABRICATED, PLANTTED, OR UNRELIABLE, AND CANT BE USED FOR VALIDATION/ SEGRAGATION CCR 3378 ET SEQ. 334/.5(C)(6) REQUIRES THAT PRIOR TO VALIDATION/ SEGRAGATION, THAT THE "LEIU" FIRST DESIGNATE ME A SECURITY THREAT AND "CURRENTLY

ACTS OF MISCONDUCT CLASSIFIED AS SERIOUS ON BEHALF OF THE GANG, HERE IGI HAS NOT MADE THE RELEVANT DESIGNATION, AND BOTH ITEMS DONOT FALL WITHIN THIS CRITERIA, NOR HAS IGI PROVIDED ME THE NECESSARY 115 RVR AND ITS PROCEDURAL PROTECTIONS, NOR AN ARTICULABLE BASES THAT THE ITEMS ARE "GANG ACTIVITY" CCR 3000, 3378 ET SEQ. THUS IM STILL INACTIVE AND MY VALIDATION/RETENTION VIOLATES MY LIBERTY INTEREST CCR 3341.5(C)(A); 3341.5(C)(A)(B); 3341.5(C)(5)(6) 3378 ET SEQ... AND TOUSSAINT INJUNCTION TO BE FREE FROM AdSeG/SHU.]

ITEM 1 CANNOT BE USED IT DOES NOT FALL WITHIN THE DEFINITION OF GANG ACTIVITY CCR 3000, 3023, HOLMS INDICATES THAT BECAUSE SANSONE HAD MY NAME AND # THIS INDICATES I GAVE IT TO HIM TO KEEP CONTACT, SPECULATION DOES NOT CONSTITUTE "SOME EVIDENCE" OF ASSOCIATION, SUPER INTENDANT V. HILL-U.S.- SINCE INMATES CANNOT CORRISPOND WITH EACH OTHER, IT IS IMPOSSIBLE HE COULD'VE USED MY NAME AND # FOR DIRECT COMMUNICATION, HOLMS CONCEDES, HIS NAME WAS NOT IN MY PHONE BOOK (EX B) THAT HE HAD NO EVIDENCE THAT I'VE EVER BEEN HOUSED AROUND OR NEW THIS GUY OR HOW HE GOT IT, IT WAS CAUGHT IN CCI (A PRISON I'VE NEVER BEEN TO) THEY DIDN'T EVEN KNOW WHO HE WAS, NOR HOW LONG HE'S HAD MY NAME (Ibid) IN LIGHT OF THESE FACTS, AND THAT IGI ADMITTED IN FEB. 2001, THAT THEY HAD NO EVIDENCE TO RETAIN ME (EX B) THEN THE EVIDENCE IS INSUFFICIENT, THAT I GAVE IT TOO HIM FOR CORRESPONDENCE (ESPECIALLY SINCE MY MAIL IS MONITORED NO LETTER WAS PROVIDED THAT I FORWARDED THIS INFO) ADDITIONALLY WITHOUT A DATE ON IT THIS IS NO DIFFERENT THAN AN UNDATED PHOTO OR LAUNDRY LIST WHICH CANNOT BE USED 3378(18)(d) (H). FURTHER BOTH ITEMS CANNOT BE USED BECAUSE 3378(F) ONLY PERMITS REVALIDATION IF THE ITEM MEETS THE RELIABILITY TEST IN 3321 HOLMS DOES NOT INDICATE IT DOES, HIS BEAR CITATION TO "INVESTIGATION" IS NOT PART OF THE TEST AND VIOLATES MY LIBERTY INTEREST UNDER GOV. CODE 11340.5(A) ET SEQ (FINALLY SINCE HOLMS ADMITS HE HAS NO EVIDENCE I GAVE IT TO HIM - HIS STATEMENTS TO THE CONTRARY CONSTITUTES A CRIME P. CODE 115(A)(C); 118(G) 182.5)

ITEM 2, CANNOT BE USED, IT DOES NOT FALL WITHIN THE DEFINITION OF GANG ACTIVITY 3000, 3023, I'VE NEVER WRITTEN SUCH A OR ANY LETTER TO OCOTOPENA THERE IS NO EVIDENCE I HAVE HIS ADDRESS, NOR EVER BEEN AROUND HIM, THE LETTER IGI HAS, THEY ADMIT IS NOT THE LETTER IN QUESTION, THEY DONT HAVE ONE BUT RATHER A "CI" TOLD HIM I WROTE SUCH A LETTER, THUS HOLMS STATEMENT THAT THEY HAD SUCH A LETTER IN THE 1030, CONSTITUTES A CRIME. CAL PEN. CODE 115(A)(C)(1)(2); 118(A)(2); 134; 182(3), THEY KNEW THEY HAD NO SUCH LETTER WHEN THEY FALSELY SAID IN THE 1030 THEY DID, ADDITIONALLY THIS ALSO RENDERS THE EVIDENCE INSUFFICIENT BECAUSE (1) WITHOUT THE ACTUAL LETTER ANYTHING THAT THE "CI" SAYS IS UNCORROBORATED 3321(b)(1) 3378(c)(8)(H) 3378(F). AND FALSE, BECAUSE QUINONEZ/ HOLMS MONITOR ALL MY MAIL, YET THEY DONT HAVE THE LETTER - WITHOUT IT THERE IS NO WAY TO TELL WHETHER ITS GANG RELATED OR ENCOURAGED PEACE (2) SINCE I DENY THIS AND C-YARD WAS ON LOCK DOWN SINCE SEPT 2006, I'VE BEEN IN THE HOLE SINGLE CELLED SINCE JAN 9-07 THEN THERES NO WAY THE INFORMANT COULD'VE SEEN THE LETTER, THUS HIS STATEMENTS ARE DERIVED FROM HEARSAY WHICH CANNOT BE USED 3378(C)(8)(H). (3) THE CI MUST BE CORROBORATED OR FOUND TRUE 3321(b)(1) WHICH HASN'T OCCURED, THE UNRELATED DOCUMENT USED TO CORROBORATE HIM IS ALTERED/FORGED, AND ITS USE WOULD CONSTITUTE A CRIME PEN. CODE 115(A)(C)(1)(2); 118(G) AND UNDISCLOSED EVIDENCE WOULD ALSO PROVE I DIDN'T WRITE NOR SEND THAT LETTER EITHER - I WAS NEVER PROVIDED NOTICE THAT SUCH A LETTER WAS INTERSEPTED CCR 3130-3147 WHICH PROVES IT WASN'T MINE NOR SENT BY ME AND (4) IT CANT BE USED BECAUSE THE IC HAS OFFERED NOTHING MORE THAN MY NAME IN RELATION TO A LETTER WRITTEN TO AN ASSOCIATE WITHOUT RELAYING TO SPECIFIC ACTS OF GANG ACTIVITY THAT I DID FOR THE INMATE WHICH IS MANDATORY 3378(C)(8)(H) 3000, 3023 CASTILLO SUPRA, IF THIS ITEMS ARE BEING CONSIDERD "GANG ACTIVITY" THEN C-DC'S GANG POLICIES ARE VAGUE AND OVERBROAD (IN VIOLATION OF 1ST 14TH AMENDMENTS)

FINALLY THE LACK OF DATES ON EITHER ITEM - IS RELEVANT BECAUSE THERES NO TELLING WHEN MY RIGHT TO INACTIVE STATUS BEGINS CCR 3341.5(C)(5)(6) JANSONE HAS A J # HE COULD'VE HAD MY NAME &# 12 YEARS AGO WHICH THEN CANT BE USED (IBID: 3378(F)

C-21

STATE OF CALIFORNIA
CDC 1030 (12/86)

DEPARTMENT OF CORRECTIONS

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: **K78581**          INMATE NAME: **MANRIQUEZ**

1)  Use of Confidential Information.

    Information received from a confidential source(s) has been considered in the:

    a)  CDC-115, Disciplinary Report dated _____ N/A _____ submitted by

    _____ N/A _____
    STAFF NAME, TITLE

    b)  CDC-114-D, Order and Hearing for Placement in Segregated Housing dated _____ N/A _____

2)  Reliability of Source.

    The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution. This information is considered reliable because:

    a)  ☐  This source has previously provided confidential information which has proven to be true.

    b)  ☐  This source participated in and successfully completed a Polygraph examination.

    c)  ☐  More than one source independently provided the same information.

    d)  ☐  This source incriminated himself/herself in a criminal activity at the time of providing the information.

    e)  ☐  Part of the information provided by the source(s) has already proven to be true.

    f)  ☒  Other (EXPLAIN)  **INVESTIGATION**

    _____

3)  Disclosure of information received.

    The information received indicated the following:     **A CONFIDENTIAL MEMORANDUM DATED 12/26/2006,**

    **INDICATED YOUR NAME AND CDC NUMBER WERE IDENTIFIED WITHIN THE ADDRESS BOOK OF INMATE**

    **SANSONE, J95696, VALIDATED MEXICAN MAFIA ASSOCIATE. SANSONE'S POSSESSION OF YOUR NAME**

    **AND NUMBER INDICATES YOU GAVE YOUR PERSONAL INFORMATION TO SANSONE IN ORDER TO KEEP IN**

    **CONTACT UTILIZING THE UNITED STATES POSTAL SYSTEM AND INMATE LOCATORS.**
    (If additional space needed, attach another sheet.)

4)  Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material

    folder).   **CONFIDENTIAL MEMORANDUM DATED 12/26/2006, IS LOCATED IN THE CONFIDENTIAL SECTION OF**

    **YOUR CENTRAL FILE.**

    _CW. Holmes_   CW. HOLMES          03-07-2007
    STAFF SIGNATURE, TITLE                      DATE DISCLOSED

**DISTRIBUTION: WHITE — Central File; GREEN — Inmate; YELLOW — Institution Use**

EXHIBIT A-1
C-32

E143

STATE OF CALIFORNIA                                        DEPARTMENT OF CORRECTIONS
CDC 1030 (12/86)

## CONFIDENTIAL INFORMATION DISCLOSURE FORM

INMATE NUMBER: __K78581__                    INMATE NAME: __MANRIQUEZ__

1) Use of Confidential Information.

   Information received from a confidential source(s) has been considered in the:

   a) CDC-115, Disciplinary Report dated _____N/A_____ submitted by

   _____N/A_____
                          STAFF NAME, TITLE

   b) CDC-114-D, Order and Hearing for Placement in Segregated Housing dated ___N/A___ .

2) Reliability of Source.
   The identity of the source(s) cannot be disclosed without endangering the source(s) or the security of the institution.
   This information is considered reliable because:

   a) ☐  This source has previously provided confidential information which has proven to be true.

   b) ☐  This source participated in and successfully completed a Polygraph examination.

   c) ☐  More than one source independently provided the same information.

   d) ☒  This source incriminated himself/herself in a criminal activity at the time of providing the information.

   e) ☐  Part of the information provided by the source(s) has already proven to be true.

   f) ☒  Other (EXPLAIN) __INVESTIGATION__

   _____

3) Disclosure of information received.

   The information received indicated the following:    __A CONFIDENTIAL MEMORANDUM DATED 02/09/2007,__

   __INDICATED YOU SENT CORRESONDENCE TO A VALIDATED MEXICAN MAFIA (EME) ASSOCIATE INMATE__

   __OCOTORENA D67758, SEEKING PERMISSSON FROM EME MEMBERS GUZMAN, C41587, AND PADILLA D51019__

   __TO CONTROL FACILITY "C" AT CSATF/SP, ONCE ESTABLISHED YOU WOULD THEN CONTROL ALL EME__

   __RELATED ACTIVIES ON BEHALF OF THE AFOREMENTIONED EME MEMBER/S.__
                          (If additional space needed, attach another sheet.)

4) Type and current location of documentation, (for example: CDC-128-B of 5-15-86 in the confidential material
   folder).  __CONFIDENTIAL MEMORANDUM DATED 02/09/2007, IS LOCATED IN THE CONFIDENTIAL SECTION OF__

   __YOUR CENTRAL FILE.__

   _____  CW HOLMES              __03-07-2007__
       STAFF SIGNATURE, TITLE                   DATE DISCLOSED

EXhibiT A-2 C-33                    E-144

AFFIDAVIT OF DANIEl MANRIQUEZ

ON FRIDAY MAR.9-07 I ATTENDED THE 3378(c)(6)(A)(D) REBUTTAL HEARING, AND SUBMITTED A WRITTEN REBUTTAL TO BE MADE PART OF THE RECORD FOR VALIDATION BASED ON WHAT I KNEW THUS FAR, I WAS ALSO ALOWED TO SEE THE PHONE BOOK OF THE INMATE WHO HAD MY ALLEGED NAME ON IT, HOLMS ADMITTED THAT HE'S SEEN MY PHONE BOOK AND THAT SANSONES NAME WAS NOT IN IT, AND THAT HE HAD NO EVIDENCE THAT I WAS EVER HOUSED AROUND OR KNEW THIS INMATE, QUINONEZ AND HOLMS DID NOT EVEN KNOW WHO THIS WAS THEY HAD NO DATE AS TO HOW LONG HE'S HAD MY NAME IN HIS PHONE BOOK, OR WHERE HE GOT IT FROM. THAT THIS ITEM WAS DISCOVERED IN A PRISON I'VE NEVER BEEN TO ("TAHATCHAPPI")

AS FOR ITEM 2 I WAS ALOWED TO READ MOST OF A LETTER BRIEFLY, I WAS ASKED IF IT WAS IN MY WRITING, AND WHETHER I WROTE IT, I SAID NO, I NOTICED THAT HOLMS/QUINONEZ WERE COMMITTING A CRIME BY SUBMITTING/UTILIZING, FORGED/ALTERED DOCUMENTS BECAUSE WHO EVER ATTEMPTED TO WRITE OR SEND, OR UTILIZE THIS LETTER - ADDED AND FORGED MY SIGNATURE AT THE END OF IT BY WRITING "DANNY" IN PRINT USING A DIFFERENT KIND OF PEN AND STYLE OF SCRIPT IN ALMOST 11½ YEARS OF INCARCERATION, I HAVE NEVER SIGNED OFF A LETTER LIKE THAT, IT'S NOT EVEN HOW I PRINT MY NAME, NOR THE NAME I PRINT. I'VE ALWAYS USED "DANIEl" AND SIGNED OFF:

_[signature]_ "(SEE 602 AND BELOW) A SIMPLE COMPARISMENT WILL ESTABLISH THAT THE SIGNATURES DO NOT MATCH

AT THE HEARING, I NEXT REQUESTED (1) A COPY OF THE DATE THAT THE LETTER WAS WRITTEN OR INTERCEPTED IN (2) FROM WHO WAS THIS LETTER INTERCEPTED (3) A COPY OF THE ENVELOPE IT WAS MAILED IN TO SEE WHOSE NAME WAS ON THE ADDRESSEES AND SENDERS SIDE - TO PROVE I MAILED NO SUCH LETTER (4) I REQUESTED TO KNOW WHAT WAS THE RELATIONSHIP BETWEEN THE SENDER AND ADDRESSEE (5) WHETHER THERE WAS ANY EVIDENCE THAT I'VE EVER WRITTEN THE ADDRESSEE (HOLMS ADMITTED THAT HE'S SEEN MY PHONE BOOK AND THAT THE ADDRESSEES NAME IS NOT IN IT), AT THAT POINT QUINONEZ DEPRIVED ME A RIGHT TO A DEFENSE, STATING HE AND HOLMS ARE NOT GOING TO DISCUSS IT - BECAUSE HE KNOWS HE'S GONNA GET SUED AND 5 YEARS FROM NOW WE'LL BE IN COURT AND HE DON'T WANT ME USING HIS WORDS AGAINST HIM (i.e., HE DOESN'T WANNA CONTINUE INCRIMINATING HIMSELF) I ALSO NOTED THAT THE LETTER WAS NOT GANG RELATED, AND MADE NO MENTION OF ATTEMPTING TO GET PERMISSION TO RUN C YARD AS INDICATED IN THE 1030. I ASKED QUINONEZ (WHO INITIALLY SAID HE HAD SUCH A LETTER) WHETHER THIS LETTER SAID ANYTHING LIKE THAT, HE NOW BACKED UP AND SAID "I DON'T KNOW, I'VE NEVER SEEN IT, ASK HIM (HOLMS) AFTER A LONG PAUSE AND DODGING THE QUESTION FOR QUITE SOMETIME, HOLMS FINALLY ADMITTED THAT THE LETTER DOES NOT SAY THIS (THAT I WAS ASKING PERMISSION TO RUN C-YARD), THAT THIS IS NOT THE LETTER - THAT THEY DO NOT HAVE SUCH A LETTER - THAT AN INFORMANT TOLD HIM I WROTE SUCH A LETTER, WHICH IS THE BASES OF THIS POINT.

I WAS NEVER TOLD PRIOR TO THE HEARING THAT AN INFORMANT SAID I WROTE SUCH A LETTER - I WAS LEAD TO BELIEVE THAT THEY HAD SUCH A LETTER

I DECLARE UNDER PENALTY OF PERJURY THAT THE ABOVE IS TRUE TO THE BEST OF MY KNOWLEDGE
RESPECTFULLY SUBMITTED
DATED MAR 15-07            C-34        _DANIEl MANRIQUEZ K 78581_

E.145

'CITIZENS COMPLAINT AGAINST CORRECTIONAL OFFICERS CAL. PEN. CODE 832.5

NAME DANIEL MANRIQUEZ K-78581 ASU 122                    DATE 3-16-07

NAME OF OFFICERS:

1. LT, "A. QUINONEZ" IGI

2. "HOLMS"  IGI

3. "DIAZ" C-FACILITY CAPTAIN



            DATE OF INCIDENT: ON GOING BUT SPECIFICALLY MAR 7 & 9-07

DISCRIPTION OF EVENTS: SEE 602 AND ALL ITS ATTACHMENTS WHICH ARE INCORPORATED AS FULLY SET FORTH HERETO


    "YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER [THIS INCLUDES A DEPARTMENTAL PEACE
    OFFICER] FOR ANY IMPROPER POLICE [OR PEACE] OFFICER CONDUCT. CALIFORNIA LAW REQUIERS THIS AGENCY TO HAVE
    A PROCEDURE TO INVESTIGATE CITIZENS [OR INMATE/PAROLEE] COMPLAINTS. YOU HAVE A RIGHT TO A WRITEN DESCRIPTION
    OF THIS PROCEDURE. THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT
    ACTION IN YOUR COMPLAINT; EVEN IF THAT IS THE CASE YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT
    INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN [OR INMATE/PAROLEE] COMPLAINTS AND
    ANY REPORTS OR FINDINGS RELATED TO COMPLAINT MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS. IT
    IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW IS FALSE, IF YOU MAKE A COMPLAINT AGAINST AN OFFICER
    KNOWING IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMENER CHARGE [AN INMATE WHO MAKES A COMPLAINT
    AGAINST A DEPARTMENTAL PEACE OFFICER KNOWING IT IS FALSE MAY BE ISSUED A SERIOUS DISCIPLINARY
    RULE VIOLATION IN ADDITION TO BEING PROSECUTED ON THE MISDEMENER CHARGE.


    I HAVE READ AND UNDERSTAND THE ABOVE STATEMENT

                                        RESPECTFULLY SUBMITTED

    DATED MAR. 16. 07



                            C-35

                                E.146

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
California Substance Abuse Treatment Facility and State Prison at Corcoran
900 Quebec Ave.
P.O. Box 7100
Corcoran, CA 93212



May 9, 2007


Manriquez K-78581
California Substance Abuse Treatment
Facility and State Prison at Corcoran
P. O. Box 7100
Corcoran, CA 93212


STAFF COMPLAINT RESPONSE – APPEAL LOG # SATF-Z-07-01428


**APPEAL ISSUE:** Inmate Manriquez is a revalidated (CDC 128-B-2 dated 4/16/07) associate of the Mexican Mafia (EME) Prison Gang. On March 16, 2007, Manriquez filed a staff complaint against Correctional Lieutenant A. Quinones and Correctional Officer C. Holmes. They are the Institutional Gang Investigators involved with his revalidation. He alleges they conspired to validate him. On April 5, 2007 Manriquez filed a duplicate appeal (SATF-07-01809) regarding the validation. Both these appeals are answered with this response.

**DETERMINATION OF ISSUE:**   A review of the allegations of staff misconduct presented in the written complaint has been completed. Based upon this review your appeal has been handled as follows:

☒    PROCESSED AS A STAFF COMPLAINT APPEAL INQUIRY
☐    REFERRED TO THE OFFICE OF INTERNAL AFFAIRS (Note: You will be notified of the conclusion of any internal affairs investigation):

**SUMMARY FOR APPEAL INQUIRY:**

On May 8, 2007, Correctional Lieutenant A. Pineda interviewed you. You refused to exit your cell.  The interview was conducted at your cell door (ASU-122). During the discussion, you reiterated your issues as written in the appeal. In addition, you denied writing any letter and wanted a copy of it and any envelope associated with it.

You believe in order for the note to have been used against you, it should have been discovered on you.  In addition, for the note to be used, it should promote gang activity as stipulated in various Title 15 sections. You also requested the date the letter was written and the name of the individual who signed the memorandum to designate it as confidential.

C -36

E · 147

Manriquez K-78581
STAFF COMPLAINT RESPONSE – APPEAL LOG # SATF-Z-07-01428
Page 2

The following witnesses were questioned:

- Correctional Lieutenant A. Quinones
- Correctional Officer C. Holmes

The following information was reviewed as a result of your allegations of staff misconduct:

- Departmental Review Board Referral for Manriquez K-78581 dated 8/27/04
- CDC 128B Notice of Conditions of Inactive Validation dated 9/8/05
- Confidential Memorandum dated 2/9/07
- CDC 128B Gang Information (Completion of Investigation) dated 3/7/07
- CDC 128B Gang Information (attempted interview and issuance of CDC 1030 forms) dated 3/7/07
- CDC 128B Gang Information (Interview concerning source documentation for revalidation) dated 3/10/07
- CDC 128-B-2 SSU Gang Validation/Rejection Review dated 4/16/07

## FINDINGS FOR AN APPEAL INQUIRY:

Your appeal is **PARTIALLY GRANTED** at the ☑ First level ☒ Second level, as an inquiry into your allegation has been conducted by the CSATF/SP Investigative Lieutenant. In addition, a review of the CDC 128-B-2 dated 4/16/07 indicates the source document dated 12/26/07 did not meet the validation requirements and was not used as a basis for the validation. Your requests for any additional details concerning the confidential information accepted as a source for validation are DENIED.

ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE. As such, results of any inquiry/investigation will not be shared with staff, members of the public, or inmates. Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process.

Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process. If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review. Once a decision has been rendered at the Director's Level of Review, your administrative remedies will be considered exhausted.


A. Pineda
Investigative Lieutenant
First Level Reviewer

CSATF APPEALS
MAY 1 4 2007

C-37

T. Wan
Associate Warden
Division Head

G.148

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION          ARNOLD SCHWARZENEGGER, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
California Substance Abuse Treatment Facility and State Prison at Corcoran
900 Quebec Ave.
P.O. Box 7100
Corcoran, CA 93212



June 11, 2007

Inmate Manriquez, K78581
California Substance Abuse Treatment
Facility and State Prison at Corcoran
P. O. Box 7100
Corcoran, CA 93212

Second Level Response
Log # SATF-Z-07-01428

## ISSUE:

Pursuant to Administrative Bulletin 05-03, the Warden's Designee has determined that your appeal would be processed as a staff complaint. You were advised via the Separation of Staff Complaint Issues Form that any other issues raised during the course of your appeal had to be appealed within 15 working days of reception of that form. You contend that Correctional Lieutenant A. Quinones and Correctional Officer C. Holmes, Institutional Gang Investigators (IGI), conspired to re-validate you. You request that an investigation be conducted into this matter and that a copy of your complaint be placed in the above-mentioned staff's personnel files for five years. You request disclosure of "the letter-envelope, phone book and all exculpatory information named in this 602". You request that the validation process cease. You request that you be released from the Administrative Segregation Unit (ASU)/Security Housing Unit (SHU). You request that your central file be expunged of all false, altered and forged source items. You request that your validation be rejected based on these items. You request that the IGI be prosecuted and that you receive compensatory/punitive damages.

## INTERVIEWED BY:

A. Pineda, Investigative Lieutenant, on 5/8/07.

## REGULATIONS:

The rules governing this issue are taken from the California Penal Code (PC) and the California Code of Regulations (CCR) Title 15.

**PC 832.7 (a) (e). Personnel records; confidentiality; discovery; exceptions; complaint disposition notification**
**PC 832.8. Personnel records**
**CCR 3004. Rights and Respect of Others.**
**CCR 3391 (a). Employee Conduct.**

C-38                                                        E·149

Manriquez, K78581
Log # Z-07-01428
Page 2

## SUMMARY:

R. Hall, Appeals Coordinator, investigated your appeal at the Second Level of Review (SLR).

Upon review of the documentation submitted, it has been determined that your allegations have been reviewed and evaluated by Administrative Staff and an Appeal Inquiry has been completed.

In the event that staff misconduct was substantiated, the institution would take the appropriate course of action. All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public or the inmate population, and would not be released to you. However, upon completion of the Appeal Inquiry you are to be notified by the assigned reviewer that an inquiry has been completed or that your complaint was referred to the Office of Internal Affairs (OIA). In this case, your complaint was processed as a Staff Complaint Appeal Inquiry. On 5/9/07, J. Hutchins, Chief Deputy Warden, reviewed and approved the Staff Complaint Appeal Inquiry.

Although you have the right to submit an appeal as a staff complaint, the request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the appeals process. Your request for monetary compensation is also beyond the scope of the appeals process.

You have failed to provide any additional information/evidence at the SLR to modify the First Level Decision.

## DECISION:

Your appeal is **partially granted.** Partially granted in that an Appeal Inquiry has been conducted into your allegation of staff misconduct. All other requests in regard to your allegation of staff misconduct are denied.

You are advised that this issue may be submitted for a Director's Level of Review if desired.

KEN CLARK
Warden

C-39                                              E 150

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

AUG 3 0 2007

Date:

In re:    Manriquez, K-78581
California Substance Abuse Treatment Facility and
State Prison at Corcoran
P.O. Box 7100
Corcoran, CA 93212-7100

IAB Case No.: 0616896          Local Log No.: SATF 07-01428

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner A. A. Read. All submitted documentation and supporting arguments of the parties have been considered.

**I   APPELLANT'S ARGUMENT:** It is the appellant's position that on March 7, 2007, the appellant was informed by California Substance Abuse Treatment Facility and State Prison at Corcoran (SATF) Institution Gang Investigator Correctional Lieutenant (Lt.) A. Quinones and Correctional Officer C. Holmes that the appellant was being re-validated as an associate of the Mexican Mafia prison gang (EME). The appellant states that both staff members have conspired to re-validate him and an investigation should be conducted into this conduct. It is contended that the appellant was inappropriately placed in Administrative Segregation Unit (ASU) during the investigation of the appellant's validation. The appellant requests an investigation into this matter and that a copy of the appellant's complaint is placed in both staff member's personnel files for five years. It is also requested that the appellant receive disclosure of the letter-envelope, phone book and all exculpatory information named in the CDCR Form 602, Inmate/Parolee Appeal Form, as well as the validation process ceased, release from ASU and the appellant's central file expunged of all false, altered and forged source items. It is further requested that the appellant receive $250,000.00 in punitive damages.

**II   SECOND LEVEL'S DECISION:** The reviewer found that the appellant's concerns have been properly addressed by involved and/or assigned SATF staff. The Second Level of Review (SLR) states that the appellant was interviewed on May 8, 2007, by Lt. A. Pineda regarding the appellant's appeal issues. The reviewer states that the appellant's appeal was granted in part at the First Level of Review (FLR), in that a thorough confidential appeal inquiry into the appellant's allegations was conducted by administrative staff. The appellant was advised that the appeal inquiry was completed; however, the appellant was not advised of the specific finding, as all staff complaint findings are confidential and would not be released to the appellant. On May 17, 2007, the appellant requested a SLR and reiterated his position that he was being improperly revalidated as an associate of the EME. The appellant did not provide any additional compelling information or facts to warrant modification of the FLR response. The appellant's appeal is granted in part at the SLR, as an inquiry into his allegations has been conducted. All staff personnel matters are confidential in nature and as such, results of any inquiry will not be shared with staff, members of the public or inmates. Although, the appellant has the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process. Based upon the aforementioned information, the Second Level of Review granted in part the appeal.

**III   DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.   FINDINGS:** The documentation and presented arguments are persuasive that the appellant has failed to support his appeal issue with sufficient evidence or facts to warrant a modification of the SLR. The examiner reviewed California Code of Regulations, Title 15, Section (CCR) 3004, Rights and Respect of Others, CCR 3271, Responsibility of Employees, and CCR 3391, Employee Conduct, and concurs with the assessment of the institution that the appellant's appeal issues have been appropriately and properly addressed. Upon review of the documentation submitted, it is determined that the appellant's allegations have been reviewed and evaluated by administrative staff and an inquiry has been completed at the SLR. The examiner contacted J. Jasso, Staff Services Analyst, in the SATF Appeals Office on August 17,

C-40

MANRIQUEZ, K-78581
CASE NO. 0616896
PAGE 2

2007, to request and obtain a copy of the finalized inquiry report. On August 21, 2007, the examiner received a faxed copy of the inquiry report containing the institution's decision and/or action taken regarding the appellant's complaint. In the event that staff misconduct was substantiated, the institution would take the appropriate course of action. All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public or the inmate population, and would not be released to the appellant. Although the appellant has the right to submit an appeal as a staff complaint, the request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the appeals process. The appellant has not shown any documentation or other verified evidence that would lend credence to his appeal issues and requests. The appellant's request for monetary compensation will not be addressed since such a decision or finding is beyond the scope of the inmate appeals process. The appellant has been duly informed regarding his appeal issues and responding institutional staff has addressed all pertinent areas of his complaint. The examiner finds that the appellant has failed to present any new documentation and/or evidence that would substantiate his claim; therefore, justification for intervention at the Director's Level of Review is not warranted.

**B. Basis for the Decision:**
California Penal Code Section: 832.5, 832.7, 832.8, 5058
CCR: 3001, 3004, 3023, 3084.1, 3270, 3271, 3335, 3378, 3391
CDC Operations Manual Section: 13030.10, 31140.14, 52070.1, 52070.2, 52070.3, 52070.16.1, 52070.17.2, 52070.19.3
Administrative Bulletin (AB) 98/10: PROCESSING OF INMATE/PAROLEE APPEALS, CDC FORMS 602, WHICH ALLEGE STAFF MISCONDUCT
AB 05/03: PROCESSING OF ADULT INMATE/PAROLEE APPEALS, CDC FORM 602, WHICH ALLEGE STAFF MISCONDUCT

**C. Order:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDCR. If dissatisfied, the appellant may forward this issue to the California Victims Compensation and Government Claims Board, (formerly known as the State Board of Control), Government Claims Unit, P.O. Box 3035, Sacramento, CA 95812-3035, for further review.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, SATF
       Appeals Coordinator, SATF

C-41                                              E152

NOTICE:

TO THE O.C.S (M. RUFF, K. BERIUER, AND EVERETT W. FISHER)                    MAY 9-07

GREETINGS I WAS JUST PROVIDED A COPY OF YOUR CDC 128 B-2 DATED 4-16-07 IN
RE: DANIEL MANRIQUEZ K-78581 — OUT OF SATF.

I NOTICED THAT LT QUINONEZ AND HOLMS OF THE IGI NEVER PROVIDED YOU
WITH A COPY OF MY VIEWS AS TO EACH ITEM SUBMITTED — AS IS MY RIGHT (CCR 3378.(C)(6)
(A)-(E)) NOR DID THEY PROVIDE ME A 14 DAY ADVANCE NOTICE PRIOR TO THE SUBMISSION
OF THESE ITEMS et seq — WHICH IS ALSO A VIOLATION OF MY RIGHTS / LIBERTY INTERESTS. (Ibid)

I HAVE CURRENTLY FILED ADMINISTRATIVE APPEALS IN REGARDS TO THIS MATTER, HOWEVER
I AM CURRENTLY PROVIDING YOUR OFFICE WITH THE REBUTTALS/VIEWS I PRESENTED TO HOLMS
AND QUINONEZ ON MARCH 10-07, AND MAR 13-07[1] IN HOPES THAT AFTER YOU REVIEW THEM
YOU MAY RECONSIDER THE VALIDATION/SEGREGATION, GIVEN THAT TO ACCEPT IT WOULD CONTRIBUTE
TO HOLMS/QUINONEZ ILLEGAL ACTIVITIES AND CONSTITUTIONAL VIOLATIONS. — PLEASE READ THE REBUTTALS
AND YOU'LL SEE WHY.[2]

THANK YOU FOR YOUR TIME.

RESPECTFULLY SUBMITTED

DANIEL MANRIQUEZ # K-78581
ASU- CELL 125-L
P.O. BOX 5242
CORCORAN, CA. 93212.

1. BECAUSE YOU DID REJECT ONE POINT I HAVE EDITTED THE REBUTTALS TO SOLY CHALLENGE THE
POINT YOU ACCEPTED.

2. I HAD MAILED SUE HUBBART A COPY OF THESE SAME REBUTTALS LAST MONTH.

EXHIBIT F 153

To: All ICC's/UCC's:

Pursuant to the State and Federal Due Process Clause, under <u>Wolff v. McDonnell, 418 U.S. 539, 563-70 (1974); Toussaint</u> <u>v. McCarthy 801 F.2d 1080 (9th Cir 1986) cert denied 481 U.S. 1069 (1987)</u>, I hereby present the following documentary evidence to be considered by the ICC/UCC, prior to any decision to retain/segregate me, or transfer me to the SHU. Under these same rights, these items shall constitute my "views" to the committee, and I request that they be placed in my Central File for any and all ICC/UCC reviews.

1. Quinonez requested, and this committee approved, a six month segregation order to investigate whether he could find evidence to validate me. The approval was illegal because it violated my liberty interest because CCR 3341.5(c)(5) holds that "inmates categorized inactive... shall be transferred to the [G·P] of a level four facility for a period of observation, that shall be no greater than 12 months". My 12 month observation period ended Nov. 15-06 thus the ICC/Quinonez violated my rights when they exceeded the statutory maximum, and continued to invest-igate me while housing me in adseg rather than the required G·P. Hence any thing found as a result of that illegal investigation/segregation—is illegal, inadmissible and void¹·²

2. The committee is asked to consider:

(a) Quinonez/Holms violated my constitutional rights when he failed to provide me a 14 day <u>advanced notice</u> of all evidence he was submitting to the OCS, and a copy of the documented interview, as mandated by law <u>CCR 3378(c)(6)</u> <u>(A)(E)</u>, I was not provided this information till after I was validated

(b) Quinonez/Holms violated my rights when they failed to record and submit my objections/views to the OCS with the validation package, (which I provided to him in writing on May 9-07, and May 12-07) they further failed to place these "views" into my C-File for consideration by all committees as mandated by law CCR 3378(c)(6)(A)(E).

(c) Quinonez/Holms violated my rights when instead of submitting my views/objections to the OCS, they submitted their own views, which were rife with, irrelevant, false, misleading, prejudicial and incomplete information, Holms soly told the OCS,—I was pulled out for an interview and advised:

"The purpose of the interview, Manriquez was issued copies [of the] CDC 1030 (confidential disclosure forms) regarding the documents submitted in his validation package. Upon issuance of the 1030, Manriquez became belligerant, and directed a tirade of name calling to include racial epithets at me. I then advised him his photograph would be taken depicting any tattoos. Manriquez refused.. It was explained to Manriquez that the IGI would be back to conduct a subsequent interview concerning the source items utilized.."

This not only omits my views/rebuttals in violation of <u>CCR 3378(c)(6)(A)(E)</u>, but is rife with lies, omissions, misleading

1. All regulations et seq—cited herein shall be construed as liberty interests protected by the 14th amends, notice is also given to Quinonez/Holms, and all ICC/UCC members of my intentions to sue as a result of any adverse actions.
2. I filed two 602s to Capt. Diaz, who instead violated my rights by not correcting the problem and discarded my 602s

1

E·154

AND PREJUDICIAL INFORMATION, TO INFLAME AND PREJUDICE THE OCS AGAINST ME

2. WHAT ACTUALLY HAPPEND WAS THAT HOLMS/QUINONEZ HAD ASU STAFF PULL ME OUT OF MY CELL UNDER THE PRETEXT THAT A SERGEANT WANTED TO SEE ME ABOUT A 602, BUT ONCE I SEEN IT WAS IGI I REQUESTED TO GO BACK INTO MY CELL BUT WAS FORCED INTO A ROOM AND GIVEN TWO 1030'S, WHEN I PROTESTED THE FAILURE TO PROVIDE ME ALL NECESSARY INFORMATION IN COMPLIANCE WITH MY LIBERTY INTEREST CCR-3378(C)(8)(A)-(E) HOLMS CONTINUED TO RUDELY INTERUPT, AFTER I TOLD HIM THAT I WAS NOT TALKING TO HIM THAT THIS WAS BETWEEN ME & QUINONEZ, HE GOT UP GRABBED ME BY MY CUFFS - SQUEEZED THEM - WHICH CAUSED ME EXTREME PAIN (IN VIOLATION OF THE 8TH AMENDMENT) HE THEN PROCEEDED TO SLAM ME UP AGAINST SEVERAL WALLS, AT ONE POINT AGAINST A METAL SHELF, - HE WAS CAUSING ME PAIN BY PRESSING ME UP AGAINST IT, IT WAS NOT UNTIL THEN THAT I YELLED "GET OFF ME YOU STUPID WHITE BOY!" BUT ONLY TO ATTRACT ATTENTION - BECAUSE HE WAS PHYSICALLY ASSULTING ME, AND QUINONEZ WAS LETTING IT HAPPEN. IT WAS NOT UNTIL I MADE THAT STATEMENT, A SCENE, DID QUINONEZ RUSH OVER - BUT ONLY BECAUSE OTHER STAFF STARTED COMING OVER. QUINONEZ RUSHED OVER WITH JANE DOE, PULLED HOLMS OFF OF ME, AND ESCORTED ME BACK TO MY CELL.

3. AND NOW THEY PROVIDE THE OCS, WITH THIS FALSE MISLEADING IRRELEVANT INFORMATION - TO PREJUDICE ME IN THEIR EYES - DEPRIVE ME OF A FAIR IMPARTIAL HEARING - FROM THE OCS - WHO ARE WHITE - TO MAKE ME LOOK LIKE A RACIST. - BUT THEY DON'T STOP NOW - IN AN EFFORT TO CAUSE ME FURTHER HARM IN VIOLATION OF THE 8TH AMENDMENT - THEY PUT IN THE CRONO - THAT WHEN I WENT TO THE CCR 3378(C)(8)(A)-(E) HEARING "I AGREED TO COOPERATE WITH THE IGI UNIT DURING THE INTERVIEW", THIS STATE-MENT IS FALSE MISLEADING AND DANGEROUS. - I NEVER AGREED TO COOPERATE WITH THE IGI ABOUT ANY THING, I SOLY WENT TO PRESENT A DEFENSE (REBUTALS TO THE ITEMS USED! (¶EXHIBIT A) THEY WROTE THIS STATEMENT SADISTICALY AND MALICIOUSLY KNOWING IT COULD BE MISCONSTRUED BY STAFF AND INMATES!

4. WHEN I WENT TO THE CCR 3378(C)(8)(A)-(E) HEARING I PROVIDED HOLMS WITH A 9 PAGE REBUTAL TO THE ITEMS USED (EXHIBIT A) AND REQUESTED THAT IT BE SENT TO THE OCS ALONG WITH MY VALIDATION PACKAGE, AS MY VIEWS, - I ALSO REQUESTED THAT THE DOCUMENTS BE PLACED IN MY C-FILE FOR REVIEW OF ALL ICC'S/UCC'S THEY AGREED. - AFTER QUESTIONING HOLMS ABOUT THE ITEMS AND DISCOVERING - THAT HE WITH HELD EXCULPATORY EVIDENCE - AND THAT HE/QUINONEZ COMMITTED CRIMES BY SUBMITTING, FALSE, UNRELIABLE, INFORMATION, I SUBMITTED TO THEM, A SUPPLEMENTAL REBUTI TO BE INCLUDED IN THE VALIDATION PACKAGE, BECAUSE MY REBUTALS, CALL INTO QUESTION THE ITEMS, I CANT BE SENT TO

2 -

E-155

THE SHU-IGT MUST BE SENT BACK TO THE IGI SEE 3378(C)7 GIVEN THEY WITHHELD THIS FROM THE OCS et al.

5. I WOULD LIKE THE COMMITTEE TO CHECK IF THIS ALLEGED LETTER WAS CAUGHT ON THE CI, AND IF HE'S THE ONE WHOSE INTERPRETED AND BLAMED IT ON ME- IF SO, THE CI IS NOT CORROBORATED-AND THE DECISION TO SEGRAGATE CANNOT BE BASED ON HIM CCR 3321, et seq... 3341.5(6)(6), 3378(6)(H), 3378(f) BUT THE ITEM MUST BE SENT BACK TO IGI 3378(C)(7)

6. ASSUMING ARGUENDO THE ITEM IS VALID; I STILL CANNOT BE TRANSFERED TO THE SHU NOR VALIDATED, BECAUSE THE RULES REQUIRE THREE CURRENT ITEMS, OF GANG ACTIVITY "AS DEFINED IN CCR 3000, 3341.5(C)(S)" SEE CCR 3378(C)(X)(Z) A READING OF THESE REGULATIONS MANDATES, THAT ALL THREE ITEMS BE WITHIN SIX YEARS AND ESTABLISH THAT I KNOWINGLY COMMITTED ILLEGAL ACTS OF MISCONDUCT ON BEHALF OF THE GANG, HERE IGI ONLY HAS ONE ITEM THE PRIOR VALIDATION ITEMS ARE PAST SIX YEARS OLD, THEY NOR THIS ITEM DOES NOT ESTABLISH ILLEGAL ACTS OF MISCONDUCT. ALTHOUGH CCR 3378(f) ALLOWS THE RETURN TO THE SHU OF INACTIVE STATUS INMATES BASED ON ONE ITEM, A READING OF CCR 3341.5(C)(S), 3378(C)(X)(Z), 3378(f) IN CONJUNCTION ESTABLISHES THAT THE SINGLE ITEM MUST BE FOUND WITHIN THE ONE YEAR OBSERVATION PERIOD (IN MY CASE IT WASN'T) OTHERWISE THE REGULATIONS WOULD NOT REQUIRE THE OBSERVATION NOT TO EXCEED 12 MONTHS WITH THE OPTION OF TRANSFER, AND CCR 3378(C)(X)(Z) WOULD NOT REQUEST THREE ITEMS OF CURRENT ACTIVITY GIVING REFERENCE TO CCR 3341.5(C)(S).

7. QUINONEZ ASSERTION THAT THE COMMITTEE HAS NO CHOICE BUT TO IMPOSE AN INDETERMINATE SHU TERM, IS FALSE, I REFER THE COM- MITTEE TO CCR 3335(e) 3336, 3339(A), 3341.5(A)2 3341.5(C)3, 3378(C)7 AND THE TOUSSAINT, MADRID INJUNCTIONS, WHICH MANDATE THAT COMMITTEES BE MORE THAN A MEANINGLESS GESTURE, AND VESTS IT WITH AUTHORITY TO TRANSFER ALLEGED ASSOCIATES TO A g.p WHICH IS CONSISTENT WITH CCR 3378(d) WHICH ALLOWS ALLEGED ASSOCIATES TO BE HOUSED IN A g.p AND TO APPLY FOR INACTIVE STATUS IN TWO YEARS

8. THE COMMITTEE DOES NOT HAVE THE AUTHORITY TO TRANSFER ME TO THE SHU CCR 3378(h) AND MADRID ONLY AUTHORIZES THE SENTENCE IF MY STATUS AS "CURRENTLY ACTIVE" IS "RESTORED" UNDER CCR 3378(g) ONLY THE OCS CAN MAKE THAT DESIGNATION. I WAS INITIALLY VALIDATED AN ASSOCIATE, AFTER NO GANG ACTIVITY IN SIX YEARS - I WAS VALIDATED AN INACTIVE ASSOCIATE - THE ASSOCIATE LABLE WAS NEVER REMOVED, HERE THE OSC STATES THAT THE ITEM SHOWS ASSOCIATION-BUT NOT ACTIVITY/CONDUCT. CCR 3000 - IT UP DATES MY STATUS BUT DOES NOT FIND IM CURRENTLY ACTIVE-THUS IM STILL INACTIVE AND CANT BE TRANSFERED TO THE SHU. CCR 3335, 3336, 3339, 3341.5 ET SEQ., 3378 ET seq... MADRID SUPRA WHICH IS CONSISTENT WITH CCR 3378(d) WHICH ALLOWS ASSOCIATES TO BE IN THE g.p

9. FINALLY I ASK THE COMMITTEE TO TAKE NOTE THAT ANY DECISION TO TRANSFER ME TO THE SHU WOULD BREACH THE TERMS OF THE SEPT 5.05 CONTRACT WHICH INDICATED I WOULD ONLY BE RETURNED IF I ASSOCIATED WITH MEMBERS - OR IF THE ITEMS FELL WITHIN PROVISIONS 1-8 OF THE CONTRACT - HERE IT IS ONLY ALLEGED I WROTE TO AN "ASSOCIATE" AND THE ALLEGED LETTER DOES NOT FALL WITH IN PARAGRAPH ONE — EIGHT OF THE CONTRACT. THE COMMITTEES OPTIONS ARE ONLY TO TRANSFER ME TO THE G.P OR REFER THE CASE BACK TO IGI & THE OCS WITH INSTRUCTIONS THAT IGI FOLLOW PROPER PROTOCAL, SEE CCR 3378(C)(7)

F.156

EXHIBIT

A

<u>Objections</u>

THESE ARE THE VIEWS INMATE DANIEL MANRIQUEZ K-78581 PRESENTS TO THE DECISION MAKER IN REGARDS TO THE CURRENT VALIDATION PROCESS - AND FALSE/FABRICATED UNRELIABLE EVIDENCE BEING USED.

1. AFTER AN EXTENSIVE INVESTIGATION INTO MY GANG STATUS IN 2003-2004 PELICAN BAY PRISON OFFICIALS (PBSP) AND THIS DEPARTMENT ("LEIU") CONFIRMED AND VALIDATED ME AS AN <u>INACTIVE</u> ASSOCIATE OF A PRISON GANG.

2. IT CONTINUED ITS EXTENSIVE INVESTIGATION, AND IN SEPT 2004, I APPEARED BEFORE THE DRB, WITH ALL GANG INVESTIGATIVE AGENCIES - AGAIN <u>CONFERRING</u> MY INACTIVE STATUS, AND FULLY RECOMMENDING MY RELEASE. HOWEVER DISPITE MY CASE NOT FALLING WITHIN CCR TIT 15 §3341, SEX(S)'s EXCEPTION CLAUSE, AND THE DRBs ADMISSION THAT I WAS INACTIVE, AND MY PRISON CONDUCT DID NOT WARRANT MY SHU RETENTION - THE DRB DENIED MY RELEASE, ORDERED MY TRANSFER TO CORCORAN SHU - AND <u>ANOTHER</u> INVESTIGATION.

3. I FILED A SUIT (IN PRO-PER) IN THE CASE OF <u>DANIEL MANRIQUEZ V. DRB CASE NO. HCPB04-5241</u> (DEL NORTE COURT 2005). AFTER THE COURT MADE SEVERAL RULINGS THAT MY CONTINUED RETENTION WAS NOT JUSTIFIED AND UNCONSTITUTIONAL, AND ORDERED A HEARING (IN WHICH PLILER, RIANDA AND CASTRO WERE TO APPEAR). THE DRB IMEDIATELY WENT TO CORCORAN SHU, NOTED THAT <u>ANOTHER</u> YEAR INVESTIGATION CONFIRMS IM INACTIVE - MORE THAN QUALIFIED FOR RELEASE FROM THE SHU, IT ORDERED MY RELEASE IN 2005, AND FURTHER MONITORING FOR A YEAR.

4. I WAS TRANSFERED TO THE SUBSTANCE ABUSE TREATMENT FACILITY.[1] AND AFTER ANOTHER YEAR INVESTIGATION PRISON OFFICIALS FOUND NOTHING TO INDICATE "CURRENT GANG ACTIVITY". I NEVER RECEIVED ANY SERIOUS RULE VIOLATIONS.

5. ON NOVEMBER 14.06 I FILED AN ADMINISTRATIVE APPEAL AGAINST LT. "QUINONEZ" FOR HOLDING MY LEGAL WORK. AFTER A BRIEF DISCUSSION INTO MY LAWSUIT HE INDICATED "THE PROBLEM WE'RE HAVING IS YOUR NAME HASN'T CAME UP, SOME DRBs HAVE BEEN INVOLVED IN SOME INCIDENTS, YET YOUR NAME HASN'T CAME UP". I RETORTED: "ITS BECAUSE I DONT GET INVOLVE IN NOTHING, ALL I DO IS WRITE MY FAMILY, GIRLFRIEND, AND WORK ON MY LEGAL CASE". HE THEN RESPONDED "DONT BE SURPRIZED IF I BUILD A CASE AGAINST YOU TO TAKE YOU BACK TO THE SHU" BUT IMPLIED THAT IF I CEASE FILING LAWSUITS HE'D LEAVE ME ALONE.[2] I WAS INFORMED BY SOME C/O's IN 8 BLOCK AND INMATES THAT QUINONEZ INFORMED THEM THAT HE "HAS A HARD ON FOR ME" HE'S OUT TO GET ME.

6. ON JAN. 9.07 BEFORE ALL INMATES CAME OFF OF LOCK DOWN, QUINONEZ ORDERED THAT I BE REMOVED FROM THE G.P. PENDING "INVESTIGATION" HE DID NOT PROVIDE ME ADIQUATE NOTICE OF CHARGES - INDICATING WHAT THE INVESTIGATION WAS FOR NOR WAS I ALOWED TO PRESENT MY VIEWS/A DEFENSE TO QUINONEZ <u>PRIOR</u> TO MY SEGRAGATION AS IS

---

1. THIS ALONE LOOKS LIKE SET UP BECAUSE THIS FACILITY RECEIVES FUNDS TO TREAT DRUG ABUSORS, ACCORDING TO THE TIT 15. SOMEONE LIKE ME WHOSE NEVER DID DRUGS AND IS RECENTLY COMMING OUT OF THE SHU FOR GANG VALIDATION SHOULD NOT BE HOUSED IN THIS FACILITY IN THE FIRST PLACE. TO RECEIVE FUNDS TO TREAT ME FOR ADDICTIONS I DONT HAVE IS A CRIME - NAMELY FRAUD.
2. QUINONEZ COMMITTED SEVERAL ACTS OF MISCONDUCT AT THE HEARING WHICH ARE CURRENTLY A PART AND DETAILED IN A PENDING CIVIL RIGHTS COMPLAINT WITH THE DEPARTMENT OF JUSTICE.

1

F.158

MANDATED BY LAW. BORETT. V. CENTONI 31 F.3d 813,815 (9TH CIR 1994). HE ALSO DID NOT PROVIDE ME WITH A NOTICE, 24 HOURS BEFORE THE ICC HEARING-NOR A COPY OF THE EVIDENCE BEING USED TO RETAIN ME SO I CAN PREPAIR A DEFENSE, WHICH IS ALSO MANDATED. WOLFF V. MCDONNELL 418 U.S. AT 564; GRILLO V. COGHLINE 31 F.3d, 53, 56 (2ND CIR 1994)

7. I WENT TO MY 72 HOUR LOCK UP ORDER HEARING, CAPTAIN DIAZ ALSO REFUSED TO TELL ME WHY I WAS BEING HELD HERE (Ad Seg) HE SAID HE DID NOT WANT TO CONTINUE DISCUSSING IT BECAUSE I WAS "WELL READ AND, I KNOW YOU'RE GONNA SUE US, FOR THIS AND TEN YEARS FROM NOW I DONT WANNA BE IN COURT HAVING YOU USE MY WORDS AGAINST ME" (IN OTHER WORDS HE KNEW WHAT HE WAS DOING TO ME WAS ILLEGAL AND HE DID NOT WANT TO INCRIMINATE HIMSELF, BECAUSE HE KNOWS HE'S GOING TO BE SUED FOR HIS ILLEGAL ACTIONS) HE THEN ASSURED ME I WAS NOT GOING TO BE VALIDATED-THAT HE'S ASKED AROUND AND THAT I'VE NEVER BEEN A PROBLEM- THAT I'VE BEEN A MODILE PRISONER, HE WISHED HE HAD 200 PEOPLE MORE LIKE ME-AT THAT POINT HOLMS BLURTED OUT "HOWS STINKER?" I RESPONDED I DIDN'T KNOW A STINKER- AND I WAS TAKEN BACK TO MY CELL, THE FACT THAT I WAS PLACED HERE FOR "INVESTIGATION" ESTABLISHES THAT I WAS BEING RETAINED ON INSUFFICIENT EVIDENCE

8. WHEN I WAS TAKEN TO COMMITTEE, I WAS STILL NOT PROVIDED "NOTICE" IN ORDER TO MUSTER A DEFENSE, BUT WAS NOW TOLD THAT THE PURPOSE OF THE INVESTIGATION WAS TO SEE IF QUIÑONEZ COULD FIND EVIDENCE TO REVALIDATE ME [THEREBY ESTABLISHING I WAS BEING RETAINED ON INSUFFICIENT / NO EVIDENCE] DISPITE THE FACT THAT (1) THREE CONSEQUTIVE YEARS, OF THREE SEPERATE INVESTIGATIONS HAVE CLEARED, ME OF GANG ACTIVITY, THUS (A) QUIÑONEZ et al...VIOLATED MY LIBERTY INTEREST IN CCR 3341.5(C)(5) BY EXCEEDING THE ONE YEAR STATUTORY MAXIMUM (B) THEY VIOLATED THAT SAME LIBERTY INTEREST WHICH STATES THAT THE INVESTIGATION MUST OCCURE IN THE PRISON GENERAL POPULATION (C) THEY VIOLATED MY CONSTITUTIONAL RIGHTS BECAUSE THE LAW REQUIERS THAT THEY FIRST HAVE RELIABLE 1ST HAND INFORMATION, WHICH IS SUFFICIENT TO PROVE THAT I KNOWINGLY COMMITTED AN ILLEGAL ACT OF MISCONDUCT TO FURTHER THE GOALS OF A PRISON GANG. CCR 3000, 3023, 3321(b)(2), 3378(C)(1)(8)(H); CATO V. RUSHEN 824 F.2d, 704 (9TH CIR 1987): CASTILLO V. ALEMEIDA C-94-2847 MJJ (JUNE 1-04 SETTLEMENT)[3] (D) THAT THE ONLY REASON I WAS BEING DETAINED WAS BECAUSE QUIÑONEZ WAS OUT TO GET ME FOR EXCERCISING MY RIGHTS TO SUE AND FOR FILING ADMINISTRATIVE APPEALS AND EXCERCISING MY RIGHT NOT TO SPEAK TO HIM.

9. QUIÑONEZ, FALSELY TESTIFIED AT ICC, AND IS CURRENTLY TRAINING HIS EMPLOYEES. BY TELLING THEM THAT THE CASTILLO SETTLEMENT WAS / IS INAPPLICABLE, AND DID NOT CHANGE THE TITLE 15 - AS A RESULT IGI IS VIOLATING THE TERMS OF THAT SETTLEMENT, BY STILL VALIDATING PEOPLE BASED ON THE SAME OVERBROAD INFORMATION (PRE CASTILLO)

---

3. SINCE THE TIT 15, NOW GIVES REFERENCE TO AND DEFINES GANG ACTIVITY AS ILLEGAL ACTS OF MISCONDUCT CLASSIFIED AS SERIOUS, WITHIN THE PROVISIONS OF RECEIVING A "115" SEE CCR 3000 THEN THE FACT THAT I WAS NOT GIVEN A 115 NOR PROVIDED THE DUE PROCESS PROTECTIONS AFFORDED FOR WRITE UPS ESTABLISHES THAT THE EVIDENCE IS INSUFFICIENT AND THAT I'VE BEEN DEPRIVED DUE PROCESS PROTECTIONS UNDER WOLFF V. MCDONNELL.

2

F. 159

ADDITIONALLY BASED ON THIS THE ICC OPTED TO RETAIN ME BASED ON NO EVIDENCE FOR SIX MONTHS!

10. I'VE SUBMITTED THREE 602 APPEALS TO CAPTAIN DIAZ (ONE AT THE ICC-THE OTHERS WITHIN DAYS OF THE HEARING) CHALLENGING (1) THE LACK OF NOTICE AND THEN (2) ICC'S DECISION TO RETAIN ME-AND REQUESTED THE EVIDENCE BEING USED TO RETAIN ME, AS OF YET HE'S REFUSED TO ANSWER THESE 602'S AND LIKELY THROUGH THEM AWAY. THUS DEPRIVING ME OF MY RIGHTS TO EXHAUSTION/APPEAL FOR JUDICIAL RELIEF.

11. THREE TO FOUR WEEKS LATER QUIÑONEZ AND HOLMS PULLED ME OUT [BECAUSE THEY WERE UPSET AT AN INSULT, I WROTE ABOUT THEM, IN A LETTER TO MY GIRLFRIEND] AND THEN <u>ADMITTED</u>, THAT IT WAS NOT THEM WHO WANTED TO SEGRAGATE ME, THAT HE WAS AT HOME WHEN I WAS ROLLED UP-THAT HE DOES NOT SEGRAGATE ANYONE WITHOUT FIRST HAVING EVIDENCE AGAINST THEM, WHICH HE <u>ADMITTINGLY</u> DID NOT HAVE. WITHOUT NAMING WHO ORDERED MY SEGRAGATION, HE TOLD ME HE WAS BEING RAIL ROADED INTO THIS, AND THAT THE <u>ONLY</u> REASON I'M BEING PLACED IN AD SEG WAS BECAUSE "SOMEONE" (IMPLYING, DIAZ) DID NOT WANT ME ON THEIR YARD, WHICH ESTABLISHES THAT MY WHOLE RETENTION WAS NOT BASED ON "SOME EVIDENCE" BUT ON <u>NONE</u>, AND ILLEGAL-ESPECIALLY WHERE CCR 3341.5 ET SEQ... AND THE <u>TOUSSAINT</u> INJUNCTION DOES <u>NOT</u> PERMIT INACTIVE INMATES TO BE HOUSED IN THE HOLE (14TH AMENDS).

✱✱✱ 12. ON MAR 7-07, I WAS PULLED OUT BY QUIÑONEZ, HOLMS AND JANE DOE, AND WAS NOW TOLD THAT I'M BEING <u>REVALIDATED</u>, BASED ON TWO SOURCES/ITEMS. THESE ITEMS ARE FALSE, FABRICATED EVIDENCE, UNRELIABLE AND INSUFFICIENT, THEY CANNOT BE USED AS ITEMS FOR REVALIDATION-UNDER CURRENT OR OLD GUIDELINES: FIRST <u>CASTILLO</u> WHICH WAS AMENDED INTO THE <u>TIT 15 §3378 ET SEQ</u> --MANDATES THAT I FIRST BE DESIGNATED "CURRENTLY ACTIVE" AND AN IMEDIATE SECURITY THREAT <u>PRIOR</u> TO REMOVING ME FROM THE G.P., AND SUBMITTING THE VALIDATION PACKAGE, IT ALSO MANDATES THAT PRIOR TO APPROVING THE VALIDATION, THE PERSON WHO SUBMITTED IT MUST, PROVIDE AN ARTICULABLE BASES ESTABLISHING THAT THE INMATE HAS ENGAGED IN CURRENT GANG ACTIVITY AS DEFINED IN <u>CCR 3000, 3023, 3341.5(C)(5)</u> A READING OF THESE REGULATIONS REQUIERS THAT THE ITEMS PROVE, THAT WITHIN THE PAST <u>SIX YEARS</u>, I'VE "KNOWINGLY" ENGAGED IN ILLEGAL ACTS OF MISCONDUCT CLASSIFIED AS SERIOUS (PURSUANT TO RULES VIOLATION STATUTES) ON BEHALF AND IN THE FURTHERANCE OF THE GOALS OF THE PRISON GANG. THE TWO ITEMS DESCRIBED BELOW, DO NOT FALL WITHIN THIS CRITERIA NOR HAS HOLMS ARTICUL-ATED HOW IT DOES. THUS THE EVIDENCE IS INSUFFICIENT <u>SEE SUPERINTENDENT V. HILL</u>-V.S.--, AND I'M STILL INACTIVE AND HAVE A LIBERTY INTEREST IN NOT BEING TRANSFERRED AND RETANED IN THE SHU -GIVEN MY INACTIVE NON SECURITY THREAT STATUS, <u>CCR 3341.5 (A)(2)(B)(3)(C)(5)</u> ALSO SEE <u>TOUSSAINT INJUNCTION</u>.

13. ITEM ONE ALLEGES;

F.160

"A CONFIDENTIAL MEMORANDUM DATED 12/26/06 INDICATED YOUR NAME AND CDC NUMBER WERE IDENTIFIED WITHIN THE ADDRESS BOOK OF INMATE SANSONE, J95696 VALIDATED MEXICAN MAFIA ASSOCIATE, SANSONES POSSESSION OF YOUR NAME, AND NUMBER INDICATES YOU GAVE YOUR PERSONAL INFORMATION TO SANSONE IN ORDER TO KEEP IN CONTACT UTILIZING THE UNITED STATES POSTAL SYSTEM AND INMATE LOCATORS"

THIS ITEM IS FALSE, PLANTED, FABRICATED, INSUFFICIENT, AND UNRELIABLE, FIRST HOLMS/QUINONEZ DID NOT ESTABLISH NOR PROVIDE AN ARTICULABLE BASES AS TO HOW MY ALLEGED NAME AND NUMBER IN SOME STRANGERS PHONE BOOK CONSTITUTES THAT I KNOWINGLY ENGAGED IN AN ILLEGAL ACT OF MISCONDUCT IN THE FURTHERANCE OF THE GOALS OF A PRISON GANG AS IS REQUIRED CCR 3378 (C)(8)(A)(6)(A)(8)(C)(6)(L), HOLMS FALSELY ASSERTS, THAT BECAUSE SANSONE, HAD POSSESSION OF MY NAME IN HIS ADDRESS BOOK, THIS INDICATES, I GAVE IT TO HIM TO KEEP IN CONTACT. THIS AMOUNTS TO SPECULATION WHICH IS INSUFFICIENT UNDER CATO V. RUSHEN, SUPERINTENDANT V. HILL, AND IT ALSO AMOUNTS TO PLANTING EVIDENCE IN A CONSPIRACY TO GET ME OFF OF THIS YARD. I DON'T EVEN KNOW THIS INDIVIDUAL, AND I REQUEST THAT THE OSC CHECK & VERIFY THAT I'VE NEVER BEEN AROUND A "SANSONE"- NOR WRITEN ANY ONE BY THAT NAME, THUS HOW COULD I HAVE GIVEN HIM MY NAME AND #? (SINCE MY MAIL AND MOVEMENTS ARE ALL MONITORED SEE CCR 3341.5(C)(5), HOLMS WOULD'VE PROVIDED THE REVIEWER A COPY OF A LETTER OR ANYTHING TO SUBSTANTIATE, HIS BALD SPECULATIVE ALEGATION THAT I GAVE MY NAME AND NUMBER TO SANSONE, THE FACT THAT HE DIDN'T ESTABLISHES ITS NON-EXISTANCE, AND RENDERS THIS ITEM INSUFFICIENT) INFACT THERE IS NO TELLING WHERE AND HOW THIS PERSON GOT MY NAME AND #, NOR IS THERE ANYTHING TO CORROBORATE THAT IVE BEEN AROUND OR KNOW THIS GUY. INDEED I WAS IN SATF C-8 MAIN LINE ON DEC 26-06 WHEN THIS ITEM WAS FOUND, THERE WAS NO ONE BY THAT NAME AROUND ME, CONSIDERING THAT THE PRISON WAS ON LOCK DOWN, NO GANG AFFILIATES ARE HERE, THERES NO WAY I COULD'VE HANDED IT TO HIM, AND THERES NO EVIDENCE AS TO WHAT PRISON THIS PERSON WAS AT, WHEN THIS WAS FOUND, ADDITIONALLY THERE IS NO TELLING WHETHER IT IS EVEN ME, HOW LONG THIS PERSON HAD MY NAME IN HIS PHONE BOOK, IF HE HAD IT THERE BEFORE HE WAS VALIDATED, THEN SINCE HE WAS NOT AN AFFILIATE AT THAT TIME IT CANNOT BE USED WITH OUT VIOLATING DUE PROCESS AND THE EX POST FACTO CLAUSE OF THE U.S. CONSTITUTION, IF HE PLACED IT IN THERE BEFORE I CAME OUT TO THE MAIN LINE ON INACTIVE STATUS IT CANNOT BE USED WITHOUT VIOLATING MY 14TH AMENDMENTS LIBERTY INTEREST BECAUSE CCR 3341.5(C)(6); 3378(F) REQUIERS THAT NEW ITEMS BE BASED FROM CONDUCT/SOURCES DEVELOPED AFTER MY SHU RELEASE[15] IF THIS GUY WROTE MY NAME IN THERE SIX YEARS AGO, IT CANNOT BE USED BECAUSE ITS NO LONGER CURRENT WHICH IS REQUIRED PURSUANT TO CCR 3341.5(C)(6); 3378(C)(1), THUS BECAUSE THERES NO INDICATION/EVIDENC AS TO WHEN THIS WAS WRITEN, THIS ITEM IS NO DIFFERENT THAN AN UNDATED PHOTOGRAPH WHICH UNDER CASTILLO

5. IF THE ITEM WAS INFACT WRITEN BEFORE MY RELEASE THEN IT OBVIOUSLY CANNOT BE USED GIVEN ITS NOT RELIABLE, SINCE THREE INVESTIGATIONS PLUS AN INVESTIGATION BY THIS UNIT (LEIU) CONFERMED ME INACTIVE WHICH THUS RENDERS THIS POINT INVALID INSUFFICIENT.
6. INDEED BECAUSE THERES NO EVIDENCE THAT I WROTE MY NAME IN HIS PHONE BOOK-OR POSSESSED IT, IT DOES NOT CONSTITUTE SUFFICIENT EVIDENCE UNDER MY LIBERTY INTEREST OF WRITEN MATIRIAL ADDRESSES COMMUNICATIONS ET SEQ...

AND CCR 3378 et seq.. CAN NO LONGER BE USED. FURTHER MY NAME IN A STRANGERS PHONE BOOK WITHOUT MORE, IS NO DIFFERENT THAN MY NAME IN A 'LAUNDRY LIST' WHICH CDC STOPPED USING YEARS AGO.

MOREOVER THE ITEM CANNOT BE USED BECAUSE CCR 3341.5(C)(6): 3378(F) ONLY PERMIT A REVALIDATION, IF THE SINGLE ITEM SATISFIES THE CRITERIA FOR RELIABILITY UNDER CCR 3321(b)(2): CATO V. RUSHEN 824 F.2d. 704 (9TH CIR 1987) HERE HOLMS BALD CITATION TO "INVESTIGATION" ISN'T GOING TO CUT IT! GIVEN IT IS NOT PART OF THE RELIABILITY CRITERION IDENTIFIED BY CATO AND CCR 3321(b)(2), SINCE ITS NOT—THEN TO UTILIZE IT WOULD VIOLATE MY LIBERTY INTEREST IN NOT HAVING AN "UNDERGROUND" RULE ENFORCED AGAINST ME WHICH HAS NEVER BEEN LEGALLY PROMULGATED INTO THE TITLE 15 IN ACCORDANCE WITH THE ADMINISTRATIVE PROCEDURAL ACT (APA) SEE gov. code § 11340.5(A) et seq:

> "NO STATE AGENCY SHALL ISSUE, UTILIZE, ENFORCE OR ATTEMPT TO ENFORCE ANY GUIDELINE, CRITERION, BULLETIN, MANUAL, INSTRUCTION, ORDER, STANDARD OF GENERAL APPLICATION OR OTHER RULE, WHICH IS A REGULATION, AS DEFINED IN SUBDIVISION (g) OF SECTION 11342 UNLESS THE GUIDELINE, CRITERION, BULLETIN, MANUAL, INSTRUCTION, ORDER, RULE, HAS BEEN ADOPTED AS A REGULATION AND FILED WITH THE SECRATARY OF STATE PURSUANT TO THE APA."

NOTABLY THE UTILIZATION OF THIS ITEM VIOLATES MY LIBERTY INTEREST AND DUE PROCESS RIGHT TO PRESENT MY VIEWS TO/ FOR THE DECISION MAKERS AT THIS HEARING ETC... 3378(C)(6)(A)(I) 14TH AMEND. BECAUSE FOR THE SAME REASONS CITED ABOVE THIS ITEM DOES NOT FALL WITHIN THE RELEVANT CRITERIA TO BE DESIGNATED CONFIDENTIAL, IT IS SIMPLY A PHONE BOOK WHICH SOMEONE ELES HAD WITH MY NAME ALEGEDLY IN IT - I SHOULD'VE BEEN PROVIDED A COPY OF IT 24 HOURS IN ADVANCE FOR A DEFENSE CCR 3378(C)(6)(A)(I), TO PROVE ITS NOT ME, AND ITS FABRICATED. TO THE EXTENT HOLMS/QUIÑONEZ ARE IMPLYING THAT A CONFIDENTIAL INFORMANT IDENTIFIED MY NAME AND # IN THAT PHONE BOOK, IT STILL CANNOT BE USED BECAUSE UNDER CURRENT LAW AN INMATE CANNOT BE VALIDATED BASED ON HEARSAY OR BY AN INFORMANT WHO PROVIDES NOTHING MORE THAN THE NAME OF AN INMATE IN RELATION TO A PRISON AFFILIATE CCR 3378(c)(8)(H) CASTILLO UNDER THESE PROVISIONS INFORMANTS MUST RELATE TO SPECIFIC ILLEGAL ACTS OF MISCONDUCT THAT I ALLEGEDLY DID IN CONNECTION WITH THIS INMATE ON BEHALF OF THE PRISON GANG (ibid) HERE IGI DID NOT SHOW, NOR ARTICULATE HOW MY NAME IN A STRANGERS PHONE BOOK DEMONSTRATES HOW I COMMITTED ILLEGAL ACTS OF MISCONDUCT ON BEHALF OF THE GANG IN RELATION TO THIS INMATE AS IS REQUIRED BY LAW CCR 3378(c)(6)(b) - (c)(8)(c)(G)(H)(L) NOR DID THEY FOLLOW THE LAW BY DISCLOSING ALL INFORMATION REQUIRED TO PRESENT A DEFENCE (ibid) IN FACT ALL THEY'VE OFFERED IS MY NAME IN RELATION TO THIS INMATE.

ALL REGULATIONS - CODES ETC... CITED ABOVE CONSTITUTE A LIBERTY INTEREST UNDER THE 14TH AMENDMENT. I HAVE A LIBERTY INTEREST NOT TO BE SUBJECTED TO THE HARSH CONDITIONS OF Ad/Seg/THE SHU. MADRID V. GOMEZ 889 F.SUPP 1146 (N.D CAL. 1995), TO USE THIS ITEM AS "GANG ACTIVITY" WOULD NOT ONLY VIOLATE THESE LIBERTY INTERESTS BUT THE DUE PROCESS CLAUSE ITSELF, BECAUSE IT WOULD ESTABLISH THAT ONCE AGAIN CDC IS USING VAGUE AND OVERBROAD DEFINITIONS

F-162

OF "GANG ACTIVITY", WHICH IS WHY CASTILLO SUED AND OBTAINED A SETTLEMENT REQUIERING THAT CDC FIRST HAVE "GANG ACTIVITY" AS DEFINED IN CCR 3000, 3023, 3378(c)(U) (WHICH DEFINED IT AS AN ILLEGAL ACT OF MISCONDUCT CLASSIFIED AS SERIOUS ON BEHALF OF THE GANG) IT WOULD ALSO PROVE, THAT CDC IS PLANTING EVIDENCE AGAINST ME, CONSPIRING TO TAKE ME BACK TO THE SHU, BASED ON AND IN RETALIATION FOR MY JAIL HOUSE LAWYERING, WHICH IS CORROBORATED BY QUINONEZ TELLING ME ON NOV. 14.06 I WOULD BE LEFT ALONE IF I DIDN'T FILE ANY MORE SUITS/APPEALS AND BY THE FACT THAT WHEN I FIRST GOT ROLLED UP IT WAS FOR INVESTIGATION, QUINONEZ ADMITTED 3 TO 4 WEEKS LATER HE HAD NO EVIDENCE AGAINST ME, THAT "SOMEONE" JUST DIDN'T WANT ME ON THEIR YARD, AND NOW HE COMES UP WITH THIS FALSE, FABRICATED, ITEM THAT HE'S HAD SINCE DEC-26-06 LONG BEFORE I GOT ROLLED UP.

14. ITEM NO. 2 IS EQUALLY FABRICATED FALSE, UNRELIABLE AND INSUFFICIENT. IT STATES:

"A CONFIDENTIAL MEMORANDUM DATED 2-9-07, INDICATED YOU SENT CORRESPONDENCE TO VALIDATED MEXICAN MAFIA ASSOCIATE, INMATE OCOTORENA D67758, SEEKING PERMISSION FROM EME MEMBERS GUZMAN C41587 AND PADILLA D51019 TO CONTROL FACILITY "C" AT CSATF/SP, ONCE ESTABLISHED YOU WOULD THEN CONTROL ALL EME RELATED ACTIVITIES ON BEHALF OF THE AFFORMENTIONED EME MEMBERS."

THIS ITEM IS, FABRICATED/FALSE, AND CANNOT BE USED TO REVALIDATE ME, BECAUSE UNDER CASTILLO WHICH WAS AMENDED INTO THE TITLE 15, 3378 ET SEQ... ITS REQUIERED THAT PRIOR TO BEING VALIDATED, I MUST FIRST BE DESIGNATED "CURRENTLY ACTIVE" AND PRESENT AN IMMEDIATE SECURITY THREAT, IT ALSO REQUIERS THAT PRIOR TO THE SUBMISSION OF THE VALIDATION PACKAGE AND ITS APPROVAL, THE IGI MUST PROVIDE AN ARTICULATABLE BASES ESTABLISHING THAT I ENGAGED IN A SPECIFIC ACT OF CURRENT GANG ACTIVITY, AS DEFINED IN CCR 3000, 3023, 3341.5(C)(6), THESE DEFINITIONS REQUIER THAT THERE BE PROOF THAT WITHIN THE PAST SIX YEARS, I'VE KNOWINGLY ENGAGED IN ILLEGAL ACTS OF MISCONDUCT CLASSIFIED AS SERIOUS ON BEHALF OF THE, AND IN THE FURTHERANCE OF THE GOALS OF A PRISON GANG. SINCE THIS ITEM DOES NOT FALL WITHIN THIS CRITERIA AND HOLMS FAILED TO PROVIDE AN ARTICULABLE BASES AS TO HOW IT DOES, IT RENDERS THE ITEM INSUFFICIENT UNDER SUPERINTENDENT V. HILL AND ESTABLISHES I'M STILL INACTIVE, TRIGGERING MY LIBERTY INTEREST, AND TOUSSAINT INJUNCTION IN NOT BEING TRANSFERED TO/AND RETAINED IN ADSEG/SHU CCR 3341.5(A)(2)(B)(3)(C)(5) ET SEQ...

THE EVIDENCE IS ALSO PLANTTED FABRICATED AND FALSE - I HAVE NEVER WRITTEN ANY LETTERS TO ANY INMATE NAMED OCOTORENA, MUCH LESS ONE REQUESTING TO CONTROL C YARD,[6] I AM WELL AWHERE THAT MY MAIL IS MONITORED CCR 3341.5(c)(5) THE DRB AND QUINONEZ TOLD ME IT IS, I AM NOT STUPID ENOUGH TO WRITE ANY LETTERS TO ANYONE - FOR THAT REASON I SUBMIT THAT SUCH A LETTER/CORRESPONDENCE DOES NOT EXIST - IF SUCH CORRESPONCE EXISTS THEN I REQUEST THAT THE REVIEWERS (BEFORE I HAVE TO TAKE THIS TO COURT AND BRING ALL PARTIES UP ON

---

6. THERE IS NO EVIDENCE I KNOW THIS GUY - THAT I HAVE HIS ADDRESS - NOR EVER SPOKE TO HIM - EVER MET HIM, NOR HAD CONTACT WITH HIM NOR HAVE I EVER BEEN HOUSED IN THE SAME HOUSING UNITS OR BLOCKS WITH HIM. THE OSC SHOULD VERIFY THIS - BECAUSE YOUR OWN TRAINING MANUALS REQUIER IT

6

F·163

criminal charges for planting evidence) that the reviewer compair my writing to that letter in order to verify if its in my writing, additionally that it take notice of the <u>envelope</u> it was sent in to see if it was mailed by me (ie, had my name on the return address) and if it was being mailed to my family or to any address I have used? that it ask Holms whose <u>name</u> was writen on the envelope? and what relationship did the sender have with the addressee (mail drop)? that he check if my name was ever mentioned in that letter? or whether any of my family members were mentioned in that letter? How did they catch this alleged letter and on whom? and how do they make the absumption its mine? and what was the exact date this letter was written and caught? is there any evidence that i've ever written that address person (mail drop if any)? did Quinonez see that address in my phone book, when he confiscated my property? does that letter say what Holms is saying it does?

THE REASON THAT THE above questions are esential is because-I attest now and will do so under oath-at court that I <u>never wrote any</u> such letter to anyone - no such letter was ever caught leaving my cell and I am being set up by Holms/Quinonez who are planting evidence on me to further their conspiracy to revalidate me. Compounding my credence is, several weeks after my segragation, Quinonez and Holms admit to me that they did not have nothing on me, that i'm in the hole because someone did not want me on their yard, and now they come up with this memo writen around that time to validate me.?<sup>V</sup>

Indeed this letter even if taken at face value cannot be used because it does not establish that I committed an illegal act of misconduct on behalf of a prison gang, notably my constitutional and liberty interest rights to present a defense before the decision maker is being violated because if I wrote that letter then it is not properly designated "confidential" infact like item one Holms does not have the authority nor capasity to designate it confidential. CCR 3321 et seq... it cannot be designated "confidential" nor can it be <u>used</u> because CCR 3341.5 (c)(6): 3378 et al.- only permit revalidation if the item satisfies the criteria for reliability under 3321 (b)(2) cato.V. Rushen, it can only be deemed confidential if it satisfies that same standard. Holms bald citation to "an inmates self incrimination" and "other: investigation" doesn't cut it - because those citations are not part of the reliability criterion identified in <u>CCR 3321(b)(2)</u> cato supra, to use an unwritten provision to determine reliability and then "confidentiality" is illegal - because it would violate my liberty interest under the 14th amendment, by utilizing an underground rule

<hr>

7. Exacerbating my credence is that CDCS own rules mandate that I be given a notice when ever any of my letters are stopped or censored- CCR 3330-3347 I have a liberty interest to this- yet no such notice was given which implies I <u>never</u> wrote nor sent out such a letter!

P. 164

7

WHICH HAS NOT BEEN LEGALLY PROMULGATED INTO THE TITLE IS IN ACCORDANCE WITH THE APA.

NOTABLY HOLMS INDICATED, SOMEONE INCRIMINATED HIMSELF - FOR THE REASONS CITED ABOVE IT STILL CANNOT BE USED, TO THE EXTENT QUIÑONEZ/HOLMS ARE IMPLYING THAT A CONFIDENTIAL INFORMANT TOLD THEM, I'VE WRITTEN SUCH A LETTER OR LETTERS TO OCOTORENA, THE ITEM STILL CANNOT BE USED BECAUSE UNDER CURRENT LAW IGI CANNOT USE HEARSAY THEY WERE REQUIRED TO ARTICULATE WHETHER THE INFORMATION WAS FIRST HAND. CASTILLO SUPRA CCR 3378 C(8)(H) ADDITIONALLY IT CANNOT BE USED BECAUSE UNDER CCR.3000,3023, 3378(C)(8)(A) CDC CANNOT RELY ON THE SIMPLE NAME OF AN INMATE IN RELATION TO A PRISON GANG AFFILIATE PROVIDED BY AN INFORMANT. THE INFORMANT MUST RELATE TO SPECIFIC ILLEGAL ACTS OF MISCONDUCT THAT THE INMATE DID IN CONECTION WITH THE PRISON GANG (Z bis) HERE THE INFORMANT DOES NOT RELAY TO ANY SPECIFIC ACTS OF MISCONDUCT ON BEHALF OF THE GANG COMMITTED BY ME, HE'S MEARLY PROVIDING NOTHING MORE THAN MY NAME IN CONNECTION WITH A MYSTERY LETTER WHICH ALLEGEDLY SAID I DESIRED A PRISON YARD - BUT WITH NO REFERENCE TO AN ILLEGAL ACT OF MISCONDUCT THAT I COMMITTED ON BEHALF OF THIS INMATE OR GANG.

TO USE THIS AS "GANG ACTIVITY" WOULD NOT ONLY VIOLATE THE LIBERTY INTERESTS CITED ABOVE PROTECTED BY THE 14TH AMENDMENT BUT ALSO THE 14TH AMENDMENTS DUE PROCESS CLAUSE BECAUSE IT WOULD ESTABLISH THAT ONCE AGAIN CDC IS USING VAGUE AND OVERBROAD POLICIES TO DEFINE GANG ACTIVITY - WHICH IS WHY CASTILLO SUED AND OBTAINED A SETTLEMENT REQUIRING CDC TO DEFINE AND GIVE REFERENCE TO CCR 3000 GANG ACTIVITY DEFINITION (SEE CCR 3023; 3378 ET SEQ. -) WHICH IS DEFINED AS AN ILLEGAL ACT OF MISCONDUCT CLASSIFIED AS SERIOUS ON BEHALF OF THE PRISON GANG.

15. BECAUSE THE RULES NOW REQUIRE THAT I COMMIT SERIOUS ACTS OF MISCONDUCT PUNISHIBLE BY RULES VIOLATION CCR 3000,3023, 3378(C)(1) THEN THE FACT THAT I WAS NOT PROVIDED A 115 ESTABLISHES THAT THE EVIDENCE IS INSUFFICIENT UNDER SUPERINTENDANT V. HILL, TO VALIDATE, AND TO VALIDATE ME WITHOUT AFFORDING ME THE SAME PROCEDURAL PROTECTIONS AFFORDED TO RULES VIOLATORS WOULD NOW VIOLATE FEDERAL DUE PROCESS UNDER WOLFF V. MCDONNELL

16. ADDITIONALLY REGARDLESS OF WHETHER CCR 3378(C)(8)(C)(G)(L) ALOW VALIDATIONS BASED ON WRITTEN ITEMS / COMMUNICATIONS, THAT ALONE CANNOT BE USED AS A SOURCE FOR VALIDATION BECAUSE THOSE PROVISIONS MANDATE-

---

8. IF THE INFORMANT INCRIMINATED HIMSELF, AND IF DISCLOSURE OF THIS LETTER OR AN INVESTIGATION TENDS TO POINT TO MY INNOCENCE - THEN I HAVE A RIGHT UNDER THE 14TH AMENDMENTS DUE PROCESS CLAUSE TO DISCLOSURE OF THIS EXCULPATORY EVIDENCE - BECAUSE HIS INCRIMINATION IS AN ADMISSION TO HIS GUILT OF THE LETTER - WHILE I HAVE MADE NO INCRIMINATING STATEMENTS - THUS HIS CONFESSION ESTABLISHES MY INNOCENCE. CAMPBELL V. HENMAN 931 F. 2d. 1212 (7TH CIR 1991) (EXULPATORY EVIDENCE MUST BE DISCLOSED TO PRISONER) CHAVIS. V. ROWE 643 F. 2d. 1281 (7TH CIR 1981) (REPORT TENDING TO SHOW PRISONER IS NOT GUILTY MUST BE DISCLOSED) SPELLMAN BEY V. LYNAUGH 778 F. SUPP 338 (ED TEX) (OFFICIALS MUST PRODUCE DOCUMENTS TENDING TO SHOW INMATE DID NOT COMMIT OFFENSE.)

THAT STAFF "ARTICULATE WHY" THIS CONSTITUTES "GANG ACTIVITY". (AN ILLEGAL ACT OF MISCONDUCT ON BEHALF OF THE GANG!)

THIS WAS NOT ARTICULATED NOR SHOWN IN THESE 1030's, NOR DID STAFF DOCUMENT AND DISCLOSE AS MUCH INFORMATION

TO ME PRIOR TO THE HEARING (IBID)

17. HOLMS AND QUINONEZ INDICATE THAT I'M BEING VALIDATED FOR VIOLATING THE TERMS OF A WRITTEN AGREEMENT

BY THE DRB NOT TO PARTICIPATE IN ANY GANG ACTIVITY OR ASSOCIATION WITH ANY GANG MEMBERS. ATTACHED IS A

COPY OF THAT AGREEMENT AND IT IS CDC WHO IS VIOLATING THE TERMS OF IT GIVEN THAT THE 1030s DO NOT REFLECT

OR ALLEGE ASSOCIATION WITH GANG MEMBERS - IT ALLEGES CONTACT WITH ASSOCIATES.[9] THE CONTRACT PROHIBITS

THE;

"POSSESSION OF ANY MATIRIAL OR DOCUMENT EVIDENCING GANG AFFILIATION, SUCH AS MEMBERSHIP OR ENEMY LISTS, CONSTITUTIONS ORGINIZATIONAL STRUCTURES, CODES, TRAINING NATIRIAL OF SPECIFIC GANGS, POSSESSION OF PHOTOGRAPHS WITH GANG CONOTATIONS OR GANG AFFILIATES."

HERE I DID NOT POSSESS ANY OF THESE ITEMS.[10] INDEED HOLMS/QUINONEZ ADMIT IN THE 1030's THAT SOMEONE

ELES POSSESSED MY NAME AND THE LETTER, NOR DO ANY OF THE DOCUMENTS FALL WITHIN THIS CRITIRION, THUS

THE VALIDATION ITEMS MUST BE REJECTED, AS IT BREACHES THE TERMS OF THE AGREEMENT IN VIOLATION OF

THE LAW OF CONTRACTS: 14TH AMENDMENT

RESPECTFULLY SUBMITTED

DANIEL MANRIQUEZ R-78581

9. NOR IS THERE ANY EVIDENCE THAT I COMMITTED GANG ACTIVITY AS DEFINED IN CCR 3000 WHICH IS MANDATED SEE CCR 3378(c)(1)

10. CITED ABOVE, NOR THOSE BEING USED WHICH ARE NOT PART OF THE CONTRACT.

9

F·166

STATE OF CALIFORNIA         ..RTMENT OF CORRECTIONS

..JC 128B (REV. 4/74)

NAME and NUMBER: **MANRIQUEZ, K-78581**

NOTICE OF CONDITIONS OF INACTIVE VALIDATION

You are being scheduled for review by the Departmental Review Board (DRB) as a validated Inactive Gang Member / Associate.  Based on your newly designated inactive status, the DRB may elect to conditionally release you from a Security Housing Unit (SHU) to a general population facility.

You are hereby notified that as a condition of your release to the general population, you will be required to submit to a photograph of all tattoos and body markings and you must refrain from participation in <u>any</u> gang activity or association with <u>any</u> gang members.

**A single incident of any of the following may result in your return to a SHU program:**

1.     Self-admission of gang involvement / association.
2.     Any new tattoos or body markings deemed to be gang related.
3.     Use of hand signs, distinctive clothing, graffiti, etc., which have been identified by gang coordinators/investigators as being used by and distinctive to specific gangs.
4.     Possession of any material or document evidencing gang affiliation such as membership or enemy lists, constitutions, organizational structures, codes, training material, etc., of specific gangs.
5.     Possession of individual or group photographs with gang connotations such as those which include insignia, symbols, or validated gang affiliates.
6.     Documentation by staff of visual or audible observations, which reasonably indicate affiliation with gang activity or association with gang members as outlined in the California Code of Regulations, Title 15, section 3378(c).
7.     Confidential information that meets the criteria set forth in the California Code of Regulations, Title 15, Section 3321, that evidences gang activity or association with gang members.
8.     A finding of guilty regarding any serious rule violation, whether gang related or not, that merits a new SHU term under the California Code of Regulations, Title 15, section 3341.5(c).

You are advised to release to prison staff any materials in your property that meet the above conditions of your release to the general population.  Should any of these items be found in your property <u>at any time</u>, they will be viewed as evidence of current gang activity or other misconduct.

I have read and understand the above conditions of my release to a general population facility and agree to these conditions.  I understand that violation of any of these conditions may result in my being revalidated as an "active" gang member and/or returned to a SHU program.

_____
Signature of Inmate                Sep. 9 - 05
                                         Date

M,. DOTSON _____
Signature of staff witness             9-9-05
                                         Date

Orig:     Central File
Cc:       Receiving Institution
         Inmate

**DATE:SEPT. 08, 2005**     **(NOTICE OF CONDITIONS OF INACTIVE VALIDATION)**     **CDC 128B**
*******************************************************************************************

F. 167

SUPPLEMENT TO THE OBJECTIONS/REBUTTALS FILED BY MANRIQUEZ IN RE: VALIDATION ITEMS HEARING - WHICH HE TURNED OVER TO IGI HOLMS AND QUINONEZ TO BE MADE PART OF THE RECORD.

1. I DANIEL MANRIQUEZ K-78581, SUBMIT THIS SUPPLEMENTAL VALIDATION STATEMENT FOR CONSIDERATION BY THE IGI, LEIU CLASSIFICATION COMMITTEES AND ANY STAFF REVIEWER-IN LIGHT OF WHAT WAS DISCOVERED AT THE CCR 3378C(6)(a)-(b) HEARING.

2. IN LIGHT OF THE FACT I WAS DEPRIVED SUFFICIENT NOTICE AND A SUFFICIENT OPPORTUNITY FOR A VERBAL REBUTTAL, I REQUEST THAT THIS SUPPLEMENT BE ATTACHED TO MY ORIGINAL WRITTEN REBUTTAL WHICH I SUBMITTED TO HOLMS/QUINONEZ AT THE MAR 9-07 HEARING, AND THAT IT BE INCLUDED IN MY VALIDATION PACKAGE. I ALSO REQUEST THAT A COPY OF THESE ITEMS BE INCLUDED IN MY CENTRAL FILE FOR REVIEW BY THE CLASSIFICATION COMMITTEE AT ALL TIMES.

3. I REQUEST THAT THE TERMS OF THE CASTILLO V. ALEMEIDA SETTLEMENT BE CONSIDERED WHEN REVIEWING THE VALIDATION OR SEGREGA-TION. I HEREBY PROVIDE THE IGI, LEIU, AND ALL ICC's/UCC's NOTICE, THAT ANY VALIDATIONS/SEGREGATIONS AS A RESULT OF THE ITEMS BEING USED IS IN VIOLATION OF THE TERMS OF THAT SETTLEMENT SEE RULE 65(d) FED. R.CIV.P. ET SEQ *

4(a) WITH RESPECT TO ITEM 1, THE PHONE BOOK WITH MY NAME AND #, SINCE INMATES CANNOT CORRESPOND WITH EACH OTHER IT IS NOT FEISIBLE, THAT HIS HAVING MY # COULD'VE BEEN USED TO KEEP IN TOUCH AS HOLMS STATED. AT THE HEARING HOLMS ADMITTED THAT HE'S SEEN MY PHONE BOOK, AND THIS INDIVIDUALS NAME WAS NOT IN IT. HE ALSO ADMITTED THAT HE HAD NO EVIDENCE THAT I WAS EVER HOUSED AROUND OR KNEW THIS INMATE, HE (HOLMS) AND QUINONEZ DID NOT EVEN KNOW WHO THIS INMATE WAS THAT THERE WAS NO EVIDENCE (DATE) OF HOW LONG HE'S HAD IT IN HIS PHONE BOOK OR WHERE HE GOT IT FROM - THAT THIS, ITEM WAS IN FACT DISCOVERED IN TAMATCHAPPI (A PRISON I'VE NEVER BEEN TOO). IN LIGHT OF THIS THE ITEM CANNOT BE ACCEPTED, FIRST, UNDER YOUR 2002 VALIDATION TRAINING MANUAL, AN "EXPLAINED AND DOCUMENTED TIME FRAME, NEEDS TO BE KNOWN FOR THE NAME IN THE ADDRESS BOOK!" WHICH IS CONSISTENT WITH MY LIBERTY INTEREST TO BE DESIGNATED INACTIVE AFTER SIX YEARS WITH OUT GANG ACTIVITY CCR 3341.5(c)(5) WITH OUT A DATE THIS RIGHT IS INEVITABLY VIOLATED, BECAUSE THERE IS NO WAY TO TELL WHEN MY SIX YEARS ENDS, NAMELY IF HE HAD IT FOR FIVE YEARS - I WOULD HAVE TO BE DESIGNATED INACTIVE IN ONE YEAR, TO GIVE ME SIX YEARS MORE, WOULD VIOLATE MY LIBERTY INTEREST- AND RIGHT TO EQUAL TREATMENT, NOW IF HE HAD IT WRITTEN SIX YEARS AGO, IT IS NO LONGER CURRENT AND CANNOT BE USED (NOTABLY THE INMATE HAS A "J" NUMBER IT IS POSSIBLE HE'S HAD IT FOR OVER 12 YEARS!)

MORE IMPORTANTLY THE FACT THAT HOLMS NOW ADMITS HE HAS NO EVIDENCE THAT I GAVE IT TO HIM OR HAVE EVER BEEN

* CURRENT GANG ACTIVITY IS A PREREQUISIT TO RETENTION/VALIDATION AND IS DEFINED AS ANY GANG ACTIVITY DEFINED IN CCR 3000, 3023 (ILLEGAL ACTS OF MISCONDUCT ON BEHALF OF THE GANG) WITH IN A SIX YEAR PERIOD CCR 3341.5(c)(4): 3378 ET SEQ. ANY PAST OR PRESENT ITEMS DO NOT FALL WITHIN THAT CATAGORY-THUS I'M STILL INACTIVE AND PERSUANT TO CCR 3341.5(c)(A)(2): 3341.5(c)(3)(8): 3341.5(c)(5) THE TOUSSAINT INJUNCTION AND A RULING IN MY CASE MANRIQUEZ V. DRB CASE NO. HCPB04-5241 (2005 DEL NORTE COURT) IT IS ILLEGAL TO HAVE SEGREGATED AN INACTIVE INMATE, SUCH AS MY SELF - NOTICE IS HEREBY GIVEN.

1

AROUND THIS INMATE-RENDERS THE EVIDENCE (THAT I GAVE THIS INMATE MY NAME/# FOR ASSOCIATION) INSUFFICIENT AND ESTABLISHES Holm STATEMENT THAT I "GAVE [MY] PERSONAL INFORMATION TO SOMEONE IN ORDER TO KEEP IN CONTACT ..." WAS FALSE, AND THUS BY PROVIDING/SUBMITTING THIS FALSE STATEMENT TO GET ME VALIDATED Holms COMMITTED VARIOUS CRIMES UNDER PEN. CODE 134 (PREPARING FALSE DOCUMENTARY EVIDENCE) PEN CODE 118(a) (FILING FALSE AFFIDAVIT TO FRAUDULENTLY CHARGE INNOCENT INMATE) PEN. CODE ____ (FALSE IMPRISONMENT) - IN A CONSPIRACY WITH GUTIÉRREZ AND CAPTAIN DIAZ "TO PERVERT OBSTRUCT, JUSTICE OR DUE THE ADMINISTRATION OF LAWS" IN VIOLATION OF CAL. PEN. CODE 182(5).[A] SINCE THIS STATEMENT IS NOW PROVEN FALSE THEN THE ITEM MUST NOW BE REJECTED, OTHERWISE THE REVIEWER IS EQUALLY LIABLE FOR ACCEPTING/USING FALSE INFORMATION.[B]

B. AS FOR ITEM 2 (THE LETTER I ALLEGEDLY WROTE OCOTOPENA REQUESTING AUTHORITY TO RUN SNTF "C YARD) AT THE HEARING I WAS SHOWN A LETTER - ALOWED TO READ MOST OF IT - I WAS ASKED IF ITS IN MY WRITING AND WHETHER I WROTE IT AND I SAID "NO" - AND I NOTICED THAT THE UTILIZATION OF THIS LETTER CONSTITUTED A CRIME AND ITS ILLEGAL, FIRST WHO EVER ATTEMPTED TO WRITE IN MY SCRIPT FORGED MY SIGNATURE AND WROTE "DANNY" AT THE END - THIS SIGNATURE WAS IN A DIFFERENT KIND OF PEN AND DIFFERENT STYLE OF SCRIPT THAN THE WHOLE LETTER - OR ANY LETTER IVE WRITTEN IN ALMOST 11½ YEARS" THAT SIGNATURE WAS IN EITHER Holms, GUTIÉRREZ OR SOMEONE ELSES SCRIPT (THEY PLACED IT IN THERE) A SIMPLE COMPARASENT TO THE WAY I PRINT, AND SIGN MY NAME WILL ESTABLISH IT WAS FORGED (SEE EXHIBIT A) Holms/GUTIÉRREZ KNEW IT WAS FORGED WHEN THEY PLANTED THIS EVIDENCE ON ME BECAUSE THEY ADMITTED THEY'VE "SEEN AND READ ALOUT OF MY LETTERS AND STILL HAVE THEM" YET THE SIGNATURES DO NOT MATCH! I NEXT REQUESTED TO SEE A COPY OF THE ENVELOPE IT WAS MAILED IN TO SEE WHOSE NAME WAS ON THE RETURN AND FORWARDING ADDRESS (Holms ADMITTED HE'S SEEN MY PHONE BOOK AND THE ADDRESSEES NAME IS NOT IN IT) AND BECAME SUSPICIOUSLY QUIET WHEN I ASKED "THEN WHO SENT THIS LETTER AND WHAT IS HIS RELATIONSHIP WITH THE RECEIVER? AND WHEN WAS THIS LETTER SENT ?? - AT THAT POINT I WAS DEPRIVED MY RIGHT TO PRESENT A REBUTAL (CCR 3378 ET SEQ 14TH AMEND.) AND EVIDENCE ESTABLISHING MY INNOCENCE (14TH AMEND) BECAUSE GUTIÉRREZ INTERJECTED STATING THEY DO NOT WANT TO TALK ABOUT THIS BECAUSE HE KNOWS FIVE YEARS FROM NOW THEY WILL BE SUED AND IN COURT WHILE THEIR STATEMENTS ARE ———

A. BECAUSE THIS IS A CRIME PUNISHABLE BY IMPRISONMENT - FINE OR BOTH - I AM CURRENTLY IN THE PROCESS OF FILING A CITIZENS COMPLAINT - AND A COMPLAINT WITH THE KINGS COUNTY ATTORNEY AND U.S DEPT OF JUSTICE SEEKING BOTH OF THESE OFFICERS PROSECUTION.
B. IN LIGHT OF THIS STATEMENT BEING FALSE THEN THE NEXT STATEMENT (ITEM 2) SHOULD ALSO NOT BE ACCEPTED BECAUSE UNDER CALIFORNIA LAW ONCE A WITNESS MAKES ONE FALSE STATEMENT ALL OTHERS MUST BE DISTRUSTED.
C. MY GIRLFRIEND, EX WIFE AND FAMILY ARE ALL PREPARED TO TESTIFY AND SUBMIT ALL OF MY LETTERS TO WHO EVER SHOWING THAT IS NOT MY SIGNATURE AND I HAVE NEVER ENDED MY LETTERS BY PRINTING THAT NAME IVE ALWAYS SIGNED "DANIEL" LIKE THIS "[signature]"

2                                    F. 169

BEING USED AGAINST THEM (IN OTHER WORDS THEY KNEW THEY WERE GUILTY OF PLANTING EVIDENCE AND DID NOT WANT TO INCRIMINATE THEMSELFS FURTHER)

I ALSO NOTED THAT THE LETTER WAS NOT GANG RELATED IT MENTIONED NO TALK OF REQUESTING TO RUN C-YARD AS HOLMS INITIALLY INDICATED - I ASKED QUIÑONEZ (WHO INITIALLY TOLD ME HE HAD SUCH A LETTER) WHETHER THIS LETTER STATED ANYTHING LIKE THAT? HE NOW BACKED UP AND SAID "I DONT KNOW, I'VE NEVER SEEN IT - ASK HIM (HOLMS)". AFTER A LONG PAUSE AND DODGING THE QUESTION, HOLMS SMILED AND FINALLY ADMITTED "NO THIS LETTER DOES NOT SAY THAT, I DONT HAVE A LETTER WHICH STATES THAT", THAT "AN INFORMANT" TOLD HIM I "WROTE SUCH A LETTER TO OCOTORENA"

THIS NOW PRESENTS SEVERAL CONSTITUTIONAL PROBLEMS - IN SUBMITTING OR ACCEPTING THIS ITEM(1) I WAS NEVER PROVIDED MY LIBERTY INTEREST UNDER THE 14TH AMENDS TO A FAIR NOTICE THAT THE LETTER WAS NON EXISTANT, BUT RATHER THAT IT WAS AN ALLIGATION FROM A "CI" (THE 1030 SAID THERE WAS A LETTER!), THUS I WAS DEPRIVED MY CONSTITUTIONAL RIGHT TO A FAIR NOTICE FOR A DEFENSE (CCR 3378(c)(6)(A)-(D)), WOLFF V. MC DONNEL 418 U.S. AT 564, THE FACT THAT I TRIED TO PRESENT A DEFENSE ONCE I LEARNED OF A CI IS IRRELEVENT, I SHOULD'VE BEEN TOLD 24 HOURS AHEAD OF TIME!(2) THE CONFIDENTIAL INFORMANT DID NOT PROVIDE A DATE AS TO WHEN THIS FICTISIOUS LETTER WAS WRITTEN - THIS IS PIVITOL BECAUSE WITHOUT A DATE MY LIBERTY INTEREST TO BE DESIGNATED INACTIVE WITHIN SIX YEARS (CCR 3341.5(C)(5)) WOULD BE VIOLATED - BECAUSE THERE IS NO WAY TO DETERMINE WHEN THE SIX YEARS END - ADDITIONALLY A DATE IS CRUSIAL BECAUSE THE "CI" DOES NOT SAY HE SEEN THE LETTER (NEITHER HAS IGI) INFACT THIS IS IMPOSSIBLE BECAUSE C-YARD HAS BEEN ON LOCK DOWN SINCE SEPT 2006 - JAN 2007 MY CELL MATE (AT THAT TIME) NEVER SPOKE TO IGI - I'VE IN ASU SINCE JAN 9-07 TILL THE PRESENT AND SINGLE CELLED THUS TO SAY HE SEEN ME WRITE THE LETTER WOULD BE FALSE AND BECAUSE I DENY IT THEN HIS STATEMENTS ARE HEARSAY WHICH PERSUANT TO MY LIBERTY INTEREST CANNOT BE USED FOR VALIDATION (CCR 3378(c)(8)(H) 14TH AMENDS (3) THE LAW IS CLEAR THAT "NO DESISION SHALL BE MADE BASED UPON INFORMATION FROM A CONFIDENTIAL SOURCE UNLESS OTHER DOCUMENTATION CORROBORATES INFORMATION FROM THE SOURCE" CCR 3321(b)(1)) OR UNLESS THERE WAS A FINDING THAT THE INFORMATION WAS TRUE (2)(b)(i)) NO SUCH FINDING WAS MADE - AND THE THING WHICH HOLMS/QUIÑONEZ ARE TRYING TO USE TO CORROBORATE THIS INFORMANT (IS A FORGED, UNRELATED LETTER WHICH ALSO IS NOT MINE - TO SHOW

D. AGAIN HOLMS AND QUIÑONEZ COMMITTED SEVERAL CRIMES(1) PROCURING OR OFFERING FALSE STATEMENTS FOR RECORD. CAL PEN. CODE 115(a)-(c)(182) FILING FALSE AFFIDAVIT AGAINST INNOCENT INMATE PEN. CODE 118a(2) PREPAIRING FALSE DOCU-MENTARY EVIDENCE PEN. CODE 134 - IN THEIR CONSPIRACY TO PERVERT JUSTICE PEN. CODE 182(3).
E. COMPOUNDING ITS FALSITY IS QUIÑONEZ/HOLMS ADMIT THEY READ ALL MY LETTERS THEY WOULD HAVE HAD SUCH A LETTER TO SHOW THE OSC et al... IF I HAD EVER WRITTEN ONE YET THEY NOW ADMIT THEY DONT !!!!!

P. 170

PREVIOUS LETTERS WERE WRITTEN) THE PROBLEM WITH USING -OFFERING- OR ACCEPTING THIS UNRELATED LETTER AS CORROBORATION, IS IT WOULD VIOLATE MY liberty INTEREST AND CONSTITUTE A CRIME PEN-CODES 115(a)(b)(C)(1)(2)(procuring OR OFFERING FALSE OR FORGED INSTRUMENT FOR THE RECORD) 118(a) (FILING -OFFERING, FORGED, ALTERED OR ANTE-DATED BOOK, DOCUMENT, RECORD) 134 (PREPAIRING FALSE DOCUMENTARY EVIDENCE) AND IT WOULD MAKE THE OSC -AND ANY ONE WHO SUBMITS OR ACCEPTS, THIS ITEM A PART OF THE "CONSPIRACY TO PERVERT OR OBSTRUCT JUSTICE OR DUE ADMINISTRATION OF LAW")

    FINALLY UNDER THE CASTILLO SETTLEMENT AND CCR 3378(C)(8)(H): 14TH AMENDS, SINCE IT IS WHAT AN INFORMANT SAID THAT IS BEING USED -IT CANNOT BE USED OR ACCEPTED AS A POINT AGAINST ME BECAUSE All THE INFORMANT did WAS GIVE MY NAME IN RELATION TO ANOTHER INMATE/LETTER, WITHOUT RELAYING TO ANY SPECIFIC ACTS OF MISCONDUCT THAT I did FOR THIS PERSON OR ANY ONE ELES! 3378(C)(8)(H): 3000, 3023 CASTILLO

    IN light OF THE ABOVE DEVELOPEMENTS- MY lACK OF NOTICE AND DEPRIVATION TO PRESENT MY FUL VIEWS I SUBMIT THIS STATEMENT Along WITH MY ORIGINAL OBJECTION TO BE MADE PART OF THE RECORD AND REQUEST THAT THE ITEMS BE REJECTED AND THAT ALL STEPS ARE TAKEN TO discipline FIRE, AND OR PROSECUTE HULMS AND QUIÑONEZ FOR THEIR CRIMES AGAINST ME.

    DATED MAR 13-07

                                        RESPECTFULLY SUBMITTED

                                        DANIEL MANRIQUEZ K-78581

                                                        4              F.171

STATE OF CALIFORNIA
CDC - 193 (1/88)

DEPARTMENT OF CORRECTIONS

# TRUST ACCOUNT WITHDRAWAL ORDER

Date _12 - 26_ 20_06_

To: Warden                    Approved _X. Lillis_

I hereby request that my Trust Account be charged $ _8.00_ for the purpose stated below and authorize the withdrawal of that sum from my account:

_K-78581_
NUMBER

NAME (Signature please, DO NOT PRINT)

State below the PURPOSE for which withdrawal is requested (do not use this form for Canteen or Hobby purchase).

PRINT PLAINLY BELOW name and address of person to whom check is to be mailed.

PURPOSE _Legal copies_

RECEIVED
DEC 26 2006

NAME _____

ADDRESS _____

_____

_Daniel Manriquez_
PRINT YOUR FULL NAME HERE

F. 172

K 78581
ASU-122U

DEAR WARDEN CLARK                                                    July 28-07

   ATTACHED is A HAND WRITEN COPY OF AN APPEAL I AM SUBMITTING TO THE APPEALS COORDINATOR[1] WHICH
AGAIN I KNOW HES NOT GOING TO PROCESS - THIS NOTE AND ATTACHMENT IS TO SIMPLY PROVIDE YOU
NOTICE OF A BROKEN APPELLATE SYSTEM AT SATF WHICH HAS A "SYSTIMATIC CODE OF SILENCE" AND
TO ALERT YOU THAT IT NEEDS TO BE REPAIRED.

   I AM CURRENTLY IN THE PROCESS OF PREPAIRING A MOTION / DECLARATION - TO BE SUBMITTED TO THE
NORTHERN DISTRICT[2] TO ESTABLISH THAT YOU ARE IN VIOLATION OF THE madrid V. Tilton C-90-3094 TEH
[FORMORLY KNOWN AS MADRID V. GOMEZ] BARRING A "CODE OF SILENCE" WITH IN CDCR - I WAS HOPING TO
RESOLVE THIS ISSUE WITHOUT JUDICIAL INTERVENTION ETC... BUT MY ATTEMPTS WITH THE APPEALS COORDINATORS &
CENTRAL SRV HAVE BEEN IN VAIN GIVEN MY APPEALS ET SEQ ARE OFTEN THROWN AWAY UNPROCESSED OR ECLIPSED
(PLEASE READ ATTACHED 602) THUS I HAVE NO ALTERNATIVE[3]

   SHOULD YOU CORRECT & ADDRESS THIS ISSUE BEFORE I FILE THE MOTION - THEN OBVIOUSLY I HAVE NO NEED
TO FILE IT. ALL I WANT IS FOR MY APPEALS TO BE PROCESSED IN ACCORDANCE WITH LAW, & MY RIGHTS NOT
TO BE TRAMPLED UPON BY THESE ROGUE COORDINATORS ET AL...

                                                    RESPECTFULLY SUBMITTED

1. EXHIBITS EXCLUDED

2. AND THE CALIFORNIA INSPECTOR GENERAL ET AL...

3. IT MAY BE WISE TO ADVISE YOUR APPEALS COORDINATORS THAT EVERY TIME I FILE AN APPEAL I MAKE
   A COPY OF IT - (I KNOW THEY THROW AWAY APPEALS - OR FAIL TO PROCESS THEM).

                                                    F.173

TO: THE APPEALS COORDINATOR FROM DANIEL MANRIQUEZ ASU 122.

PREVIOUSLY - I SUBMITTED TWO APPEALS TO YOU (1) CHALLENGING THE FAILURE TO GIVE ME A TIMELY COMMITTEE ETC. INSTEAD OF SUPPLING IT WITH A LOG# YOU SIMPLY PASSED IT TO COUNSELORS WHO PAST IT TO ONE ANOTHER AND IT SAT IN LIMBO FOR 3 MONTHS AT THE INFORMAL LEVEL! DISPITE A "10" DAY TIME RESTRAINT. WHICH THUS RESULTED IN IRREPARABLE HARM AS "T. MAY" ONCE SHE ANSWERED IT ADMITTED THERE WAS NOTHING SHE COULD DO - IT WAS TOO LATE.

I THEN RESUBMITTED THAT TO YOU FOR 1ST LEVEL PROCESSING. (2) I ALSO SUBMITTED A DIFFERENT APPEAL CHALLENGING THE ICC/UCC ETC.. DECISION OF JUNE 5-07 - YOU RETURNED BOTH OF THESE APPEALS TO ME TELLING ME TO CROSS OUT MENTION OF IGI ON THE FIRST ONE & ON THE SECOND ONE TO REMOVE A VITAL EXHIBIT. I FULLY COMPLIED AND RESUBMITTED. - HOWEVER INSTEAD OF YOU GIVING EACH APPEAL ITS OWN DISTINCT LOG# YOU SIMPLY GAVE THE FIRST ONE A LOG# (07-03222) & CONSOLIDATED THE OTHER AND GAVE BOTH TO RIVERA TO ANSWER- YET HIS ACTIONS WHERE IN PART BEING CHALLENGED ON THE 2ND ONE.

I HAVE PREVIOUSLY COMPLAINED TO YOU ABOUT DOING THIS (GIVING ONE LOG# FOR TWO SEPERATE APPEAL) BECAUSE IT RUNS THE RISK OF STAFF THROWING ONE AWAY OR LOOSING IT & THUS VIOLATING MY RIGHTS. TODAY IS A PRIME EXAMPLE: WHEN RIVERA CAME TO INTERVIEW ME FOR THE APPEAL I ASKED ABOUT THE 2ND APPEAL CHALLENGING ICC'S DECISION & HIS ACTIONS HIS RESPONCE WAS "AH--AH WHAT APPEAL?" I TOLD HIM "WHAT DO YOU MEAN WHAT APPEAL - THE APPEALS COORDINATOR GAVE YOU TWO APPEALS TO ANSWER UNDER THE SAME LOG#" I THEN SHOWED HIM SHOWED HIM A HAND WRITEN COPY OF IT. I KEEP FOR MY RECORDS" WHICH APPERENTLY SHOCKED HIM AS HIS FACE TURNED RED, HE SAID "AH..IT GOT LOST, I DONT KNOW WHERE ITS AT. JUST RESUBMIT ANOTHER ONE" OBVIOUSLY (AS HAS HAPPEND BEFORE & I TOLD YOU WOULD HAPPEN) HE TOSSED IT. HERES ANOTHER COPY OF THAT SAME APPEAL WITH ITS SAME DATE. PLEASE COMPLY WITH THE RULE OF LAW, GIVE IT ITS OWN LOG#. ITS CHALLENGING A COMMITTEE DECISION INCLUDING RIVERA SO IT CANT GO TO HIM - IT HAS TO HAVE ITS OWN LOG# AND CANT BE SENT TO INFORMAL LEVEL. (SEE TITLE 15!!) & ONCE AGAIN I ASK IN THE FUTURE PLEASE DONT CONSOLODATE APPEALS LIKE THIS — TO AVOID THIS PROBLEM

RESPECTFULLY SUBMITTED

DATED 8-15-07

1. PLEASE NOTE AS I TOLD YOUR WARDEN, THE MADRID COURT & INSPECTOR GENERAL WHEN COMPLAINING ABOUT THE FAULTY/BROKEN APPELLATE SYSTEM THAT I MAKE COPIES OF ALL APPEALS AND DOCUMENTS AS PROOF I SUBMITTED THEM BECAUSE I KNOW IT IS THE NORM HERE TO THROW SUCH ITEMS AWAY.

EXHIBIT
G-174

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region
1. SATF-Z
2. _____

Log No.
1. 07-3889
2. _____

Category
2

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| DANIEL MANRIQUEZ | K-78581 | | |

**A. Describe Problem:** WARDEN KEN CLARK, ASS WARDEN HUTCHENS, J. WARD & RIVERA, J.MAY & LEE AND ALL ICC MEMBERS VIOLATED MY FEDERAL DUE PROCESS RIGHTS/LIBERTY INTERESTS ET SEQ. BY DEPRIVING ME OF A MEANINGFUL HEARING, ORDERING FURTHER SEGREGATION & REFERANCE TO CSR FOR INDETERMINATE SHU TERM, THE DIRECTOR FDRH & WARDEN ARE LIABLE FOR BREACH OF CONTRACT, THEIR POLICIES, AND FOR FAILURE TO TRAIN & SUPERVISE. FACTS: ON 6-27-07, I WENT TO COMMITTEE, PRIOR TO ENTERING I SPOKE TO TIMMY - WHO TOLD ME, THAT SHE AND THE COMMITTEE HAD ALREADY MADE THEIR DECISION & SHE READ FROM A PREVIOUSLY TYP CHRONO, INDICATING THAT THE IGI CONCLUDED ITS INVESTIGATION, SUBMITTED TWO ITEMS WHICH CAUSED MY VALIDATION & THAT THE ICC WAS REFERRING ME TO CSR—INDORSING AN INDETERMINATE SHU. I TOLD TIMMY THAT I'M FIRST INTITLED TO A MEANINGFUL REVIEW AT THE COMMITTEE, BUT HER ACTIONS INCLUDING THAT OF ALREADY HAVING THE CHRONO/DESION TYPED OUT INDICATES THEY'VE ALREADY (CONT. AT J) ~

If you need more space, attach one additional sheet.

**B. Action Requested:** 1. REVIEW C-FILE TO CONFIRM ALLIGATIONS (2) CEASE VIOLATING MY RIGHTS (3) RELEASE ME FROM Adseg/SHU VACCATE DESISION TO TRANSFER TO SHU & ENFORCEMENT & ORDER NEW FAIR COMMITTEE (4) CEASE MAKING DECISIONS PRIOR TO ICC/UCC HEARINGS & ROTE REVIEWS BUT CONSIDER DOCUMENTATION/VIEWS PRIOR TO DECISIONS (5) ONLY RETAIN BASED ON "3" ITEMS OF ACTIVITY DEFINED IN CCR 3000, 3023 & REFER THE QUESTIONABLE ITEM BACK TO IGI/OCS FOR INVESTIGATION (6) DO NOT CONSIDER REJECTED ITEMS (7) DO NOT RETAIN INMATES NOT

Inmate/Parolee Signature: _____   Date Submitted: July 4-04 CONT. P.L

**C. INFORMAL LEVEL** (Date Received: _____ )

Staff Response:

~BYPASS~

Staff Signature: _____   Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

~BYPASS~

Signature: _____   Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

CSATF APPEALS
AUG 17 2007

ICC 8/15/0.
CSR 10/3/07

Gr·175

CSATF APPEALS

First Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: AUG 2 2 2007 _____ Due Date: 10-4-07

Interviewed by: A. Rivera CCII

SEE ATTACHMENT.

CSATF APPEAL

Staff Signature: _____ Title: CCII    Date Completed: SEP 18 2007

Division Head Approved:
Signature: _____ Title: AW(A)    Returned
Date to Inmate: 9/25/07

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response. DISSATISFIED THE REVIEWER DENIES DUE PROCESS BY FAILING TO CORRECT VIOLATIONS TO WHICH THEY HAVE NOTICE

I INCORPORATE AND REALLEGE ALL PREVIOUS ARGUMENTS - MY 602 WAS NOT FULLY GRANTED NOR ADDRESSED, IF I WAS ALOWED TO GIVE INPUT WHICH

WAS CONSIDERED THEN WHY DOES THE CHRONO SAY I HAD NO COMMENT - WHEN INFACT I GAVE VIEWS IN WRITING WHICH OBVIOUSLY WEREN'T CONSIDER

NEXT I WAS NOT DESIGNATED NOR FOR THAT I POSSED SECURITY THREAT CURRENTLY ACTIVE BY YOU OR ANYONE SO I SHOULD BE RETAINED - YOU SAY THIS DECISION IS ADVERSE - SO WHAT HAPPENED

TO MY DUE PROCESS RIGHTS UNDER WOLFF? IF THIS ITEM IS ACTIVITY THEN YOUR POLICIES ARE VAGUE & OVERBROAD. - NEXT YOU ALLEGE /ADMIT

YOUR'E SECYS LIENS RUBBERSTAMP - IT SHOWS NONE OF YOU IS ADEQUATELY TRAINED AND SUPERVISED ✱✱

Signature: _____    Date Submitted: OCT-2-07

Second Level    ☐ Granted    ☒ P. Granted    ☐ Denied    CSATF APPEALS

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: OCT 0 5 2007 _____ Due Date: 11-5-07

☒ See Attached Letter

Signature: Wishy, CCII    Date Completed: 11/7/07

Warden/Superintendent Signature: _____ ACDW    Date Returned to Inmate: CSATF APPEALS

RECEIVED
11-26-07

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response. DISSATISFIED - FISHER & BLACK - VIOLATED DUE PROCESS BY FAILING TO GRANT IN FUL THIS

602 - AND CORRECT THE CONSTITUTIONAL VIOLATIONS TO WHICH THEY HAVE NOTICE ! - NOT ONCE DID THEY

ADDRESS MUCH LESS DISPUTE - THAT THE ICC'S AT SATK ARE RUBBER STAMPED & HELD IN ROTE FASHION.

THEY VIOLATED MY RIGHTS AS ALLEGED IN THIS 602 BECAUSE THEY SHOULD'VE RELEASED ME GIVEN

THAT THE ITEM USED DOES NOT FALL WITH IN GANG ACTIVITY CCR3000.334/.5 ETC.; 3378 R(1)(R) - NOR

WAS THE CURRENT ACTIVE STATUS RESTORED WHICH WAS MANDATED PRIOR TO MY SHU ENDORSEMENT!

FOR THESE REASONS AND ALL THOSE ADDRESSED IN THE 602 -THIS AND MONETARY DAMAGES SHOULD'VE

BEEN GRANTED

Signature: _____    Date Submitted: NOV-26-07

NOV 0 8 2007

For the Director's Review, submit all documents to:    Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

0715533

‖‖‖‖‖‖‖ (barcode)

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

✱ BECAUSE LAW ALOWS ICC TO RELEASE ME CCR3341.5 ET SEQ... 3378E(L) - YOU HAD AN INDEPENDENT DUTY
TO REVIEW THE EVIDENCE NOT TO ACCEPT FINDINGS BY OTHERS AS CONCLUSIVE YOUR FAILURE IN THIS
RESPECT SHOWS YOU VIOLATED DUE PROCESS AND THAT THE ICC WAS A MEANINGLESS GUESS'TURE!

a-175

VP, I SGC A ANTE

...nds before I've went in, she answered "thats true" when I told her that I provided my views document-
...HER WOLFF v. MCDONALD to Rivera which I asked that he attach to the 128-B chrono & must be considered
...sion (see exhibit A for views provided to Rivera) she indicated "yes theres something attached to the 128
...the time for that - what does it say?" when I tried to explain it to her she stated thats not our problem
...e to take it up with IGI", when I told her it does concern them because under wolff, I have the right
...dered before any decision is made, that since one item was rejected, it cannot be considered, madrid v. gomez
...I have a right to be considered for release CCR 3341.5(A)(2) & since the OCS/IEIV never restored my 'current'
...e committee lacks authority to retain me, 3378(g)(b) she replied "okay but you were validated, so thats all we
...nsider anything eles, take this up with IGI I'm not going to sit here & argue with you" when I asked
...any committee members ever read CCR title 15 she replied "only when we have too", prior to going into
...came out & asked me to wave my rights to a 114 order, when I refused she had me returned to my cell & stated
...ext week", she then provided me a 114, indicating that rivera was ordering my segregation & established as shown
...e already made up their minds, they were relying on rejected evidence, were not going to consider me for
...views, but were just going to issue their sentence & endorse me to CSR (see C-file), on 7-2-07. B.lee told me
...as T.may & affirmed the segregation order (both C-file)

...went to ICC, my views/documentary evidence was not considered, they did consider rejected items except
...a double celling - I was not allowed to speak, nor considered for release, as stated above T.may just read from
...chrono indicating the committees decision, to sentence me to a SHU term & referred me to CSR.

...ue process entitles inmates to a meaningful review at ICC-which is not a pretext for indefinate confinement
...toussaint v. mccarthy. the fact that ICC had already made up its mind (as T.may admitted) & that they even
...typed out already (the 114 lock up orders also indicated what action they would take) establishes that my
...ght at the committee were meaningless (I wasen't allowed to speak) establishing that ICC was held in rote fashion
...m & pretext for indefinate confinement. their actions violated my liberty interest to consideration for release.
...s, 3341.5(A)(2) and because they failed to even consider my views & documentary evidence (see exhibit A and 128-B) the
...interest in having the questionable information sent to IGI for reinvestigation CCR 3378(c)(6)(C) (c) 3378(c)(7)

...ue process under wolff v. mcdonnell grants me the right to present documentary/you/my views to the ICC which must
...ore the decision is made. here I provided Rivera my documented views, T.may admitted that at no time did
...er them (I was not given a chance to speak) by T.may & lees admission, the 114 orders 'and given their decision
...established- that this right was violated as they had already made up their minds as to what action they'd
...gregeous, abuse of authority and violation of my rights & defense because the documents I provided establi
...s being illegally segregated - based on false, insufficient information, in violation of my rights - and that ICC
...to continue segregation (see exhibit A incorporated as fully set forth hereto) but yet the defendants, T.may/
...nore this & made their decision in violation of my rights!

...T.may, Rivera, lee & ICC violated my liberty interest, due process & court injunctions- because they based
...n decision in part based on an item rejected-found unreliable/insufficient by the OCS (see 114's C-file
...rejecting item one phone book) this cannot be done, see madrid v. gomez CCR 3321. et seq., 3378 et seq.

2

G 177  TURN PAGE →

THIS FURTHER SUPPORTS THEIR FAILURE TO COMPLY WITH CCR 3378(C)(6)(G) 3378(C) 7 & THAT THEY VIOLATED MY RIGHTS AS STATED ABOVE, OTHERWISE THEY WOULD HAVE KNOWN THIS ADDITIONALLY BECAUSE OF THEIR ACTIONS THEY FAILED TO CHECK IF THE LETTER WAS CAUGHT ON THE CI, did I STATE WHAT THE 1030 SAID, did THE CI INTERPERATE IT FOR THEM & SAY IT WAS MINE. IF SO THEY COULD NOT HAVE CONTINUED TO SEGRAGATE BECAUSE THE CI WAS UNCORROBORATED CCR 332 ET SEQ 334/.5 ET SEQ 3378 ET SEQ... BUT THEY HAD A DUTY TO RETURN THIS CASE BACK TO IGI FOR FURTHER INVESTIGATION CCR 3378(C)7)

/4TH VIOLATION: FINALY, RIVERA, LEE & ICC DESISION TO SEGRAGATE ME [INDETERMINATE] ENDORSE ME TO CSR FOR TRANSFER TO COR SHU, PBSP SHU, VIOLATES DUE PROCESS & MY LIBERTY INTEREST - BECAUSE ONLY THE OCS CAN DETERMINE IF I'M A CURRENTLY ACTIVE ASSOCIATE CCR 3378(G) WITHOUT THAM, "RESTORATION OF STATUS" I REMAIN "INACTIVE ASSOCIATE" & THESE DEFENDANTS LACKED AUTHORITY (SO DOES THE CSR) TO SEGRAGATE ME OR RETURN ME TO THE SHU CCR 3378(b) GIVEN THAT "CURRENTLY ACTIVE" IS A PREREQUISIT TO SUCH SEGRAGATION. Madrid SUPRA, TOUSSAINT V. YOCKEY SEE CASTILLO V. NEMEDA C-94-2841 [M.R.CN. 2005](CONCENT, STIPULATION, DECREE: REQUIRING GANG ACTIVITY AS DEFINED IN CCR 3000) WHICH THEY DONT HAVE, ASSOCIATION IS NOT ENOUGH THERE MUST BE "ACTIVITY" AS "DEFINED IN CCR 3000" AND SEE CCR 3378(C)(1)(X)2) WHICH IS CONSISTENT WITH CASTILLO & CCR 3378(C) WHICH ALOWS ASSOCIATES/MEMBERS WITHOUT ACTIVITY TO BE IN THE GPP, IF THEY'RE GOING TO RELY ON THE ITEM AS "ACTIVITY" THEN THE DIRECTOR/ORB & THOSE WHO MAKE POLICIES VIOLATED MY 1ST & 14TH AMENDMENT RIGHTS, BY UTILIZING & FAILING TO CLARIFIY VAGUE & OVER BROAD POLICIES/RULES CCR 334/. 5(C)(3)(E), 3378 ET SEQ... WHICH do NOT PROVIDE ME NOTICE AS TO PROHIBITTED CONDUCT RESULTING IN A SIX YEAR TERM.

5TH VIOLATION: TIMMY, RIVERA, LEE, THE WARDENS AND ICC, HAVE VIOLATED MY LIBERTY INTERESTS BY SEGRAGATING ME ON INSUFFICIENT EVIDENCE, SEE CCR 3378 REQUIRING THREE ITEMS OF GANG ACTIVITY "AS DEFINED IN CCR 3000, 334/. 5(C)(5)" 3378(C)(1)(X)2) A READING OF THESE REGULATIONS REQUIRE "3" ITEMS WITHIN SIX YEARS - INDEPENDENTLY ESTABLISHING ILLEGAL ACTS OF MISCONDUCT ON BEHALF OF THE GANG DEFENDANTS HAVE ONE ITEM, THE OTHERS ARE PAST THE SIX YEAR MINIMUM - AND NONE ESTABLISH THE RIQUISIT CONDUCT, ALTHOUGH CCR 3378(F) ALOWS MY RETURN BASED ON ONE ITEM, A READING OF THAT REGULATION & CCR 334/.5(C)(5) 3378(C)(1)(X)2) IN CONJUNCTION, REQUIRES THAT THE ITEM BE FOUN WITHIN THE 12 MONTH OBSERVATION PERIOD (WHICH IT WASN'T) OTHERWISE IT WOULD NOT TELL CDC TO CEASE THE INVESTIGATION IN 12 MONTHS, TRANSFER THE INMATE, & THEN REQUIRE 3 NEW ITEMS WITHIN 6 YEARS OF CURRENT ACTIVITY GIVING REFERENCE TO CCR 334/. 5(C)(5) SEE 3378(C)(1)(X)2).

6TH VIOLATION: THE ICC ET al... SEGRAGATION OF ME FOR 6 YEARS CCR 334/. 5(C)(5) BASED ON A LETTER VIOLATES FEDERAL DUE PROCESS & EQUAL PROTECTION BECAUSE I WAS NEVER PROVIDED THE SAME PANOPLY OF DUE PROCESS RIGHTS GRANTED TO OTHER INMATES FOR WORSE ACTIVITIES UNDER WOLFF V. MCDONAL CCR 3313-3320, BECAUSE IMPOSSING THE SHU TERM, IT ALSO VIOLATES MY 8TH AMENDMENT RIGHTS BECAUSE 6 YEARS TO LIFE FOR A LETTER IS DISPROPORTIONATE IN LIGHT OF MY HISTORY OF NO MISCONDUCT/WHEN COMPAIRED TO OTHER STATES & CONDUCT IN THIS STATE SUCH AS ASSULT ATTEMPTED MURDER OR MURDER.

-- 7TH VIOLATION: THE DIRECTOR, WARDENS & ORB IS EQUALLY LIABLE FOR THEIR FAILURE TO TRAIN & SUPERVISE. IN PARTICULAR TIMMAY ET al. DO NOT KNOW THEIR OWN POLICIES - SHE INDICATES THAT THE ICC, HERSELF ET al... HAVE NO CHOICE BUT TO SEND ME BACK TO THE SHU ETC... HOWEVER THIS SHOWS THAT THEY DON'T KNOW THEIR OWN RULES (CCR 3335 & 3336, 3339(A): 334/. 5(C)(Y)2)(B)(3), 3378(C)(1) 3378(C) SEE TOUSSANT V. MCCARTHY, TOUSSANT V. YOCKEY, Madrid, & CASTILLO) WHICH CONTRIBUTES TO THE CONSTITUTIONAL VIOLATIONS, AS NO ONE HAS ACTED TO TEACH THEM. 8TH VIOLATION THE ORB, WARDEN, AND ALL DEFENDANTS ABOVE HAVE VIOLATED MY RIGHTS & LIBERTY INTERESTS BY BREACHING THE TERMS OF A [ORB] CONTRACT (SEE C-FILE) SEE GOV. CODE 844.6(a): 814, WHICH ALOWS MY STATUS TO CHANGE TO ACTIVE & MY SHU RETURN IF I WRITE TO A MEMBER, COMMITTEE/POSSED SPECIFIC MATERIAL. THE ITEM USED DOES NOT FALL WITH THE CONTRACT CTEON REQUESTED CONT: DESIGNATED CURRENTLY ACTIVE (8) CONSIDER MY RELEASE AT ALL ICC/UCC. (9) ALOW ASSOCIATES/MEMBERS WITH OUT RECENT ACTIVITY CCR 3000, 3023 TO BE HOUSED IN THE GPP (10) CREATE CLEAR/FAIR REGULATIONS DEFINING "ACTIVITY (10) PROVIDE WOLFF PLOTECTIONS AT PRE-VALIDATION STAGES (11) CEASE DISPROPORTIONATE SHU TERMS FOR WRITEN MATERIAL ABSENT ACTIVITY CCR 3000, TRAIN SUPERVISE EMPLOYEES (12)

G-170

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the INFORMAL Level

*August 17, 2007*

*MANRIQUEZ, K78581*
*ASU100000000122U*

Log Number: SATF-Z-
(Note: Log numbers are not assigned to screen out appeals, or informal level appeals)

The enclosed documents are being returned to you for the following reasons:

*A limit of one continuation page, front and back, may be attached to the appeal to describe the problem and action requested in sections A and B of the CDC Form 602.  CCR 3084.2(a)(1).  Remove unnecessary documents and resubmit.*

*You are allowed one additional sheet, remove extra pages.*

Appeals Coordinator

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d).  This screening decision may not be appealed.  If you believe this screen out is in error, please return this form to the Appeals Coordinator with an explanation of why you believe it to be in error, and supporting documents.  You have only 15 days to comply with the above directives.

---

| PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE |

G 179

TO APPEALS COORDINATOR  I REMOVED THE EXTRA PAGES - EXCEPT THE REQUEST
FOR INTERVIEW - EXPLAINING HOW MY APPEAL WAS TOST AND NEED OF A LOG #
- THE · REVIEWER IS NOW ADVISED TO READ THE ATTACHMENTS TO THE
128 B IN GFILE - SINCE YOU HAD TO REMOVE AN EXHIBIT — NOW THAT
I'VE COMPLIED PLEASE PROVIDE LOG #   THANK YOU

Respectfully

DANIEL MANRIQUEZ
K-78581
ASU- CELL# 122-L

G 180

STATE OF CALIFORNIA 3:08-cv-02427-MHP    Document 1-5    Filed 05/12/2008    Page 3 of 22 DEPARTMENT OF CORRECTIONS AND REHABILITATION

CDC 128G (REV. 7/92)

| | | | | | HOUSING: ASU-122U |
|---|---|---|---|---|---|
| NO: | K78581 | NAME: | MANRIQUEZ | | |
| CUSTODY: | MAX | PS: | 58 | RC: 11/1/07 | ACTION: SPECIAL REVIEW, RETAIN |
| REL DATE: | LWOP | WG/PG: | D1/D | MHP: CLR | IN ASU PENDING TRANSFER, |
| | | EFF: | 1/9/07 | | ASSESS AN INDETERMINATE SHU |
| ASSIGN: | ASU | ETHNIC: | HIS | GPL: GED | TERM, REFER TO CSR FOR RX TX |

ACTION (continued): COR SHU/ALT PBSP SHU, CONTINUE MAX CUSTODY, D1/D EFF 1/9/07, DC WITH VALIDATED EME MEMBERS/ASSOCIATES, WA WITH CELLMATE.

I/M Manriquez, K78581 appeared before ICC this date for a Special Review. Dr. R. Jordan completed a mental health assessment and indicated 'S' is not a member of the MHSDS and stated the inmate's retention in AD SEG would not result in his decompensation. The Institutional Gang Investigator (IGI) pending investigation originally placed 'S' in AD/SEG on 1/9/07. Per 128B dated 3/7/06, IGI completed their investigation and submitted a validation package to Special Service Unit (SSU) for disposition for Validation as an Inactive Mexican Mafia Associate. On 2/28/07 while in ASU, 'S' received a RVR for Willfully Delaying a Peace Officer and was subsequently found guilty and assessed 90 days FOC consistent with a Division D offense.

On 4/16/07, SSU validated 'S' as an **Associate** of the **Mexican Mafia** prison gang utilizing two items for validation which are noted in 128B dated 3/10/07. Pursuant to the validation requirements established in Title 15, CCR 3378, 'S' requires transfer to a SHU facility for an indeterminate amount of time. 'S' was issued a new CDC 114D on 6/27/07 noting he meets criteria for an Indeterminate SHU term. B. Lee, Capt (A) conducted the administrative review on 7/2/07 at which time 'S' did not request witnessed or an Investigative Employee. All due process and procedural safeguards have been compiled with.

**COMMITTEE DECISION: RETAIN IN ASU PENDING TRANSFER, ASSESS AN INDETERMINATE SHU TERM, REFER TO CSR FOR RX TX COR SHU/ALT PBSP SHU, CONTINUE MAX CUSTODY, D1/D EFF 1/9/07, DC WITH VALIDATED EME MEMBERS/ASSOCIATES, WA WITH CELLMATE.**

**DOUBLE/SINGLE CELL REVIEW:** After review of all case factors, committee has elected to retain double cell with validated EME members/associates.

This transfer is considered adverse in nature and 'S' will retain MAX Custody and D1/D upon transfer.

**YARD REVIEW:** After review of all case factors, committee has elected to walk alone with cellmate.

**INMATE PARTICIPATION:** 'S' stated to committee members that he disagreed with committee and had no further questions or comments. 'S' appeal rights were explained.

**CASE FACTORS:** Refer to 128G dated 12/7/05 for full case factors. The CDC 812 has been reviewed and updated. The Confidential file has been reviewed and is noted.


J. HUTCHINS, CDW
CHAIRPERSON

T. MAY, CCI
PRESENTER

A. RIVERA, CCII
RECORDER

M. HACKER, FC (A)
MEMBER

R. JORDAN, DR, MH
MEMBER

J. LAWRENCE, ASST C&PR (A)
MEMBER

DATE: 7/3/2007        **ICC/AD-SEG     CLASSIFICATION**        INST: SATF
                                                                            ™

G 181

STATE OF CALIFORNIA
**DIVISION OF ADULT INSTITUTIONS**
ARNOLD SCHWARZENEGGER, GOVERNOR
**CALIFORNIA SUBSTANCE ABUSE TREATMENT FACILITY AND
STATE PRISON AT CORCORAN**
900 Quebec Avenue, P.O. Box 7100
Corcoran, CA 93212

**DATE:**          September 25, 2007

**TO:**            Inmate Manriquez, CDCR # K-78581

**SUBJECT:**       First Level Response

**APPEAL LOG NUMBER:**    SATF-Z-07-03889

**INTERVIEWED BY:**       A. Rivera, CCII

**APPEAL DECISION:**      Denied.

**APPEAL ISSUE:** You claim the Institutional Classification Committee (ICC) violated your Federal due process rights as you feel ICC did not provide you a fair, just review regarding your segregation and assessment of an Indeterminate Security Housing Unit (SHU) term for Gang Activity. You claim ICC made a decision regarding your case prior to the hearing. You feel ICC cannot segregate you or assess an Indeterminate SHU term based on your current gang validation as you feel the validation was done inappropriately.

You request ICC review your case and give you a fair hearing. You feel ICC should release you from segregation and vacate the Indeterminate SHU term assessed. You request training be provided to staff regarding ICC hearings and California Department of Corrections and Rehabilitation (CDCR) policy.

**APPEAL RESPONSE:** Your appeal was referred for First Level Review on 8-22-07. CCII A. Rivera interviewed you on 8-31-07 concerning any additional information you wish to add to your appeal and you stated there was no additional information. You explained your due process rights had been violated as ICC had made a decision concerning your case prior to the hearing and ICC did not consider your input during committee.

It is the responsibility of the Administrative Segregation Correctional Counselors (CCI) to prepare your case for presentation to ICC. Their main responsibility is to make an appropriate recommendation to ICC concerning your housing and program needs. Your CCI reviewed your case with you and advised you of their recommendation from their workup prior to ICC. ICC hears the CCI's recommendation and your input and makes a decision regarding your case. You were provided with all due process rights. You were issued a lock up order informing you that you would be retained in ASU pending ICC review as you met the requirements for an Indeterminate SHU based on your re-validation as an Associate of the Mexican Mafia per CCRC 3341.5.

ICC action dated 7-3-07 assessed an indeterminate SHU term based on your re-validation as an Associate of the Mexican Mafia. ICC agreed with the investigation completed by IGI, which submitted a Re-validation package to LEIU. LEIU reviewed the validation package and submitted 128-B2 dated 4-16-07 re-validating you as an active Associate of the Mexican Mafia. Two items were submitted for review, but only one met the criteria; nevertheless you still met the criteria for validation. ICC is not the place to appeal your validation by LEIU.

G 182

Inmate Manriquez, K78581
Appeal Log # SATF-Z-07-03889
Page 2 of 2

You had the right to appeal your validation. Based on your Current Gang status ICC made the appropriate recommendation. ICC elected to assess an indeterminate SHU term based on your Gang activity.

**APPEAL DECISION**:  Considering the above information, your appeal is **Denied** at the First Level of Review.

**Interviewer**
A. RIVERA
Correctional Counselor II
Administrative Segregation
CSATF/SP at Corcoran

Reviewer
K. ALLISON
Associate Warden
Complex I
CSATF/SP at Corcoran

CSATF APPEALS
SEP 2 6 2007

G\183

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION          ARNOLD SCHWARZENEGGER, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
California Substance Abuse Treatment Facility and State Prison at Corcoran
900 Quebec Ave.
P.O. Box 7100
Corcoran, CA 93212



November 7, 2007

Inmate Manriquez, K78581
California State Prison Corcoran
P. O. Box 8800
Corcoran, CA 93212

Second Level Response
Log # SATF-Z-07-03889

## ISSUE:

You contend that Institution Classification Committee (ICC) of July 3, 2007 violated
your due process rights by referring your case to the Classification Staff
Representative (CSR) for endorsement to a Security Housing Unit (SHU). You further
contend that your re-validation as an associate of the Mexican Mafia is incorrect. You
contend that three (3) points of validation should be required even though you had
been validated as 'inactive.' You request that staff stop violating your rights and you
be released from segregated housing. You further request a new committee be
ordered and ICC not conduct 'rote' reviews. You request to be retained only upon 3
'items of activity.' Finally, you request staff be trained and supervised and you be
rewarded compensatory and punitive damages by each defendant per day you are in
Administrative Segregation Unit (ASU) or SHU.

## INTERVIEWED BY:

A. Rivera, Correctional Counselor II (CCII) on August 31, 2007.

## REGULATIONS:

The rules governing this issue are taken from California Code of Regulations (CCR),
Title 15.

### CCR 3341.5. Segregated Program Housing Units.
### CCR 3378. Documentation of Critical Case Information.

## SUMMARY:

D. Fisher, Appeals Coordinator, investigated your appeal at the Second Level of
Review (SLR). The investigation revealed that an updated CDC 114D Administrative
Segregation Unit Placement Notice was issued to you on June 27, 2007. As noted in
the First Level Response (FLR) by CCII Rivera, your assigned Correctional Counselor
I (CCI) T. May, met with you to explain her recommendations for ICC. You were also

G 184

Manriquez, K78581
Log # Z-07-03889
Page 2

provided a CDC 128B-1 Notice of Classification Hearing dated June 27, 2007. ICC action of July 3, 2007 did in fact refer your case to the CSR for endorsement to COR-SHU with an alternate of PBSP-SHU for indeterminate housing based on a CDC 128B-2 dated April 16, 2007 from Special Services Unit (SSU) documenting you as a validated associate of the Mexican Mafia. The CSR review on August 1, 2007 noted due process issues and referred your case to the Chief Deputy Warden (CDW) for further review. A subsequent ICC was held on August 15, 2007, which noted that the CSR issues of August 1, 2007 had been addressed. ICC again referred your case to the CSR for endorsement on SHU indeterminate at COR or PBSP. The CSR reviewed your case and, on October 3, 2007, approved your transfer to PBSP-SHU via COR-SHU indeterminate.

All prescribed procedural safeguards of CCR 3341.5 and 3378 have been complied with.

**DECISION:**

Your appeal is **partially granted.** Partially granted in that your case was reviewed by a subsequent ICC on August 1, 2007. Your request for monetary/compensatory damages is beyond the scope of the appeals process. All other requests are denied. You may submit your appeal for the Director's Level of Review if desired.

KEN CLARK
Warden

CSATF APPEALS
NOV 0 8 2007

G185

**INMATE APPEALS BRANCH**

1515 S Street, Sacramento, CA 95814
P.O. Box 942883
Sacramento, CA 94283-0001



January 2, 2008

MANRIQUEZ, DANIEL, K78581
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

RE: IAB# 0715533    SATF-07-03889    CUSTODY/CLASS

Mr. MANRIQUEZ:

The Inmate Appeals Branch, California Department of Corrections and Rehabilitation (CDCR) acts for the Director, Division of Adult Institutions, at the third level of appeal. The Branch examines and responds to inmate and parolee appeals that are submitted on a CDC Form 602, Inmate/Parolee Appeal Form, after the institution or parole region has responded at the Second Level of Appeal.

Institution and parole staff are available to assist you in obtaining additional copies of forms and documents required to submit an appeal. The inmate library offers resources and assistance to obtain general information regarding regulations, procedures, policies, and government agency addresses. Additionally, your assigned Counselor or Parole Agent, or the Appeals Coordinator can answer any questions you may have regarding the appeals process. The Inmate Appeals Branch appreciates your responsible use of the appeal system to address your grievance.

The Inmate Appeals Branch has received an appeal from you and has determined that it does not comply with the appeal procedures established in California Code of Regulations (CCR) Title 15, Article 8, and is being screened-out and returned to you pursuant to CCR 3084.3 for the following reason(s):

Your appeal is incomplete, please include the following supporting documentation:

- CDC Form 128-G, Classification Chrono(s), Institution Classification Committee - dated 8/15/07
- CDC Form 128-G, Classification Chrono(s), Classification Staff Representative (CSR) - dated 10/3/07

N. GRANNIS, Chief
Inmate Appeals Branch

****PERMANENT APPEAL ATTACHMENT-DO NOT REMOVE****

G186

AT YOUR REQUEST I'm ATTACHING AND RESUBMITING THE TWO CRONOS
WHICH YOU'VE REQUESTED - PLEASE NOTE - THAT PURSUANT TO CCR 3084.3
ET SEQ... IT IS THE APPEALS COORDINATOR WHO IS RESPONSIBLE
FOR SCREENING OUT APPEALS AND REQUESTING CERTAIN CHRONOS - THAT
did NOT OCCURE HERE - BUT NEVER THE less IM complying

DATE JAN.13-07.

RESPECTFULLY SUBMITTED

DANIEL. MANR. QUEZ
   K-78581
PBSP SHU-C-2  218
P.O. BOX 7500
CRESCENT. CITY. CA. 95531.

G·187

APPEALING RECENT ASSULT ON ME BY MVHP-07 POLICIES ECT. + ANY INDORCEMENTS..

**INMATE/PAROLEE**
**APPEAL FORM** NOTICE OF INTENTION TO
CDC 602 (12/87) File 1983

Location: Institution/Parole Region    Log No.    Category
1. SATF-Z    1. 07-4318    2
2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

CZ-218L    Pelican Bay

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| DANIEL MANRIQUEZ | K-78581 | | |

A. Describe Problem: ALL ICC MEMBERS including RIVERA, HAVE VIOLATED MY FEDERAL DUE PROCESS & LIBERTY INTEREST RIGHTS et SEC. 14TH AMENDS. BY DEPRIVING ME OF A MEANINGFUL REVIEW, illegally ORDERING FURTHER SEGRAGATION & ANOTHER REFERENCE TO CSR FOR INDETERMINATE SHU TERM-dispite LACK OF AUTHORITY & PROPER PROTICAL-NOT BEING FOLLOWED THEY, THE WARDEN, THE DR & DIRECTOR ARE ALSO liABLE FOR BREACH OF CONTRACT, THE DIRECTOR and WARDEN ARE ALSO liABLE FOR THEIR FAILURE TO TRAIN & SUPERVISE THEIR EMPLOYEES IN THE ADMINISTRATION OF LAW, FACTS:- MY CASE WAS REFERED TO THE CSR FOR INDETERMINENT SHU TERM ENDORCEMENT, HOWEVER THE CSR REJECTED THE ENDORCEMENT FINDING MULTIPLE CONSTITUTIONAL VIOLATIONS (SEE EXHIBIT A) THEREBY ESTABLISHING THE FIRST COMMITTEE WAS A RUBBERSTAMP SHAM. I WAS TAKEN BACK TO COMMITTEE ON 8-15-07 PRIOR TO ENTERING COMMITTEE RIVERA SPOKE TO ME - HE SHOWED ME A COPY OF THE DESISION THAT THE COMMITEE WAS
(CONT. p. 3. INFRA)

If you need more space, attach one additional sheet.

B. Action Requested: 1. REVIEW C-FILE TO VERIFY ALIGATIONS, (2) RELEASE FROM AdSEG/SHU, (3) VACCATE ICC DESISION PROVIDE NEW FAIR AND LEGAL ONE WHICH CONSIDERS VIEWS ETC.- PRIOR TO DECISION (4) RETAIN ONLY ON 3 SUFFICIENT NEW ITEMS - REFER ALL QUESTIONABLE ITEMS TO IGI FOR INVESTIGATION. (5) CEASE DISPROPORTIONATE SHU TERMS, Alow ASSOCIATES/MEMBERS WITHOUT ACTIVITY CCR3000 TO BE IN G.P. (6) PROVIDE WOLFF PROTECTIONS AT PRIOR SHU STAGES (7) TRAIN SUPERVISE EMPLOYEES (8) ABIDE BY TERMS OF CONTRACT, (9) EACH DEFENDANT PAY ME SEPARATELY $100= IN COMPENSATORY dAMAGES- PER EVERY dAY I'm SEGRAGATED AND ANOTHER 100= PER dAY IN PUNITIVE dAMAGES

Inmate/Parolee Signature: _____    Date Submitted: Aug 20-07

C. INFORMAL LEVEL (Date Received: _____)

Staff Response: _____

BY PASS **BYPASS**

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

**BYPASS**

Signature: _____    Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

CONDITIONS IN THE SHU AdSEG- ARE WELL discribed & REALEGED (AS) IN MADRID.V. GOMEZ THEY impose AN ATYPICAL & SignifiCANT HARDSHIP IN RELATION TO THE ORDINARY INCIDENTS OF PRISON lIFE.

H-188
2

CSATF APPEALS

First Level     ☐ Granted     ☒ P. Granted     ☐ Denied     ☐ Other

SEP 1 3 2007

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: 10-26-07

Interviewed by: A. Rivera   cc/f

See Attached

Staff Signature: A. Rivera          Title: cc/f          Date Completed: _____

CSATF APPEALS

Division Head Approved: K. Allison          Title: _____     Returned: OCT 2 5 2007

Signature: _____          Title: _____          Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response. NOTE: 602 WAS FORWARDED TO ME NOV. 2 07 AT CORSHU. DISSATISFIED! I INCORPORATE AND REALLEGE ALL PREVIOUS ARGUMENTS- MY 602 SHOULD'VE BEEN GRANTED IN FULL, THUS RIVERA & K-ALLISON ET AL HAVE VIOLATED MY RIGHTS TO DUE PROCESS FOR FAILING TO CORRECT VIOLATIONS TO WHICH THEY HAVE NOTICE. -2ND ICC DID MAKE 1ST DECISION PRIOR TO MY GOING TO ICC-WHICH IS WHY YOUR CHRONO WAS ALREADY PREPARED- AT NO TIME WERE MY VIEWS CONSIDERED BECAUSE RIVERA TOSSED THEM- AS NOTED IN THE PREMADE CHRONO- IT SAID (WRONGLY) THAT I HAD NO COMMENT! -3RD THE REVIEWER IS WRONG AT NO TIME WAS I VALIDATED CURRENTLY ACTIVE THUS SEGREGATION/SHU'S RETENTION IS ILLEGAL CCR 3378(c)(h)!

Signature: _____          Date Submitted: NOV. 4-07

Second Level     ☐ Granted     ☐ P. Granted     ☒ Denied     ☐ Other

CSATF APPEALS

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: NOV 0 9 2007    Due Date: 12-12-07

☒ See Attached Letter

Signature: R. Don          Date Completed: 12-12-07

Warden/Superintendent Signature: D. Forbig          Date Returned to Inmate: _____

CSATF APPEA

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response. INCORPORATE AND REALLEGE ALL PREVIOUS ARGUMENTS AS FULLY SET FORTH HERETO -

DISSATISFIED - THE ABOVE REVIEWERS DENIED ME DUE PROCESS BY FAILING FULLY GRANT THE 602 AND CORRECT THE CONSTITUTIONAL VIOLATIONS TO WHICH THEY HAD NOTICE -1ST ONCE WAS EVERY ISSUE INVESTIGATED AND ADDRESSED - THE REVIEWER ASSERTS THAT I FAILED TO ADHERE TO THE TERMS OF THE AGREEMENT YET IT IS CLEAR THAT THE ITEM USED DID NOT FALL WITHIN THOSE TERMS! - ADDITIONALLY NOT ONCE DOES THE REVIEWS DISPUTE THAT I WAS NOT VALIDATED AS "CURRENTLY ACTIVE" THUS I MUST BE RELEASED -NOR DO THEY DISPUTE THAT THE COMMITTEES AS SAIF ET AL... ARE A SHAM - THEY VIOLATE WOLFF AS THE DECISION IS MADE PRIOR TO MY ENTERING AND GIVING A DEFENSE.

Signature: _____          Date Submitted: JAN. 1-08

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DIRECTOR'S ACTION:     ☐ Granted     ☐ P. Granted     ☐ Denied     ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

1. IF ICC ET AL... WISH TO CALL THE SEGREGATION ITEMS "CURRENT GANG ACTIVITY" THEN AGAIN THE POLICY AND DEFINITIONS ARE VAGUE AND OVERBROAD (1ST & 14TH AMEND) AS THEY FAILED TO GIVE NOTICE AS TO PROHIBITED CONDUCT - SUBJECTING ME TO A 6 YEAR TERM-!!

H-189

CONTINUED FROM p.1 SEC.A ANTE.....

MAKING. I POINTED OUT THAT THERE WERE MORE DUE PROCESS VIOLATIONS THAN THAT POINTED OUT BY THE CSR—NAMELY THAT MY VIEWS WERE NEVER SUBMITTED TO THE OCS CCR 3378(c)(6)(A)(E)—THAT PREJUDICIAL IRRELEVANT INFORMATION WAS SUBMITTED INSTEAD—I REMINDED RIVERA THAT I GAVE HIM A COPY OF MY VIEWS, DOCUMENTED—TO BE CONSIDERED BY THE COMMITTEE PRIOR TO MAKING ITS DECISION, THAT THIS IS PIVITAL BECAUSE IT CALLS INTO QUESTION THE ITEM USED—THUS I HAVE THE LIBERTY INTEREST IN EXPECTING THE COMMITTEE TO SEND THE ITEM BACK TO IGI/OCS SEE 3378(c)(7). HE TOLD ME THEY ARE NOT GOING TO DO ALL OF THAT—THAT THE DECISION HAS BEEN MADE, THAT THE ONLY REASON WE'RE GOING BACK IS BECAUSE, THE LAST COMMITTEE, THE y, THE IGI, AND OCS FAILED TO FOLLOW APPROPRIATE STEPS AND MAKE CERTAIN NOTATIONS—SO ALL THEY WERE DOING IS BRING ME BACK, TO MAKE CERTAIN ADDITIONS TO THE LAST CHRONO & RENDER THE SAME DECISION. I PROTESTED HOW CAN THIS ICC BE MEANINGFUL IF THEY'VE ALREADY MADE & TYPED THEIR DECISION BEFORE I'VE APPEARED?! I ADDRESSED THAT SAME OBJECTION TO THE ICC, AND ALSO POINTED OUT THAT THEY CANNOT ENDORSE ME BECAUSE ONLY THE OCS CAN "VALIDATE" & APPROVE A DOCUMENT BY STAMPING IT, CCR 3378 et seq. WHICH THEY DID NOT DO (EXHIBIT A) HENCE IT MUST BE REJECTED OR RETURNED TO THEM. ALSO THEY CANNOT RETAIN/ENDORSE ME BECAUSE ONLY THE OCS CAN VALIDATE ME "CURRENTLY ACTIVE"—CCR 3378(c)(10), 3378(a)(h) WHICH THEY NEVER DID—THE ICC/CSR LACK THE AUTHORITY TO MAKE THAT DESIGNATION(Ibid) ICC ERRONEOUSLY DISAGREED—& THEN INDICATED VALIDATION IS ALL THEY NEED—I GAVE THEM REFERANCE TO CCR 3378(c)(4)(X)(2), 3378(d)(a)(h) AND THE CASTILLO CONSENT DECREE, ESTABLISHING THAT ASSOCIATION IS INSUFFICIENT "CURRENTLY ACTIVE-GANG ACTIVITIES" DEFINED AS KNOWINGLY COMMITTING ILLEGAL ACTS OF MISCONDUCT ON BEHALF OF THE GANG" CCR 3000, 3023. MUST BE THE BASIS OF THE RETENTION VALIDATION—SHE SAID "ANYTHING ELES?" I TOLD HER I WOULD LIKE MY WRITTEN VIEWS (PROVIDED TO RIVERA) TO BE CONSIDERED AND NOTED ON THE 128 B, BEFORE ANY DECISION IS MADE. SHE SAID NO, WE'LL JUST ADD THAT YOU DISAGREED WITH THE COMMITTEES DECISION."

1ST VIOLATION: THE ICC, IGI et al... LACKED THE AUTHORITY TO VALIDATE & SEGREGATE ME. ONCE THE CSR DETERMINED THAT THE OCS FAILED TO STAMP THE DOCUMENT AS MEETING VALIDATION CRITERIA, THEY HAD NO RIGHT TO STAMP IT THEMSELFS—I HAD A LIBERTY INTEREST IN IT BEING SENT BACK TO THE OCS. [OR REJECTED] GIVEN THAT ONLY THE OCS CAN VALIDATE CCR 3378(c)(4)(X)(E), 3378(a)(h), ADDITIONALLY—THE OCS OBVIOUSLY DID NOT STAMP IT AS SATISFYING THE CRITERIA: BECAUSE IT DID NOT FALL WITHIN "GANG ACTIVITY AS DEFINED IN CCR 3000" CCR 3378 (C)(4)(2), 3378(a)(h). 2nd VIOLATION: ICC, CSR FAILED TO INSURE DUE PROCESS WAS SATISFIED PRIOR TO MAKING THEY'RE DECISION AS I POINTED OUT IN MY DOCUMENTED VIEWS (SEE VIEWS ATTACHED TO 128 B IN C-FILE), I WAS NEVER PROVIDED A 14 DAY ADVANCE NOTICE AND COPY OF EVIDENCE SUBMITTED TO THE OCS—NOR WERE MY VIEWS SUBMITTED IN VIOLATION OF MY LIBERTY INTEREST CCR 3378(c)(6)(A)(E)—YET RATHER THAN SENDING THE CASE BACK TO IGI FOR FURTHER INVESTIGATION IN COMPLIANCE WITH MY LIBERTY INTEREST CCR 3378(c)(7)—THEY CONTRIBUTE TO THE CONSTITUTIONAL VIOLATION, BY ACCEPTING THE VALIDATION, ORDERING INDETERMINATE SEGREGATION & SHU ENDORSEMENT.

3RD VIOLATION: ICC, CSR et al.. VIOLATED MY LIBERTY INTEREST, BY "DESIGNATION" AND SEGREGATION—BECAUSE THEY LACK THE AUTHORITY TO DESIGNATE ME CURRENTLY ACTIVE, THAT CAN ONLY COME FROM, THE OCS CCR 3378(a)(h) WHICH THEY DIDN'T DO (SEE C-FILE) THIS IS OBVIOUS BECAUSE THE ITEM USED IS INSUFFICIENT TO ESTABLISH ILLEGAL ACTS OF MISCONDUCT ON BEHALF OF THE GANG CCR 3378(c)(4)(2): 3000, 3023.

4TH VIOLATION: FEDERAL DUE PROCESS ENTITLES INMATES A MEANINGFUL REVIEW AT ICC, WHICH ISN'T A PRETEXT FOR INDEFINATE CONFINEMENT HEWITT, HELMS; TOUSSAINT V. MCCARTHY, THE FACT THAT RIVERA, ICC (ONCE REFUSED BY CSR) SIMPLY RETYPED ITS OLD DECISION—AND ADDED A FEW CHANGES—PRIOR TO MY ENTERING COMMITTEE, ESTABLISHES THAT MY RIGHT TO A MEANINGFUL REVIEW—OR EVEN PRESENCE WAS RENDERED MEANINGLESS/VIOLATED! INDEED AFTER I VOICED ALL MY CONCERNS & ASKED THAT THEY BE DOCUMENTED OR THAT AT LEAST THE DOCUMENTATION/VIEWS THAT I PROVIDED TO RIVERA BE APPENDED TO THE 128 B ICC CHRONO.—HOWEVER THEY (SINCE THEY HAD THEIR DECISION ALL TYPED OUT) REFUSED AND STATED THEY WOULD MERELY ADD "I disagreed" WHICH PROVES THAT ICC'S HERE ARE HELD IN ROTE FASHION; A MEANINGLESS SHAM & PRETEXT FOR INDEFINATE CONFINEMENT, IT ALSO VIOLATED MY LIBERTY INTEREST TO BE CONSIDERED

H-190

3335, 3336, 3339(A), 3341.5 (A)(2), 3341.5(13) TOUSSAINT (MANDATE) AND (2) BECAUSE THEY FAILED TO CONSIDER MY VIEWS
INDEED ITS NO LONGER IN MY C-FILE - RIVERA TOSSED IT
NDENCE, THEY VIOLATED MY LIBERTY INTEREST IN HAVING QUESTIONABLE INFORMATION RETURNED TO IGI FOR INVESTIGATION
8G(7). 5TH VIOLATION: DUE PROCESS UNDER WOLFE V. McDONNELL, GRANTS ME THE RIGHT TO [] PRESENT DOCUMENTARY
                                                                                                          WHICH
ICC, FOR CONSIDERATION PRIOR TO THEIR MAKING ANY DECISION (I PROVIDED DOCUMENTATION TO RIVERA) WAS NEVER
                                                                                                          USED IT
AT VIEWS WERE IN VAIN - GIVEN THEY ALREADY HAD THEIR DECISION TYPED OUT - INDEED MY VIEWS WERE NOT GOING
= CHRONO - THEY'RE ONLY ADDING I DISAGREED - AND HAD NOTHING TO ADD, WHICH IS AN ABUSE OF POWER AND CALOUSE
RIGHTS - GIVEN MY DEFENSE (VIEWS/DOCUMENTATION) WAS VALID (SEE DOCUMENTATION STAPLED TO 128B)(C-FILE)WHICH
TE LACK OF AUTHORITY TO SEGRAGATE & AND THAT SEGRAGATION IS BASED ON FALSE INSUFFICIENT, IRRELIABLE INFORMATION,
VIOLATED FEDERAL DUE PROCESS & LIBERTY INTERESTS, BECAUSE THEY ACCEPTED AS CONCLUSIVE IGI'S FINDINGS WITHOUT
LETTER TO SEE IF I WROTE IT, WHETHER IT ACTUALLY SAID I WAS ASKING PERMISSION TO RUN C-YARD - OR WHETHER IT
JELS ON AN INFORMANT - BEING MAILED TO HIS HOME & NOW HE'S SHIFTING BLAME AND INTERPRETING IT FOR IGI - WHICH
VALIDATION/SEGRAGATION ILLEGAL BECAUSE THE CI IS UNCORROBORATED CCR 3321 ET SEQ -, 3341.5 ET SEQ -, 3378 ET SEQ -, &
TY INTEREST IN HAVING IT RETURNED TO IGI CCR 3378(C)(7). 7TH VIOLATION: ANY ICC ET AL- DECISIONS TO SEGRAG-
IE TO THE SHU, VIOLATES LIBERTY INTERESTS - GIVEN THAT SINCE ONLY THE DCS CAN (BUT FAILED TO) DESIGNATE ME CURRENTLY
ALL WARDENS, ICC, CSRS LACK AUTHORITY TO SEGRAGATE/INDORCE TO THE SHU CCR 3378(H) : MADRID (INJUNCTION) : TOUSSAINT. V.
SHOT THE RESTORATION OF STATUS I REMAIN "INACTIVE" - AND THE ABOVE CASES, CITATIONS BELIE THE ASS WARDENS STATEMEN
SUFFICIENT - ESPECIALLY GIVEN CASTILLO AND REGULATIONS REQUIRE "ACTIVITY" AS DEFINED IN CCR 3000 "CCR3378(C)(X)2), INDEED
AS WITHOUT "ACTIVITY" CAN BE HOUSED IN THE G.P. CCR 3378(D), IF THE ITEM USED IS ACCEPTED AS "ACTIVITY" THEN, POLICY
,1ST AND 14TH AMENDMENT RIGHTS BY UTILIZING & FAILING TO CLAIRIFY VAGUE & OVERBROAL DEFINITIONS, POLICIES, RULES 334/
WHICH DO NOT PROVIDE ME NOTICE AS TO PROHIBITED CONDUCT RESULTING IN A SIX YEAR SHU TERM.
I WARDENS, ICC'S CSRS ETC - ARE VIOLATING MY LIBERTY INTERESTS BY SEGRAGATING ME ON INSUFFICIENT EVIDENCE CCR3378(C)(6)(C) RE-
MS OF GANG ACTIVITY "AS DEFINED IN CCR 3000, 3341: 5(C)(5)" CCR 3378(C)(1)(2) A READING OF THESE REGULATIONS REQUIRES EACH
WIN 6 YEARS INDEPENDENTLY ESTABLISHING ILLEGAL ACTS OF MISCONDUCT ON BEHALF OF THE GANG, THEY ONLY HAVE ONE ITEM WITHIN
S ARE OVER 10 YEARS OLD & NO ITEMS ESTABLISH THE REQUISITE CONDUCT, ALTHOUGH CCR 3378(F) ALLOWS MY RETURN BASED ON ONE
IHAT REGULATION AND 3341.5(C)(5): 3378(C)(X)(2) IN CONJUNCTION REQUIRES THE ITEM TO HAVE BEEN FOUND WITHIN THE 12
ERIOD (WHICH IT WASN'T) OTHERWISE IT WOULDN'T DEMAND THE OBSERVATION TO CEASE IN 12 MONTHS, WITH TRANSFER - AND
3 ITEMS OF GANG ACTIVITY GIVING REFERENCE TO CCR 3000, 3341.5(C)(5) SEE 3378(C)(10)(2). 9TH VIOLATION: ICC ET AL..
OR A LETTER VIOLATES FEDERAL DUE PROCESS, EQUAL PROTECTION & CRUEL UNUSUAL CLAUSES, GIVEN THEY SAY DECISION IS
YET I WAS NEVER PROVIDED THE SAME WOLFE & CCR 3313-20 PROTECTIONS AS PROVIDED TO OTHER INMATES FOR WORSE
ITIVE TERM. ALSO SIX YEARS TO LIFE FOR A LETTER IS DISPROPORTIONATE WHEN COMPARED TO (1) OTHER STATES SHU TERM
(2) TERMS IN THIS STATE FOR WORSE CONDUCT (ASULT, ATTEMPTED MURDER, MURDER) AND(3) MY LACK OF DISCIPLINARY HISTORY.
: DRB, DIRRECTOR & WARDEN, CONTRIBUTED TO THESE VIOLATIONS FOR THEIR FAILURE TO TRAIN & SUPPERVISE, RIVERA & ALL
IN THEIR OWN POLICIES: THEY CLAIM VALIDATION IS ALL THEY NEED AND HAVE NO CHOICE BUT TO IMPOSE THE SHU
: THEY'VE NEVER READ/HEARD OF CASTILLO, MADRID, TOUSSAINT V. MCCARTHY, TOUSSAINT V. YOCKEY. CCR 3335(A) 3336,
(C)(3): 3378(C)(6)(G): 3378(C)(7) 3378(D). THEIR FAILURE TO ACT EXASERBATES THE VIOLATION, 11TH VIOLATION: ALL PARTIES
LIBERTY INTEREST & BREACHED THE TERMS OF A DRB CONTRACT (SEE C-FILE) GOV. CODE 844.6(A): 814 WHICH ONLY PERMITS
ND SHU RETURN IF I WROTE A MEMBER OR POSSESSED CERTAIN ITEMS, THIS ITEM DID NOT FALL WITHIN THOSE TERMS

STATE OF CALIFORNIA Case 3:08-cv-02427-MHP    Document 1-5    Filed 05/12/2008    Page 14 of 22 DEPARTMENT OF CORRECTIONS AND REHABILITATION

CDC 128G (REV. 7/92)

| | | | | | | |
|---|---|---|---|---|---|---|
| NO: | K78581 | NAME: | MANRIQUEZ | | | HOUSING: ASU-122U |
| CUSTODY: | MAX | PS: | 58 | RC: | 11/1/07 | ACTION: SPECIAL REVIEW, RETAIN |
| REL DATE: | LWOP | WG/PG: | D1/D | MHP: | CLR | IN ASU PENDING TRANSFER, |
| ASSIGN: | ASU | EFF: | 1/9/07 | GPL: | GED | ASSESS AN INDETERMINATE SHU |
| | | ETHNIC: | HIS | | | TERM, REFER TO CSR FOR RX TX |

HOUSING: ASU-122U
ACTION: SPECIAL REVIEW, RETAIN IN ASU PENDING TRANSFER, ASSESS AN INDETERMINATE SHU TERM, REFER TO CSR FOR RX TX COR SHU/ALT PBSP SHU, CONTINUE MAX CUSTODY, D1/D EFF 1/9/07, DC WITH VALIDATED EME ONLY, WA WITH CELLMATE.

I/M Manriquez, K78581 appeared before ICC this date for a Special Review. E. Stoneburg LCSW completed a Mental Health Assessment and indicated 'S' is not a member of the MHSDS and stated the inmate's retention in AD SEG would not result in his decompensation. The Institutional Gang Investigator (IGI) originally placed 'S' in AD/SEG on 1/9/07 pending investigation. Per 128B dated 3/7/06, IGI completed their investigation and submitted a validation package to Special Service Unit (SSU) for disposition for Validation as an Inactive Mexican Mafia Associate.

On 4/16/07, LEIU validated 'S' as an **Associate** of the **Mexican Mafia** prison gang utilizing two items for validation which are noted in 128B dated 3/10/07. Pursuant to the validation requirements established in Title 15, CCR 3378, 'S' requires transfer to a SHU facility for an indeterminate amount of time. 'S' was issued a new CDC 114D on 6/27/07 noting he meets criteria for an Indeterminate SHU term. On 7-3-07, ICC referred 'S's case to the CSR recommending indeterminate SHU and transfer due to re-validation as an active EME associate. On 8-1-07 the CSR deferred the case due to: There is no evidence a CDC 1030 was issued to S relative to confidential memo as required, The CDC 812A needs to reflect all validation documents from both CDC 128B-2s dated 4-16-07 and 9-9-03, Confidential memo hasn't been stamped as a validation document and confidential memos dated 2-9-07 and 4-18-07 needed to be evaluated for enemy concerns. The CSR concerns have been addressed and 'S' file is ready for referral to the CSR for transfer and approval indeterminate SHU. CDC 1030 have been located and placed into C-File, 812A has been corrected by IGI, Confidential memorandum dated 2-9-07 has been stamped as a validation document, and confidential memos dated 2-9-07 and 4-18-07 have been reviewed for enemies. All due process and procedural safeguards have been compiled satisfied. This transfer is considered adverse in nature and 'S' will retain MAX Custody and D1/D upon transfer.

**COMMITTEE DECISION: RETAIN IN ASU PENDING TRANSFER, ASSESS AN INDETERMINATE SHU TERM, REFER TO CSR FOR RX TX COR SHU/ALT PBSP SHU, CONTINUE MAX CUSTODY, D1/D EFF 1/9/07, DC WITH VALIDATED EME MEMBERS/ASSOCIATES, WA WITH CELLMATE.**

**DOUBLE/SINGLE CELL REVIEW:** After review of all case factors, committee has elected to retain double cell with validated EME members/associates.

This transfer is considered adverse in nature and 'S' will retain MAX Custody and D1/D upon transfer.

**YARD REVIEW:** After review of all case factors, committee has elected to walk alone with cellmate.

**INMATE PARTICIPATION:** 'S' stated to committee members that he disagreed with committee and had no further questions or comments. 'S' appeal rights were explained.

**CASE FACTORS:** Refer to 128G dated 12/7/05 for full case factors. The CDC 812 has been reviewed and updated. The Confidential file has been reviewed and is noted.

J. WARD, CDW
CHAIRPERSON

A. RIVERA, CCII
RECORDER

J. Reynoso, FC
Member

E. Stoneburg, LCSW
Member

K.D. Elliot, Asst C&PR
Member

DATE:   8-15-07          **ICC/AD-SEG     CLASSIFICATION**                      INST: SATF

H.192    AR

Dr.m.
ASU 122U  MAY
State of California

Department of Corrections
CDC 128-G

NAI MANRIQUEZ

No. K-78581

*Comment*:  **REFER TO CDW.**

CDC 128-B-2 4/16/07 is noted.  CM 2/9s utilized by OCS as a validation document to revalidate S as an active gang associate.

- There is no evidence a CDC 101 issued to S relative to this CM, as required.
- CM 2/9/07 hasn't been stamped validation document.
- The CDC 812-A needs to refl alidation documents from both CDC 128-B-2 4/16/07 and CDC 128-B-2 9/9/03.
- Review CM 2/9/07 for enemy.
- Review CM 4/18/07 for enemas.

**Return to CSR no later than 8/31/2 status update.**

SR

cation  - CSR ACTION                        SATF

Date: 8/1/2007

HIBIT A

H 193

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATIONARNOLD SCHWARZENEGGER, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
**CALIFORNIA SUBSTANCE ABUSE TREATMENT FACILITY AND**
**STATE PRISON AT CORCORAN**
900 Quebec Avenue, P.O. Box 7100
Corcoran, CA 93212

       **DATE**:      October 18, 2007

       **TO**:       Inmate Manriquez, CDC # K-78581

       **SUBJECT**:   First Level Response

**APPEAL LOG NUMBER**: SATF-Z-07-04318

**INTERVIEWED BY**:  A: Rivera, CCII

**APPEAL DECISION**:    Denied.

**APPEAL ISSUE**:    You claim the Institutional Classification Committee (ICC) violated your rights as you feel ICC did not provide you a fair, just review regarding your segregation and assessment of an Indeterminate Security Housing Unit (SHU) term for Gang Activity. You claim ICC made a decision regarding your case prior to the hearing. You feel ICC assessed the Indeterminate SHU inappropriately due to CSR remarks noted on 128G dated 8-1-07 concerning casework which needed completion. You request monetary payment for the alleged violations.

You request ICC review your case and give you a fair hearing. You feel ICC should release you from segregation and vacate the Indeterminate SHU term assessed. You request training be provided to staff regarding ICC hearings and California Department of Corrections and Rehabilitation (CDCR) policy.

**APPEAL RESPONSE**: Your appeal was referred for First Level Review on 9-13-07. CCII A. Rivera interviewed you on 9-19-07 concerning any additional information you wish to add to your appeal and you stated there was no additional information.

It is the responsibility of the Administrative Segregation Correctional Counselors (CCII) to prepare your case for presentation to ICC. Their main responsibility is to make an appropriate recommendation to ICC concerning your housing and program needs. On 8-1-07, the CSR reviewed your case to insure that your due process concerning your gang revalidation was completed appropriately. The CSR noted corrections which needed to be made prior to your case being endorsed by the CSR. On 8-15-07, ICC reviewed your case and noted the corrections requested by the CSR have been satisfied. Your case was returned to the CSR for review on 10-4-07 and the CSR approved your Indeterminate SHU term assessed by ICC on 8-15-07 for your revalidation as a member of the Mexican Mafia. Your counselor reviewed your case with you and advised you of their recommendation from their workup prior to ICC. ICC hears the counselor's recommendation and your input and makes a decision regarding your case. You were provided with all due process rights. You were issued a lock up order informing you that you would be retained in ASU pending ICC review as you met the requirements for an Indeterminate SHU based on your re-validation as an Associate of the Mexican Mafia per CCRC 3341.5.

ICC action dated 7-3-07 and 8-15-07 assessed an indeterminate SHU term based on your revalidation as an associate of the Mexican Mafia. ICC agreed with the investigation completed by IGI which submitted a Revalidation package to LEIU. LEIU reviewed the validation package and submitted 128-B2 dated 4-16-07 revalidating you as an active Associate of the Mexican

H·194

Inmate Manriquez, K78581
Appeal Log # SATF-Z-07-004318
Page 2 of 2

Mafia. Two items were submitted for review, but only one met the criteria, nevertheless you still met the criteria for Validation. ICC is not the place to appeal your Validation by LEIU. You had the right to appeal your Validation. Based on your Current Gang status ICC made the appropriate recommendation. ICC elected to assess an indeterminate SHU term based on your Gang activity.

Monetary compensation is beyond the scope of the appeals process.

**APPEAL DECISION**: Considering the above information, your appeal is **Denied** at the First Level of Review.

**Interviewer**
A. RIVERA
Correctional Counselor II
Administrative Segregation
CSATF/SP at Corcoran

**Reviewer**
K. Allison
Associate Warden
Complex I
            CSATF/SP at Corcoran

CSATF APPEALS
OCT 2 5 2007

H·195

STATE OF CALIFORNIA – DEPARTMENT OF CORRECTIONS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

**DIVISION OF ADULT INSTITUTIONS**
California Substance Abuse Treatment Facility and State Prison at Corcoran
900 Quebec Ave.
P.O. Box 7100
Corcoran, CA 93212



December 12, 2007

Inmate Manriquez, K78581
California Substance Abuse Treatment
Facility and State Prison at Corcoran
P. O. Box 7100
Corcoran, CA 93212

Second Level Appeal Response
Log # SATF-Z-07-04318

## ISSUE:

You contend myself and the members of the Institutional Classification
Committee (ICC) of 8-15-07 violated your due process rights. Specifically, you
contend the ICC of 8-15-07 made a decision prior to you being brought before the
ICC.    You also contend the ICC of 8-15-07 inappropriately assessed an
Indeterminate SHU term due to the remarks of the Classification Staff
Representative (CSR) of 8-1-07 (see attached 128G). You are requesting 1) your
central file be reviewed; 2) you be released from the Administrative Segregation
Unit/SHU; 3) the ICC decision be vacated; 4) all questionable items be referred to
the Institutional Gang Investigator; 5) cease the disproportionate SHU term; 6)
provide Wolff protection at prior SHU stages; 7) train employees; 8) abide the terms
of the contract and; 9) that you be monetarily compensated.

## INTERVIEWED BY:

A. Rivera, Correctional Counselor II, on 9-19-07.

## REGULATIONS:

The rules governing this issue are taken from the CCR, Title 15:

**CCR 3375. Classification Process.**
**CCR 3341.5. Segregated Program Housing Units.**
**CCR 3378. Documentation of Critical Case Information.**

## SUMMARY:

R. Gomez, Appeals Coordinator, investigated your appeal at the Second Level of
Review. The investigation revealed you did not abide by the Notice of Conditions of
Inactive Validation and you were re-validated as a Mexican Mafia Prison Gang
associate. A reliable source was used to re-validate you: confidential memorandum
dated 2-9-07 (communications and informants). The ICC noted the CSR concerns
on    the    128G    dated    8-1-07    and    acknowledged    that    they    had    been

H·196

Manriquez, K78581
Appeal Log # Z-07-04318
Page 2

addressed/corrected.    With that, the ICC of 8-15-07 acted appropriately. Additionally, the Classification Staff Representative of 10-3-07 endorsed you to Pelican Bay State Prison SHU via Corcoran State Prison SHU to serve an Indeterminate SHU term.

**DECISION:**

The appeal is denied.  The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

KEN CLARK
Warden

CSATF APPEALS
DEC 1 7 2007

H·197

I WAS TRANSFERED FROM SATF (WHERE THE 602 ORIGINATED & WAS BEING RESPONDED TO)
TO CORCORAN SHU — TO PELICAN BAY SHU — SATF ANSWERED AND SENT THIS
602 TO COR SHU ON DEC.17-07 — CORCORAN SHU FORWARDED IT TO ME AND
I GOT IT ON JAN.-08 - AND AM SUBMITTING IT TO YOU THE SAME DAY THUS
THIS IS A TIMELY ACTION.

RESPECTFULLY SUBMITTED

H. 198

State of California                                                                Department of Corrections
                                                                                           CDC 128-G

No. K-78581                         **NAME**: MANRIQUEZ

*Comment*:     **PBSP-SHU endorsed via COR-SHU to serve an Indeterminate SHU term. CS = 58.**

SHU Indeterminate endorsed by previous CSR action. Previous CSR concerns, as noted in CSR action dated
9/27/07, have been addressed. LIFE Without Parole Status is noted. Madrid chrono of 8/15/07 noted. TB
Code is 22. CDC 812 is noted. Confidential file is noted.
PBSP SHU is currently closed to intake. Per Departmental policy, prison gang associates/members are to be
housed at PBSP. He should be transferred to COR-SHU enroute to PBSP SHU. He is to be placed on the
waiting list at COR for PBSP-SHU, and transferred when a bed/bus seat becomes available.
**Retention in ASU is approved pending transfer. This transfer approval expires 1/31/2008 and will
require return to CSR for re-authorization.**

D Selvy, CSR

**Date: 10/3/2007**              **Classification - CSR ACTION**                **COR**

---

State of California                        **TX-COR**          Department of Corrections
                                                                          CDC 128-G
No. K-78781                         **NAME**: MANRIQUEZ

                                                    4B3R-15R

*Comment*:
CSR is unable to approve the SHU transfer due to the lack of a Madrid chrono.

CS = 58. SHU Indeterminate endorsed per ICC action of 8/15/07. Inmate has proven to be a threat to the
security of the institution by his association with a prison gang engaged in a criminal conspiracy against the
safety of others. CDC 128-B-2 of 4/16/07 is noted. All referenced documents are present in the file, properly
annotated and properly disclosed.
Staff is requested to review C.M. of 4/18/07 for enemy concerns.
**Retention in ASU is approved pending transfer.**

                                                                                   **/5**
R.S.
RFeigel, CSR

**Date: 9/27/2007**              **Classification - CSR ACTION**                **SATF**


                              **INMATE COPY**


H·199

ACTING CHALLENGING PRESENT ADVERSE COMMITTEE DECISION

GANG CHALLENGE ICC ACTION

# PELICAN BAY STATE PRISON

**INMATE/PAROLEE**
**APPEAL FORM**

Location: Institution/Parole Region

PELICAN BAY STATE PRISON

**PBSP**

SECURITY HOUSING UNIT — 1.

CDC 602 (12/87)

SECURITY HOUSING UNIT — 2.

Category

2-9-6/8

SECURITY HOUSING UNIT

UNIT C-1

no current
158-032

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| DANiEl MANRIQUEZ | K-7858 | | C-1-120 |

**A. Describe Problem:** ICC et al... decision to RETAIN ME in SHU, PRIOR to MY ENTERING THE ICC, is illegal, it violates MY RIGHTS to due PROCESS UNder THE 14TH AMENdMENT, ANd MY liberty interests 14TH AMENds. FActs: ON 12-03-07, I spoke to THE PRiSON COUNSElOR- who Told ME I would be TAKEN to ICC ON DEC.4.07 ANd THAT THEY WERE gONNA ORdER THAT I'd BE SEgRAgATEd iNdEFiNATElY- OR AT lEAST uNTil - NOV. 2012 BASEd ON gANg VAlidATiON. I poiNTEd ouT THAT THE DA'S NEVER VAlidATEd ME "CURRENTly ACTivE" - ANd THAT BY HiS AlREAdy MAKiNg HiS MiNd up AS TO MY FURTHER SEgREgATiON- bEFORE I EVEN go iNTO THE COMMiTTEE, ESTAblisHES iTS A WAIST OF TiME TO EVEN go- iT RENdERES MY RiGHTS TO BE PRESENT, TO SubMiT MY VIEWS, ANd MY RiGHTS TO BE CONSidEREd FOR RElEASE MEANiNgLESS HE ANSWERd "BASicAlly

If you need more space, attach one additional sheet.

CONT p. 3 iNFRA

**B. Action Requested:** 1. VACCATE ICC dECiSION, ANd ORdER MY SHU RElEASE. 2. CEASE policiES OF MAKiNg dEcisiONS TO SEgRAgATE FURTHER BEFORE iNMATES ENTER ICC. 3. CONSidER All VAlidATEd iNMATES FOR RElEASE EVERY TWO dAYS gANg ACTiViTY ANd ONly RETAiN BASEd ON CURRENT EVidENCE -AS dEFiNEd N/ iN 11 MONTHS ANd CCR 3000, 3023(4) CREATE ClEAR FAiR REgulATiONS dEFiNiNg gANg ACTiViTY, 5) CEASE iMpOSiNg SiX YEAR TERMS WiTH OuT AFFORdiNg iNMATES ( CONT. p. 4 iNFRA)

**Inmate/Parolee Signature** _____  **Date Submitted:** 12-14-07

**C. INFORMAL LEVEL** (Date Received: _____ )

Staff Response: _____

Staff Signature: _____  Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Signature: _____  Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

JAN 17 2008
34

DEC 18 2007

CDC Appeal Number: _____

※ THE CONdiTiONS iN PElicAN BAY SHU WHiCH WERE dEScRibEd iN Madrid.v.Gomez iMpOSE AN ATYpiCAl ANd SigNiFiCANT HARdSHip ON ME iN RElATiON TO THE ORdiNARY iNcidENTS OR pRiSON liFE.

ex.
I-200

M. ρ.. ATTE.

...THAT THEY HAVE NO AUTHORITY TO RELEASE ME GIVEN THAT IGI SUBMITTED ONE POINT TO

IE - WHEN I ARGUED THAT THE POINT DOESN'T CONSTITUTE "GANG ACTIVITY" HE INDICATED IT DOES,

TO COMMITTEE THE FOLLOWING DAY AND MEMBERS OF THE COMMITTEE REITERATED WHAT THE COUNSELOR

EOUSK TOLD ME. THIS IS ILLEGAL IN SEVERAL RESPECTS:

r. VIOLATES DUE PROCESS UNDER WOLFF V. McDONALD TO ALREADY HAVE THEIR DECISION MADE UP

I RELEASE BEFORE I EVEN ENTERED AND PRESENTED MY DEFENSE - HENCE MY RIGHTS TO PRESENT

WAS VIOLATED BY THE ICC - THE COMMITTEE WAS HELD IN ROTE FASHION - THEY'RE ADMISSION THAT

LEASE ME UNTIL I COMPLETE SIX YEARS - PROVES THAT THIS ICC AND ALL ICCS WILL BE NOTHING

v A PRETEXT FOR SOLITARY CONFINEMENT IN VIOLATION OF DUE PROCESS & TOUSSAINT. V. McCARTHY.

:CAUSE THEY HAD THEIR MIND MADE UP BEFORE I ENTERED AND STATED THEY HAD NO AUTHORITY TO

AE THEY VIOLATED MY LIBERTY INTEREST UNDER CCR3341.SC(A)(I) WHICH HOLDS THAT IM TO

EBE) FOR RELEASE EVERY 180. - THEY NEXT VIOLATED MY LIBERTY INTEREST UNDER CCR 3341.5(C)(2)

JOLDS THAT I MUST BE RELEASED GIVEN IVE BEEN IN ASU/SHU FOR SIX MONTHS AND THERE'S NO

IDENCE" THAT IM A SECURITY THREAT ✓ & BECAUSE THERE IS NO SUCH EVIDENCE I HAVE

BERTY INTEREST TO IMMEDIATE RELEASE CCR 3335, 3336, 3339.

LIGHT OF THE ABOVE THEY ALSO VIOLATED MY LIBERTY INTEREST UNDER ICR 3378(C)(7) WHICH MANDATES

CC REVIEW THE ITEM USED AND RESUBMIT IT TO THE IGI IF IT IS QUESTIONABLE, THE ITEM

BIE GIVEN IT DOES NOT AMOUNT TO CURRENT GANG ACTIVITY CCR3000 WHICH REQUIRES #ILLEGAL

SCONDUCT ON BEHALF OF THE GANG (E.BID.) ALSO SEE 3378(C)(1)(2) - ADDITIONALLY THIS ALSO VIOLATES

NTEREST IN CCR 3321 ET SEQ.... WHICH REQUIRES THAT NO DECISION TO SEGREGATE BE MADE ON

IORMED INFORMANT UNLESS THERE WAS A STATEMENT HE TOLD THE TRUTH - NO SUCH STATEMENT

S MADE - THUS IM BEING RETAINED BASED ON UNCORROBORATED INFORMATION - GIVEN THAT ALL CDC

TER FOUND ON A CI - WHO SAYS ITS MINE, ITS NOT CORROBORATED! - THUS THE ICC SHOULD'VE SENT

6 IGI CCR 3378(C)(7)

HE ICC'S DECISION TO RETAIN ME IS ILLEGAL BECAUSE I HAVE YET TO BE DESIGNATED BY THE

CURRENTLY ACTIVE" - THE EVIDENCE IS INSUFFICIENT TO SHOW CURRENT GANG ACTIVITY CCR3000,

JURE) THUS IT VIOLATES THOSE LIBERTY INTERESTS (ALSO SEE F/N 1-2 BELOW) AND THE RIGHT

ACISIONS BASED ON SUFFICIENT EVIDENCE - SUPERINTENDENT V. HILL - U.S (14TH AMEND.)

- IT VIOLATES MY LIBERTY INTEREST REQUIRING DESIGNATION OF CURRENTLY ACTIVE CCR 3378(C)(h)

UNCTIONS DUE PROCESS ALSO REQUIRING SUCH DESIGNATIONS TOUSSAINT. V. ROWLAND, MADRID V. GOMEZ

ECT DECISION TO SEGREGATE ME FOR A MINIMAL OF SIX YEARS VIOLATES MY RIGHTS UNDER

PROTECTION CLAUSE V BECAUSE IVE BEEN GIVEN A SIX YEAR MINIMUM - WITHOUT BEING GIVEN THE

PROCESS AND EQUAL RIGHTS UNDER WOLFF AND CCR TIT IS AS AFFORDED TO OTHER INMATES

S DEFINED AS NEW EVIDENCE WITHIN AN 11 MONTH PERIOD: TOUSSAINT. V. YOCKEY — F.2d — FING

EY DON'T EVEN INDICATE THAT IM CURRENTLY ACTIVE! NOR SECURITY THREAT!

S GANG ACTIVITY THEN CDC/CDCR GANG ACTIVITY DEFINITION POLICIES REMAIN VAGUE AND OVER

VIOLATION OF THE FIRST AND 14TH AMENDMENT AS IT FAILS TO PROVIDE ME NOTICE OF PROHIBITTED

NBJECTING ME TO A SIX YEAR TERM BUT FORCES ME TO GUESS AT ITS MEANING!

I-201

~~for worse conduct if prior to serving the 6/6 days, etc.~~

SIXTH: THE ICC VIOLATED MY liberty INTEREST TO BE PUT UP FOR INACTIVE STATUS REVIEW (CCR 3341.5(c)(5)(6), 3378(e) — WHICH REQUIRES All VALIDATED INMATES TO BE PUT UP FOR INACTIVE STATUS IF THEY HAVE NO gang ACTIVITY IN SIX YEARS — gang ACTIVITY IS DEFINED AS KNOWINGLY COMMITTING, ENGAGING IN ILLEGAL ACTS OF MISCONDUCT ON BEHALF OF THE gang CCR 3000.3023. — HERE THERE IS NO EVIDENCE OR INFORMATION THAT I'VE KNOWINGLY ENGAGED IN SUCH gang ACTIVITY, (SEE FOOT NOTES 1-2) THUS I SHOULD BE PUT UP FOR INACTIVE STATUS.

FINALLY, ICC'S DECISION TO SEGREGATE ME FOR SIX YEARS UNDER CONDITIONS THEY KNOW MAY PRESS THE OUTTER BOUNDS OF WHAT MOST HUMANS CAN phycologically TOLERATE — VIOLATES THE EIGTH AMENDMENT, ICC et al KNOWS VIA STATISTICAL DATA EVIDENCE GATHERED IN MADRID — AND THE INCREASE OF PHYCH MEDICATION USE FOR SHU INMATES — THAT THE CONDITIONS IN THE SHU CAN CAUSE ADVERSE AND IRREPARABLE Phychological DAMAGE — YET THEY REMAIN DELIBERATELY INDIFFERENT TO MY phychological WELL BEING, BY CONTINUING THEIR SAME PRACTICES, ADDITIONALLY THEY ARE BEING DELIBERATELY INDIFFERENT BECAUSE THEY KNOW THAT THE long TERM EFFECT OF SHU CONFINEMENT CAUSES ~~problems~~ JOINTS — CARTILEGE DAMAGE — FROM lACK OF EXERCISE AND MOVEMENT ETC. — IT Also CAUSES phychological DAMAGE TO THE POINT OF SOME INMATES COMMITTING SUICIDE — BASED ON lACK OF STIMULATION — AND lACK OF CONTACT. YET THEY CONTINUE TO ENFORCE SUCH CONFINEMENT WITHOUT penological JUSTIFICATION.


CONTINUED FROM ACTION REQUESTED AT page 1 SEC B ANTE. —
THE SAME WOlFF/DUE PROCESS PROTECTIONS AS AFFORDED TO OTHER INMATES FOR WORSE CONDUCT. (6) CEASE RETENTION OF INMATES WHO HAVE NOT BEEN DESIGNATED BY THE OCS AS CURRENTLY ACTIVE, (7) DESIGNATE ME ET al. WHO DO NOT HAVE CURRENT gang ACTIVITY AS DEFINED IN CCR 3000.3023 AS ELIGIBLE FOR INACTIVE STATUS RELEASE (8) All ATTEMPTS OF ICC AND SUBSEQUENT REVIEWERS AWARD ME $100ºº PER DAY SEPERATELY FOR EVERY DAY I REMAIN IN THE SHU IN COMPENSATORY DAMAGES FOR MENTAL EMOTIONAL DISTRESS & AN ADDITIONALLY $100ºº SEPERATELY PER DAY IN PUNITIVE DAMAGES FOR VIOLATING MY CONSTITUTIONAL RIGHTS.

I-202

STATE OF CALIFORNIA
ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE
CDC 114-D (Rev 10/98)

DEPARTMENT OF CORRECTIONS

| DISTRIBUTION | | |
|---|---|---|
| WHITE | CENTRAL FILE | CANARY    WARDEN |
| BLUE | INMATE (2ND COPY) | PINK HEALTH  CARE MGR |
| GREEN | ASU | GOLDENROD INMATE (1ST COPY) |

| INMATE'S NAME | CDC NUMBER |
|---|---|
| MANRIQUEZ, Daniel | K-78581 |

## REASON(S) FOR PLACEMENT (PART A)

☒ PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS

☐ JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY

☒ ENDANGERS INSTITUTION SECURITY    ☐ UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT

You are currently being housed in SHU on an Indeterminate SHU term as a result of your validation as an
ASSOCIATE of the MEXICAN MAFIA prison gang. The information relied upon in your validation is
documented on CDC 128B 2 dated 4/16/07 and up dated by IGI on 8/10/07.  Based upon the aforementioned
you are deemed to represent a threat to the safety of the Institution if you were released to the General
Population at this time. You are scheduled to appear before Committee for an Initial/114D review. You will be
afforded the opportunity to present any relevant information to this Committee regarding your current housing
and or program.

☐ CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL)    ☐ IF CONFIDENTIAL INFORMATION USED, DATE OF DISCLOSURE:    /    /

| DATE OF ASU PLACEMENT | SEGREGATION AUTHORITY'S PRINTED NAME | SIGNATURE | TITLE |
|---|---|---|---|
| | B. RICE | | Lieutenant |

| DATE NOTICE SERVED | TIME SERVED | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE | SIGNATURE | STAFF'S TITLE |
|---|---|---|---|---|
| 12/03/07 | | R. PARKER | | CCI |

| ☐ INMATE REFUSED TO SIGN | INMATE SIGNATURE | CDC NUMBER |
|---|---|---|
| | | K 7858I |

## ADMINISTRATIVE REVIEW (PART B)

*The following to be completed during the initial administrative review by Captain or higher by the first working day following placement*

| STAFF ASSISTANT (SA) | | INVESTIGATIVE EMPLOYEE (IE) | |
|---|---|---|---|
| STAFF ASSISTANT NAME | TITLE | INVESTIGATIVE EMPLOYEES NAME | TITLE |

### IS THIS INMATE:

| | | | | | |
|---|---|---|---|---|---|
| LITERATE? | ☒ YES | ☐ NO | EVIDENCE COLLECTION BY IE UNNECESSARY | ☒ YES | ☐ NO |
| FLUENT IN ENGLISH? | ☒ YES | ☐ NO | DECLINED ANY INVESTIGATIVE EMPLOYEE | ☐ YES | ☐ NO |
| ABLE TO COMPREHEND ISSUES? | ☒ YES | ☐ NO | ASU PLACEMENT IS FOR DISCIPLINARY REASONS | ☐ YES | ☐ NO |
| FREE OF MENTAL HEALTH SERVICES DELIVERY SYSTEM NEEDS? | ☒ YES | ☐ NO | DECLINED 1ST INVESTIGATIVE EMPLOYEE ASSIGNED | ☐ YES | ☐ NO |
| DECLINING FIRST STAFF ASSISTANT ASSIGNED? | ☐ YES | ☐ NO | | | |

Any "NO" requires SA assignment

☒ NOT ASSIGNED

Any "NO" may require IE assignment

☒ NOT ASSIGNED

## INMATE WAIVERS

☐ INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER    ☐ INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME

| ☒ NO WITNESSES REQUESTED BY INMATE | INMATE SIGNATURE | DATE |
|---|---|---|

## WITNESSES REQUESTED FOR HEARING

| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC UMBER |
|---|---|---|---|
| | | | |
| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
| | | | |

**DECISION:**  ☐ RELEASE TO UNIT/FACILITY _____  ☐ RETAIN PENDING ICC REVIEW  ☐ DOUBLE CELL  ☐ SINGLE CELL PENDING ICC

REASON FOR DECISION:

| ADMINISTRATIVE REVIEWER'S PRINTED NAME | TITLE | DATE OF REVIEW | TIME | ADMINISTRATIVE REVIEWER'S SIGNATURE |
|---|---|---|---|---|
| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME | | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE | | DATE OF REVIEW |

I·203

See Chronological Classification Review document (CDC 128 C) for specific hearing information

State of California
CDC FORM 695
Screening For:
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

December 18, 2007

**MANRIQUEZ, K78581**
~~CF01L 000000120L~~

$C2 - 218$

Log Number: PBSP-C-
(Note: Log numbers are not assigned to screen out appeals or informal level appeals.)

The enclosed documents are being returned to you for the following reasons:

*You have failed to provide necessary copies of your chrono(s).*

*PLEASE ATTACH 128-G.*

Appeals Coordinator
Pelican Bay State Prison

**NOTE:**    Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be
automatically dismissed pursuant to CCR 3084.4(d).  This screening decision may not be
appealed.  If you believe this screen out is in error, please return this form to the Appeals
Coordinator with an explanation of why you believe it to be in error, and supporting
documents.  You have only 15 days to comply with the above directives.

| PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE |

DEC 18 2007                                EXHIBIT A                        I-205

STATE OF CALIFORNIA

CALIFORNIA DEPARTMENT OF CORRECTIONS & REHABILITATION
CDCR 128G (Rev. 11/07)

**No:** K-78581     **Name:** MANRIQUEZ, DANIEL     **Housing:** C4-420

**Custody:** MAX-S     **CS:** 58-IV     **WG/PG:** D1/D EFF 01/09/07     **Assignment:** SHU INDET

**Rel Date:** LWOP     **Reclass:** 04/2008     **Action:** RETAIN SHU INDET STATUS; AFFIX 'S' SUFFIX

Inmate MANRIQUEZ appeared before PBSP SHU, FAC-C UCC on this date for Initial/114-D Review. No staff assistant was assigned as S is not illiterate, speaks English, can comprehend the issues, and is free of mental health services needs. An investigative employee was not required. Prior to Committee, S was issued an updated copy of his CDC 114-D dated 12/03/07. Committee notes S was endorsed for PBSP SHU-INDET due to his prison gang validation. Committee notes CDC 128-B2 dated 09/09/03, and updated 128-B2 with a date of 04/16/07, citing 1 document that meets prison gang validation requirements. S is validated as an associate of the Mexican Mafia (EME) prison gang which is known to be involved in criminal activities that threaten the safety of others and institution security, and this requires continued segregation from the GP. S was informed that the Departmentally recognized avenues for release from SHU are through the debriefing process or through being determined to be an inactive prison gang member or associate as delineated in CCR, Title 15, section 3378(e) and 3341.5(c)(4)and (5). The last source document used in the validation process is dated 02/09/07. D1/D effective 01/09/07 due to Indeterminate SHU status. Committee notes S on INDET status due to his validation as an associate of the EME prison gang. Committee notes CDC 128-C Mental Health Screening Chrono, dated 11/28/07, denoting no level of care. S does not meet PBSP-SHU exclusionary criteria. S has no cellmate and Committee notes the "S" custody suffix has not previously been applied. **Committee acts to affix the "S" suffix because S has not successfully completed the compatibility review for double celling in PBSP-SHU.** S participated in Committee acknowledged understanding and disagreed with Committee action stating, he disagrees with his validation. Committee reviewed S's validation and told him it appears to be appropriate. **CASE FACTORS:** S is a 32-year-old, Hispanic, 1st termer, received on 12/18/97, from Los Angeles County for the offense of 1 Count of Murder 1st and Non-Controlling offenses of 2 Counts of Murder 1st and 1 Count of Murder 2nd with Use of Firearm, receiving a total term of LWO. S was received at PBSP on 11/27/07, from CSP-COR, while enroute from SATF, for SHU-INDET placement. S is not foreign born. Holds/Escapes/Arsons/Sex Offenses: None. Disciplinary History: Most recent CDC 115 dated 02/28/07 for Willfully Delaying a Peace Officer. Previous 115 received for Destruction of State Property. Medical Status: Full Duty. TB Code is 22 per CDC 128-C dated 11/05/07. Psych Concerns: CDC 128-C dated 08/15/07 clears S for SHU placement per Madrid Court Order Criteria. Commitment offense does not meet criteria for potential MDO referral per PC 2962. Education: GED. DDP Review: 128-C in C-File. CDC 812 lists enemies. Gang/Tip: Member of Puente 13 street gang; validated Associate of Mexican Mafia (EME); with AKA "Spanky/Danny". Confidential Folder noted and reviewed. County of Last Legal Residence (CLLR): Los Angeles County. Registration/Notification/Testing Requirements: PC 3058.6 and PC 296(B/S) completed. S is ineligible for 270-Design Level-IV placement due to the following exclusionary factors: SHU placement within the last 3 years. CCRC/CCF/CAMP/MSF/Restitution Center: Ineligible due to current SHU placement. Shooting policy was explained: Inmate was informed-No Warning Shots fired in the SHU. S was advised of Committee's decision and his right to appeal, and that any appeal of this Committee action must be submitted within 15 working days of this date, whether he has received the CDC Form 128-G Classification Chrono or not. Next scheduled Committee will be n 04/2008 for 180-day Review.

**CHAIRPERSON:** U. SILVA/FC

K. a. Nealy CCII(A)
K. NEALY/CCII(A)

**RECORDER:** PARKER/CCI

CC: ☐OBIS ☐CSR ☐IGI ☐PSYCH ☐MED ☐C & PR ☐OTHER

**Committee Date:** 12/04/2007     **PARKER/dk**     Classification     **FACILITY C**    **UCC REVIEW**     Inst: PBSP

I-204

**State of California**
**CDC FORM 695**
**Screening For:**
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

January 17, 2008

***MANRIQUEZ, K78581***
*CF02U 000000218L*

Log Number: PBSP-C-
(Note: Log numbers are not assigned to screen out appeals or informal level appeals.)

The enclosed documents are being returned to you for the following reasons:

*There has been too great a TIME LAPSE between when the action or decision occurred and when you filed your appeal with no explanation of why you did not or could not file in a timely fashion. Time limits expired per CCR 3084.6(c). Therefore, if you would like to pursue this matter further, you must submit an explanation and supporting documentation explaining why you did not or could not file your appeal timely.*

*UPON REVIEW OF 128-G, YOU ARE ATTEMPTING TO APPEAL AN ACTION INVOLVING OCS NOT ICC. YOU CANNOT APPEAL OCS ACTION WITHOUT CURRENT 128-B2.*

Appeals Coordinator
Pelican Bay State Prison

*[handwritten:] I AM NOT DISPUTING YOUR TIME LIMITS BASED ON ICC. I AM SAYING, REGARDLESS OF ICC 12-4-07, YOU CANNOT APPEAL YOUR VALIDATION UNLESS YOU CAN SHOW YOU JUST RECEIVED AN UPDATED 128-B2 BY OCS. THE ONLY THING YOU COULD APPEAL AS A RESULT OF ICC 12-4-0*

**NOTE:** Failure to follow instruction(s) will be viewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be *[handwritten:] ✓ IS THE* appealed. If you believe this screen out is in error, please return this form to the Appeals *[handwritten:] AFFIXING* Coordinator with an explanation of why you believe it to be in error, and supporting *[handwritten:] OF THE* documents. You have only 15 days to comply with the above directives. *[handwritten:] IS' SUFFIX*

*[handwritten signature:] C. WILROSE*

| PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE |

<u>REQUEST FOR INTERVIEW</u>

TO APPEALS COORDINATOR FROM: MANRIQUEZ DANIEL K-78581 SHU-C-2 .CELL 218

YOUR SCREENING DECISION IS IN ERROR — FIRST I AM <u>NOT</u> TIME BARRED IF YOU look
AT THE <u>602 DATE</u>, I APPEALED THE <u>COMMITTEES</u> DECISION, TEN DAYS AFTER IT
WAS RENDERED — IN FACT YOU STAMPED MY 602 AS HAVING RECEIVED IT <u>Dec</u>
<u>18-07</u> WHICH IS <u>TIMELY</u>. HOWEVER you RETURNED IT TO ME BECAUSE I did
NOT HAVE THE ICC CHRONO (See ATTACHED EXHIBIT A) AND you Told Me TO
SUBMIT IT ONCE I get IT (Ibid) AS OF 1-9-08 — I STILL did NOT HAVE
IT AS you CAN See I WROTE TO THE counselor AND HE TOLD ME I'd
GET IT IN ONE WEEK LATER (See EXHIBIT B) AND IN ONE WEEK I get IT
AND RESUBMITTED IT (See EXHIBIT C). SO obviously IM NOT LATE you didn't
let me FILE IT UNTIL I got THE CHRONO. WHICH THE COUNSELOR VERIFIES I didn't
get IT UNTIL NOW, I only Followed your INSTRUCTIONS

    SECOND — NO WHERE IN THIS APPEAL do I CHALLENGE THE OCS DECISION — I
CHALLENGE COMMITTEES DECISION — IN DEED WHEN you FIRST READ MY APPEAL you
YOURSELF NOTED ON THE TOP — THAT I CHALLENGED ICC's ACTION (See 602)
THEREFOR THE SCREENING IS IN CORRECT. PLEASE process my APPEAL

RESPECTFULLY submitted

1-20-07

I 206

REQUEST FOR INTERVIEW

TO: ▮▮▮▮▮▮▮▮▮     FROM MANRIQUEZ DANiel #K-7858
C-2 Cell #218

I WENT TO COMMITTEE THE begining OF lAST MONTH — I Appealed THE ICCs decision & As OF YET I HAVE NOT RECEIVED MY CHRONO — SO I CANT FILE MY APPEAL — CAN you plEASE get MY CHRONO TO ME ASAP? THANK you.

You WERE ASSIGNED TO CCI PARKER when you went TO Committee. Your Copy of The 128G should be Received by you within The Next week. If you don't Receive it by The 18th of JANUARy, write ME another Request AND I will SEE if I CAN find it.
     CCI T. Puget
     1-8-08

EXhibiT B

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT C-2

STATE OF CALIFORNIA
GA-22 (9/92)
**INMATE REQUEST FOR INTERVIEW** DEPARTMENT OF CORRECTIONS

| DATE | TO APPEALS COORDINATOR | FROM (LAST NAME) MANRIQUEZ DANIE | CDC NUMBER K-7858 |
|---|---|---|---|
| 1-15-08 | | | |

| HOUSING C-2 | BED NUMBER 218 | WORK ASSIGNMENT | JOB NUMBER FROM   TO |
| OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.) | | | ASSIGNMENT HOURS FROM   TO |

**Clearly state your reason for requesting this interview.**
You will be called in for interview in the near future if the matter cannot be handled by correspondence.

I JUST got THE CHRONO — YOU REQUESTED previously lAST NIGHT — Im ATTAChing IT TO THE 602 AT YouR REQUEST AND Im RESubmitting — THANK you.

Do NOT write below this line. If more space is required, write on back.

INTERVIEWED BY                                             DATE

DISPOSITION

EXhibiT c                    I 207

1-8-08

# PELICAN BAY STATE PRISON

**STATE OF CALIFORNIA**                                    **DEPARTMENT OF CORRECTIONS**

**INMATE/PAROLEE**
**APPEAL FORM**
CDC 602 (12/87)

INDETERMINED HOUSING UNIT
UNIT C-2

Location: Institution/Parole Region
1. **PBSP**
2. _____

Log No.
1. C08-00352
2. _____

Category
3/7

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| DANIEL MANRIQUEZ | K-78581 | | C-2 Cell 2/8 |

**A. Describe Problem:** C. COUNTESS & K. BRANDON OF THE IGI VIOLATED MY FIRST AMENDMENT RIGHTS AND STATE REGULATIONS BY CENSORING OUT GOING MAIL - AND BY READING IT. ADDITIONALLY THEY VIOLATED A STATE CREATED PROPERTY INTEREST BY NOT RETURNING THE LETTER MUCH LESS DISTROYING IT. FACTS ON 1-20-08 - I RECEIVED THE TWO ATTACHED NOTICES INDICATING THAT TWO LETTERS I ALLEGEDLY SEND OUT ON THE 8th OF JANUARY WERE BEING disapproved FOR MAILING PURSUANT TO (CCR 3136(b). 3006(c) (EXHIBIT A & B) IN PARTICULAR ONE ALLEGES IT WAS CENSORED BECAUSE IT PROMOTES GANG ACTIVITIES (CCR3023G), IT CONTAINED CODED MESSAGES & PROVIDED LOCATION AND INFORMATION INVOLVING ANOTHER INMATE (EX A) - THE OTHER ALLEGED IT CONTAINED THIRD PARTY CORRESPON-DENCE - IT CONTAINED CODED MESSAGES - AND ATTEMPTED TO INFORM THIRD PARTY OF PERSON OR LOCATION.

(CONT p.3 INFRA)

If you need more space, attach one additional sheet.

**B. Action Requested:** PROVIDE ME LETTER OR COPY OF IT. (1) NO REPROCUTIONS BE TAKEN FOR THIS APPEAL. (2) SEEING THE RECIPIANT OR CONTENT OF THE LETTER HAS NOTHING TO DO WITH INSTITUTIONAL SECURITY - OR PUBLIC SAFETY THAT IT BE SENT OUT OR RETURNED TO ME. (3) THAT THE LETTER CHROND BE REMOVED (EXPULGED) FROM MY C-FILE - ITEM DISTROYED because VIOLATING RIGHTS (5) ALTERNATIVELY EXPIDICT THIS APPEAL SO I CAN PROCEED TO COURT AND AWARD ME $10,000 EACH IN CUMPESATORY DAMAGES FOR MENTAL EMOTIONAL DISTRESS - AND $20,000 EACH IN PUNITIVE DAMAGES FOR VIOLATING MY RIGHTS

Inmate/Parolee Signature: _____    Date Submitted: 1-20-08

**C. INFORMAL LEVEL** (Date Received: _____ )

Staff Response: _____

BYPASS

Staff Signature: _____    Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

Signature: _____    Date Submitted: _____

**Note:** Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

JAN 3 1 2008
2ND IGI

FEB 0 5 2008
2ND IGI

CDC Appeal Number:

EP J.208

**First Level** ☐ Granted ☐ P. Granted ☐ Denied ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

**BYPASS**

Staff Signature: _____ Title: _____ Date Completed: _____

Division Head Approved:                                    Returned

Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

**BYPASS**

Signature: _____ Date Submitted: _____

**Second Level** ☑ Granted ☑ P. Granted ☑ Denied ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 2/5/08 Due Date: 3/20/08

☐ See Attached Letter

Signature: G.H. WISE. Lt. _____ Date Completed: 2-18-08

Warden/Superintendent Signature: _____ Date Returned to Inmate: 2/22/08

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response. DISSATISFIED - LT WISE, THE CAPTAIN & WARDEN VIOLATED MY RIGHTS TO DUE PROCESS BY FAILING TO CORRECT THE CONSTITUTIONAL VIOLATIONS TO WHICH THEY HAVE NOTICE - IN THE FIRST PLACE - THEY HAD NO RIGHT TO NOW MAKE A DECISION TO HOLD FOR INVESTIGATION - WHEN THEY DIDN'T DO IT IN THE FIRST INSTANCE - SECOND WHEN I ASKED WISE WHAT HIS INVESTIGATION HAD TO DO WITH ME HE SAID "NOTHING" - THIRD WHEN I ASKED HIM HOW COULD HE STATE THESE LETTERS HAD "GANG ACTIVITY" - HE TOLD ME HE CAN'T - THAT HE ASSUMES ITS "GANG RELATED ACTIVITY" WHEN HE CAN'T UNDERSTAND THEM - NOW HE ADMITS THERE IS NO EVIDENCE THAT ITS THIRD PARTY mail or contol, YET CAN NOT BE HELD FOR ANY REASON GIVEN - THE STATUTE OF LIMITS FOR A 115 HAVE ELAPSED

Signature: _____ Date Submitted: 2-25-08

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

**DIRECTOR'S ACTION:** ☐ Granted ☐ P. Granted ☐ Denied ☐ Other _____

☐ See Attached Letter

Date: _____

CDC 602 (12/87)

J.209

· WHY SHOULD MY RIGHTS BE VIOLATED BASED ON OFFICERS IGNORANCE ? - THIS AGAIN ESTABLISHES THAT CDCS GANG ACTIVITY POLICIES ARE SO VAGUE AND OVER BROAD - AS OFFICERS DON'T EVEN KNOW WHAT IT IS - THUS HOW CAN THE GIVE AN INMATE NOTICE OR PUNISH THEM FOR IT SEE 1ST AND 14TH AMENDMENTS.

· ANY RULE AUTHORIZING THEM TO RETAIN LETTERS INDEFINATELY - IS UNDER GROUND AS IT HAS NOT BEEN

NO NOTATION WAS MADE AS TO THE DISPOSITION OF THE LETTER AS MANDATED. CCR 3147(a)(6), THERE IS NO FINDING, NOR EVIDENCE THAT CRIMINAL - OR ILLEGAL ACTIVITIES WERE DISCUSSED IN THESE LETTERS. - THE CENSORSHIP OF THIS MAIL IS NOT NECESSARY TO PROTECT SUBSTANTIAL PUBLIC INTERESTS - AND NO GANG ACTIVITY WAS DISCUSSED!

1ST VIOLATION. COUNTESS & BANDEN VIOLATED MY FIRST AND FORTH AMENDMENT RIGHTS BY READING & CENSORING OUTGOING MAIL - THE LAW IS CLEAR "OUT GOING" LETTERS - CAN NOT BE READ. SEE WOLFISH V. LEVI 573 F.2d 118 130 (2ND CIR 1978) REV'd ON OTHER GROUNDS. SEE MARTINO V. CAREY 563 F.SUPP 984, 1004-05 (D.ORG 1983). (OUT GOING MAIL CANNOT BE READ) IN THIS CASE BOTH OF THESE OFFICERS "BY NOTICE" HAVE ADMITTED THEY READ THE OR GOING LETTERS, SO AS TO RENDER THEM LIABLE IN A COURT OF LAW. JOLIVET V. DELAND 966 F.2d 573, 577-78 (10TH CIR 1992) (DAMAGES AWARDED AGAINST OFFICIALS WHO COPIED PRISONERS MAIL READ IT AND SHARED IT TO OTHERS)

2ND VIOLATION: COUNTESS & BRANDEN VIOLATED DUE PROCESS AND STATE LAW BY FABRICATING EVIDENCE AGAINST ME IN ORDER TO KEEP ME VALIDATED. - THESE OFFICERS ALLEGE THAT I WROTE BOTH OF THESE "LETTERS ON 1-3-08", ONE ALLEGES I PROMOTED GANG ACTIVITIES, BOTH ALLEGE I PAST CODED MESSAGES, AND ONE ALLEGES I ATTEMPTED TO PASS 3RD PARTY CORRESPONDENCE. - THIS IS FALSE & FABRICATED, IN THE FIRST PLACE: I DID NOT WRITE OROSCO, NOR FLOREZ ON "1-3-08" - AS FOR INDICATING THAT I PROMOTED GANG ACTIVITIES (EXHIBIT A) - THIS IS FALSE - PROMOTING GANG ACTIVITIES - IS "PROMOTING CONDUCTING ILLEGAL ACTS OF MISCONDUCT ON BEHALF OF THE GANG" CCR 3000, 3023 NO LETTER WRITTEN BY ME PROMOTES SUCH CONDUCT. - AS FOR THE ALLEGATION THAT I ATTEMPTED TO CORRESPOND VIA THIRD PARTY (EX B) THIS IS FALSE - THIS IS A PETITIVE OF MINE, AND IS NOT INCARCERATED. AS A MATTER OF FACT BOTH INDIVIDUALS ARE FREE PERSONS. [X] - THUS THE ALLEGATION THAT I ATTEMPTED TO INFORM AN        "INCARCERATED INDIVIDUAL" - PRISONERS LOCATIONS - OR MY LOCATION IS FALSE! - WHICH ESTABLISHES THESE OFFICERS COMMITTED CRIMES AGAINST ME PUNISHABLE BY FINE, IMPRISONMENT OR BOTH! SEE PEN CODE 115(a)(c)(v)(2) (PROCURING FALSE INSTRUMENT FOR RECORD) CAL.PEN.CODE 118(a) (FILING FALSE AFFIDAVIT) PEN CODE 134 (PREPARING FALSE DOCUMENTARY EVIDENCE TO FRAUDULENTLY CHARGE).

3RD VIOLATION: THE OFFICERS VIOLATED MY FIRST AMENDMENT RIGHTS BY CENSORING "OUT GOING" CORRESPONDENCE WITHOUT EVIDENCE NOR FINDING THAT IT WAS NECESSARY TO PROTECT THE PUBLIC - OR TO SERVE COMPELLING INSTITUTIONAL INTEREST. - ALTHOUGH PRISON OFFICIALS CAN CENSOR "INCOMING MAIL" IF ITS "REASONABLY RELATED TO PENOLOGICAL CONCERNS." TURNER V. SAFELY  U.S.  THEY CANNOT DO SO TO OUT GOING MAIL UNLESS IT IS NECESSARY OR ESSENTIAL TO PROTECT IMPORTANT OR
TURN →

THE FACT THAT THE ITEM IS NOT BEING RETAINED FOR DISCIPLINARY ACTION - OR PROSECUTION FURTHER SUPPORTS THAT THE ALLEGATION IS FALSE! - THIS IS FURTHER BOLSTERED BY THE FACT THAT NOT ONCE DO THEY INDICATE THAT IT THREATENS NEITHER INSTITUTIONAL NOR PUBLIC SECURITY.
& SINCE ALL MY LETTERS ARE STAMPED THEY FAIL TO INDICATE HOW I CAN GET IT INTO ANOTHER PRISON!    210

substantial governmental interests, Thornburgh v. Abbott 490 U.S. 401, 413-14 (1989); Procunier v. Martinez 416 U.S. 396, 413-14 (1974) or if it threatens the public. In re: Short (1976) 55 Cal.App.3d 268, in this case there is no finding —nor is there any evidence that these two letters to my family members[13] threatens the public, or was substantially necessary to protect institutional security — IGI notes None (Exhibit A & B) — & yet they've censored these items, in deliberate defiance of constitutional law.

• 4th violation: These officers violated my state created property interest by refusing to make a disposition as to what will be done with these letters—and/or failing to forward (deliver them) or return them to me. property interests can be created via regulations which limit the discretion of prison officials. Kentucky v. Thompson 490 U.S. 454, 462 (1989). The most common way of limiting discretion is to use "explicitly mandatory language in connection with substantive predicates. Hewitt v. Helms 459 U.S. 460,472 (1983). Mandatory language often means words like "shall, will must."(Ibid) A substantive predicate is when prison officials use the word "unless" followed by circumstances allowing the official to take action. — In this case, the mandatory regulations are found in §3136(a)(a) which mandates that stopped out going mail "shall be processed in accordance with subsect. 3147(b)(6)" —This rule provides that the notice "shall include the disposition to be made of any such mail in the possession of department employees, unless the retention of such mail is required in legal or disciplinary proceedings against the inmate it will be promptly mailed or returned to inmate"(emphasis added). In this case, these officers did not render the disposition of letter. And because this letter — is not and cannot be used for disciplinary or legal action the rules require that it either be mailed out — or returned to me! These officers had done neither!

3. who are not validated nor in prison —And CDC has never stopped or informed me that I cannot write to them!!

J ZH

NAME: **MANRIQUEZ**          CDC#: **K78581**     HOUSING   **C2-218**     CDC 128-B

On   1/8/2008          correspondence was stopped for the above-named inmate.   The mailing is described as follows:

☒ OUTGOING CORRESPONDENCE/ ADDRESSED TO:          ☐ INCOMING CORRESPONDENCE / FROM:

JOHNNY OROZCO
528 N. TAYLOR AVE # 111
MONTEBELLO, CA. 90640

The correspondence was disapproved in accordance with Section 3136(a) as it pertains to 3006(c):
☒ It violates regulations or local procedures:
   ☒ Promotes gang activities [Title 15, 3023 (a)]
   ☐ Unauthorized business dealings [3024 (a)]
   ☐ Unauthorized inmate to inmate correspondence [Title 15, 3139]
   ☐ Unauthorized inmate to parolee / probationer correspondence [Title 15, 3140]
   ☐ Third party correspondence [OP 205, Attachment 8, #32]
   ☐ Use of fictitious name or address [U.S.C.S. Title 18, Section 1342, OP 205]
   ☐ Other (describe):
☐ It incites physical harm to a person or group of persons
☐ It incites disruption of the order in a facility, such as riot, escape, strike, etc.
☒ It contains coded messages
☐ It contains obscene or sexually explicit material, or portrays nudity
☐ It is deemed to be a threat to legitimate penalogical interests.
☐ It contains material or literature which would pose a threat to institutional security or the safety of other persons if allowed to be possessed by inmates.
Additional Information:   PROVIDING LOCATION AND INFORMATION INVOLVING ANOTHER INMATE
The disposition of the letter is as follows:
☒ Retained by Investigative Services Unit for investigation / potential disciplinary or court proceedings.
☐ Returned to sender in accordance with Section 3147 (a) (5) (B) or 3147 (a) (6).
☐ Placed in Central File in accordance with Title 15, Section 3147 (a) (7).

Reporting Employee:                          Correspondence Disapproval Authorized By (Captain level or above):




C. COUNTESS                                    K. BRANDON
Correctional Officer                           Correctional Captain
Institutional Gang Investigations              Investigative Services Unit

Correspondents are personally responsible for the content of each item of mail they send into or out of a correctional facility. Any violation of laws governing mail will be referred to postal authorities and to appropriate criminal authorities. Violations of law, the policies and regulations or of approved facility mail procedures may result in the temporary suspension or denial of correspondence between the persons involved. [Section 3132 (a)]. Inmates may appeal the stopped mail utilizing the departmental appeal process.

cc:     C-File
        AWC File
        Investigative Services Unit
        Inmate
        Sender (incoming correspondence only)


DATE:   1/8/2008          **STOPPED MAIL NOTIFICATION**          GENERAL CHRONO

EXHIBIT
A

J  212

NAME: **MANRIQUEZ**              CDC#: **K78581**      HOUSING   **C2-218**     <sup>CDC 128-B</sup>

On __1/8/2008__          correspondence was stopped for the above-named inmate.  The mailing is described as follows:

        ☒ OUTGOING CORRESPONDENCE/ ADDRESSED TO:    ☐ INCOMING  CORRESPONDENCE / FROM:

        DENISE FLOREZ

        650 N. KINLEY AVE

        LA HABRA, CA. 90631

The correspondence was disapproved in accordance with Section 3136(a) as it pertains to 3006(c):
☒ It violates regulations or local procedures:
    ☐ Promotes gang activities [Title 15, 3023 (a)]
    ☐ Unauthorized business dealings [3024 (a)]
    ☐ ~~Unauthorized inmate to inmate correspondence [Title 15, 3139]~~
    ☐ Unauthorized inmate to parolee / probationer correspondence [Title 15, 3140]
    ☒ Third party correspondence [OP 205, Attachment 8, #32]
    ☐ Use of fictitious name or address [U.S.C.S. Title 18, Section 1342, OP 205]
    ☐ Other (describe):
☐ It incites physical harm to a person or group of persons
☐ It incites disruption of the order in a facility, such as riot, escape, strike, etc.
☒ It contains coded messages
☐ It contains obscene or sexually explicit material, or portrays nudity
☐ It is deemed to be a threat to legitimate penalogical interests.
☐ It contains material or literature which would pose a threat to institutional security or the safety of other persons if allowed to be
possessed by inmates.
Additional Information: ATTEMPTING TO INFORM THIRD PARTY PERSON OF LOCATION
The disposition of the letter is as follows:
☒ Retained by Investigative Services Unit for investigation / potential disciplinary or court proceedings.
☐ Returned to sender in accordance with Section 3147 (a) (5) (B) or 3147 (a) (6).
☐ Placed in Central File in accordance with Title 15, Section 3147 (a) (7).

Reporting Employee:                              Correspondence Disapproval Authorized By (Captain level or above):

_____                 _____
C. COUNTESS                                      K. BRANDON
Correctional Officer                             Correctional Captain
Institutional Gang Investigations                Investigative Services Unit

Correspondents are personally responsible for the content of each item of mail they send into or out of a correctional facility, Any
violation of laws governing mail will be referred to postal authorities and to appropriate criminal authorities. Violations of law, the
policies and regulations or of approved facility mail procedures may result in the temporary suspension or denial of correspondence
between the persons involved. [Section 3132 (a)].  Inmates may appeal the stopped mail utilizing the departmental appeal process.

cc:    C-File
        AWC File
        Investigative Services Unit
        Inmate
        Sender (incoming correspondence only)

DATE:   1/8/2008        **STOPPED MAIL NOTIFICATION**        GENERAL CHRONO



J.213

| PELICAN BAY STATE PRISON |
|---|
| SECOND LEVEL REVIEW |

DATE:    FEB 2 2 2008

Inmate: MANRIQUEZ, K-78581
Pelican Bay State Prison
Security Housing Unit
Facility C Unit 2

RE:    WARDEN'S LEVEL DECISION            APPEAL:    **DENIED**
       APPEAL LOG NO. PBSP-C-08-00352        ISSUE:     MAIL

This matter was reviewed by Robert A. Horel, Warden, at Pelican Bay State Prison (PBSP). Correctional Lieutenant G. Wise conducted the Appeal interview at the Second Level of Appeal Review on February 19, 2008.

All submitted documentation and supporting arguments have been considered, including the interview conducted at the Second Level of Review. Additionally, a thorough investigation has been conducted into the claim presented by the inmate and the documentation evaluated in accordance with PBSP's institutional procedures and the California Department of Corrections and Rehabilitation (CDCR) policies.

ISSUES

Inmate MANRIQUEZ states in Section A of the Appeal that he received (2) two CDC 128-B's, Stopped Mail Notification forms, both dated January 8, 2008, disallowing (2) two outgoing mailings claiming they both contained coded gang messages and one promoted gang activity. They claim the second outgoing mailing also contained a third party correspondence. MANRIQUEZ states IGI violated his First and Fourth Amendment rights by reading his outgoing mail. MANRIQUEZ states this is an illegal activity.

Inmate MANRIQUEZ requests in Section B that the mailings be sent out as they have no safety concerns. MANRIQUEZ requests the letter be returned to him if it cannot be sent out. MANRIQUEZ requests the CDC-128B's referring to these letters be removed from his Central File. MANRIQUEZ request that IGI cease violating his rights and process this appeal so he can proceed to court.

The Informal Level, Formal Level and First Level were bypassed in this appeal.

On February 19, 2008, Lieutenant G. Wise interviewed inmate MANRIQUEZ concerning the contents of this appeal. During the course of this interview, MANRIQUEZ related essentially the same information that he provided in his written appeal. Lieutenant Wise informed MANRIQUEZ that he had examined the mailings in question and found that the mailings did contain coded messages and one of the letters was a third party correspondence. MANRIQUEZ used vague terminology when identifying unknown persons and it was clearly coded messages to other parties. Lieutenant Wise informed MANRIQUEZ that both letters contained coded messages believed to be gang communication and, therefore, is being stopped. MANRIQUEZ denied the allegation that the mailings contained gang coded messages. MANRIQUEZ disagreed with the explanation and requested to go forward with this appeal.

J.214

Second Level Reviewer's Response
Appeal Log #: PBSP-C-08-00352
Inmate MANRIQUEZ K-78581
Page 2

## FINDINGS

### I

Inmate MANRIQUEZ is a validated associate of the Mexican Mafia (EME) prison gang with the alias of "SPANKY," and was originally validated on March 16, 1998, pursuant to California Code of Regulations (CCR), Title 15, Section 3378, and the Department Operations Manual (DOM) 61020 by the Office of Correctional Safety (OCS).

### II

Lieutenant Wise reviewed the mailings in question and the (2) two CDC-128B's dated January 8, 2008, authored by Officer C. Countess and disallowance authorized by Captain K. Brandon. Lieutenant Wise noted that Officer Countess had overlooked the section of the Stopped Mail Notification forms where he should have marked the disposition of the (2) two mailings. Lieutenant Wise interviewed Officer Countess and had him correct this oversight. This is noted by him (Officer Countess) checking the appropriated box on each form, signing and dating them the date they were corrected (January 19, 2008). Lieutenant Wise noted that the CDC 128-B's documented the fact that the outgoing mailings (2) were being sent to Denise Florez, 650 N. Kinley Avenue, La Habra, CA, 90631, and Johnny Orozco, 528 N. Taylor Avenue #111, Montebello, CA, 90640, and had been disallowed. The reasons for the disallowances were listed as promoting gang activity, containing coded messages, and a third party correspondence. This violates CCR, Title 15, Section 3023(a) Promoting gang activity, CCR, Title 15, Section 3006(c)(7) Coded messages, and Operational Procedure 205, Attachment #8, #31 correspondence deemed circumventing, and #32 third party correspondence.

### III

*CCR, Title 15, Section 3023, states in part: (a) Inmates and parolees shall not knowingly promote, further or assist any gang as defined in section 3000. (b) Gangs, as defined in section 3000, present a serious threat to the safety and security of California prisons.*

*Operational Procedure 205, Attachment #8.31 correspondence deemed circumventing, and #32 third party correspondence.*

*CCR, Title 15, Section 3006 (c), states in part: Except as authorized by the institution head, inmates shall not possess or have under their control any matter which contains or concerns any of the following: (7) Coded messages*

## DETERMINATION OF ISSUE

The Second Level Reviewer has examined all pertinent documents including all information received during the second level interview. MANRIQUEZ has received all copies of documents relating to this issue and has cited the appropriate CCR sections of the Title 15 and appropriate sections of Operational Procedure 205 to examine. This appeal is **DENIED** at the second level. Based upon a review of all of the available information, the mailing was appropriately confiscated by IGI in accordance with departmental policies and procedures. The CDC-128B's dated January 8, 2008, accurately describes the reasons for which these mailings were stopped and are being retained in the IGI file. MANRIQUEZ' request that there be no repercussions for filing this appeal is a moot issue as CCR rules and regulation prevent this type of action by any CDCR employee. MANRIQUEZ' request that IGI stop violating his rights and process this appeal regarding these mailings is a moot issue as IGI followed and continue to follow CCR rules and regulation regarding the processing of these mailings and this appeal. MANRIQUEZ' request to have the CDC-128B's listed above removed from his Central File is DENIED as the documents accurately describe the mailings and are, therefore, required

J. 2 15

, Second Level Reviewer's Response
Appeal Log #: PBSP-C-08-00352
Inmate MANRIQUEZ K-78581
Page 3

documents. MANRIQUEZ' request to have the mailings returned to him or sent out is DENIED as they are deemed contraband and gang related. The IGI continues to conduct investigations into the scope of prison gang activity and influence throughout the CDCR. As such, this mailing is part of ongoing investigations and will be retained by IGI for the purpose of these investigations. The letter is considered contraband per CCR, Title 15, Section 3006(c). Lieutenant G. Wise investigated this issue and as evidenced by this document agreed with the reasoning in disallowing these mailings.

## MODIFICATION ORDER

No modification of this decision or action is required.

ROBERT A. HOREL
Warden

216

STATE OF CALIFORNIA                                                      DEPARTMENT OF CORRECTIONS

**PELICAN BAY STATE PRISON**

**INMATE/PAROLEE** Location: Institution/Parole Region    **PBSP**    Log No.    Category

**APPEAL FORM**    HOUSING UNIT  1. _____    1. C08-00456    3/7

CDC 602 (12/87)    UNIT C-2    2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| DANIEL MANRIQUEZ | K-78581 | | C-2-Cell #218, |

A. Describe Problem: IGI PUENTE & BRANDON, VIOLATED MY FIRST AMENDMENT RIGHTS, & PROPERTY/LIBERTY INTERESTS BY STOPPING AND READING OUT GOING MAIL - AND ERRONEOUSLY, FALSELY & MALICIOUSLY MISCONSTRUING IT, IN ORDER TO RETAIN ME VALIDATED & OR TO ISSUE TRUMPED UP CHARGES, FACTS: ON 1-20-08, I RECEIVED A NOTICE INDICATING THAT MY OUT GOING MAIL - WAS STOPPED ON 1-15-08 BECAUSE IT ALLEGEDLY PROMOTED GANG ACTIVITIES, IT ALLEGEDLY CONSTITUTED THIRD PARTY CORRESPONDENCE, IT WAS DEEMED TO BE A THREAT TO LEGITIMATE PENAL INTERESTS, THAT IT WAS ALLEGEDLY BEING MAILED TO INMATE ACUNA, THESE OFFICERS FURTHER OPTED TO RETAIN IT FOR INVESTIGATIVE PURPOSES. - THESE ALLEGATIONS ARE ALL FALSE, IN THE FIRST PLACE I did NOT WRITE TO ANY INMATE ESPECIALLY ON 1-15-08 I HAVE WRITTEN TO MY FIANCEE'S FAMILY IN THE PAST WHO ARE NOT INCARCERATED, I WOULD LIKE TO SEE THE

If you need more space, attach one additional sheet.

B. Action Requested: (1) COPY OF THE LETTER (2) VERIFY MY ALLEGATIONS BEFORE MAKING SUCH ACCUSATIONS, (3) THAT THE LETTER EITHER BE PROCESSED RETURNED) TO ME OR DESTROYED (4) THAT IT BE REMOVED FROM MY C-FILE (5) ALTERNATIVELY THAT YOU EXPEDITE THIS 602 SO AS TO EXPEDITIOUSLY Allow ME TO TAKE IT TO COURT (6) THAT YOU EACH AWARD ME $5,000 IN COMPENSATORY DAMAGES FOR MENTAL EMOTIONAL DISTRESS $50,000 IN PUNITIVE DAMAGES FOR VIOLATING MY CONSTITUTIONAL RIGHTS

Inmate/Parolee Signature: _____    Date Submitted: 1-20-08

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response:

_____

_____

_____

_____

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL

If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:

Board of Control form BC-1E, Inmate Claim

FEB 07 2008    FEB 15 2008

2ND IGI

EX- J.207

**First Level**   ☐ Granted   ☐ P. Granted   ☐ Denied   ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

_____

_____

_____

BYPASS

Staff Signature: _____ Title: _____ Date Completed: _____
Division Head Approved: _____ Returned
Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

BYPASS

Signature: _____ Date Submitted: _____

**Second Level**   ☐ Granted   ☐ P. Granted   ☒ Denied   ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 2/15/08   Due Date: 3/31/08
☒ See Attached Letter
Signature: G. H WISE, Lt   Date Completed: 2-26-08
Warden/Superintendent Signature: _____ Date Returned to Inmate: 3/5/08

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response. DISSATISFIED WISE etch - DEPRIVED ME OF DUE PROCESS BY FAILING TO ADEQUATELY INVESTIGATE - AND CORRECT VIOLATIONS TO WHICH HE HAD NOTICE. WISE INDICATES IT WAS WRITTEN IN SPANISH THUS HE CANNOT DETERMINE IF ITS GANG RELATED GIVEN ME DOESN'T SPEAK/READ SPANISH - NEXT I ASKED HIM HOW DOES HE KNOW ITS GANG RELATED - HE SAID BECAUSE HE CAN'T UNDERSTAND IT* - NEXT HE CAN'T HOLD IT INDEFINATELY GIVEN THAT THE TIME TO GIVE ME A 115 HAS ELAPSED - AND THUS DISMISSED AND CCR 3326 (a)(c)(3) PROHIBITS IT BEING RETAINED IN C-FILE - ADDITIONALLY WHEN I ASKED WHY IS HE RETAINING IT - HE INDICATED BECAUSE THEY'RE INVESTIGATING ALL GANGS - WHEN I ASKED HIM WHAT DOES IT HAVE TO DO WITH ME OR THIS LETTER HE SAID "NOTHING BUT WERE STILL KEEPING IT" - THIS AMOUNTS TO THEFT OF PROPERTY, IT IS NOT GANG RELATED NOR 3RD PARTY BUT ONLY HARASSMENT BY Lt
Signature: _____ Date Submitted: 3-6-08

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

_____

**DIRECTOR'S ACTION:**  ☐ Granted   ☐ P. Granted   ☐ Denied   ☐ Other _____
☐ See Attached Letter                                          Date: _____

CDC 602 (12/87)   * NOR COULD HE ADIQUATELY INVESTIGATE.
** ESTABLISHING THAT THE GANG ACTIVITY POLICIES ARE TO VAGUE AND OVERBROAD IN VIOLATION OF THE 1ST AND 14TH AMENDMENT - BECAUSE IF OFFICERS DONT UNDERSTAND WHATS GANG ACTIVITY - HOW CAN THEY GIVE INMATES NOTICE TO PROHIBITED CONDUCT? THEY CAN'T!!
J. 208

(SEE A PT ANTE ...

, THAT I GAURANTEE, THERE IS NO LETTER WRITTEN TO AN "ACUNA" & NONE OF THE INFORMATION CITED BY YOU
OF MY LETTERS. THE ALLEGATIONS IN THE 128'S ARE EITHER FABRICATED OR MISCONSTRUED, THE LETTERS THAT
I ALWAYS TO MY FAMILY, FIANCEE' HER FAMILY & FRIENDS WHO ARE NOT INCARSERATED, ANY THING DISCUSED
WITH FAMILY AFFAIRS ALWAYS HAS TO DO WITH LEGAL MATTERS, THE PROGRESS ON MY CASE OR OTHER CASES,
(IOUS OR LAWSUITS) I'VE WORKED ON, FILED / HAVE PENDING, OR HAVE HELPED IN, THESE OFFICERS SHOULD'VE INVESTI-
BY LOOKING AT MY C-FILE, CALLING LITIGATION OR MY ATTORNEYS TO VERIFY THAT I HAVE BEEN & CURRENTLY
EXTENSIVE LITIGATION[2], MY LETTERS HAVE ALSO INCLUDED ADVICE OR ENCOURAGEMENT TO MY FIANCEE'S
ON THEIR CLOTHING STORE (PASSIONS) WHICH ANY GOOD INVESTIGATION WOULD'VE PROVED IS A LEGITIMATE BUSINES
SELLING GREATING CARDS, JEWELRY, GRAN D STAND PURCHASING A MACHINE TO PRINT LOGOS ON SHIRES, - THIS
& EMENTS / PROGRESS ON LEGAL CASES IS THE EXTENT OF MY CONVERSATIONS YET THESE OFFICERS NEVER LOOKED
> BEFORE THEY READ MY MAIL - STOPPED IT, SLANDARD MY FAMILY / FIANCEE - AND ERRONEOUSLY MISINFORMED
HAVE VIOLATED MY CONSTITUTIONAL RIGHTS BY MAKING SUCH BALD ALLEGATIONS BEFORE VERIFYING THEM.
EN VIOLATED MY 1ST AMENDMENT ET SEQ... RIGHTS BY READING & CENSORING THE LETTER.

LED: DUE PROCESS CONTAINS A SUBSTANTIAL COMPONENT THAT IN ORDER FOR AN INMATE TO DEFEND HIMSELF
OPERLY NOTIFIED OF THE BASES FOR THE CHARGES WILKERSON V. AUSTIN __ U.S. __ (2005) IN MY CASE I'VE BEEN
JUUS ACTS OF MISCONDUCT IN CONNECTION WITH AN OUT GOING LETTER - YET I AM NOT TOLD WHICH LETTER THIS
DEFEND MY SELF - AS INDICATED ABOVE MY CONVERSATIONS ARE GENERALLY LIMITED TO THE DEVELOPEMENT /
AL CASES, OR FAMILY AFFAIRS - IT IS LIKELY THAT THE OFFICERS MISCONSTRUED A LETTER - & HOW CAN I REBUT IT
ANY TOLD WHICH LETTER IT IS? THIS NOT ONLY VIOLATES DUE PROCESS BUT ALSO MY LIBERTY / PROPERTY
§ 3321 ET. SEQ. - ADDITIONALLY THE NOTICE IS VAGUE & OVERBROAD IN VIOLATION OF DUE PROCESS IT
INDICTED GANG ACTIVITIES - WITH OUT NOTIFING WHAT THOSE ACTIVITIES WERE - THUS FORCING ME TO GUESS
AT!

PUENTE & BRANDON VIOLATED MY 1ST & 4TH AMENDMENT RIGHTS BY READING & CENSORING OUT GOING MAIL.
N PROHIBITS THE READING OF OUT GOING MAIL. SEE WOLFISH V. LEVI 573 F.2d.118,130 (2nd CIR 1978) SEE
LEV 563 F.SUPP. 984, 1004-05 (D.ORG 1983) (OUT GOING MAIL CANNOT BE READ) HERE PUENTE & BRANDON ADMIT
MY CONSTITUTIONAL RIGHTS. - THEIR NOTICE NOT ONLY ESTABLISHES THAT THEY READ MY OUT GOING MAIL - BUT
IT AND SHARED IT WITH ONE ANOTHER THUS RENDERING THEM LIABLE. SEE JOLIVET V. DELAND 966 F.2d. 573
AGES AWARDED AGAINST OFFICERS WHO READ & COPIED INMATES OUT GOING MAIL THEN SHARED IT TO OTHERS).

EN NOR ADRESSED ANY LETTER TO AN "ACUNA", WITHOUT YOU PROVIDING ME A COPY OF THE LETTER, OR TELLING ME WHICH
AYS DEPRIVING ME OF ANY RIGHTS TO A DEFENSE.
ON THE PROCESS OF SUING "SAFE" OFFICIALS ET AL - FOR AN ILLEGAL VALIDATION, A CELL EXTRACTION, ICC DECISIONS,
ORB FOR BREACH OF CONTRACT, I'VE PREVIOUSLY SUED ON MY BEHALF AND OTHERS BEHALFS - PBSP, I SUED AND
ORB IN COURT TO WIN MY SHU RELEASE SEE MANRIQUEZ V. ORB CASE NO. HCPB-04-5241 (DEL NORTE 2005)
NOW TRANSFERED TO THE FEDERAL COURT TO OBTAIN MONETARY DAMAGES SEE MANRIQUEZ V. PILIER 07-1521S
N HAVE A PENDING "GOVERNMENT BOARD CLAIM" PENDING AGAINST SAFE ORB OFFICIALS, I'M CURRENTLY
S OF UNCOVERING EVIDENCE WITH HELD FROM ME WHICH PROVED MY INNOCENCE & THAT THE DA FRAMED ME.
DEFENDANTS. SEE MANRIQUEZ V. CALIFORNIA BA109306 POMONA SUPERIOR - THE COURT APPOINTED THREE
: REPRESENT ME, I'M ALSO AWAITING A DECISION IN THE 9TH CIRCUIT CHALLENGING MY CONVICTION AND FRIEND
IEU SEE MANRIQUEZ V. MCGRATH __ (9THCIR) - THIS IS NOT TO MENTION THE 300 PLUS 602's / APPEALS
NS - THAT I'VE WORKED ON TOR OTHERS - WHOSE CASES ARE PENDING OR PROGRESSING THROUGH THE
YSTEM.

J-219

...e against me to retain my validation status & to slander my loved ones. These officers allege that I wrote a letter promoting gang activities to another inmate, attempting to use unauthorized 3rd party correspondence which threatened penological interests. This is FALSE, first I did NOT write no such letter to Acuna or any one, no letter with the name "Acuna" has been written, second gang activities is defined as promoting, encouraging or facilitating illegal acts of misconduct on behalf of a prison gang CCR 3000, 3023. I have not written any such letter much less to incarcerated individuals, as indicated previously the maximum I speak about - in my letters - has to do with legal or family affairs & nothing to do with penological interests. The fact that these officers blithely indicate otherwise, without making a minimal investigation/verification prior to rendering such false allegations - not only violated due process but also committed crimes against me punishable by imprisonment fine or both. SEE PEN. Code 115(a)(c)(1)(2)(procuring false instruments for record) CM PEN. Code 118(b) (filing false affidavit) PEN. Code 134 (preparing false documentary evidence to fraudulently charge) - indeed sending mail to another inmate is impossible & these officers know this, given that out going correspondence is stamped - to prevent such 3rd party correspondence.

3rd Violation: These officers violated my 1st Amend(s) right by stopping "out going" mail without verifying evidence or a finding that it was necessary to protect the public, or to serve compelling institutional interest - the law is clear that "stopping mail" for "legitimate penological interests" is only applicable to "incomming mail" TURNER V. SAFELY --U.S.--, however the standard imployed for "out going" mail is much harder for prison officials to establish, they must prove it is "necessary or essential to protect important or governmental interest THORNBURGH V. ABBOTT 490 U.S. 401, 413-14 (1989); PROCUNIOR V. MARTINEZ 416 U.S. 396, 413-14 (1974) or that it threatens the public IN RE: SHORT (1976) 55 Cal. App. 3d 268, in this case these officers relied on an invalid/illegal standard to censor this "out going letter" theres no finding nor evidence that it was essential nor necessary to protect important governmental interests, theres no evidence that public safety is threatened & any proposed concerns are diminished by the fact that PBSP SHU stamps all out going mail, as being sent by a prisoner.

4th Violation: these officers violated my property interests & due process rights - by retaining the letter for investigation/potential disciplinary or court proceedings - dispite the fact that theres no evidence of wrong doing on any ones part - the above facts provide a logical verifiable explination as to what you may be misconstruing. - property interests are created by state regulations, which use mandatory language such as "will" "shall" or "must" - along with substantive predicates limiting prison officials discretion. HEWITT V. HELMS 459 U.S. 460, 472 (1983) in this case the mandatory language is found in CCR 3136(b)(a); 3147(a)(6) which holds that unless the letter is being held for disciplinary or legal action it must be returned to me. Here neither can happen given you have NO evidence of wrong doing on mine or any ones part for which I can be given a 115 or be prosecuted, I've provided a verifiable defense which these officers failed to look into prior to making such false/bogus allegations.

J-220

NAME: MANRIQUEZ _____ CDC#: K78581 ____ HOUSING : C2-218 ____ **CDC 128-B**

On  1/15/2008 _____    correspondence was stopped for the above-named inmate.  The mailing is described as follows:

⊠ OUTGOING CORRESPONDENCE/ ADDRESSED TO:    ☐ INCOMING CORRESPONDENCE / FROM:

## BEATRIS LOPEZ
## 358 INDIANA ST.
## WOODBRIDGE, CA. 95258

The correspondence was disapproved in accordance with Section 3136(a) as it pertains to 3006(c):
⊠ It violates regulations or local procedures:
   ⊠ Promotes gang activities [Title 15, 3023 (a)]
   ☐ Unauthorized business dealings [3024 (a)]
   ⊠ Unauthorized inmate to inmate correspondence [Title 15, 3139]
   ☐ Unauthorized inmate to parolee / probationer correspondence [Title 15, 3140]
   ⊠ Third party correspondence [OP 205, Attachment 8, #32]
   ☐ Use of fictitious name or address [U.S.C.S. Title 18, Section 1342, OP 205]
   ☐ Other (describe): _____
☐ It incites physical harm to a person or group of persons
☐ It incites disruption of the order in a facility, such as riot, escape, strike, etc.
☐ It contains coded messages
☐ It contains obscene or sexually explicit material, or portrays nudity
⊠ It is deemed to be a threat to legitimate penalogical interests.
☐ It contains material or literature which would pose a threat to institutional security or the safety of other persons if allowed to be possessed by inmates.
Additional Information: THIS LETTER IS BEING MAILED TO I/M ACUNA D33299 VIA THIRD PARTY MAIL.
The disposition of the letter is as follows:
⊠ Retained by Investigative Services Unit for investigation / potential disciplinary or court proceedings.
☐ Returned to sender in accordance with Section 3147 (a) (5) (B) or 3147 (a) (6).
☐ Placed in Central File in accordance with Title 15, Section 3147 (a) (7).

Reporting Employee:                                        Correspondence Disapproval Authorized By (Captain level or above):

J. PUENTE                                                 K. BRANDON
Correctional Officer                                      Correctional Captain
Institutional Gang Investigations                         Investigative Services Unit

Correspondents are personally responsible for the content of each item of mail they send into or out of a correctional facility, Any violation of laws governing mail will be referred to postal authorities and to appropriate criminal authorities. Violations of law, the policies and regulations or of approved facility mail procedures may result in the temporary suspension or denial of correspondence between the persons involved. [Section 3132 (a)]. Inmates may appeal the stopped mail utilizing the departmental appeal process.

cc:    C-File
    AWC File
    Investigative Services Unit
    Inmate
    Sender (incoming correspondence only)

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT C-2

DATE:  1/15/2008        **STOPPED MAIL NOTIFICATION**        GENERAL CHRONO

DATE FORWARDED TO INMATE:  1/18/08

J.22|

| PELICAN BAY STATE PRISON |
| SECOND LEVEL REVIEW |

DATE:    MAR 0 5 2008

Inmate: MANRIQUEZ, K-78581
Pelican Bay State Prison
Security Housing Unit
Facility C Unit 2

RE:    WARDEN'S LEVEL DECISION                    APPEAL:    **DENIED**
         APPEAL LOG NO. PBSP-C-08-00456            ISSUE:      MAIL

This matter was reviewed by Robert A. Horel, Warden, at Pelican Bay State Prison (PBSP). Correctional Lieutenant G. Wise conducted the Appeal interview at the Second Level of Appeal Review on February 26, 2008.

All submitted documentation and supporting arguments have been considered, including the interview conducted at the Second Level of Review. Additionally, a thorough investigation has been conducted into the claim presented by the inmate and the documentation evaluated in accordance with PBSP's institutional procedures and the California Department of Corrections and Rehabilitation (CDCR) policies.

### ISSUES

Inmate MANRIQUEZ states in Section A of the Appeal that he received a CDC 128-B, Stopped Mail Notification, dated January 15, 2008, disallowing an outgoing mailing claiming it promotes gang activity and is inmate to inmate correspondence. They also claim the mailing is third party correspondence. MANRIQUEZ states IGI violated his First and Fourth Amendment rights by reading his outgoing mail. MANRIQUEZ states this is an illegal activity.

Inmate MANRIQUEZ requests in Section B that the mailing be returned to him or destroyed. MANRIQUEZ requests the CDC-128B referring to the letter be removed from his Central File. MANRIQUEZ requests that this appeal be processed in an expeditious manner so he can take it to court. He requests monetary compensation for mental and emotional distress.

The Informal Level, Formal Level, and First Level were bypassed in this appeal.

On February 26, 2008, Lieutenant Wise interviewed inmate MANRIQUEZ concerning the contents of this appeal. During the course of this interview, MANRIQUEZ related essentially the same information that he provided in his written appeal. Lieutenant Wise informed MANRIQUEZ that he has examined the mailing and enclosed letter and agrees that the mailing promotes gang activity and is inmate to inmate via a third party drop address. MANRIQUEZ disagreed with the explanation and requested to go forward with this appeal.

### FINDINGS

I

Inmate MANRIQUEZ is a validated associate of the Mexican Mafia (EME) prison gang with the alias of "SPANKY," and was originally validated on March 16, 1998, pursuant to California Code of Regulations (CCR), Title 15, Section 3378, and the Department Operations Manual (DOM) 61020, by the Office of Correctional Safety (OCS).

II

Lieutenant Wise reviewed the mailing in question and the CDC-128B dated January 15, 2008, authored by Correctional Officer J. Puente and disallowance authorized by Captain K. Brandon. Lieutenant Wise noted

J    222

Second Level Reviewer's Response
Appeal Log #: PBSP-C-08-00456
Inmate MANRIQUEZ K-78581
Page 2

that the CDC 128-B documented the fact that the outgoing mailing was being sent to Beatris Lopez, 358 Indiana Street, Woodbridge, CA, 95258 and had been disallowed. The reason for the disallowance was listed as promoting gang activity, inmate to inmate correspondence, and third party correspondence. This violates CCR, Title 15, Section 3023(a) Promoting gang activity, and Operational Procedure 205, Attachment #8 and #31 correspondence deemed circumventing, and #32, third party correspondence. During Lieutenant Wise's review of the mailing, he noted that the enclosed letter was written in Spanish. Lieutenant Wise had Officer Puente read the letter to him. Lieutenant Wise determined the letter does promote gang activities and is written to another inmate via a third party drop address. MANRIQUEZ used vague terminology when identifying persons in his letter in an attempt to conceal who the information was about or who it was going to.

III

*CCR, Title 15, Section 3023,* states in part: *(a) Inmates and parolees shall not knowingly promote, further or assist any gang as defined in section 3000. (b) Gangs, as defined in section 3000, present a serious threat to the safety and security of California prisons.*

*Operational Procedure 205, Attachment #8, 31 correspondence deemed circumventing, and #32 third party correspondence.*

## DETERMINATION OF ISSUE

The Second Level Reviewer has examined all pertinent documents including all information received during the Second Level interview. MANRIQUEZ has received all copies of documents relating to this issue and was cited the appropriate CCR sections of the Title 15 and appropriate sections of Operational Procedure 205 to examine. This appeal is **DENIED** at the second level. Based upon a review of all of the available information, the mailing was appropriately confiscated by IGI in accordance with departmental policies and procedures. The CDC-128B dated January 15, 2008, accurately describes the reasons for which the mailing was stopped and is being retained in the IGI file. MANRIQUEZ' request to receive a copy of the letter is DENIED. It is being held in IGI pending on going investigations of gangs. MANRIQUEZ' request that the CDC-128B referring to this mailing be removed from his Central File is DENIED. It accurately documents the mailing violations. MANRIQUEZ' request to expedite the appeal process so he can proceed to court is a moot issue as the appeal process already has time constraints that must be followed. MANRIQUEZ' final request to receive compensation for violating his rights in this matter is DENIED. The department is following the rules and regulations as it applies to this issue. MANRIQUEZ' request that the mailing be processed out, returned to him or destroyed is DENIED. The IGI continues to conduct investigations into the scope of prison gang activity and influence throughout the CDCR. As such, this mailing is part of ongoing investigations and will be retained by IGI for the purpose of these investigations. The letter is considered contraband per CCR, Title 15, Section 3006(c). Lieutenant G. Wise investigated this issue and as evidenced by this document agreed with the reasoning in disallowing these mailings.

## MODIFICATION ORDER

No modification of this decision or action is required.

ROBERT A. HOREL
Warden

$\mathcal{F}.223$

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

(Case Title) DANIEL MANRIQUEZ
_____
Plaintiff or Petitioner

V.

Tilton
_____
Defendant or Respondent

Case Number: _____

PROOF OF SERVICE

_____ /

I hereby certify that on    (Date)  4-9-08                    , I served a copy

of the attached    (Title of Document Served and Filed)    Civil Rights Action/1983 Suit

by placing a copy in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said

enevelope in the United States Mail at    Pelican Bay SHU-C-2-cell 218 p.o. Box-7500
                                          Crescent City CA. 95531.

(List Name and Address of Each Defendant or Attorney Served)

I declare under penalty of perjury that the foregoing is true and correct.

_____
(Name of Person Completing Service)

EXHiBiT
A

**A necessary evil?; Pelican Bay State Prison Houses 'the Worst of the Worst' in the Starkest Isolation Imaginable. But These 'Supermax' Units Are Turning Inmates Into Mental Cases, and the Asylum Gate Opens Right Back Onto Our Streets.:[HOME EDITION]**

*Vince Beiser. Los Angeles Times. Los Angeles, Calif.: Oct 19, 2003. pg. I.12*

Full Text (4629 words)

*Copyright (c) 2003 Los Angeles Times)*

It's quiet in pod C5, deep inside Pelican Bay State Prison's Security Housing Unit, home to about 1,200 of California's most violent offenders. There are no sounds from outside, because there are no windows—only a skylight high overhead, through which gray daylight seeps into the bare quadrangle facing the pod's eight cells, stacked four on four. All that can be heard are a few subdued voices, and the occasional thunderous sound of a flushing toilet reverberating off the blank concrete walls.

This is not the crowded, clamorous kind of prison you see in the movies. The SHU, as it's known, is a starkly efficient place of electronically controlled doors and featureless concrete and steel. Occasionally, the monotony is punctured by bursts of noise and violence. Sometimes inmates scream at guards, other inmates, or themselves. Sometimes there is the clangorous racket of a recalcitrant prisoner being forcibly extracted from his cell. But most of the time, nothing happens. Almost nothing is permitted to happen. That's the idea of the SHU.

If you're an inmate in a regular prison—even a maximum-security prison, which the other two wings of Pelican Bay are—most days you can play basketball in the yard or cards in the day room, work in the laundry room or dining hall and take meals with the other men on your tier.

In the SHU, there are no jobs, no activities, hardly any educational programs and barely any human contact. You are locked in your 8-by-10-foot cell almost around the clock. You can't see the other prisoners in the cells adjoining yours, nor the guards watching from a central observation booth. Most of the time, all you can see through the fingertip-sized perforations in your cell's solid steel door is the wall of the eight-cell pod, the larger cage containing your cage. Once a day, the remote-controlled cell door grinds open, and you get 90 minutes to spend alone in a walled-in courtyard—a place more like the bottom of a mine shaft than an exercise yard. It's an environment about as restrictive and monotonous as human minds can design—and, perhaps, as human minds can tolerate.

Pelican Bay, which sprawls over 275 acres just south of the Oregon border, in a Tolkienesque region of misty mountains and ancient redwood forests, was among the first of a wave of new prisons equipped with ultra-restrictive "supermax" lockups that have proliferated nationwide in recent years. There are as many as 20,000 inmates housed in such facilities in at least 30 states.

California has three SHUs for men in its Pelican Bay, Corcoran and Tehachapi lockups, plus one for women in Valley State Prison in Chowchilla. They house about 3,000 convicts in all. But Pelican Bay is the one with the hardest cons and the harshest conditions, the end of the line for the inmates whom correctional officials call "the worst of the worst."

Like their counterparts in other states, California corrections officials say they need SHUs to control incorrigibly violent cons in the state's vast archipelago of prisons, teeming with nearly 160,000 inmates. While no one could argue with that goal, there are significant concerns about the tactic. For starters, it's not clear to what extent SHUs are indeed reducing prison violence.

More disturbingly, there's a growing worry that supermaxes—long decried by prisoner advocates as dangerous to the mental health of inmates—may be breeding danger for the general public.

Psychiatrists, activists and some correctional officials say the intense isolation of supermaxes is producing

EXHIBIT E 56

prisoners who are uncontrollably furious and sometimes violently deranged. Most of those prisoners will one day be set free. In the past three years, in fact, nearly 1,000 California SHU inmates at the end of their sentences were moved to less-restrictive prisons for just a few weeks, and then released.

And at least 403 inmates were paroled without even that intermediate step: They were taken straight from the solitary cells where they spent years marinating in their rage, handed $200 in gate money and put on a bus to rejoin the rest of us.

"T.C.," a Pelican Bay SHU inmate who, like most of the nearly two dozen current and former SHU prisoners interviewed for this article did not want his name published, wrote: "How does society expect a person to act once he has been released from the SHU, in most cases after spending years back here? There are things that happen here which people out there are never aware of; these things tend to build anger and hate in some persons, and if these persons don't have anyone to talk to, or complain to, that anger and hate continues to grow. If that person paroles, he's now a human time bomb waiting to release all that anger and hate, waiting to explode."

You can hardly blame prison authorities for liking the idea of supermaxes. Prison guards are spit on, screamed at and assaulted daily. Reducing the chances of being stabbed in the neck with a sharpened toothbrush is understandably a higher priority for them than fretting over how solitary confinement might change an inmate's mood.

But America's supermaxes have been denounced as inhumane by organizations from the ACLU to the United Nations. Fistfuls of lawsuits have been filed in recent years challenging conditions in supermaxes from California to Massachusetts. Some have succeeded in forcing changes. The latest, a suit on behalf of a Pelican Bay inmate charging that long-term SHU confinement constitutes cruel and unusual punishment, is slated to go to trial in December. So far, the courts have upheld the constitutionality of supermax-style imprisonment. But just because they're legal doesn't necessarily mean they're good policy. In fact, Democratic state Sen. Gloria Romero of Los Angeles, head of the Senate's Select Committee on the California Correctional System, has launched a campaign to investigate how supermaxes are affecting prisoners—and the public.

No question the Pelican Bay SHU holds a great many extraordinarily malicious men. Most of California's top prison gang leaders are there, including such luminaries as Aryan Brotherhood shot-callers Paul "Cornfed" Schneider and Dale Bretches, the original owners of the dogs that mauled a San Francisco woman to death in 2001. The day before my visit there this year, a SHU inmate who was appearing in court stabbed his own lawyer with an ice pick- like shank he apparently had hidden in what a Pelican Bay spokesman referred to as his "keister."

There is considerable debate, however, about whether everyone in the SHU deserves to be there. No one is in the SHU for crimes they committed on the streets; you get sent there for doing something while you're in prison.

This works in two ways. The first is straightforward: If you violate prison rules—say, being caught with drugs or for attacking another inmate—you can be sent to the SHU for a set period of time as punishment.

The second is more ambiguous: Simply being declared a member or associate of a prison gang lands you in the SHU—indefinitely. About half the state's SHU inmates are in for this reason. Aside from getting paroled or going certifiably insane, the only way a "gang- validated" inmate can be released from the SHU is by "debriefing"—confessing everything he knows about other gang members, which entails obvious risks—or by convincing prison officials that he has been free from gang activity for six years.

"Prison gang members and associates are responsible for the largest percentage of violence in our institutions," says Steve Moore, the head of gang-related issues for the California Department of Corrections. "The idea is to extract those people from the general population."

Corrections officials and prisoners agree that California's half- dozen major prison gangs—Nazi Low Riders, Aryan Brotherhood, Black Guerrilla Family and several Latino factions—are behind a hefty chunk, though certainly not all, of the trouble in prisons statewide, from stabbings to drug dealing. And as the number of people cycling through the prison system has swelled in recent years, some of those gangs are believed to have begun

E 57

forging increasingly close links with street gangs on the outside.

Activists and inmates, however, charge that the department's criteria for determining gang membership are overly broad, sending many undeserving inmates to supermax solitary. SHU inmates in Corcoran and Pelican Bay have staged two hunger strikes in the past two years over the issue, and Romero convened a hearing in September to investigate the corrections department's criteria of identifying gang members. "I have very serious concerns about the validation process," Romero said at the hearing, held in Los Angeles. "In this time of constrained budgets, it's a good time to look at who is going into SHUs and whether they should really be there."

In response to these criticisms, Moore ordered a review of all gang validations. As of September, his office had looked at several hundred cases and found 17 that didn't pass muster.

Regardless of why prisoners are put in the SHU, perhaps the most pressing concern for the public is the inmates' mental states upon release. Dr. Stuart Grassian, a Boston psychiatrist who lectured at Harvard Medical School, has been studying the effects of solitary confinement for more than two decades, during which time he has examined more than 100 supermax prisoners, including 50 at Pelican Bay. His conclusion: Supermax prisons can literally drive inmates crazy.

"There are many scores of cases of people who never suffered psychiatric illnesses and developed them while incarcerated in supermaxes," he says. Other mental health professionals agree. "I've seen many prisoners with no history of mental illness who after some time in the SHU started cutting themselves," says Dr. Terry Kupers, an Oakland-based psychiatrist with decades of experience in prison work. "I've almost never seen self-mutilation among adult males anywhere else, but it's very common in SHUs." At the landmark Madrid v. Gomez federal trial in 1995 over conditions at Pelican Bay, even the prison's senior staff psychologist acknowledged seeing psychiatric deterioration among some SHU prisoners.

Supermax prisoners often develop similar symptoms, Grassian says. These include hallucinations; hypersensitivity to external stimuli; paranoia; panic attacks; hostile fantasies involving revenge, torture and mutilation; and violent or self-destructive outbursts, to the extent of gouging out one's eyes, smearing oneself with feces or biting chunks of flesh from one's own body.

Take Matthew Lowe, convicted of armed robbery, assault on a peace officer and grand theft auto. During his three years in the Pelican Bay SHU, Lowe never got to the point of biting off pieces of his sizable biceps, but in other ways he fits Grassian's diagnosis of a mentally ill inmate. Lowe is a big guy in baggy jeans and a motorcycle-shop sweatshirt, with a tiny soul patch on his chin and tattoos on his neck and fingers. At 38, he has spent most of his life behind bars, but he says his time in the SHU changed him in a way prison never had before.

"Them years of sitting in that little cell--it did something to me, I don't even know what," says Lowe, sitting on a couch in his girlfriend's tidy bungalow in a blue-collar suburb of San Francisco. "I only had conversations with about five or six people in three years. I'd sit in there and just think about doing crazy [stuff] all the time, like Tim McVeigh-type [stuff]. Your average prison doesn't do that to you." After years of obsessively ruminating about blowing up buildings and shooting cops, Lowe was finally paroled last year. He was taken from his SHU cell, shifted to San Quentin for a few days and then let out onto the streets of Marin County.

So far, he's doing all right, working as a roof-gutter installer and going to AA meetings. But he scares himself with how jumpy and paranoid he has become. "So many times I've come so close to snapping since I got out," he says. "One time in a store, someone cut in front of me in line—a 50-year-old guy, I don't think he even realized it. I had to catch myself, because my first thought was just to smash him."

Penal solitary confinement was essentially invented in the United States. In the late 1700s, whips and stocks were the preferred tools of public punishment. But reformers argued that by isolating criminals, their consciences would naturally lead to repenting their evil ways.

In 1790, Pennsylvania opened the first prison designed for this purpose, dubbed a "penitentiary." Several American states and European nations soon followed suit. But the penitentiaries gradually fell out of favor as evidence began to mount that they were often driving inmates mad. As the Supreme Court observed in an 1890

E 58

ruling condemning the penitentiary system: "A considerable number of prisoners fell, after even a short confinement, into a semi-fatuous condition . . . and others became violently insane; others still, committed suicide; while those who stood the ordeal better were not generally reformed."

Still, solitary confinement continued to be used as a short-term punishment for inmates. But the idea of keeping large numbers of convicts permanently in such severe conditions didn't return until the 1980s, as America's prison population began mushrooming. Driven largely by tough anti-drug and "three-strikes"-type mandatory minimum sentencing laws, the number of Americans behind bars has quadrupled since 1980 to an all-time high of about 2 million today. In the same get-tough-on-criminals spirit, many states have also cut back educational programs, exercise facilities and other "perks" for prisoners. Violence grew apace. Desperate to restore order to the federal maximum-security lockup at Marion, Ill., authorities in 1983 put the entire facility on indefinite lockdown. Under the administrations of then-Gov. George Deukmejian and then-Corrections Department head James Rowland, California was among the first states to copy the concept, opening SHUs at Corcoran in 1988, and Pelican Bay in 1989.

Pelican Bay came under fire almost right away, both over alleged abuses by guards and conditions in the SHU. In the Madrid v. Gomez decision, U.S. District Court Judge Thelton Henderson ruled that there was a "pattern of brutality" by the guards. On whether the SHU itself was damaging to inmates' mental health, he ruled that while the SHU "may press the outer bounds of what most humans can psychologically tolerate" and could seriously exacerbate previously existing mental illnesses, there was not enough proof to show that it could drive a sane man mad.

Pelican Bay instituted several reforms as a result of the case, including creating a 127-bed psychiatric unit and beefing up its mental-health staff to a total of 79. As far as the prison was concerned, that took care of the problem. "We moved all of those with mental illnesses into the [psychiatric unit] after the Madrid decision," declares Rawland Swift, who, until recently, was the Pelican Bay spokesman. Certainly, the SHU's conditions aren't as extreme as those that so appalled the 1890 Supreme Court. Pelican Bay SHU inmates can talk to others in neighboring cells, receive letters and see visitors (through security glass) on weekends. Those who can afford them have TVs (though they can only watch during the day and must listen through earphones). Most occasionally leave their cells for brief excursions to court or for medical treatment.

A select number of SHU inmates even have cellmates, but most are housed alone, and the overwhelming bulk of their time is spent in a small concrete and steel box. It seems entirely possible that a good many SHU inmates are losing their grip on reality—whether their keepers acknowledge it or not.

Prisoners are given mental-health attention if their guards— hardly experts in such matters—deem their behavior strange enough to warrant an examination. Swift told me that while seemingly troubled prisoners are often taken to the psychiatric unit for evaluation, the psychiatrists almost always send them back, saying, "He's got a behavioral problem, not a mental health problem." This echoes disturbingly a finding of the judge in the Madrid decision: "It is clear . . . that an overburdened, and sometimes indifferent, mental health staff is far too quick to dismiss an inmate as a 'malingerer' and thus deny him needed treatment."

Almost all of the inmates I interviewed (and at least one correctional officer who did not want to be named) said they had seen other prisoners suffer serious mental deterioration in the SHU—screaming, banging on doors, cutting themselves. "I have seen plenty of people lose their sanity while in the SHU. I used to think that they were faking it . . . but once being around them for a while you could see that it was no act," writes Pelican Bay SHU inmate Otis Booker. "When you hear a guy holding a conversation with himself, or calling out cadences to exercises that he's not even doing or growling out animal sounds all day, you know something's not right."

Grassian estimates that as many as one-third of all supermax inmates are suffering some kind of psychiatric trouble—most of which goes undiagnosed. "A guard may see a prisoner hiding under a blanket, obviously delusional, but as long as he's not screaming or throwing feces, he's OK as far as they're concerned," Grassian says.

All of which could help explain the case of Erik Scott January, convicted of armed robbery. His mother, Long Beach resident Laura Daniher, says that before he was sent to the Corcoran SHU in 1997, January had no history of mental health problems. After a couple of years in the SHU, though, he started raving about the evil spirits he saw dancing on the walls.

E 59

ER 0090

In a letter to her from mid-2001, January writes relatively lucidly for most of two pages, asking about her house and other chitchat—and then mentions that he has been seeing things and experiencing other "strange occurrences." A few months later, another letter makes it apparent he has left reality far behind: "I am Tutankamen mother. . . . take a time to pray to your hi Hitler power of white skin because I need some hand in time I need hand time handtime . . . god is the sun I am the sun I am Satan I am Lucifer."

Vanessa Filley, a member of California Prison Focus, a San Francisco-based advocacy group, visited January early last year and found him "in a delusional state," suffering "visual hallucinations." In a letter to the warden asking that January be taken out of the SHU, Filley states that she was told by a Corcoran psychiatrist that January "is not dysfunctional to the point of forced intervention, therefore barring any specific behavior we can't do anything." At the time of this writing, January was still in the SHU.

Certainly, SHUs don't drive everyone over the threshold of clinical insanity. But they may have dangerous effects short of that. What happens when you take a man who had antisocial and violent impulses to begin with, lock him in a cell by himself for five or 10 years, and then let him out?

"It's like keeping a dog that has bitten someone in a cage, kicking it and beating it all the time until it gets as crazy and vicious as it can be, and then one day you open the cage and run away," Grassian says. "Taking someone straight from the Pelican Bay SHU and sending them back to San Francisco or Los Angeles is about as dangerous a thing as you can do."

Even some corrections officials agree. "From my experience as a prison administrator, the prolonged confinement of inmates with little or no contact with others will only make people worse," Jerry Enomoto, a former California director of corrections, said when the Madrid lawsuit first hit the courts. (Current Department of Corrections director Ed Alameida did not respond to several requests for an interview.)

Some people, of course, are less affected by the SHU than others. But at best, it seems, coming out of the SHU often leaves prisoners dangerously ill-equipped to cope with the stress of being around other people.

"Tony" is a 30-year-old Latino and former gangbanger with a generous mustache and hair cropped so short you can see the scars on his head. He has done time in both the Corcoran and Pelican Bay SHUs. Since his parole last year, he has been living with his mom in a quiet Bay Area town and working as a diesel mechanic. On the spring afternoon I met him, an ancient little dog was asleep on a pillow in the front yard next to Tony's massive weight set.

Like Matthew Lowe, Tony was sent straight home from the SHU after a few days in San Quentin. "On my first day out, my mom took me to the grocery store," he says. "I blew up on a couple of people. There was some woman who came up about five feet behind me, and I turned and said, 'Don't stand so close to me!' " Months later, he still breaks out in hot sweats when he's out in crowds. The day before, he says he found himself moving warily away from an elderly woman standing behind him in line at the post office. "I'm not the same," he says. "Look at me, I'm paranoid of a 90-year-old lady in the post office. It's from being so isolated. No wonder people who've been in five or six years come out and kill people."

There have been at least a few hair-raisingly brutal crimes committed by convicts fresh out of supermaxes. In 1992, one day after getting out of the Pelican Bay SHU, Robert Lee Davenport, 24, kidnapped, beat and raped a woman in El Cerrito. In 1995, within a week of his release from the same facility, Robert Walter Scully, 36, killed a Sonoma County sheriff's deputy, took hostages and barricaded himself inside a house in a standoff with police before finally surrendering.

Judging from the media coverage and conversations with people who remember these cases, it doesn't seem that anyone made the connection, or pointed to the SHUs as possibly having contributed to crimes committed by former SHU inmates. Grassian says he has served as consultant on more than a dozen similar cases nationwide. There may be more crimes to add to this list, but no one keeps track of what happens to SHU inmates as a group after they are freed to their parole officers. They are just another former con.

The jury is still out on whether isolating troublemakers in supermaxes is actually cutting down prison violence.

According to Department of Corrections statistics, killings in California prisons dropped dramatically in the years immediately after the Corcoran and Pelican Bay SHUs opened. But the total rate of assaults in the state prisons has been rising since. As of 2000, the inmate-on-inmate assault rate was just as high as in the years before the SHUs opened, and the rate of armed assaults on staff was even higher. Despite its oppressive security, there were 221 assaults in the Pelican Bay SHU last year--inmates assaulting guards when they are taken to court, for example, or by ingenious methods such as firing homemade blowguns though the perforations in their cell doors. More ominously, in the past two years federal prosecutors have charged more than a dozen members of two prison gangs with directing--via letters and visitors--scores of murders and attempted murders in prisons around the country from their cells in the Pelican Bay SHU.

Moore is aware of all this. But, he says, the SHUs are better than nothing. "We have much better investigative tools with the gang leaders in the SHUs," he says. "We know where they are. We can monitor them more closely. Will we ever totally stop them? No. But are we hindering them? Yes. And the best way we've found so far to do that is the SHU."

This is a common view among supermax supporters. Still, as a 1999 National Institute of Corrections report on these facilities points out, "There exists little or no hard data comparing such perceived impacts on entire systems versus the fiscal cost to gain such results." That's no small matter, considering how prodigiously expensive supermaxes are. Taxpayers forked over $218 million to build Pelican Bay, and spend $115 million every year to keep it running. It costs California about $28,000 per year to hold an average prisoner, but SHU inmates, with their elaborate security measures, cost substantially more. The Department of Corrections won't provide an exact figure, but most experts estimate the cost is as much as two or three times greater.

"We should definitely be looking at ways to reduce the number of inmates in SHUs," says state Sen. Romero, who visited Pelican Bay in June. "We may not like the fact that someone is a gang member, but is that a reason to throw them in this prison-in-a-prison? I'm not convinced of that, especially given the high costs." She aims to keep up pressure on the corrections department to modify its gang- validation policy, and to have more research done into what happens to SHU inmates after they are released.

It makes more sense, says Charles Carbone, an attorney with California Prison Focus, to deal with chronic violent offenders on a case-by-case basis, rather than shovel everyone who might be involved in violence into SHUs. "The purpose of the SHU can be served in each prison by administrative segregation," he says, referring to a type of solitary confinement that's not as restrictive and long. "But even then, those people should not be cut off from rehabilitative programs. In fact, they should get more. Cutting them off completely from all stimulation does nobody any good."

Psychiatrist Kupers, among others, believes the main cause of the surge in violence in the '80s was overcrowding and the idleness that resulted from programs being cut. "If you take everything away, prisoners become desperate, and therefore uncontrollable," he says. "Crowding, idleness and lack of rehabilitation cause violence. And no amount of supermaxes will stop that."

Even if you believe SHUs are necessary, Grassian says, they can be modified to make them more humane. In particular, Grassian recommends creating a transitional program to slowly reintroduce inmates to interaction with other people, something that happens in several other states. At present, with the exception of prisoners who are debriefed, the only pre-release preparation Pelican Bay SHU inmates are offered is a voluntary program that primarily consists of watching videos.

Making visits easier could also ease the transition, with prisoners housed in SHU facilities closer to home. Most experts agree that prisoners who maintain family ties generally do better after release. But Pelican Bay is a solid 14-hour drive from Los Angeles, its biggest single source of inmates; getting up there is a challenge for many families. "That visiting room is never full, even though there are over 1,000 people in the SHU," says Oakland resident Helen Grimes, who makes the trek almost every month to visit her son.

No such changes seem likely to happen soon, however. While the current state budget boosts corrections spending overall, it cut funds for inmate-related programs. Gov. Gray Davis understood well that most voters are not especially concerned about what happens to prisoners in SHUs or elsewhere. For them, the moral equation seems simple: Prisoners broke the law; let them suffer the consequences.

E 81

But most of the prisoners locked away in the maddening solitude of the SHUs will one day be freed to return to our midst—some of them angrier, more impulsive and more unbalanced than ever. And we will all have to live with those consequences.

[Illustration]
Caption: PHOTO: (no caption); PHOTOGRAPHER: Dan Winters; PHOTO: (no caption); PHOTOGRAPHER: Dan Winters; PHOTO: (no caption); PHOTOGRAPHER: Dan Winters; PHOTO: (no caption); PHOTOGRAPHER: Dan Winters; PHOTO: (no caption); PHOTOGRAPHER: Dan Winters; PHOTO: (no caption); PHOTOGRAPHER: Dan Winters; PHOTO: (no caption); PHOTOGRAPHER: Dan Winters

Credit: Vince Beiser is a California-based freelance writer who writes often on criminal justice issues.

Reproduced with permission of the copyright owner. Further reproduction or distribution is prohibited without permission.
Subjects:
Locations:          California
Companies:          Pelican Bay State Prison-California (NAICS: 922140 )
Article types:      Feature
Section:            *Los Angeles Times Magazine; Part I; Let Magazine Desk*
ISSN/ISBN:          04583035
Text Word Count     4629

E 62

DANIEL MANRIQUEZ

CDC NO. K-7858 HOUSING: C-2-Cell 2\8

PELICAN BAY STATE PRISON
P.O. BOX 7500
CRESCENT CITY, CA 95532

RECEIVED

MAY -8 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Judge THE
U.S. Norther
U.S. Courth
450 Golden
San Francis

3 motions inclused
1  1983 w\ Madrid claims
2  motion for counsel
3  IPF

# CONFIDENTIAL LEGAL MAIL

PELICAN BAY STATE PRISON
5905 Lake Earl Dr.
Crescent City, Ca. 95531

$ 05.70⁰

oN HENDERSON
n Dist. of Ca.
use
jate Ave.
b, Ca.  94102-3483